Ariel A. Neuman - State Bar No. 241594
 aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
 rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>　　　　Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S NOTICE OF MOTION AND MOTION TO SEVER TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE RULE 14; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　October 15, 2021<br>Time:　8:00 a.m.<br><br>Assigned to Hon. John F. Walter |

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 15, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, Defendants 940 Hill, LLC and Dae Yong Lee will move the Court for an order severing their trial from that of their codefendants pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure. The motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, any further briefing filed in support of the motion, the files and records in this case, such evidence and argument as may be presented at a hearing on this matter, and such other matters of which the Court may take notice.

DATED: August 9, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

---

DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION TO SEVER TRIAL

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I. INTRODUCTION AND BACKGROUND ...................................................... 1

    A. The Government's Case Against Mr. Lee and 940 Hill Is of a Different Type and Volume than Its Case Against the Other Defendants ................................................................................................. 2

    B. The Evidence Relating to the Codefendants But Not Mr. Lee or 940 Hill Is Expansive. ............................................................................ 4

II. ARGUMENT ................................................................................................... 7

    A. Legal Standard ..................................................................................... 7

    B. Mr. Lee's Alleged Level of Culpability Is Markedly Less than That of the Other Defendants. ................................................................ 8

    C. A Joint Trial Would *Primarily* Involve "Spillover Evidence" That Would Not Be Admissible Against Mr. Lee or 940 Hill in a Separate Trial, Resulting in an Unfair Trial. ........................................ 10

    D. A Separate Trial for Mr. Lee and 940 Hill Would Be Consistent with the Judicial Efficiency Rationale for a Joint Trial. ....................... 14

III. CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Baker*,
   10 F.3d 1374 (9th Cir. 1993) .............................................................................. 14

*United States v. Blankenship*,
   382 F.3d 1110 (11th Cir. 2004) .......................................................................... 10

*Bruton v. United States*,
   391 U.S. 123 (1968) ............................................................................................ 13

*United States v. Burke*,
   789 F. Supp. 2d 395 (E.D.N.Y. 2011) ................................................................ 10

*United States v. DiNome*,
   954 F.2d 839 (2d Cir. 1992) ........................................................................... 9, 13

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ............................................................................ 13

*United States v. Gilbert*,
   504 F. Supp. 565 (S.D.N.Y. 1980) ....................................................................... 8

*United States v. Kelly*,
   349 F.2d 720 (2d Cir. 1965) ............................................................................... 10

*United States v. Kennedy*,
   564 F.2d 1329 (9th Cir. 1977) .............................................................................. 7

*United States v. Miller*,
   874 F.2d 1255 (9th Cir. 1989) ............................................................................ 13

*United States v. Sampol*,
   636 F.2d 621 (D.C. Cir. 1980) ....................................................................... 9, 15

*United States v. Shkreli*,
   260 F. Supp. 3d 247 (E.D.N.Y. 2017) ................................................................ 14

*Zafiro v. United States*,
   506 U.S. 534 (1993) ................................................................................... 7, 8, 10

**Other Authorities**

Federal Rule of Criminal Procedure 14(a) ....................................................2, 7, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND BACKGROUND

Defendants Dae Yong Lee and 940 Hill, LLC should be severed from their codefendants to ensure they receive a fair trial untainted by extensive prejudicial spillover evidence that is not admissible against them. In a joint trial, Mr. Lee (individually and as the representative of 940 Hill), who primarily owns and operates a wholesale accessories business, would be forced to sit side-by-side with differently-situated codefendants (including a multi-million dollar international developer) as the government spends weeks presenting evidence about a sprawling conspiracy that has nothing to do with Mr. Lee.[1] That conspiracy involves allegations of lurid acts of corruption that will do nothing but taint the jury's perspective of Mr. Lee and 940 Hill.

Importantly, Mr. Lee and 940 Hill are not alleged to be coconspirators with any other defendant in this case. In fact, neither Mr. Lee nor 940 Hill are alleged to have had a single direct conversation with any codefendant in furtherance of their alleged crimes, in stark contrast to the other codefendants. And unlike the other defendants, there are no wiretaps or undercover surveillance videos that involve Mr. Lee and 940 Hill. Rather, as discussed below, the evidence against Mr. Lee and 940 Hill will be a very small part of the overall case that the government intends to present at a joint trial.

Moreover, Mr. Lee is neither a "developer" with knowledge of city processes or access to high-level officials, nor did he have multiple construction projects in the works, like some of his codefendants. Rather, Mr. Lee owns a wholesale fashion accessory business and has invested some of his earnings in real estate with his partners in hopes of preserving their hard earned capital in what they considered to

---

[1] The government's latest estimate is 25 to 30 trial days for its case-in-chief. *See* ECF No. 170.

be a relatively safe and prudent investment. 940 Hill represents one of Mr. Lee's few potential forays into development, and it appears others, especially the two government cooperators Justin Kim and George Esparza, took advantage of his naiveté. Unlike the others named in the First Superseding Indictment ("FSI"), who are alleged to have actively cultivated relations with city officials over lengthy periods of time in order to garner favors, Mr. Lee is alleged to have, at worst, acceded to a single demand by Justin Kim for payment on a single project. Whether Mr. Lee knew and intended that such a payment was a bribe for a public official will be a central issue at his trial. But if he is forced to sit through a joint trial where the government presents otherwise inadmissible and extensive evidence that the entire real estate development process in Huizar's district was suffused with corruption, there is a serious risk that a jury will be led to conclude that Mr. Lee "must" have known what was happening, regardless of the specific evidence against him.

The trial for Mr. Lee and 940 Hill should therefore be severed from the trial of the other defendants in this case pursuant to Federal Rule of Criminal Procedure 14(a). Severance is necessary to ensure that Mr. Lee and 940 Hill receive a fair proceeding untainted by the irrelevant but voluminous and highly prejudicial allegations and evidence the government intends to introduce against the codefendants.[2]

### A. The Government's Case Against Mr. Lee and 940 Hill Is of a Different Type and Volume than Its Case Against the Other Defendants.

Mr. Lee and 940 Hill are not charged in Count 1, the RICO conspiracy at the heart of the FSI, or in 37 of the other 40 substantive counts. Rather, they are charged

---

[2] Although Mr. Lee is the principal of 940 Hill, and the charges against 940 Hill are based entirely on the allegations against Mr. Lee, 940 Hill also has two uncharged minority members who will be additional victims of the inequities that a joint trial will impose on 940 Hill should the entity be convicted.

2
DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION TO SEVER TRIAL

only in Counts 5 (honest services wire fraud), 25 (bribery), and 38 (obstruction by improper accounting), wherein they are accused of (1) complying with Defendant Jose Huizar's purported demand—allegedly communicated through Justin Kim—to pay him a bribe in exchange for Huizar's assistance with a union appeal of a construction project, and (2) improperly accounting for the alleged bribe in order to conceal it. The charges against them make up a relatively small part of government's overall case, with less than eight percent of the overt acts in the conspiracy count (34 of 452) even referencing the 940 Hill project.[3] In Count 5 they are charged together with Huizar, but there are no codefendants in Counts 25 or 38.

Likewise, although discovery is not a perfect proxy for the evidence the government will introduce at trial, the government's production in this case highlights the relatively small size of the government's case against Mr. Lee and 940 Hill as compared to the codefendants. The case against Mr. Lee and 940 Hill boils down to the relatively contained testimony of two cooperating witnesses (Kim and Esparza)—only one of whom, Kim, had direct contact with Mr. Lee; a relatively small number of documents; two after-the-fact conversations recorded by Justin Kim involving only himself and Mr. Lee; and the testimony of some peripheral figures involved in the attempted development at 940 Hill. However, in regards to the rest of the other codefendants, to date, the government has produced over two million pages of documents, extensive data from 20 different cell phones, 1,033 audio recordings, approximately 25 video recordings, and the results of 28 pen registers. Based on counsel's review to date, very little of that relates to the allegations against Mr. Lee and 940 Hill. Rather, based on this discovery and conversations with the prosecutors, it appears to counsel that the government's case-

---

[3] This number includes all overt acts relating to the 940 Hill project. The number of allegations in which Mr. Lee personally is alleged to be involved is fewer, as many concern discussions between Kim and Esparza about the division of the funds allegedly received from Mr. Lee, which never went to Huizar.

3
DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION TO SEVER TRIAL

in-chief against Mr. Lee and 940 in a separate trial could be presented in a matter of days, rather than the several weeks anticipated for the sprawling trial of the other defendants in this case.

Nor is the evidence against Mr. Lee inextricably intertwined with the evidence against the other defendants. The only two recordings relevant to the government's case against Mr. Lee involve just him and Justin Kim, who is not a defendant, after the government's investigation was public. Mr. Lee is not alleged to have had a relevant, direct interaction with any of his codefendants; there is no allegation that he ever discussed the purported bribe with Huizar. Accordingly, while Huizar is a codefendant in Count 5, evidence regarding Mr. Lee's actions, knowledge and intent can largely be presented separately from evidence of Huizar's. The minimal amount of testimony that would be presented twice does not justify the prejudice that would result from a joint trial.

### B. The Evidence Relating to the Codefendants But Not Mr. Lee or 940 Hill Is Expansive.

The overwhelming majority of the FSI relates exclusively to Mr. Lee's codefendants. Whereas the accusations against Mr. Lee and 940 Hill are confined to a single alleged bribe on a single aspect of a single project that had already been approved by the City, codefendants Huizar and Chan are accused of orchestrating a RICO scheme that lasted over five years and involved an intricate conspiracy to misuse Huizar's and Chan's respective positions in government to enrich or empower themselves, their friends, and their families. Codefendants Wei Huang and Shen Zhen are accused of cultivating a relationship with Huizar and his staff over a lengthy period of time in order to position themselves to seek "favors."

At a joint trial, the government would present detailed evidence of a number of schemes in which Mr. Lee and 940 Hill are not alleged to have been involved whatsoever, such as:

- A scheme to finance the political ambitions of Huizar's family

members by pressuring developers seeking project approvals from entities controlled or influenced by Huizar to contribute funds to their political action committees (Overt Acts 241–271, 274–75, 280–81, 296–97, 299–300, 335, 349–350);

- A scheme to preserve Chan's position overseeing the Los Angeles Planning Department in order to entrench Huizar and Chan's ability to abuse that position to demand bribes from developers (Overt Acts 23–24);

- A scheme by Huizar to pressure Huang and Shen Zhen to provide funds that would allow him to settle a pending sexual harassment lawsuit that would have endangered his electoral prospects (Overt Acts 25–49);

- Efforts by Huang and Shen Zhen to cultivate relationships with Huizar and his cohort by lavishing them with private jet flights to Las Vegas, Australia, casino chips, escort services, and other benefits to create leverage to demand "favors" at various points in time (Overt Acts 1–22);

- Huizar's reciprocation of Huang's efforts by using his influence to introduce and pass a resolution "recognizing Huang for his achievements and contributions to the economy of CD-14" (Overt Act 55);

- A scheme in which Huizar agreed to assist Fuer Yuan by voting to advance the Luxe Hotel Project in exchange for monthly bribes, which they disguised as "consulting fees" in exchange for sham "real estate reports" (Overt Acts 131–158);

- Similar efforts by various foreign nationals to cultivate relationships with Huizar by paying for him and his family to travel to international destinations and attend events like concerts in exchange for an expectation of future favors (Overt Acts 159–61, 167);

- Huizar's acceptance of bribes from an unnamed businessperson in exchange for Huizar's agreement to pressure developers in his district to use that businessperson's services (Overt Acts 301–333);

- Efforts by Huizar and his associates to conceal the source of the financial benefits they received (Overt Acts 361–428);

- Efforts by Huizar and his associates to conceal communications they

5

DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION TO SEVER TRIAL

engaged in while engaging in misconduct (Overt Acts 429–436).

***None of these alleged schemes have any relevance whatsoever to the allegations against Mr. Lee and 940 Hill***: neither is alleged to have participated in either the acts themselves or a conspiracy to commit the acts, and there is no evidence that they knew anything about these schemes. In a separate trial of Mr. Lee and 940 Hill, these acts would not be discussed, and the lengthy and prejudicial presentation of the evidence in support of these allegations would be avoided.

On the other hand, a joint trial will likely find the government explaining and presenting evidence about the details of each alleged scheme pursued by Huizar and the codefendants, including about the specific government processes implicated in the alleged conspiracy. *See* May 10, 2021 Hrg. Tr. at 10:9–14 (AUSA stating that the government will present experts on each "city process" at issue). Based on the FSI, this anticipated expert testimony would presumably explain the internal processes of, at a minimum:

- The Los Angeles City Council;
- The Planning and Land Use Management Committee ("PLUM");
- The City Council's Economic Development Committee;
- The Los Angeles Planning Department;
- The Los Angeles Department of Building and Safety;
- The City Planning Commission; and
- The Area Planning Commission.

Each of these entities has its own respective jurisdiction and, in some cases, intricate and subtle processes that will require extensive explanation by witnesses. But as to Mr. Lee, the FSI's allegations do not require presenting evidence about anything especially intricate: Huizar is alleged to have demanded a bribe from Mr. Lee in exchange for his vote on the PLUM committee and for pressuring a labor group to drop its appeal regarding the 940 Hill development project, and Mr. Lee is alleged to have acceded to the demand.

## II. ARGUMENT

### A. Legal Standard

Federal Rule of Criminal Procedure 14(a) provides,

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

The Supreme Court has explained that severance should be granted

> if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. **Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant**. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. **When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.**

*Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added). In essence, the Court identified two situations in which severance could be warranted: (1) when evidence that would be inadmissible against a defendant being tried alone would be admissible against a codefendant in a joint trial; and (2) when a defendant has a "markedly different degree[] of culpability" relative to their codefendants in a complex case. The risk of prejudice arising when these factors are present is balanced against the effect of severance on judicial economy. *See United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1977).

Mr. Lee recognizes that severance is rarely granted and that the legal presumption is typically in favor of joinder. But his case presents the rare situation

where (1) the vast majority of the government's case against his codefendants has *no* relevance whatsoever to the charges against him, because he is not alleged to have been part of a conspiracy with them; and (2) the evidence relating to the allegations against Mr. Lee and 940 Hill are such a severable fraction of the government's overall case that a separate trial would not create much, if any, additional burden on the Court. These are the circumstances where courts have found that the prejudice to a defendant overcame the preference for joinder.

### B. Mr. Lee's Alleged Level of Culpability Is Markedly Less than That of the Other Defendants.

The alleged culpability of Mr. Lee and 940 Hill is of a "markedly different degree" from that of the other defendants, a situation that the Supreme Court has recognized creates a "heightened" risk of prejudice to the defendant with less culpability and which is a primary reason to grant severance. *Zafiro,* 506 U.S. at 539. In a joint trial where the government is permitted to introduce evidence supporting all counts in the FSI, "the jury [will be] subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve [Mr. Lee and 940 Hill] in any way, and as trial days go by, the mounting proof of the guilt of [other defendants] is likely to affect" Mr. Lee and 940 Hill. *United States v. Gilbert*, 504 F. Supp. 565, 566 (S.D.N.Y. 1980). The *Gilbert* court concluded that such a situation triggered exactly the kind of prejudice predicted in *Zafiro* and which justified severance.

The risk posed by relative culpability is particularly salient here, where Mr. Lee and 940 Hill are only charged with allegedly complying with a demand for a single bribe on a single occasion related to a single project, while his codefendants are charged with actively demanding or affirmatively offering numerous bribes and favors, and committing numerous allegedly corrupt acts. This vast difference between the alleged culpability of Mr. Lee and 940 Hill on one hand, and their codefendants at a joint trial on the other—coupled with the absence of coconspirator

status—makes this the rare case where severance is warranted. *See, e.g.*, *United States v. DiNome*, 954 F.2d 839, 844 (2d Cir. 1992) (reversing convictions for wire and mail fraud because trial court should have severed defendants after conspiracy counts against them were dismissed).

*United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980), is instructive in this instance. There, the D.C. Circuit reversed one defendant's convictions for false statements to a grand jury and misprision of a felony after he was tried jointly with codefendants alleged to have initiated and executed a conspiracy to murder several people. The Court observed that "there is a gross disparity in the quantity and venality of the testimony against the respective joint defendants," and concluded that

> The amount and provocative nature of the evidence required to prove the charges against his co-defendants so exceeded and varied from that which was necessary or relevant to the charges against [the defendant] that it was unfair to him, and unrealistic to expect a jury not to be influenced by such extraneous testimony in its assessment of his guilt upon the lesser charges for which he was tried.

636 F.2d at 647. The court further noted that the prosecution's decision not to charge the defendant with conspiracy "deprives the prosecution of a large part of its rationale for trying the defendants together." *Id.* at 646.

As in *Sampol*, the prosecution here seeks to try Mr. Lee and 940 Hill—also not charged with conspiracy—with codefendants who are charged with much more serious offenses (RICO), against whom the government intends to offer a much greater "amount" of "provocative" evidence. And there can be no doubt that the government's case will consist primarily of "the evidence required to prove the charges against [their] co-defendants," and that that evidence will "exceed[] and var[y] from that which [is] necessary or relevant to the charges against" Lee, making it "unrealistic to expect a jury not to be influenced by such extraneous testimony"

when it considers the lesser charges against Mr. Lee. This is the precise situation the Supreme Court warned of in *Zafiro*, when it recognized the "heightened" risk of prejudice to less culpable defendants as a primary reason to grant severance. *See also United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965) (reversing conviction for minor participant in conspiracy in part because of prejudice from the "slow but inexorable accumulation of evidence of fraudulent practices by [his] co-defendants," including evidence of "ingenious schemes and designs … as well as the shameless way in which they … feathered their nests at the public expense"). Here, the accumulation of evidence against others of an extensively corrupt real estate development milieu in Huizar's district will lead the jury to conclude that Mr. Lee "must have" known that he was paying a bribe, when the evidence directly against him will not support such a conclusion.

### C. A Joint Trial Would *Primarily* Involve "Spillover Evidence" That Would Not Be Admissible Against Mr. Lee or 940 Hill in a Separate Trial, Resulting in an Unfair Trial.

A joint trial would unfairly expose Mr. Lee and 940 Hill to a trial that consists primarily of "spillover evidence"—that is, evidence that would be inadmissible in a separate trial of Mr. Lee and 940 Hill, but would likely be admissible against their codefendants. Mr. Lee could not receive a fair trial under these circumstances, even were the Court to issue numerous limiting instructions. *See Zafiro*, 506 U.S. at 539 ("[A] risk [of prejudice] might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."); *accord United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004) ("[S]everance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant."); *United States v. Burke*, 789 F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (granting severance where "the overwhelming evidence that will be offered in the prosecution of a joint trial … will

not be admissible against [the moving defendant] in a severed trial").

Here, very little of the government's case against the codefendants would be admissible at a separate trial of Mr. Lee and 940 Hill. By way of example, a joint trial will presumably involve the government's presentation of evidence concerning the alleged LA Grand Hotel bribery scheme detailed in Overt Acts 1 through 84. The jury will thus hear evidence of:

- Numerous trips to Las Vegas during which Huang allegedly lavished Huizar with private jet travel, casino chips, hotel rooms, spa services, and escort services (Overt Acts 4–22);
- Huizar's efforts to preserve Chan's "powerful position" as Interim General Manager of the LA Department of Building and Safety (Overt Acts 23–24);
- Huizar and Chan's alleged solicitation of funds from Huang to help resolve a sexual harassment complaint against him, including a labyrinthine series of financial transactions allegedly designed to conceal Huang's financial assistance and the source of the settlement funds (Overt Acts 25–49);
- In-kind requests to Huizar by Huang and his company Shen Zhen allegedly to help Huang's son get admitted to a "Southern California university," to assist with the resolution of disputes concerning Huang's Los Angeles hotels, and to obtain the necessary approvals for one of Huang's future projects (Overt Acts 50–54, 56–70);
- Huizar's alleged efforts to introduce and enact a City Council resolution recognizing Huang for "achievements and contributions to the economy of" Huizar's district (Overt Act 55);
- An alleged golf resort trip attended by Huizar and Huang involving round-trip private jet transportation at which Huang, a foreign national, committed to providing illicit political contributions to Huizar's wife (Overt Acts 77–84).

The process could take weeks of trial: the government would have to present (1) testimony from percipient witnesses describing these events; (2) testimony from experts explaining how Huizar would be able to use his government position to help

Huang; and (3) documents and audio/video recordings allegedly corroborating all of these discussions. The whole time, Mr. Lee would have to object to the presentation of every single piece of evidence and testimony as irrelevant, and, the Court would have to interrupt that testimony with frequent and repetitive limiting instructions.

And that is for only one project; the FSI also involves the following allegations, each of which requires a similarly lengthy and prejudicial presentation of evidence that has nothing to do with Mr. Lee or 940 Hill:

- the "Luxe Hotel Bribery Schemes" (Overt Acts 119–240), which involves detailed allegations that Huizar assisted a Chinese national with an ADA issue at one of their hotels in exchange for political contributions and Katy Perry concert tickets;
- the "Project M Bribery Scheme" (Overt Acts 241–300), which involves lengthy allegations that Huizar used his power to facilitate a construction project in exchange for political contributions to himself and his wife;
- "Businessperson A Schemes" (Overt Acts 301–339), which involves allegations that Huizar pressured developers to channel business to an unnamed businessperson, and also caused the city council to issue a city resolution in his favor, in exchange for political contributions by that businessperson;
- "Additional Pay-to-Play Conduct" (Overt Acts 340–360), which involves numerous allegations that Huizar and his associates established a PAC for the purpose of collecting monetary contributions from developers in exchange for favorable treatment (or to avoid unfavorable treatment) by various city committees;
- "Defendant Huizar's Concealment of Illicit Benefits" (Overt Acts 361–428), which involves lengthy allegations of money laundering over the course of four years;
- "Additional Concealment of Pay-to-Play Scheme" (Overt Acts 429–445), which involves allegations of efforts by Huizar and his coconspirators to control communications about their conduct; and
- "Obstructionist Conduct" (Overt Acts 446–452), which involves alleged witness tampering and false statements.

*None of these sections of the FSI allege any involvement by or connection to Mr. Lee or 940 Hill*, and the substantive charges stemming from these sections do not include either. None of the evidence in support of these sections is admissible against them. The presentation of the lengthy, prejudicial, and entirely irrelevant evidence supporting these allegations—which would be completely avoidable in a separate trial of Mr. Lee and 940 Hill—cannot plausibly be overcome with limiting instructions, no matter how diligently the Court acts. *Cf.*, *e.g.*, *Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."); *United States v. Miller*, 874 F.2d 1255, 1263 (9th Cir. 1989) ("[L]imiting instructions are not always sufficient to cure the effect of potential prejudice.").

Moreover, the ordinary justification for exposing defendants to spillover evidence—their alleged participation in a charged conspiracy—is not present here. Normally, an otherwise uninvolved defendant's alleged participation in a conspiracy can justify allowing the jury to hear evidence of acts by coconspirators that would otherwise not be admissible against them. *See, e.g.*, *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004) ("[A] joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials."). That rationale cuts the other way here: since the grand jury did not allege that Mr. Lee or 940 Hill are part of a conspiracy with their codefendants, the risk of prejudice is much higher. *See DiNome*, 954 F.2d at 844 (reversing a conviction after a joint trial where conspiracy charges against defendants were dismissed, and "all but an infinitesimal fraction of the evidence at this sixteen-month trial lost any relevance to the mail and wire fraud charges against them").

### D. A Separate Trial for Mr. Lee and 940 Hill Would Be Consistent with the Judicial Efficiency Rationale for a Joint Trial.

Finally, a joint trial would not necessarily be more efficient than a separate trial. A trial of Mr. Lee and 940 Hill would be a relatively contained event in terms of witnesses and evidence. On the other hand, a serious effort to protect Mr. Lee and 940 Hill from the prejudice threatened by spillover evidence and the higher degree of alleged culpability of his codefendants at a joint trial would require constant reminders to the jury about what evidence is admissible as to which defendants, objections from counsel to preserve appellate rights, sidebar discussions, and *in limine* hearings. *See, e.g.*, *United States v. Shkreli*, 260 F. Supp. 3d 247, 256–57 (E.D.N.Y. 2017) ("Constant objections during opening statements, witness examinations and cross-examination, followed by side bars, will disrupt the flow of the trial and increase the length of the trial, will likely confuse the jury in what is already a complex case …. Thus, the court finds that from a trial management perspective and to prevent substantial prejudice and jury confusion, severance is warranted."); *United States v. Baker*, 10 F.3d 1374, 1389 (9th Cir. 1993) ("With fewer defendants and defense counsel involved, there is less need for the sidebars and continuances that contribute to the length of a joint trial."), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).

And while the government would have to repeat some of the same evidence at a separate trial of Huizar, not all of it would be necessary since Mr. Lee and Huizar are not alleged to have ever directly discussed the alleged bribe. Moreover, the evidence going to Mr. Lee's knowledge and intent—the heart of the trial against him and 940 Hill—would be largely irrelevant at Huizar's trial, where the issue would be *Huizar's* knowledge and intent. For instance, the post hoc recordings of Kim and Mr. Lee, and any circumstantial evidence regarding the specifics of the alleged payment from Mr. Lee's perspective (e.g., what he did or did not tell others, whether and how he accounted for it, etc.), shed no light on Huizar's knowledge or intent.

Similarly, Huizar's supposed efforts to obtain money from Kim and Esparza shed no light on Mr. Lee's knowledge and intent.

Nor does Mr. Lee have an independent role to play in the trial of his codefendants. As noted, Mr. Lee is not present on any of the video or audio recordings relating to the commission of his codefendants' alleged offenses. He is not alleged to have had a relationship with anyone referenced in the FSI other than Kim, who is not a defendant. In other words, having Mr. Lee present for a joint trial does not promise any efficiency in terms of the evidence that could be introduced. To the contrary, the evidence against Mr. Lee generally relates solely to the allegations against him, and is unlikely to play a significant role in the government's case against his codefendants (even Huizar, as discussed).

On balance, under these circumstances, the Court should order severance not only for the interests of justice, but also to promote judicial efficiency. *See Sampol*, 636 F.2d at 647–48 (prejudice arising from joint trial was especially unwarranted where "separate proceedings … would require only a short trial, with a small number of witnesses").

## III. CONCLUSION

For these reasons, the Court should sever the trial of Mr. Lee and 940 Hill pursuant to Federal Rule of Criminal Procedure 14(a).

DATED: August 9, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: /s/ Ariel A. Neuman

Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee