Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>    Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE & 940 HILL, LLC'S MOTION TO COMPEL FURTHER DISCLOSURE OF REDACTED DISCOVERY RE KEY COOPERATING WITNESSES**<br><br>Date:    September 20, 2021<br>Time:    8:00 a.m.<br>Dept.:   7A<br><br>Assigned to Hon. John F. Walter |

**[REDACTED PUBLIC VERSION]**

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 20, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, Defendants Dae Yong Lee and 940 Hill, LLC will move the Court for an order compelling the government to disclose the redacted portions of certain documents regarding key cooperating witnesses that the government has refused to allow counsel to review, namely, all or portions of documents Bates-numbered Casino_0366624, Casino_0366637, Casino_0365372, Casino_0365381, Casino_2007068, Casino_0341827, Casino_0341531, Casino_0346097, and Casino_0346098. The motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, any further briefing filed in support of the motion, the files and records in this case, such evidence and argument as may be presented at a hearing on this matter, and such other matters of which the Court may take notice.

DATED: August 23, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ....................................................................................... 1

II. BACKGROUND ......................................................................................... 4

III. ARGUMENT ............................................................................................... 5

    A. Legal Standard ................................................................................. 5

    B. Justin Kim 302s and Notes ............................................................... 6

    C. Anonymous Witness 302s .............................................................. 10

        1. Shawn Kuk .......................................................................... 10

        2. Chris Modrzejewski ............................................................ 11

IV. CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Anderson*,
    509 F.2d 724 (9th Cir. 1974) .......................................................................... 6, 12

*United States v. Blanco*,
    392 F.3d 382 (2004) ............................................................................................. 5

*Brady v. Maryland*,
    373 U.S. 83 (1963) ............................................................................................ 2, 5

*United States v. Cerna*,
    633 F. Supp. 2d 1053 (N.D. Cal. 2009) ................................................................ 5

*Everhart v. United States*,
    No. C16-5405 BHS, 2017 WL 1345573 (W.D. Wash. Apr. 12, 2017) ............... 6

*Giglio v. United States*,
    405 U.S. 150 (1972) .......................................................................................... 2, 5

*United States v. Kohring*,
    637 F.3d 895 (9th Cir. 2011) ................................................................................ 7

*United States v. Olsen*,
    704 F.3d 1172 (9th Cir. 2013) .............................................................................. 6

*United States v. Price*,
    566 F.3d 900 (9th Cir. 2009) ............................................................................ 6, 7

*Silva v. Brown*,
    416 F.3d 980 (9th Cir. 2005) ................................................................................ 6

*United States v. Spires*,
    3 F.3d 1234 (9th Cir. 1993) ............................................................................ 6, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants Dae Yong Lee and 940 Hill, LLC, are only charged in this case because Justin Kim told the government that Mr. Lee knowingly and intentionally paid a bribe to former city councilman Jose Huizar for assistance resolving an appeal by CREED LA of 940 Hill's permits before the PLUM Committee.[1] Without Kim's testimony, there would be no evidence that Mr. Lee ever paid anything to anyone as part of a supposed effort to have CREED LA drop its appeal, as charged in the First Superseding Indictment ("FSI"). There are no contemporaneous recordings or documents that confirm such a payment. There are no other witnesses who claim to have spoken to or interacted with Mr. Lee about such a payment. There are no financial records that confirm such a payment for such a purpose.

Yet, the government seeks to hide from Mr. Lee and his counsel potentially critical information about Justin Kim and two witnesses with key information about what was happening behind the scenes, and in certain instances, seeks to hide the identities of individuals who have impeachment information about those witnesses. That is, the government has (1) redacted reports of Justin Kim's statements to the FBI, (2) redacted reports of others making statements about Justin Kim (including the identities of such individuals), and (3) redacted the identities and statements of witnesses who provide impeachment and potentially exculpatory evidence about the main lobbyist for CREED LA (who is also the brother of the head of CREED LA and who had regular interaction with Huizar and his staff), and about the person on Huizar's staff who was responsible for reviewing the 940 Hill project. The government has refused to disclose that information to counsel under any circumstances (no matter what protections counsel would agree to) at any time prior

---

[1] Because the allegations against 940 Hill arise solely from Mr. Lee's alleged conduct, references in this motion to "Mr. Lee" apply to both defendants.

to trial. The government claims that this information is not subject to disclosure because at times it names other elected officials, and at times it reveals information about ongoing investigations.

There is of course no "ongoing investigation" or "elected official" exception to the government's obligation to disclose exculpatory evidence and potential impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). And while the government has stated its position that the redacted information is not subject to disclosure under any of these doctrines, counsel has no ability to confirm that. Rather, what counsel has seen suggests that the redacted information relates to Kim's involvement in other criminal activities and implicates the credibility of two other key witnesses, which would certainly constitute *Brady/Giglio* material that the government is obligated to disclose to the defense.

Counsel offered, in the first instance, to review the material with whatever restrictions in place the government might want. The government, however, will not agree to an attorneys-eyes only review, a review where counsel just reads but does not take notes, or any other kind of restricted review. Perhaps such a review would allow counsel to confirm that the redacted information is not subject to disclosure. But based on what counsel has seen thus far, and the government's complete refusal to allow counsel to see the additional material, counsel believes that the information may very well be subject to disclosure under *Brady/Giglio*. This is certainly not the "open file" the Court envisioned when it expressed its hope that there would not be discovery disputes in this case. *See* ECF No. 178 (Apr. 5, 2021 Hearing Transcript) at 41:16–22.

Mr. Lee and 940 Hill therefore respectfully request that the Court order the government to produce—or at least, in the first instance, permit counsel to review subject to any reasonable restrictions the Court finds necessary—unredacted versions of nine specific documents memorializing government interviews of certain

witnesses.[2]

Five of the nine documents memorialize interviews of Kim:

- A 302 report summarizing an April 4, 2019 interview of Kim, Bates-numbered **Casino_0366624**. Declaration of Ray S. Seilie ("Seilie Decl.") Ex. 1.

- The government's typed notes of the same interview, Bates-numbered **Casino_0366637**. Seilie Decl. Ex. 2.

- A 302 report summarizing an April 29, 2019 interview of Kim, Bates-numbered **Casino_0365372**. Seilie Decl. Ex. 3.

- The government's typed notes of the same interview, Bates-numbered **Casino_0365381**. Seilie Decl. Ex. 4.

- A supplemental 302 report of the same interview, Bates-numbered **Casino_2007068**. Seilie Decl. Ex. 5.

One of the documents discusses Justin Kim:

- **Casino_0341827**, Seilie Decl. Ex. 6, a redacted single-page 302 report of a July 6, 2017 interview of an unidentified individual (redacted) who, according to the unredacted part of the memo, described Kim as "erratic" and had previously "warned [Kim] that [Huizar] was a bad person."

The remaining documents discuss or report statements by other witnesses with information about the transaction at the heart of the government's charges against Mr. Lee, and whose testimony is expected to be relevant at trial:

- **Casino_0341531**, Seilie Decl. Ex. 7, a heavily-redacted seven-page 302 summarizing an August 25, 2015 interview of an individual (names redacted) who, at one point, discusses "Sean Cook." Counsel believes this references Shawn Kuk, who worked as an aide for Defendant Jose Huizar and allegedly presented Mr. Huizar a memo describing the CREED LA appeal at the heart of the allegations against

---

[2] These documents are only a portion of the documents that remain redacted in the government's discovery production and which counsel have not been permitted to review at this time. These are the documents that appear relevant to the charges against Mr. Lee and 940 Hill.

  Mr. Lee and 940 Hill, and recommending that Huizar vote against it (before any bribe was ever allegedly contemplated). *See* FSI, Count 1, Overt Act 87.

- **Casino_0346097** and **Casino_0346098**, Seilie Decl. Exs. 8 & 9, two redacted 302s summarizing March 15, 2018 and March 18, 2018 interviews of individuals (names redacted) who, according to the unredacted portions of both interviews, have information suggesting that Chris Modrzejewski, a lobbyist connected to the union organization CREED LA, which is run by his brother, Jeff Modrezejewski, was engaged in corruption activities. CREED LA is the entity that filed the appeal at the center of the allegations against Mr. Lee and 940 Hill.

## II. BACKGROUND

The parties have met and conferred on these issues at length and have reached an impasse. In an April 6, 2021 letter, Mr. Lee, through counsel, asked the government to produce unredacted versions of all documents memorializing the government's interviews of Kim and any other potential witness in the case, including the nine mentioned above. Seilie Decl. Ex. 10 at 1–2. The government offered to permit counsel to review partially unredacted versions of documents at its offices and requested that counsel provide a list of documents. Seilie Decl. Ex. 11. Counsel asked to see thirteen specific documents—including the nine that are the subject of this motion—and requested to be permitted to review those documents fully unredacted. *Id.* Ex. 12. The government agreed to arrange a review of those materials. *Id.*

At the June 15, 2021 review of that material at the US Attorney's Office, the prosecutors told counsel that they would only permit review of one fully unredacted document of the thirteen requested, five Kim-related documents but in partially redacted form, one partially redacted interview memo of a third party, and none of

the other requested documents.³ The prosecutors said that the continuing redactions did not contain *Brady/Giglio* material and related to ongoing investigations. *Id.* ¶ 11. When counsel asked why some paragraphs appeared to only have a name redacted, the prosecutors indicated that they maintained the redactions to protect the identity of elected officials. *Id.* ¶ 5b.

On July 16, 2021, counsel sent another letter to the prosecutors, explaining why the continuing redactions were inappropriate in light of the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Seilie Decl. Ex. 13. Like the original letter, the July letter reiterated that counsel would be willing to agree, as an initial matter, to any reasonable limits the government wanted to place on counsel's review and use of the unredacted information. *Id.* On August 3, 2021, the government stated that it would not provide any further disclosures. *Id.* Ex. 14.

### III.  ARGUMENT

#### A.  Legal Standard

Under *Brady* and *Giglio*, the government is obligated to produce to a criminal defendant all potentially exculpatory evidence in its possession, including "material … that bears on the credibility of a significant witness in the case." *United States v. Blanco*, 392 F.3d 382, 387 (2004). Impeachment evidence can therefore be material *Brady/Giglio* evidence—and its suppression can result in a reversed conviction—"when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *Id.* The government has an obligation to disclose *Brady* material "in time that the disclosure can be effectively used." *United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009).

---

³  After a subsequent review of the redacted materials, Mr. Lee is not, at this time, seeking further disclosure of the remaining material that counsel initially requested for in-person review.

There is no "ongoing investigation" exception to its *Brady/Giglio* obligations. To the contrary, the Ninth Circuit "repeatedly has held materials from ongoing investigations to be favorable under *Brady*" and subject to disclosure. *United States v. Olsen*, 704 F.3d 1172, 1182 (9th Cir. 2013) (listing cases); *see also Everhart v. United States*, No. C16-5405 BHS, 2017 WL 1345573, at *4 (W.D. Wash. Apr. 12, 2017) (ordering disclosure of *Brady/Giglio* material despite government's objection that "the information at issue is part of a pending investigation").

Where the government believes its interest in concealing an informant's identity outweighs the defendant's interest in disclosure, the "favored procedure" is an *in camera* hearing in which defense counsel is permitted to participate under appropriate restrictions. *See, e.g.*, *United States v. Spires*, 3 F.3d 1234, 1239 (9th Cir. 1993); *United States v. Anderson*, 509 F.2d 724, 729–30 (9th Cir. 1974). Merely accepting the government's assertion of its interest is not appropriate. *Spires*, 3 F.3d at 1239 ("Where a defendant makes a showing that identification of the government's confidential informant may be relevant and helpful to a possible defense at trial, a district court abuses its discretion if it fails to hold an in camera hearing on disclosure.").

**B.     Justin Kim 302s and Notes**

The government should be compelled to disclose *all* memoranda and notes describing interviews with Justin Kim, and interviews *about* Justin Kim, because they contain potential impeachment evidence subject to *Brady* and *Giglio*. *See, e.g.*, *United States v. Price*, 566 F.3d 900, 912 (9th Cir. 2009) ("*Brady* encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the accused.") *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005) ("Impeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the prosecution's case."). Evidence of a witness's involvement in other criminal activities—including activities that did not result in a conviction—must be disclosed as impeachment

evidence under *Brady/Giglio*. *See, e.g.*, *United States v. Kohring*, 637 F.3d 895, 903 (9th Cir. 2011) (vacating conviction in part because the government failed to disclose that a key witness "had been or was still being investigated for sexual misconduct with minors"); *Price*, 566 F.3d at 912 (vacating conviction based in part on the government's failure to disclose a key witness's three arrests for theft and a "report of 'theft by deception'").

Kim's testimony will be critical to the government's case against Mr. Lee and 940 Hill, as he is the only individual who claims to have directly discussed with Mr. Lee the alleged payment at the heart of the case, and he is the only person who claims to have received money directly from Mr. Lee (or to have even seen Mr. Lee with said money). Given Kim's centrality to the charges, the redacted portions of the 302s and notes memorializing the government's April 2019 interviews of Justin Kim, and the statements by others about him, are especially critical for Mr. Lee to access and potentially use to impeach Kim at trial.

The government claims that these redactions are necessary to protect ongoing investigations, and the material is not otherwise subject to disclosure. Mr. Lee, of course, cannot establish the relevance of information that has been withheld from him. But the government's second assertion is difficult to square with the first. If the information Kim provided in government interviews relates to ongoing investigations, then Kim presumably had some involvement in or knowledge of activity that the government considers at least potentially criminal and therefore worth investigating. The same is true if others implicated him in different criminal conduct. Kim's involvement in, and even his knowledge of, potential criminal activities would be impeachment material to which to which Mr. Lee is entitled under *Brady* and *Giglio*.

The government's unilateral determination that the redacted information is not *Brady* or *Giglio* material is also difficult to accept based on the history of the redaction review thus far. The government originally redacted certain information

and apparently intended to keep it redacted for the remainder of the case. Only after counsel demanded and was granted access was Mr. Lee allowed to review evidence that is plainly relevant impeachment of Kim and should never have been redacted in the first place.

For example, Casino_0365381—a set of notes from an April 29, 2019 interview of Kim, more than half of which was originally redacted—contains the following text:



Seilie Decl. ¶ 6(a).

The notes and memo discussing Kim's April 4, 2019 interview contain the following text:



3739536.2

8

[REDACTED]

Seilie Decl. ¶ 2.

[REDACTED]

Seilie Decl. ¶ 3.

Yet another currently redacted section includes the following notes:

[REDACTED]

Seilie Decl. ¶ 6.

These paragraphs suggest that Kim is regularly approached by elected officials for payments, and that those same officials were familiar with Kim's dealings with Huizar. A reasonable jury might consider this information sufficient to undermine any testimony by Kim that Mr. Lee was the one who came up with the

1 idea of paying Huizar, or knew anything about the purpose of the payment in the
2 first instance. They are also consistent with the possible defense that Kim regularly
3 pays officials to curry their favor and lies to developers to get money to do so. But
4 even though this information is exculpatory impeachment evidence, the government
5 originally concealed this information from Mr. Lee. Even now, Mr. Lee is not able
6 to utilize the information because the identities of the people involved remain
7 concealed.

8     The fact that the government originally redacted impeachment evidence
9 relating to its principal witness against Mr. Lee and, to date, has not produced new
10 versions of the 302s with that information unredacted, raises concerns about what
11 continues to be redacted. Such concerns are exacerbated by the government's choice
12 to continue to conceal the identities of what appear to be elected officials who
13 appear to have solicited Kim for payments. We cannot explore the value of this
14 impeachment material if we do not know who was involved.

15     In light of these issues, counsel is concerned that the government's efforts to
16 protect privacy or "ongoing investigations" are impinging on Mr. Lee's right to
17 obtain information necessary to his defense that is subject to disclosure under the
18 *Brady* or *Giglio*.

19     **C.**    **Anonymous Witness 302s**

20     The government should also be compelled to provide access to certain
21 additional 302 reports that remain redacted. Although counsel cannot be sure what
22 information is contained in the redacted material, the context of the redactions—
23 coupled with the information set out above—suggests that the information may be
24 relevant either as impeachment of potential witnesses in this case or as exculpatory
25 evidence.

26     **1.**    **Shawn Kuk**

27     Casino_0341531 (Seilie Decl. Ex. 7) is an interview with an unidentified
28 (redacted) person that references Shawn Kuk, followed by a lengthy redaction. Kuk

is "City Staffer A-2" referenced in Overt Act 87 in the FSI, who authored a memo for Huizar regarding the 940 Hill project informing Huizar that "Justin Kim will be requesting your support in denying the appeal," and recommending that Huizar vote to deny the appeal. FSI, Count 1, Overt Act 87. Given that Kuk was apparently an intermediary between Kim and Huizar, and given that Kuk was already suggesting that Huizar vote to deny the appeal before any suggestion of a payment is alleged to have been raised, the identity of the witness talking about Kuk, and what that person had to say about Kuk, is potentially exculpatory and/or has impeachment value. It is expected that Kuk will testify at trial, and so Mr. Lee needs to have access to information that may impinge on his credibility, suggest he was involved in an effort to extort Mr. Lee, or suggest that Huizar was advised and/or prepared to vote against the appeal without any payment at all.

### 2. Chris Modrzejewski

Casino_0346097 (Seilie Decl. Ex. 8) and Casino_0346098 (Seilie Decl. Ex. 9) are 302 reports summarizing interviews with one or more unidentified (redacted) individuals that describe activities by Chris Modrzejewski—a lobbyist with connections to CREED LA, which is "Labor Organization A" in the FSI, and the brother of the head of CREED LA. CREED LA is the organization whose appeal is at the heart of the charges against Mr. Lee and 940 Hill. One of the unidentified (redacted) witnesses describes Modrzejewski as someone who "was always 'out there on the edge'" and "suspected of engaging in illicit activities with public officials." The remainder of the document is completely redacted. The other 302 also reports statements by an unidentified (redacted) witness who said that Modrzejewski "took members of the Planning and Land Use Management ('PLUM') committee"—the committee that empowered Huizar to affect the progress of the 940 Hill project in the first place—"deep sea fishing for several years." Both 302s contain significant redactions following the discussion of Modrzejewski's activities with PLUM committee members.

1  First, the identities of witnesses who can testify that Modrzejewski was
2  engaged in corruption is potentially exculpatory. If CREED LA filed its appeal of
3  940 Hill as part of an effort to extort Mr. Lee, in concert with Kim, Huizar, and/or
4  others, the government's narrative collapses. If the entire scheme was concocted
5  behind the scenes by CREED, Huizar, George Esparza, Kim, and/or others, Mr. Lee
6  was simply the target of an extortion effort; if so, the jury would have reason to
7  disregard Kim's testimony about what Mr. Lee knew about the payment. Similarly,
8  to the extent that the redacted portions of these 302s shed light on any aspect of
9  CREED LA's filing of the appeal, or suggest a pattern of conduct by CREED LA in
10 which it engaged in extortionate conduct towards developers by filing appeals and
11 extracting payments from them, or otherwise shed light on a particularly cozy
12 relationship between CREED LA and members of the PLUM committee, that
13 information is potentially exculpatory and/or impeachment evidence and should be
14 disclosed to Mr. Lee.

15 Moreover, to the extent the government considers the identity of these
16 witnesses sensitive, it may not unilaterally make the decision to withhold that
17 information from the defense. *See, e.g.*, *United States v. Spires*, 3 F.3d 1234, 1239
18 (9th Cir. 1993); *United States v. Anderson*, 509 F.2d 724, 729–30 (9th Cir. 1974).
19 The Court should therefore order the government to disclose the four 302s from
20 unidentified witnesses, either directly to Mr. Lee or during an *in camera* hearing in
21 which defense counsel is able to test the government's assertion of its need for
22 continued redactions.

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## IV. CONCLUSION

For these reasons, the Court should order the government to produce—or at least provide counsel for Mr. Lee accessto— unredacted versions of the documents Bates-numbered Casino_0366624, Casino_0366637, Casino_0365372, Casino_0365381, Casino_2007068, Casino_0341827, Casino_0341531, Casino_0346097, and Casino_0346098.

DATED: August 23, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee