Ariel A. Neuman - State Bar No. 241594
  aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
  rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA,,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER DISCLOSURE OF REDACTED INFORMATION**<br><br>Date: September 20, 2021<br>Time: 8:00 a.m.<br>Dept.: 7A<br><br>Assigned to Hon. John F. Walter |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 4

II. ARGUMENT ............................................................................................................. 6

    A. To the Extent the Government Is Aware of *Brady/Giglio* Material, It Should Be Compelled to Produce It Immediately. .............. 6

    B. Justin Kim Interview Notes and Memoranda ........................................... 6

        1. Kim's testimony is central to the government's case against Mr. Lee. ..................................................................... 6

        2. The government's redactions appear likely to conceal impeachment evidence relating to Kim. ....................................... 8

        3. At a minimum, the Court should review unredacted versions of the documents *in camera* to verify the government's representations. ..................................................... 10

    C. Anonymous Informant Documents ....................................................... 11

    D. At a Minimum, the Court Should Conduct an *In Camera* Review of the Fully Unredacted Versions of the Documents at Issue. ............. 13

III. CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Bocra*,
    623 F.2d 281 (3d Cir. 1980) ................................................................................ 10

*United States v. Curry*,
    902 F.2d 912 (11th Cir. 1990) ............................................................................. 10

*United States v. Gil*,
    58 F.3d 1414 (9th Cir. 1995) ............................................................................... 10

*United States v. Mann*,
    829 F.2d 849 (9th Cir. 1987) ............................................................................... 10

*United States v. Napier*,
    436 F.3d 1133 (9th Cir. 2006) ............................................................................. 10

*United States v. Phillips*,
    854 F.2d 273 (7th Cir. 1988) ............................................................................... 10

## I. INTRODUCTION

The government does not dispute the central legal premise supporting Mr. Lee's limited request: that there is no "ongoing investigation" exception to the government's obligation to disclose *Brady/Giglio* material. And the disclosure of *Brady/Giglio* material is all that Mr. Lee seeks. Contrary to what the government says in its opposition, Mr. Lee is not asking the Court to reconsider its scheduling order;[1] he is not asking the Court to permit discovery into the government's entire file; and he is not asking the Court to publicly disclose the identities of the government's confidential cooperators. Mr. Lee is simply asking the Court to order the government to remove redactions from already-produced documents that appear to contain *Brady/Giglio* material, with whatever conditions are necessary to preserve the integrity of any ongoing criminal investigations. At a minimum, Mr. Lee requests that the Court conduct an *in camera* review of unredacted versions of these documents and order the removal of any redactions that conceal *Brady/Giglio* material.

Mr. Lee has identified eight[2] specific, already-produced documents with substantial redactions that appear reasonably likely to conceal *Brady/Giglio* material, based on context and counsel's prior review of partially unredacted versions of those documents. At the May 10, 2021 status conference, the Court granted the government's request for a late March 2022 deadline for production of *Brady/Giglio* material because the government affirmed that it would produce that material on an ongoing rolling basis, as it became aware of its existence. Yet now,

---

[1] A separate Motion for Reconsideration of the scheduling order, based on different issues, is currently pending before the Court.

[2] As explained below, based on the government's representation in its opposition that the redacted material from Casino_0341531 does not contain any additional references to City Staffer A-2, Mr. Lee is withdrawing his request for further disclosure related to that document.

the government argues that Mr. Lee should not be permitted to compel disclosure of such material until that deadline.

Complicating the matter is the government's failure to take a clear position on what type of information the redactions at issue conceal. By arguing that it should not be compelled to disclose before the March 25, 2022 deadline, the government seems to concede that at least *some* of the redacted material contains *Brady/Giglio* information. But it never actually says so, and it does not represent that it will in fact produce unredacted versions of any of the eight documents at issue on or before that date. If the material is indeed *Brady/Giglio*, the only dispute would be whether disclosure prior to March 2022 is appropriate. But elsewhere, the government asserts that the information is *not Brady/Giglio* and implies that it does not intend to ever disclose the material. If that is the government's position, the parties could limit their dispute to whether Mr. Lee is entitled to verification of the government's position through *in camera* or attorneys'-eyes-only review of those materials. Because the government's position is not clear, Mr. Lee must continue to rely on the context provided by the unredacted portions his counsel has reviewed.

Mr. Lee's request, and proposed intermediate steps, accounts for the government's "interest in protecting confidential sources and ongoing investigations." Opp. at 2. At every turn, counsel for Mr. Lee has acknowledged the government's interest in its ongoing investigations and has asked the government to suggest protective measures that would protect that interest while simultaneously protecting Mr. Lee's rights. The government has never engaged with counsel on the issue, which is why a motion at this stage was required.

Ultimately, Mr. Lee's requests are reasonable. He asks that the government produce or make available for review fully unredacted 302s and interview notes related to Justin Kim because Kim is the government's key witness against him, and because the redacted portions appear to contain impeachment material. And he asks that the government permit counsel to verify that the four 302s of confidential

informants do not contain exculpatory information. If the Court is not inclined to grant Mr. Lee (or at least his counsel) access at this time, the Court should, at a minimum, examine these documents *in camera*.

## II. ARGUMENT

### A. To the Extent the Government Is Aware of *Brady/Giglio* Material, It Should Be Compelled to Produce It Immediately.

The government never clearly states that the redacted material constitutes *Brady/Giglio* information, but it suggests as much when it argues that disclosure should not be required until March 25, 2022, the deadline for disclosure of all *Brady/Giglio* material set by this Court. ECF No. 187 at 3. But as the government fully knows, that deadline was set based on the its representation that it was producing *Brady/Giglio* material on a rolling basis, as it became aware of that material's existence. May 10, 2021 Hearing Tr. at 29:19–30:6 (AUSA confirming Court's understanding that "Brady and Giglio information will have been produced on a rolling basis" prior to the March deadline).

The government's new position—that it should not be compelled to remove redactions from *already-known Brady/Giglio* material, is an about-face from the position it took before this Court. To the extent the government is *presently* aware that some of the redacted information *is* potentially exculpatory to Mr. Lee or serves as impeachment evidence for a key witness, it should produce that information promptly. Any suggestion that the government does not know whether it intends to call Justin Kim as a witness during Mr. Lee's trial is disingenuous, as discussed below.

### B. Justin Kim Interview Notes and Memoranda

#### 1. Kim's testimony is central to the government's case against Mr. Lee.

The government attempts to minimize Kim's importance to its case—and, therefore, the importance of its disclosure of all potential impeachment material

related to Kim—by asserting that it has "a mountain of records and numerous other witnesses" to establish Mr. Lee's intent. But a close look at the evidence the government cites only confirms the crucial role that Kim will play in the government's case.

- The government claims that "[p]hone records and text messages confirm that HUIZAR, Esparza, Kim, and defendant LEE negotiated the specific amount of the bribe to be paid to HUIZAR and Esparza." Opp. at 3. But the cited evidence—page 47 of the complaint affidavit—does not actually claim that Mr. Lee directly participated in these alleged negotiations. To the contrary, that document alleges that these negotiations took place almost entirely between Esparza and Kim, and separately between Kim and Mr. Lee, with Kim making representations to Esparza about what Mr. Lee told him. Only Kim allegedly interacted directly with Mr. Lee about the alleged bribe.

- The government cites anticipated testimony from consultants who worked on the 940 Hill project that Mr. Lee instructed them to postpone a hearing on CREED LA's appeal and did not ask them to engage CREED LA directly. Opp. at 5. Without Kim's testimony to explain why this supposedly occurred, the testimony is meaningless.

- The government cites the alleged recording of a $500,000 payment with the notation "[Labor Organization A] matter" in 940 Hill's books. Opp. at 5–6. This entry would not be nefarious without Kim's story about the alleged purpose of the payment.

- The government cites a number of recorded conversations between Kim and Mr. Lee that it characterizes as containing "admissions" about the improper purpose of the payment. Opp. at 6–7. Those after-the-fact recordings are ambiguous at best, and the government will require Kim's testimony for context.[3]

In other words, without Kim, the government cannot prove its case beyond a reasonable doubt. His testimony remains central to the government's case, which makes it even more important that the government candidly disclose all potential

---

[3] The recordings were made after the government's investigation was already public, further undermining their evidentiary value.

impeachment material about him.

## 2. The government's redactions appear likely to conceal impeachment evidence relating to Kim.

The government argues that Mr. Lee is not entitled to *all* information in the government's possession about Kim if that information is not *Brady/Giglio* material. Opp. at 18. The argument is inapposite: Mr. Lee is only seeking *Brady/Giglio* information about Kim. The issue is that, given the surrounding context of the government's redactions and the history of other items that were initially redacted before Mr. Lee demanded access, Mr. Lee is concerned that the government is applying an overly narrow definition of what constitutes *Brady/Giglio* information.

For example, one section of Casino_0365381—which the government redacted until counsel's review of the document at the government's offices—suggested that an elected official reached out to Kim after the government's raids on Huizar's offices and told Kim that he would be okay. *See* Seilie Decl. ¶ 6(a). It is not a stretch to infer from this statement that Kim was involved in criminal activity about which this official was aware, information that would qualify as *Brady/Giglio* material under any reasonable application of the standard. Yet, not only did the government conceal that information in the first instance; it also continues to conceal the name of the elected official who is potentially a source of information about Kim's involvement in other criminal activity. The government's continuing decision to withhold this information from Mr. Lee casts serious doubt on any suggestion that it has fully disclosed all *Brady/Giglio* material of which it is presently aware, and inappropriately limits Mr. Lee's ability to use that information (since he cannot interview or call as a witness the unidentified official involved).

The government's arguments in its opposition further confirm that it is applying an overly narrow definition of *Brady/Giglio* material. For example, the government claims that the fact "[t]hat Kim was often approached by officials for money … is in no way exculpatory to defendants or impeachment as to Kim." Opp.

at 31. But if elected officials with power and influence were routinely pressuring Kim to give them money, then a reasonable juror might conclude that Kim would be motivated to obtain that money from contacts such as Mr. Lee through any means necessary, including through the use of false pretenses. And if Kim obtained money from Mr. Lee through false pretenses—for example, by causing Mr. Lee to believe that the money would be used to settle CREED LA's appeal—then Mr. Lee would not have the knowledge necessary to commit honest services fraud. Mr. Lee is entitled to present this information in full—including by naming the politicians involved to emphasize their potential influence over Mr. Lee—to defend against the government's allegations against him.

The government alternatively argues that additional impeachment evidence related to Kim would be cumulative with Kim's cooperation agreement that it has produced. According to the government, because this agreement reveals Kim's dishonesty to the FBI and his agreement to cooperate with the government, it is sufficient "to cast doubt on Kim's credibility without need for further fishing expeditions." Opp. at 18. There is, of course, no way for Mr. Lee to confirm that the redacted information from Kim's 302s and interview notes is cumulative of the contents of the cooperation agreement without actually seeing what has been redacted. But here again, the government appears to be applying a loose definition of what constitutes "cumulative" evidence. Based on their context, the redacted portions of Kim's 302s and interview notes do not appear to be related to his lies to the FBI or his agreement to cooperate with the government, which would be the only way they would be "cumulative" of the cooperation agreement. Rather, the redacted information appears to relate to Kim's potential involvement in other criminal bribery schemes involving other elected officials, which would be impeachment evidence that is different in kind from the cooperation agreement. Mr. Lee is, at a minimum, entitled to have his counsel—or the Court—review the supposedly "cumulative" information to determine if the government's conclusions

9
LEE/940 HILL REPLY IN SUPPORT OF MOTION TO COMPEL

about those materials are accurate.

### 3. At a minimum, the Court should review unredacted versions of the documents *in camera* to verify the government's representations.

In any event, the government is not permitted to balance its own interests against a defendant's unilaterally, or to unilaterally make the decision that redacted information is cumulative of other material disclosed. *All* of the Ninth Circuit and out-of-circuit cases cited in the government's brief concerning ongoing investigations suggest that information can only be concealed on that basis if *the trial court* determines that it is not exculpatory after *in camera* review. *See, e.g.*, *United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995) (upholding restrictions on cross-examination about a confidential informant's identity based on finding that "disclosure would provide no exculpatory information"); *United States v. Mann*, 829 F.2d 849, 853 (9th Cir. 1987) (sealing documents after *in camera* review); *United States v. Curry*, 902 F.2d 912, 916 (11th Cir. 1990) (conducting *in camera* review of alleged *Brady* material and determining that "omitted portions would not have materially affected" cross-examination); *United States v. Phillips*, 854 F.2d 273, 276–78 (7th Cir. 1988) (restrictions on discovery permitted after trial judge "review[ed] the entire FBI informant file *in camera*"); *United States v. Bocra*, 623 F.2d 281, 285–86 (3d Cir. 1980) ("in camera inspection" required before determining government's "need for preserving confidentiality").[4]

Here, however, the government is objecting to *anyone*—defense counsel *or* this Court, in an *in camera* proceeding—being given a chance to verify its assertions

---

[4] The only case the government cites where no such *in camera* review occurred is one where the defendant *declined* the court's offer to conduct one. *United States v. Napier*, 436 F.3d 1133, 1138–39 (9th Cir. 2006) (ordering material related to ongoing investigation to remain sealed in light of defendant's refusal to have court review in camera).

that the redacted material is not exculpatory. Mr. Lee is not required to take the government's word on this matter, and an *in camera* review is appropriate at a minimum.

### C. Anonymous Informant Documents

With respect to the four 302s of interviews of unidentified witnesses, the government's entire argument is based on its interest in preserving the anonymity of these confidential informants, and does not address why the government has prevented Mr. Lee from reviewing the *substance* of the redacted portions of those documents.

As an initial matter, many of the government's representations about these witnesses are new to Mr. Lee. For example, the government never before told Mr. Lee that the four confidential sources were not involved in criminal activity and are not expected to testify at trial. *See* Opp. at 11–13. Had the government revealed this information during the meet-and-confer effort, counsel may have agreed, at least preliminarily, to a more limited set of disclosures that did not contain identifying information, in order to assess whether the informants had knowledge of additional exculpatory information that would justify the disclosure of their identities. Instead, the government categorically refused to disclose any further information contained on these documents, and continues to fail to explain why this blanket refusal is appropriate.

Whether the identities of the confidential informants should be revealed—which can only be determined once we know what they said—the government does not address Mr. Lee's more fundamental concern that the *substance* of these additional 302s could contain redacted exculpatory information.

**Casino_0341827.** The government claims that the provisionally unredacted portions of this document do not contain *Giglio* evidence (or suggest that the redacted portions do) because they only describe Kim's "personality quirks." Opp. at 13. This misses the point. While the *unredacted* portion of this 302 might describe

11

the informant's impression of Kim's "personality quirks," Mr. Lee has no idea what the *redacted* portion describes. Since the entire unredacted portion of the 302 suggests that the informant was interviewed because of his/her familiarity with Kim, there is good reason to believe that the redacted section contains potentially impeaching information about him. Mr. Lee should at least be permitted to have his counsel verify the government's claim that it does not.

**Casino_0341531.** The government claims that apart from the unredacted reference to City Staffer A-2, this document contains no other reference to that person, or any other connection to the events in the FSI, including in the redacted portions. Based on this representation, Mr. Lee withdraws his request for further disclosure of the redacted sections of this document.[5]

**Casino_0346097 and Casino_0346098.** The unredacted portions of both of these documents discuss, at length, the relationship between Chris Modrzejewski, a lobbyist with connections to CREED LA, and the PLUM Committee that empowered Huizar to vote on the 940 Hill project. The government does not say anything about the redacted portions, except that they do not refer to Kim or Mr. Lee. Opp. at 12. But to the extent the redacted portion deals with the relationship between CREED LA and the PLUM Committee, even in a manner unrelated to Kim, Mr. Lee, or 940 Hill—it is potentially *Brady*/*Giglio* material. CREED LA's appeal is the basis for the charges against Mr. Lee and 940 Hill. If, for example, CREED LA conspired with members of the PLUM Committee to raise frivolous appeals that it would then drop before any hearing after securing payment from the developer, then a reasonable jury could conclude that any alleged payment by Mr. Lee was not made in exchange for an "official act" by Huizar. To the extent the redacted information suggests especially close ties between the two entities, Mr. Lee

---

[5] Unfortunately, the government waited until after Mr. Lee's motion was filed to share this information with his counsel.

is entitled to know what it says. At a minimum, the court should conduct an *in camera* review of these documents to confirm that they do not further discuss the relationship between Modrzejewski and members of the PLUM Committee.

Finally, the government stoops to suggest that Mr. Lee is trying to publicly disclose the identities of these informants and "punish[]" them for cooperating with the government. Opp. at 14. There is no basis for the government to question the good faith basis of Mr. Lee's request. A protective order binding counsel and the parties is already in place, and counsel asked the government to propose any further restrictions it might believe necessary in order to allow *counsel* to review the redacted information. That the government ignored these overtures and categorically refused to provide more information does not change the fact that Mr. Lee has consistently sought to address his concerns in a manner that recognizes and respects the government's interest in its ongoing investigations. Mr. Lee's only goal here is to ensure that the government is not applying redactions in an overbroad manner that deprives him of key exculpatory evidence.

### D. At a Minimum, the Court Should Conduct an *In Camera* Review of the Fully Unredacted Versions of the Documents at Issue.

Despite citing a plethora of case law in which courts allowed the government to continue concealing information about ongoing investigations, but only after *in camera* review to determine that the information is not *Brady/Giglio* material, the government asks the Court *not* to conduct an *in camera* review of the materials at issue in this motion. Opp. at 24. The government's position is unreasonable and legally unsupportable.

Although Mr. Lee respectfully submits that his counsel should review the material in the first instance, he is at least entitled to an *in camera* review that confirms the accuracy of the government's representations about the contents of these redacted documents. Contrary to the government's suggestion, Opp. at 24, Mr. Lee's request is focused and limited, and he has made more than a "threshold

showing" that disclosure could be relevant to his defenses. He is asking for an objective review of the redacted sections of eight specific documents because the context of the redactions indicates that the concealed information might be exculpatory. If he is right, then the Court should order the prompt disclosure of that information. If he is wrong, then he has no interest in that information. Given the government's previous redactions, which it only removed after several demands, Mr. Lee's concerns are valid.

### III. CONCLUSION

For these reasons, the Court should order the government to produce unredacted versions of the documents Bates-numbered Casino_0366624, Casino_0366637, Casino_0365372, Casino_0365381, Casino_2007068, Casino_0341827, Casino_0346097, and Casino_0346098, subject to any reasonable limitations the Court determines are necessary. At a minimum, the Court should order the government to file unredacted versions of the documents under seal and review them *in camera* before ruling on this motion.

DATED: September 6, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee