Ariel A. Neuman - State Bar No. 241594
   aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
   rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>   Plaintiff,<br><br>   vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>   Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S REPLY IN SUPPORT OF MOTION TO SEVER TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 14**<br><br>Date:  October 15, 2021<br>Time:  8:00 a.m.<br>Crtrm:  7A<br><br>Assigned to Hon. John F. Walter |

3749704.6

DAE YONG LEE/940 HILL, LLC'S REPLY IN SUPPORT OF MOTION TO SEVER TRIAL

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. The Omnibus Opposition Demonstrates the Danger to Mr. Lee of Prejudicial Spillover Evidence ............................................................. 2

        1. The FSI alleges separate fraud schemes. ..................................... 4

        2. Evidence about other development projects would not be admissible against Mr. Lee even if a single fraud scheme were alleged. ................................................................................ 5

        3. *DeRosa* did not address a similar situation involving a serious risk of prejudicial spillover evidence. ............................ 7

    B. The Government Does Not Dispute that Mr. Lee's Alleged Culpability Is Significantly Lower than His Co-Defendants' ............... 9

    C. Limiting Instructions Will Be Insufficient to Address the Prejudice to Mr. Lee of a Joint Trial ................................................. 11

    D. Preventing the Prejudice to Mr. Lee From a Joint Trial Is Not Outweighed by the Efficiency Considerations ..................................... 13

III. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bruton v. United States*,
   391 U.S. 123 (1968) .................................................................................................. 11

*Kotteakos v. United States*,
   328 U.S. 750 (1946) .................................................................................................... 4

*Robinson v. United States*,
   33 F.2d 238 (9th Cir. 1929) ........................................................................................ 7

*United States v. Blankenship*,
   382 F.3d 1110 (11th Cir. 2004) ................................................................................ 11

*United States v. Boone*,
   628 F.3d 927 (7th Cir. 2010) ............................................................................... 5, 6, 7

*United States v. DeRosa*,
   670 F.2d 889 (9th Cir. 1982) .................................................................................. 7, 8

*United States v. Gallo*,
   668 F. Supp. 736 (E.D.N.Y. 1987) ............................................................................ 12

*United States v. Gilbert*,
   504 F. Supp. 565 (S.D.N.Y. 1980) ............................................................................ 10

*United States v. Lapier*,
   796 F.3d 1090 (9th Cir. 2015) .................................................................................... 4

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) .................................................................................... 7

*United States v. Sampol*,
   636 F.2d 621 (D.C. Cir. 1980) .................................................................................. 12

*United States v. Shkreli*,
   260 F. Supp. 3d 247 (E.D.N.Y. 2017) ....................................................................... 13

*Zafiro v. United States*,
   506 U.S. 534 (1993) .................................................................................................. 10

## I. INTRODUCTION

The government's Omnibus Opposition pursues the very strategy that Mr. Lee and 940 Hill fear it intends to pursue against them at trial: lump them in with all the other defendants (*literally* lumping them together with Shen Zhen as "Developer Defendants" even though Shen Zhen is not a co-defendant with Mr. Lee or 940 Hill on a single count), say very little about the evidence specifically applicable to Mr. Lee, and hope to prevail by associating him with a massive, sprawling multi-developer "scheme" of which he had no knowledge and in which he allegedly played a much less culpable role. Tellingly, the government devotes very little of its brief to addressing arguments specific to Mr. Lee's concerns. Indeed, in its laundry list of examples of evidence that it claims would be admissible at both joint and separate trials, the government lists *eleven* examples of statements that would be admissible in a separate trial of Shen Zhen, but just *one* for Mr. Lee, and that one is related to the alleged 940 Hill scheme. Opp. at 13.

At no point does the government meaningfully dispute the central premise of Mr. Lee's motion: that at a joint trial, the vast majority of the evidence that the government would present would relate to alleged lurid criminal conduct by Huizar, his associates, and others, that has nothing to do with the allegations against Mr. Lee. Instead, the government claims that this irrelevant evidence is either somehow *admissible* against Mr. Lee, or that the jury can somehow compartmentalize it and not allow the morass of other evidence to influence its deliberations as to the charges against Mr. Lee. Both alternatives are factually and legally unsupportable.

*First*, the government's remarkable suggestion that Huizar's interactions with developers other than Mr. Lee would be admissible in a separate trial of Mr. Lee both mischaracterizes Counts 2 through 17 as a single, unified scheme to defraud, and incorrectly assumes that the mere allegation of the existence of a scheme automatically makes all statements by any alleged co-schemer admissible as to all other alleged co-schemers. Both arguments are wrong.

*Second*, the government does not meaningfully address the point that the allegations against Mr. Lee involve a much lower level of culpability relative to that of his co-defendants, heightening the risk that he is unfairly lumped in together with them and convicted not based on the merits of the government's case against him, but because of an improper transference of guilt.

*Third*, the government's suggestions for how to cure the spillover prejudice of a joint trial involving Mr. Lee only confirm that limiting instructions would be far from sufficient. Moreover, the suggested remedies would instead further hamper Mr. Lee's right to a fair trial based only on the evidence relevant to him.

*Fourth*, the government's efficiency-based arguments are overblown. Far from needing to try the entire same case multiple times, a separate trial of Mr. Lee would only require repetition of a few witnesses, about a small part of the government's otherwise sprawling case against Huizar and Chan. And in a separate trial of Mr. Lee, the Court would not need to deal with as many objections, sidebars, and limiting instructions, since the only admissible evidence in that proceeding would relate to 940 Hill. And any inefficiencies that arise from a separate trial would be vastly outweighed by the certainty that Mr. Lee would receive a fair trial, which would be absent in a joint trial.

The Court should grant Mr. Lee and 940 Hill's motion for severance.

## II.  ARGUMENT

### A.  The Omnibus Opposition Demonstrates the Danger to Mr. Lee of Prejudicial Spillover Evidence

The government does not dispute that in a joint trial, only a small percentage of its case will relate directly to the allegations against Mr. Lee and 940 Hill. Yet the government never addresses head-on the risk that Mr. Lee is convicted based on prejudicial spillover evidence from the far more sprawling case that will be presented against the codefendants; at most, it simply offers prophylactic measures that are, as discussed below, inappropriate and inadequate.

The risk that Mr. Lee is convicted based on prejudicial spillover evidence is the primary rationale for severance. The government acknowledges that "a central issue at trial will be whether the Developer Defendants had the requisite corrupt intent in providing benefits to defendant [Huizar]." Opp. at 9. That evidence, as to Mr. Lee, is built primarily on the testimony of a single witness, Justin Kim.[1] That witness, as the government acknowledges, has a history of lies and deception *including to Mr. Lee*. Accordingly, the jury will need to focus in on the specific strengths and weakness of that witness's testimony in order to return a fair and just verdict as to Mr. Lee. Such focus will be impossible in a joint trial, where the same jury is asked to simultaneously consider the mountains of evidence the government will present against the other defendants (and non-defendant developers) suggesting a corrupt development environment in which "everyone knew" that rampant bribery was afoot. The fact that Mr. Lee's case is but a small part of the much larger proposed joint trial creates an unacceptable risk that he will be convicted not on the merits of the case against him, but because of the jury's exposure to spillover evidence that would not be admissible in a separate trial.

Rather than argue the point, the government suggests that all of that evidence is in fact admissible against Mr. Lee because, the government claims, it has alleged a single fraud scheme in Counts 2 through 17. Opp. at 12. This assertion is neither factually nor legally valid.[2]

---

[1] The Court and the parties discussed this at length at the September 20, 2021 hearing in this matter, and the government appeared to concede the point. A transcript of that hearing was unavailable at the time this Reply was filed.

[2] As further explained in Defendants' Supplemental Motion to Dismiss Counts 2–17 (ECF No. 251), to the extent the Court accepts the government's position that those counts allege a single scheme to defraud, it should dismiss those counts completely.

### 1. The FSI alleges separate fraud schemes.

As discussed at greater length in Defendants' Supplemental Motion to Dismiss Counts 2–17 (ECF No. 251), which is incorporated by reference, the FSI on its face separates the alleged schemes related to different development projects. Each wire alleged in Counts 2 through 17 is grouped by separate projects: the LA Grand Hotel Project (Counts 2 through 4), the 940 Hill Project (Count 5), the Luxe Hotel Project (Counts 6 through 15), dealings with "Businessperson A" (Count 16), and "Project M" (Count 17). The defendants are not *all* charged with each wire fraud count, but rather only those allegedly related to their particular scheme.

This matches the organization of, and descriptions of overt acts in, Count 1—the RICO conspiracy in which Mr. Lee is not charged—where each of these projects is labeled as a separate "scheme" and would presumably serve as a RICO predicate. And all of this matches how the government talks about the case throughout its Omnibus Opposition, when it argues that at a joint trial, "a jury could reasonably compartmentalize the evidence" against each specific defendant. Opp. at 19; *see also* Opp. at 15 (acknowledging that three "schemes" alleged in the FSI "may not directly implicate the Developer Defendants"); Opp. at 23 ("[T]he evidence pertaining to the Project M Bribery Scheme or Businessperson A Schemes will not mention" Mr. Lee or 940 Hill); Opp. at 24 ("[A] jury will be able to … follow the judge's instructions to keep *these schemes* distinct." (emphasis added)). Other examples from the Omnibus Opposition are discussed below.

As also discussed at greater length in the Supplemental Motion to Dismiss, the government's analogy to a conspiracy demonstrates the problem inherent in claiming there is a single fraud scheme. If so, this is the classic "rimless wheel conspiracy," which the Supreme Court has held should be treated as multiple conspiracies, including for purposes of assessing the appropriateness of severance. *Kotteakos v. United States*, 328 U.S. 750, 753 (1946); *see also United States v. Lapier*, 796 F.3d 1090, 1101 (9th Cir. 2015) (evidence did not support existence of a

single "hub-and-spoke" conspiracy because "there is no evidence of any 'common purpose of a single enterprise' linking [defendants] … with the alleged rim"). There is simply nothing to connect Mr. Lee to any of the developers, and no basis to try him together with them.

> **2.   Evidence about other development projects would not be admissible against Mr. Lee even if a single fraud scheme were alleged.**

Even if the Court accepts the government's position that the FSI alleges a single fraud scheme, and does not then dismiss the charges, not all evidence related to that purported scheme would be admissible as to Mr. Lee. In *United States v. Boone*, 628 F.3d 927, 935 (7th Cir. 2010), a case the government cites throughout its brief, the government similarly "argu[ed] … that its use of [co-schemer evidence] is unbounded." The court rejected this view as "problematic," explaining,

> There are limits on the extent to which the government may introduce evidence of the scheme. The district court must consider whether such evidence survives the Rule 403 balancing test of probative value and prejudice. **As evidence regarding the scheme moves farther, both temporally and in terms of the defendant's involvement, from the defendant's actions that form the crux of the criminal claim, that balance may well tip in favor of exclusion**. Moreover, the definition of the scheme itself is a limiting principle, in that only evidence of the same scheme as opposed to a related or distinct scheme, is admissible...

*Id.* (emphasis added).

Here, the government never tries to specifically connect the evidence related to the other development projects to Mr. Lee, except to assert without analysis that Huizar's alleged solicitation of bribes from others is relevant because it "demonstrates the manner in which the scheme operated." Opp. at 15. The government goes on to assert that the evidence related to the various other schemes "is of the same nature and character" as that charged against Mr. Lee. *Id.* But as demonstrated in Mr. Lee's Motion, that is simply wrong. Mr. Lee is charged with

1  acceding to a demand for a single bribe on a single project, communicated through
2  an intermediary. That is quite different than what is alleged against the other
3  developers, who allegedly had lengthy and varied interactions directly with Huizar,
4  including, in certain cases, involving multiple bribes and multiple "*quos*". Because
5  of the distance from Mr. Lee of the evidence related to the other development
6  projects—both temporally and in terms of Mr. Lee's involvement—the case against
7  Mr. Lee should be confined to evidence related to 940 Hill.

8       Even the government appears to recognize this: it never directly argues that
9  evidence related to other projects would be admissible against Mr. Lee specifically.
10 Every example it cites of co-schemer evidence that it believes should be admitted
11 against Mr. Lee, relates to only to the 940 Hill scheme. *See* Opp. at 12 (Huizar's
12 statements to Kim); Opp. at 15 (Huizar's purported attempt "to conceal his
13 participation in the 940 Hill Bribery Scheme"). Whether the government is correct
14 as to the admissibility of those examples, their limited nature proves the point. First,
15 these examples are more closely connected to the charges against Mr. Lee because
16 they all relate to the same alleged scheme regarding 940 Hill. Second, the fact that
17 even the government cannot muster an example of evidence from any of the other
18 projects that would be admissible against Mr. Lee demonstrates the validity of Mr.
19 Lee's position.

20      Mr. Lee is not the same as the defendant in *Boone*, where the Seventh Circuit
21 held that statements by the alleged victims of a pay-to-play scheme centered on an
22 alderman were admissible against the alderman's housing coordinator. 628 F.3d at
23 929. The coordinator in *Boone*, unlike Mr. Lee, was close to the center of the
24 alleged scheme because he worked for the alderman at the center. *Id.* In light of the
25 defendant's central role close to the "hub" of the scheme, the Seventh Circuit held
26 that statements by individuals who the politician had extorted could be admitted
27 against Boone to establish Boone's knowledge of the alderman's scheme. *Id.* at
28 935–36. Mr. Lee of course is nowhere close to the "hub" of Huizar's alleged

1  scheme—he is at the end of one of the "spokes." There is no evidence that Mr. Lee
2  knew anything about the other development projects, or the larger alleged honest
3  services fraud scheme; at most, he was told by Justin Kim he could resolve an issue
4  related to his project by paying a bribe and he agreed to do so. This is precisely the
5  kind of evidence that "moves farther … in terms of the defendant's involvement,"
6  and that the court in *Boone* contemplated would require exclusion under Rule 403.

7        The government's other cases do not dispute this point. The government is
8  right that the court in *United States v. Lothian,* 976 F.2d 1257, 1262 (9th Cir. 1992)
9  observed that "[s]imilar evidentiary rules apply" in scheme-to-defraud cases as they
10 do in conspiracy cases. . But this was in dicta, and based on a citation to *Robinson v.*
11 *United States*, 33 F.2d 238, 240 (9th Cir. 1929), which held that the co-conspirator
12 exception to hearsay applied even where there was no conspiracy charge, so long as
13 the evidence established that a "conspiracy exists in fact." Here, as explained above,
14 the FSI does not properly allege the existence of a "conspiracy in fact" connecting
15 Mr. Lee and the other developers, or to anything more than the 940 Hill scheme.
16 And in any case, neither *Lothian* nor *Robinson* contradict *Boone's* holding that the
17 Court must engage in Rule 403 balancing when considering admission of evidence
18 unrelated to the defendant's alleged involvement in the scheme.[3]

19       **3.**    ***DeRosa* did not address a similar situation involving a serious**
20                 **risk of prejudicial spillover evidence.**

21       The government argues at length that *United States v. DeRosa*, 670 F.2d 889

---

[3]  The government also cites cases holding that co-participants in a mail or wire fraud scheme can be held liable for each other's conduct. Opp. at 8 (citing *Lothian*, 976 F.2d at 1263; *United States v. Stapleton*, 293 F.3d 1111, 1120 (9th Cir. 2002)). But the government in this case is *not* attempting to hold Mr. Lee and 940 Hill liable for the conduct of any supposed co-schemers, again belying its current assertion that a single fraudulent scheme was charged here. Those cases are therefore inapposite and evidence relating solely to other developers' alleged criminal conduct is irrelevant to the charges against Mr. Lee.

1   (9th Cir. 1982), supports a joint trial. Opp. at 22–23. There, two defendants were
2   charged with substantive RICO and drug distribution crimes, and two other
3   defendants were charged as associates of the RICO enterprise based on their
4   involvement in related drug distribution (for which they were also jointly charged
5   with the RICO defendants in various combinations). *Id.* at 892. When the RICO
6   charge was dismissed mid-trial, the latter two defendants sought severance. *Id.* The
7   Ninth Circuit upheld denial of severance because it found that joinder did not result
8   in prejudice because the convictions involved "simple [drug] transactions," the
9   evidence each defendant was "so compelling" apart from anything related to the
10  other defendants (*inter alia*, each transaction occurred in the presence of an
11  undercover DEA agent or confidential informant, one of the defendants seeking
12  severance had admitted his involvement in the distribution, etc.), and the
13  government never tried to tarnish either defendant with evidence related to the other
14  defendants. *Id.* at 899–900. Moreover, the drug distribution charges each largely
15  covered distinct time periods (or involved different drugs where they overlapped),
16  *id.* at 898, such that it would have been easy for the jury to keep the evidence for
17  each defendant separate.

18       *DeRosa* is thus materially different than this case. Here, there are no "simple
19  transactions," but instead, incredibly complex and sometimes subtle interactions
20  between many individuals and entities, and involving numerous city processes that
21  the government concedes will require extensive expert testimony for the jury to
22  understand, let alone follow and keep track of. Moreover, even though Mr. Lee had
23  no idea about the other projects, the various development projects set forth in the
24  FSI and allegations overlap in terms of time and alleged actions by Huizar, Chan,
25  and Esparza, such that keeping separate over the course of a lengthy trial what
26  evidence applies to which project would be a challenge under the best
27  circumstances. And of course, unlike "simple" drug transaction witnessed by an
28  undercover informant or DEA agent, the charges against here involve far more

nuanced questions of intent and knowledge that will be more difficult for a jury to evaluate. Nor is the government's evidence of knowledge and intent as to Mr. Lee likely to be "so compelling," given that it rests on the testimony of one cooperating witness whom the government concedes is a liar and thief who victimized Mr. Lee. Indeed, whereas in *DeRosa* the court noted that the government did not attempt to tarnish the defendants with the acts of others, here the government has already said it wants to introduce evidence of all the other schemes against Mr. Lee to "demonstrate[] the manner in which the scheme operated" (Opp. at 15), even though he had no involvement in or knowledge of those other development projects and the alleged corruption surrounding them. Thus, while *DeRosa* does provide an example of a case where severance may not have been necessary, it is no analogue to this case.[4]

### B. The Government Does Not Dispute that Mr. Lee's Alleged Culpability Is Significantly Lower than His Co-Defendants'

The government does not meaningfully dispute that Mr. Lee's alleged culpability is much lower than that of his co-defendants. Instead, it draws a false equivalence between the allegations against Mr. Lee and the allegations against Shen Zhen because both moved to sever, and both supposedly "point[] the finger at the other as the more guilty-appearing party." Opp. at 21. But as described in Mr. Lee's Motion, the allegations against him are of an entirely different kind, both in type and scope. The government's allegations against Mr. Lee charge him with, at most, passive acquiescence to a single extortion demand by Huizar communicated

---

[4] In any event, *DeRosa* involved a Court of Appeal applying an appellate standard of review against a complete trial record. Appellate courts of course review a trial record to determine *retrospectively* whether the admissibility of spillover evidence prejudiced the defendant. But this Court does not have the luxury of a trial transcript and appellate record upon which to gauge whether to grant a severance motion, and must therefore look *prospectively* at the anticipated evidence and government theories to assess whether a severance is necessary to avoid prejudice.

3749704.6

9

DAE YONG LEE/940 HILL, LLC'S REPLY IN SUPPORT OF MOTION TO SEVER TRIAL

through Mr. Kim. By contrast, for instance, Shen Zhen is alleged to have *initiated* its overtures to Huizar and courted him extensively with monetary gifts, casino chips, vacations, and prostitutes. The other developers' alleged affirmative efforts to seek out Huizar, ply him with bribes, and then call in the "quos" when needed, place them on a different plane of culpability relative to Mr. Lee. And Mr. Lee is certainly less culpable than codefendants Huizar and Chan, who are alleged to have initiated a sprawling extortion scheme from positions of public trust over the course of many years. Coupled with the complexity of the joint trial, this is the exact situation that the Supreme Court instructed creates such a high risk of prejudice that severance is warranted. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Indeed, the government apparently intends to present evidence about a number of schemes involving allegations of far more culpable conduct by developers who are not even defendants in this case. For example, Jia Yuan and Fuer Yuan are mentioned by name as the key participants in the Luxe Hotel Bribery Scheme, and are alleged to have funneled money to Huizar's relatives in exchange for assistance with their hotel. FSI, Count 1, Overt Acts 119–158. Likewise, "Businessperson A" is alleged to have bribed Huizar in exchange for Huizar pressuring developers to use that businessperson's services. *Id.*, Overt Acts 301–333. These allegations are far worse than the single-instance passive acquiescence with which Mr. Lee is charged. Yet because none of these people will be a defendant alongside the others, there is a substantial risk that the jury will assume that Mr. Lee must be more culpable than those other developers, simply by virtue of his presence in this case. *See, e.g., United States v. Gilbert,* 504 F. Supp. 565, 566 (S.D.N.Y. 1980) (in a lengthy trial, "the mounting proof of the guilt of one is likely to affect another"). There is also a risk that the jury, after being presented with weeks of evidence, only a tiny portion of which relates to Mr. Lee, will conflate some of the more serious allegations about other projects with the 940 Hill project—a risk heightened by the fact that there will not be a face in the courtroom with

which to associate those other allegations. The only way to be certain that this type of confusion does not happen is a separate trial of Mr. Lee, where that evidence simply would not be admitted.

### C. Limiting Instructions Will Be Insufficient to Address the Prejudice to Mr. Lee of a Joint Trial

The government asserts that the risk of prejudice to Mr. Lee is minimal because the different bribery schemes are sufficiently "compartmentalized." Opp. at 23. This argument again contradicts the government's characterization of the case as alleging a "single scheme" and its argument that a single trial is appropriate, but it is also unrealistic. The government's position is that the jury will be able to ignore the weeks of evidence it hears about a massive corruption scheme involving charged and uncharged developers working in Huizar's district when it specifically is asked to adjudicate Mr. Lee's knowledge and intent. But jurors are not superhuman, no matter how well-instructed, and a lengthy, detailed presentation of such a corrupt milieu will, as discussed in Mr. Lee's Motion, inevitably lead some to conclude that he "must" have known what his alleged payment was for, no matter the actual evidence of knowledge. Mot. at 2, 10–13. "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968) (discussed at Mot. at 13)[5]; *see also United States v. Blankenship*,

---

[5] The government argues that Mr. Lee's citations to *Bruton* and other cases are inapposite because Mr. Lee has not identified any specific evidence implicating the exact issues discussed there. Opp. at 17. The government misses the point of these citations, which relate to the limited value of jury instructions in certain, highly-prejudicial contexts like what is contemplated here. In any event, given the government's position that efforts to conceal the alleged fraud by Huizar are relevant evidence against Mr. Lee, Huizar's alleged false statements regarding the 940 Hill project (see Opp. at 18 n.3) could arguably be construed as *Bruton*

382 F.3d 1110, 1123-25 (11th Cir. 2004) (exception to presumption of joinder applies when "the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, [may] make[] it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently"); *United States v. Sampol*, 636 F.2d 621, 647 (D.C. Cir. 1980) ("[I]t was … unrealistic [for the trial court] to expect a jury not to be influenced by such extraneous testimony [about other defendants] in its assessment of [defendant's] guilt upon the lesser charges for which he was tried"); *United States v. Gallo*, 668 F. Supp. 736, 753 (E.D.N.Y. 1987) ("This case is far too extensive and intricate to expect that a jury would be able to discern the myriad of subtle distinctions and mental gyrations that would be required by the inevitable plethora of limiting instructions necessary").

And the government's solutions are no solutions at all. First, it calls for giving the jury a "trial indictment" to guide its deliberations.[6] Opp. at 24 n.6. Against belying its "single scheme" argument, according to the government, the trial indictment will help the jury keep the "schemes" separate because "[e]ach of these schemes fall under a distinct FSI header … that will serve as an easy-to-follow guide for the jury to navigate during its deliberations." Opp. at 24. Even if a "trial indictment" were appropriate,[7] it does nothing to mitigate the damage from spillover evidence. If anything, it reinforces to the jury the erroneous idea that Mr. Lee and

---

statements which further justify severance.

[6] The assigned AUSA informed counsel that a "Trial Indictment is the FSI sanitized for any evidence that did not come in and stripped of other no longer relevant things such as defendants who have pled and counts that have been pled to or dismissed."

[7] Mr. Lee objects to the suggestion and will litigate it as necessary at the appropriate time. The jury instructions and verdict forms should be the jury's guide, not the government's one-sided version of the evidence.

the alleged bribe related to 940 Hill is just one more corrupt developer trying to build in Huizar's district as part of the massive scheme alleged in the FSI.

Second, in support of its argument regarding efficiency, the government suggests limiting the number of limiting instructions that the Court will give (and the number of objections defense counsel can raise). Opp. at 19. The government's argument concedes that a joint trial will either require interminable interruptions to give the necessary limiting instructions as all of the irrelevant and highly prejudicial irrelevant evidence comes in—a Herculean task for the Court—or that Mr. Lee's right to ensure that the jury is properly instructed will be curtailed. In either scenario, the implicit acknowledgment is that the trial as contemplated by the government is so unwieldy in light of Mr. Lee's minimal role that limiting instructions cannot cure the prejudice and severance is warranted. *See United States v. Shkreli*, 260 F. Supp. 3d 247, 256–57 (E.D.N.Y. 2017) ("Constant objections during opening statements, witness examinations and cross-examination, followed by side bars, will disrupt the flow of the trial and increase the length of the trial, will likely confuse the jury in what is already a complex case.").

### D.   Preventing the Prejudice to Mr. Lee From a Joint Trial Is Not Outweighed by the Efficiency Considerations

The government's only real response to Mr. Lee's efficiency argument is to point out that certain evidence related to the alleged 940 Hill scheme (e.g., the testimony of Justin Kim) would have to be repeated. Opp. at 12. Mr. Lee acknowledged in his Motion that some repetition of a small part of the government's case against Huizar would occur at a separate trial of Mr. Lee, but explained why that small inefficiency is a) justified by the need to give Mr. Lee a fair trial, and b) arguably less than the inefficiency of a joint trial involving the lengthy presentation of evidence not relevant to Mr. Lee. Mot. at 14. Further, the repetition would be far more limited than the government suggests. Evidence of Mr. Lee's conversations with his agents and employees—which the government will likely use as

circumstantial evidence against him—is in fact not relevant to what Huizar knew and intended unless those conversations where somehow conveyed to him (most of them were not, according to the FSI). The same is true in reverse: Mr. Lee's knowledge and intent can only be demonstrated by evidence of what he himself heard, said and did. The universe of evidence that would require repetition at separate trials is actually quite small when carefully examined.

Moreover, the government is wrong to assert that granting Mr. Lee's Motion would force the government to prove Huizar's entire alleged scheme in three separate trials. Opp. at 25. First, the question of Mr. Lee's severance is separate and apart from the question of severing any other defendant; granting one does not necessitate granting the other. Second, a trial involving Mr. Lee alone would not require the government to prove anything about Huizar's overall "scheme"; the government is not seeking to hold Mr. Lee liable for any conduct beyond that related to 940 Hill, and only the facts related to 940 Hill would be relevant. As discussed herein, a separate trial of Mr. Lee would involve only the limited allegations related to the 940 Hill project.

## III. CONCLUSION

The Omnibus Opposition makes clear what the FSI suggests: without severance, Mr. Lee will likely be convicted based on an avalanche of allegations suggesting that he "must have" had the requisite knowledge and intent given who he was and when and where his project was seeking approval, rather than based on a focused analysis of the very limited evidence against him. Mr. Lee should not be forced to sit through an exceedingly complex trial in which the vast majority of evidence is both highly prejudicial and irrelevant to the charges against him, none of which would be admissible in a separate trial.

/ / /

/ / /

/ / /

For the reasons described above, the Court should grant Mr. Lee's motion and order that he and 940 Hill be tried separately.

DATED: September 27, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC and Dae Yong Lee