Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| UNITED STATES OF AMERICA,, | CASE NO. 20-CR-0326-JFW |
|---|---|
| Plaintiff, | **DAE YONG LEE AND 940 HILL, LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF COUNT 5** |
| vs. | |
| JOSE LUIS HUIZAR, et al., | Date: November 15, 2021<br>Time: 8:00 a.m.<br>Crtrm.: 7A |
| Defendant. | |
| | Assigned to Hon. John F. Walter |

3756033.5

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | ARGUMENT | 4 |
| | A. "Pressuring" A Non-Government Official Is Not An Official Act, Even If the Pressure Concerns a Pending Matter. | 4 |
| | B. The Alleged Cash Payment Is Irrelevant to the Question of Whether Informally Pressuring Unions Is an "Official Act". | 7 |
| | C. The Government Ignores the Constitutional Concerns that *McDonnell* Identified. | 8 |
| | D. The Government's Remaining Arguments Are Irrelevant to Mr. Lee's Motion. | 10 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kelly v. United States*,
    140 S. Ct. 1565 ................................................................................................................3

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016)............................................................................................*passim*

*United States v. Silver*,
    864 F.3d 102 (2d Cir. 2017) ...............................................................................................7

*United States v. Skelos*,
    707 F. App'x 733 (2d Cir. 2017).........................................................................................6

*United States v. Sun-Diamond Growers of Cal.*,
    526 U.S. 398 (1999) ............................................................................................................6

## I. INTRODUCTION

The government opposes Mr. Lee and 940 Hill's Motion to Strike Language from Count 5 (ECF No. 229) by ignoring limiting principles set forth in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), and improperly merging elements of the honest services fraud charge. Contrary to the government's argument, the Supreme Court has made clear that an official's informal exertion of influence is not an official act, and does not transform into one merely because the matter on which the official exerts influence may at some point be pending before that official. Likewise, the Supreme Court has also explained that a cash payment to a public official in exchange for a promise to perform (or performance of) something other than an official act, while perhaps an affront to notions of good government and a violation of other laws, is not an honest services fraud violation.

The government argues that an "official act" includes *any* promise made by a public official to "resolve" a matter that might at some point be pending before that official, regardless of what steps the official promises to take. Here, the government wants to convict Mr. Lee based on the allegation that a public official was compensated in return for a promise to pressure a *private party* to make the *private decision* to *voluntarily* dismiss its own administrative appeal. The government's theory is completely untethered from both the Supreme Court's explicit standard for establishing an "official act" and the constitutional concerns underlying the official act requirements. *McDonnell* explicitly requires that an "official act" must involve **(1)** "a formal *exercise* of governmental power" **(2)** in a "pending" or otherwise "focused and concrete … 'question, matter, cause, suit, proceeding or controversy.'" 136 S. Ct. at 2368. The government simply ignores the requirement that the public official's promised conduct must involve a formal exercise of governmental authority. Informally pressuring a private party to dismiss a pending appeal is not a formal exercise of governmental power.

The government also claims that "the key criminal element" for purposes of establishing the "official act" requirement is that Huizar is alleged to have received a cash payment in return for his promise. That argument conflates the *quid* with the *quo* in an attempt to merge distinct elements of the honest services offense. The Supreme Court in *McDonnell* made clear that (1) these are separate elements and (2) the "official act" requirement must be narrowly construed *because* the payment ("anything of value") element can be easily satisfied by a campaign contribution or an outing to a ballgame. *Id.* at 2372–73. Thus, not only is the payment allegation not "the key allegation" for purposes of establishing the "official act" requirement, it has no relevance whatsoever to the official act requirement.

The government effectively asks this Court to ignore the "formal exercise of governmental power" requirement based on an analogy that it would be improper for a *judge* to pressure a party to dismiss its own lawsuit. The government could not have chosen a more inapt analogy. The Supreme Court narrowly construed "official act" because a broader construction would "cast a pall of potential prosecution" over public official interactions with their constituents—thereby threatening "the basic component underlying representational government[, which] assumes that public officials will hear from their constituents and act appropriately on their concerns." *McDonnell*, 136 S. Ct. at 2372. Judges have no constituents and there is no *constitutional* concern over chilling their extrajudicial interactions with parties in pending cases. Indeed, the government's assertion that local public officials should be subject to the same type of constraints as judges is nothing more than an attempt by the federal government to set "standards of good government for local and state officials," which is the type of federal intrusion on state sovereignty that the Supreme Court has sought to preclude by its narrow construction of the "official act" requirement. *Id.* at 2373; *cf. Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (citing "this Court's oft-repeated instruction: Federal prosecutors may not

use property fraud statutes to set standards of disclosure and good government for local and state officials").

Finally, the government's remaining arguments—that (1) Huizar need not have actually performed an "official act" to have committed honest services bribery; and (2) honest services fraud can be proven without "express statements" of quid pro quo—are irrelevant to the fact that pressuring a union group *is not an official act*. Whether the government is correct, here it has chosen to allege in the FSI that such pressuring is one of the official acts promised and/or performed in exchange for alleged payment by Mr. Lee, and striking that allegation is thus warranted.

The Court should grant Mr. Lee's motion, strike the "pressuring unions" language from Count 5, and instruct the jury that it cannot convict Mr. Lee for honest services fraud based on that theory.[1]

## II.     ARGUMENT

### A.     "Pressuring" A Non-Government Official Is Not An Official Act, Even If the Pressure Concerns a Pending Matter.

The government acknowledges that if the CREED appeal were pending before a court, it would not be an "official act" for Huizar to "us[e] the clout of his office as a Council member to serve as mediator of the dispute and persuade the labor organization to drop its appeal." Opp. at 22–23. In this case, it argues, Huizar's alleged promise to pressure a private party (a labor organization) to perform a private act (voluntarily dismissing an appeal) became an "official act" simply because the appeal could theoretically have been adjudicated by the PLUM Committee that Huizar chaired, supposedly making Huizar the "ultimate arbiter" of

---

[1] Striking the language from the FSI is especially important where the government seeks to have the Court give the jury a version of the indictment during deliberations, as the prosecutors here have indicated they intend to do.

<a/>
<a/>
<a/>
<a/>
<a/>
<a/>
<a/>

<a/>

<a/>

<a/>

<a/>

<a/>

the appeal.[2] Opp. at 21.

The government ignores the second of the two requirements that the Court in *McDonnell* held must be shown to establish the "official act" element:

> ***First***, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. ***Second***, the Government must prove that the public official made a decision or took an action "on" that question, matter, cause, suit, proceeding, or controversy, or agreed to do so.

136 S. Ct. at 2368 (emphases added).

The government's Opposition is based on the first (pending-matter) requirement, but ignores the second requirement that "the public official must make a decision or take an action *on* that [pending] question or matter, or agree to do so." *McDonnell*, 136 S. Ct. at 2370 (emphasis added). The Supreme Court made clear that a public official's decision or action on a pending matter must be a *formal decision or act*, or an effort to influence another public official to make a formal governmental decision or take a formal governmental act. *Id*. at 2371-2372. Thus, the Court held that informal actions such as "hosting an event, meeting with other

---

[2]  To be clear, the CREED appeal was *not* pending before the PLUM Committee or Huizar at the time it was dismissed. As the FSI alleges, "a certain component of the appeal *would reach* the PLUM Committee and City Council" in the future. SI, Count 1, Overt Act 87 (emphasis added); *see also id.*, Overt Act 85 ("[T]he appeal … *could* ultimately reach the PLUM Committee, which defendant HUIZAR chaired." (emphasis added)). As the government knows, at the time CREED dismissed its appeal, the appeal was only in front of the Central Los Angeles Area Planning Commission ("APC"), a different commission of which Huizar was not a member. Indeed, the government's theory that Huizar is an ultimate arbiter of any administrative decision that is potentially subject to PLUM review is a limiting principle without any real limit. Most decisions made by City agencies and commissions are subject to the possibility of City Council review—making Huizar, as a member of the Council, an "ultimate arbiter" of virtually any administrative action.

<a/>

3756033.5

5

DAE YONG LEE/940 HILL REPLY ISO MOTION TO STRIKE PORTIONS OF COUNT 5

officials, *or speaking with interested parties* is not, standing alone, a 'decision or action'" for purposes of honest services fraud, "*even if the event, meeting, or speech is related to a pending question or matter.*" *Id.* at 2370 (emphasis added); *see also id.* at 2372 ("Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit [the] definition of 'official act.'").[3] Indeed, the Court in *McDonnell* explicitly rejected the government's argument that an official act includes merely informal conduct concerning pending matters: "[T]he existence of … pending matters [is] **not enough** to find that any action related to them constitute[s] an 'official act.'" *Id.* at 2370 (citing *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999)) (emphasis added).

Here, the government's "official act" theory is based on nothing more than an alleged promise to "speak[] with interested parties"—i.e., members of the labor organization—in an effort to convince them to drop the organization's appeal, which *McDonnell* holds is insufficient to establish an "official act." Given that the "[g]overnment must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given," *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 414 (1999), the government cannot use the pressuring of the labor organization to obtain a conviction. The government's position to the contrary is nothing more than a recharacterization of the rejected theory that any act that is taken under "color of official authority"—even through merely informal means—is an "official act." See *United States v. Skelos*, 707 F. App'x 733, 736 (2d Cir. 2017) (applying *McDonnell* in holding that jury instruction improperly defined "[t]he term 'official act' [to]

---

[3]  By contrast, if Huizar had spoken to *another public official* to pressure them to perform an official act of their own, that could qualify as an "official act." *McDonnell*, 136 S. Ct. at 2372. But a representative of a labor union is not a "public official" (and the government does not allege otherwise), so this exception does not apply here.

include[] any act taken under color of official authority"); *United States v. Silver*, 864 F.3d 102, 111 (2d Cir. 2017) (rejecting district court's post-*McDonnell* interpretation of "official act" to include "any action taken or to be taken under color of official authority.")

Notably, the government does not argue that the act of pressuring a labor union qualifies as an "official act" on its own. But *McDonnell* is clear that the "decision or action" requirement necessitates an analysis separate from whether there is a matter *pending* before the public official. Thus, if the act of pressuring a labor union is not, on its own, an "official act"—a point the government concedes (Opp. at 22–23)—then the fact that the labor union has a pending matter before the official (or, in this case, that it *could potentially* have a pending matter before the official *in the future*) does not transform the pressuring into an "official act."

The government also argues that *McDonnell* does not require "'identification of a particular *act* of influence,' but only requires 'identification of a particular *question or matter* to be influenced.'" Opp. at 20 (citation omitted). But regardless of whether the government could have alleged an offense without specifying any means, a motion to strike is proper here because one of the acts that the government has alleged to be an "official act" is legally insufficient to qualify as an "official act." FSI ¶ 45(b).

### B. The Alleged Cash Payment Is Irrelevant to the Question of Whether Informally Pressuring Unions Is an "Official Act"

The government also ignores the teachings of *McDonnell* by arguing that "the key criminal element" that makes pressuring the union group an "official act" is the allegation that Huizar "accept[ed] bags of cash in exchange for those acts." Opp. at 23. But this conflates the "quid" with the "quo."

The alleged cash payment satisfies the *quid* requirement—i.e., the requirement that the public official was paid or promised something of value. But the *quo*—i.e., the official act—is a *separate* requirement of the statute. Indeed, the

1 Supreme Court's unanimous opinion in *McDonnell* emphasized the need for
2 narrowly construing the "official act" requirement *because* the separate payment
3 element is so easily satisfied by anything from a "campaign contribution" to an
4 "annual outing to the ballgame." *McDonnell*, 136 S. Ct. at 2372. Thus, the
5 government's reliance on the alleged cash payment may not properly be considered
6 in determining whether the "official act" element has been met. While the alleged
7 cash payment may have violated other laws, it is not sufficient to fulfill the elements
8 of federal honest services fraud when the "official act" element is missing.

### C. The Government Ignores the Constitutional Concerns that *McDonnell* Identified.

The government also pays short shrift to Mr. Lee's argument that the government's broad definition of "official act" implicates the exact same constitutional concerns that led the Supreme Court to narrowly construe the honest services fraud statute. *See* Mot. at 19–20. The Supreme Court explicitly warned that a broad interpretation of "official act" "could cast a pall of potential prosecution over" communications between public officials and their constituents—implicating "[t]he basic compact underlying representative government [which] assumes that public officials will hear from their constituents and act appropriately on their concerns." *McDonnell*, 136 S. Ct. at 2372. The Court emphasized the substantiality of this concern by citing amicus briefs filed by former state, local and federal officials. *Id*. at 2372. The Court also explained that a broad construction of "official act" also "raises significant federalism concerns" by enabling federal prosecutors to "set[] standards of good government for local and state officials." *Id.* (cleaned up).

The government's response—based on an analogy to ethical rules governing judges—reveals its inattention to the specific constitutional concerns articulated in *McDonnell*. Judges, of course, are barred by rules of judicial conduct from meeting *ex parte* with parties in matters pending before them for the purpose of influencing any aspect of a pending case. *See, e.g.,* Code of Conduct for United States Judges,

Canon 3(A)(4) ("a judge should not permit … *ex parte* communications … concerning a pending or impending matter"). But in our system of representative government, communications between public officials and their constituents are constitutionally protected and public-official responsiveness to constituent concerns is critical to the "basic compact" of representative government. *McDonnell*, 136 S. Ct. at 2372.

It is *a councilmember's job* to solicit feedback from constituents, evaluate competing interests, and aid in resolving public disputes, both formally through "official acts" like voting and introducing legislation, and *informally*, by having conversations with interested constituents to encourage compromise. That is why the Supreme Court has narrowly construed "official act" to require formal governmental decisions or action. Doing so gives public officials the breathing room necessary to do their jobs and avoid an "expansion of public-corruption law [that] would likely chill federal [as well as state and local] officials' interactions with the people they serve and thus damage their ability effectively to perform their duties." *Id.* (quoting Brief for Former Federal Officials as Amicus Curiae, p. 6).

The government's broad construction of "official act" to include an official's informal communications with a private party to influence a private decision to withdraw an administrative appeal would chill public officials who would otherwise work with their constituents to resolve such disputes. The risk of chilling such constitutionally-protected conduct is particularly acute in the context of land use disputes, where at least one of the disputing parties is highly likely to have made campaign contributions. That is why the Supreme Court has rejected broad interpretations that would cast such a pall of potential prosecution over public official/constituent interactions.

### D. The Government's Remaining Arguments Are Irrelevant to Mr. Lee's Motion.

The government raises a number of points to counter arguments not made in Mr. Lee's motion.

First, the government argues that it does not have to prove that Huizar "actually performed any official acts, only that he corruptly agreed to do so in exchange for things of value." Opp. at 20. While it may be true that the government need only show that Huizar promised to perform an official act, the promise must still be to perform an official act. The problem here is that pressuring a union to drop its appeal is not an "official act."

Second, the government argues that the indictment need not allege "express conversations" between Mr. Lee and Huizar to establish the alleged *quid pro quo*. Opp. at 21. But Mr. Lee is not arguing that the government must prove that Huizar *expressly* promised to perform an official act in exchange for money—he is arguing that the government must prove that whatever express or implied promise was made by Huizar was *for the commission of an official act*. Whether Huizar promised to informally pressure CREED using express language or with "knowing winks and nods" (Opp. at 21), he would not have engaged in an "official act" because informal pressure on a non-government official is not an "official act." Here, the government chose to include in its list of alleged official acts (FSI ¶ 45(b)) at least one that does not qualify, and the Court must make clear that pressuring a union to drop an appeal—even in exchange for a cash payment, and even if that appeal might at some point be pending before the public official—is not a basis to sustain a conviction for federal honest services fraud.

### III. CONCLUSION

For these reasons, the Court should grant Mr. Lee and 940 Hill's Motion to Strike Language from Count 5, strike the allegation that Huizar committed an "official act" in exchange for benefits by "using [his] office to negotiate with and

exert pressure on labor unions to resolve issues on projects" (as alleged in Paragraph 45(b)(5) of the FSI), and instruct the jury that it cannot convict Mr. Lee or 940 Hill for honest services fraud based on that allegation.

DATED: November 4, 2021

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: /s/ Ariel A. Neuman

Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee