Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>            Plaintiff,<br><br>     vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>            Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL LLC'S RESPONSE TO THE GOVERNMENT'S OFFER OF PROOF REGARDING SEVERANCE MOTION**<br><br>Assigned to Hon. John F. Walter |

3771395.5

LEE/940 HILL'S RESPONSE TO GOVERNMENT'S OFFER OF PROOF RE SEVERANCE MOTION

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND BACKGROUND ...................................................... 1

II. ARGUMENT ..................................................................................................... 2

    A. The Government's Offer of Proof Fails to Establish a Single Scheme by a Preponderance of the Evidence ......................................... 2

        1. The plea agreements and non-prosecution agreements do not suggest that Mr. Lee or 940 Hill were part of a larger scheme. ................................................................................... 3

        2. The government has no other evidence that Mr. Lee or 940 Hill were part of a larger scheme. ................................................... 4

        3. The government's other "evidence" consists of naked assertions that fail to support its "single scheme" theory. ............. 7

    B. The Government "Sur-reply" Legal Arguments Should Be Disregarded, But in Any Event Also Fail to Support Joinder ................ 9

III. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Perry*,
  550 F.2d 524 (9th Cir. 1977) ................................................................... 10, 11

*United States v. Singh*,
  979 F.3d 697 (9th Cir. 2020) ......................................................................... 10

## I. INTRODUCTION AND BACKGROUND

The government's Offer of Proof (ECF No. 353) does none of the things the Court said were necessary to alleviate the Court's concerns, as articulated at the January 7, 2021 hearing, that a joint trial would (1) create a serious risk that a specific trial right of Mr. Lee and 940 Hill would be compromised, and/or (2) prevent the jury from making a reliable judgment about guilt or innocence.[1] The government cites a few plea agreements and non-prosecution agreements (most of which do not reference Mr. Lee or 940 Hill), and a few documents that do nothing to connect Mr. Lee or 940 Hill to Shen Zhen or any of the other developers or schemes contained in the FSI. From there, the government *argues* its case, but even that argument falls woefully short of demonstrating by a preponderance of the evidence the single scheme the government contends exists.

In addition, the government's submission—which it calls a Supplemental Brief—goes far beyond what was permitted by the Court, and includes extensive legal argument in what was supposed to be a straightforward offer of proof. As discussed below, that portion of the submission should be disregarded or struck as an improper sur-reply.

The government's submission does not identify any evidence that Mr. Lee or 940 Hill were aware of *any* other developers' corrupt conduct with relation to Jose Huizar or his office at the time of Mr. Lee's alleged bribe payment (and certainly none of the specific developers charged or identified in the FSI), let alone depended

---

[1] Pursuant to the Court's Order, the government's Offer of Proof in support of its Opposition to Defendant Dae Yong Lee and 940 Hill, LLC's severance motion was to set forth all evidence the government intended to offer at trial demonstrating that the "spokes" (such as Mr. Lee, 940 Hill, and Shen Zhen) "were aware of each other," that their benefits "were probably dependent upon the success of the entire operation, and that they shared not the same goal but a common goal." Jan. 7, 2021 Hearing Tr. at 87:2–8; 97:23–25.

on their success. It does not identify any evidence demonstrating that Mr. Lee and 940 Hill benefitted from the alleged activities of other developers relating to other projects. Nor does the government offer evidence that Mr. Lee and 940 Hill had any goal except to move the 940 Hill development forward. And while the government *argues* that Mr. Lee and 940 Hill *must have* intended to participate in an overall scheme to keep Huizar and his family in power because Mr. Lee intended to pursue another project in Huizar's district, it offers no *evidence* of this.[2] An "offer of argument" unsupported by evidence is not what the Court ordered.

The government has utterly failed to offer evidence *as to Mr. Lee and 940 Hill* even suggesting that they were part of a single scheme to defraud with respect to Counts 2 through 17. While the government argues at length that a single scheme existed as to Huizar, Esparza, and others, even if true, that is irrelevant to whether Mr. Lee and 940 Hill were part of that scheme as a "spoke" that was interconnected with the other developers, had a common goal, and/or benefited from the success of the entire operation. The government's submission only confirms that Mr. Lee and 940 Hill's motion for severance should be granted.

## II.   ARGUMENT

### A.   The Government's Offer of Proof Fails to Establish a Single Scheme by a Preponderance of the Evidence

The government's *factual* submission relies on four plea agreements and two non-prosecution agreements.[3] The government also references a few other Bates-

---

[2]   Importantly, 940 Hill LLC had nothing to do with that other project. The government does not acknowledge the distinction.

[3]   The government never says which, if any, of the individual defendants whose plea agreements it offers would actually testify. This matters in an offer of proof because the government has previously equivocated on whether, for instance, it intends to call Justin Kim as a witness at Mr. Lee's trial. *See, e.g.*, ECF No. 221 at 13 (government promising to reevaluate redactions "*if* Kim is called as a witness") (emphasis added). Moreover, there is no indication that anyone associated with the

numbered documents, but does not attach any as exhibits to the filing. None of these materials connect Mr. Lee and 940 Hill to the other developers or otherwise support the government's assertion that they were involved in a broader scheme to keep Huizar or his family member in power.

### 1. The plea agreements and non-prosecution agreements do not suggest that Mr. Lee or 940 Hill were part of a larger scheme.

Four of the six documents submitted by the government—two of the plea agreements and both non-prosecution agreements—say nothing at all about Mr. Lee or 940 Hill. *See generally* Dragalin Decl. Exs. 2, 4, 5, 6 (statements by George Chiang, Morrie Goldman, CP Employer, and Jia Yuan). Instead, their submission only highlights the dangers of a joint trial, in that each contains lurid details about bribery schemes that have nothing to do with Mr. Lee or 940 Hill, and which exemplify the type of irrelevant and prejudicial evidence that warrants severance.

While Justin Kim's and George Esparza's plea agreement factual bases do reference Mr. Lee and 940 Hill, they say nothing about any involvement by Mr. Lee or 940 Hill in anything more than an effort to move the development of the property at 940 S. Hill forward. They do not establish any interdependence at all between developers. Indeed, both statements confirm that these witnesses, like the government prosecutors who wrote those plea agreements, have always viewed this case as a multiple-scheme case. Both reference the existence of multiple "schemes" in which they and others participated related to different development projects, and then go on to discuss in some detail their allegations regarding the specific "scheme" involving 940 S. Hill, referred to in both as the "Project C Bribery Scheme." Dragalin Decl. Ex. 1 ¶¶ 10, 26–43; Ex. 3 ¶¶ 5, 6-20. These allegations largely mirror the allegations in the FSI, and they add nothing new to connect Mr.

---

non-prosecution agreements will be required to testify.

Lee or 940 Hill to the large scheme the government's submission was supposed to establish. Neither Esparza's nor Kim's statement regarding "Project C" names or even references other developers in any way. Neither articulates facts or evidence that suggest Mr. Lee or 940 Hill were connected to other developers with a common purpose or shared agenda. Nor does either statement suggest that Mr. Lee or 940 Hill somehow coordinated with other developers, benefited from the actions of other developers, or manifested a desire to keep Huizar and his family in office. In short, the statements establish *at most* Mr. Lee and 940 Hill's alleged involvement in a bribe payment designed to secure approval of development of the 940 Hill property, and nothing more.

The government offers these agreements to demonstrate that those other defendants admitted a single scheme. But whether those other defendants who entered into agreements with the government were part of a single scheme says nothing about whether Mr. Lee and 940 Hill were part of that scheme, *even if* the other defendants' actions related to the property at 940 Hill were part of *their* involvement in the larger scheme. For instance, Esparza and Kim might have worked with Huizar to demand a bribe from Mr. Lee and 940 Hill to further *Esparza, Kim and Huizar's* goals, but that says nothing about Mr. Lee or 940 Hill's goals. The government's attempt to transfer other defendants' admissions regarding their own conduct and intentions to that of Mr. Lee or 940 Hill is unfounded and unsupported by any evidence.

### 2. The government has no other evidence that Mr. Lee or 940 Hill were part of a larger scheme.

The government sets out its specific arguments as to Mr. Lee and 940 Hill at pages 9 through 11 of its submission. Again offering mostly argument and unsupported assertion, the government relies on the Esparza and Kim plea agreements and three documents that it references by Bates number (but does not actually attach) to contend that Mr. Lee and 940 Hill had a "common objective to

perpetuate the pay-to-play scheme." Gov. Br. at 9–11. None of these documents support that assertion, or even suggest the existence of a scheme involving Mr. Lee or 940 Hill beyond the allegations related to the property at 940 S. Hill. Simply put, there was no interdependence with any other developer. Nor do the government's *arguments* establish the type of *evidence* the Court requested.

First, under the header "enriching the members of the conspiracy," the government points to documents indicating that the appraised value of 940 S. Hill supposedly increased once the entitlement was received, and statements made by Kim and Esparza discussing the costs to Mr. Lee and 940 Hill potentially associated with the Creed LA appeal at issue in the case. Gov. Br. at 10 n.7. This says nothing about a "common objective" beyond offering, potentially, a motivation by Mr. Lee or 940 Hill to remove the obstacles in the path to 940 Hill's entitlement. The evidence does not suggest that such a motivation, if it existed, expanded beyond the single alleged scheme involving that specific property. It does nothing to tie Mr. Lee or 940 Hill to anything further. There is also nothing to suggest that Mr. Lee or 940 Hill desired to "enrich" anyone other than themselves; at most it establishes that they may have been willing to pay a price, under duress, to obtain the entitlement they needed.

Second, under the header "maintaining operation of the enterprise," the government argues that Mr. Lee wanted to "establish[] an ongoing corrupt relationship with Huizar" based on (1) communications indicating that the development of 940 Hill would require further contact with Huizar's office, and (2) a document showing that Mr. Lee (but not 940 Hill) was involved in another development project in Huizar's district. Gov. Br. at 10 n.8 & n.9. First, these materials do not tie Mr. Lee or 940 Hill to any of the other developers in any respect, and thus are not the kind of evidence the Court requested. Second, the documents cited do not suggest anything illicit or improper was contemplated as to either 940 Hill or the other pending project, but rather, simply reflect the fact that

developing a real estate project in Los Angeles requires contact with the relevant councilmember's office. Simply put, the government offers no evidence that Mr. Lee ever even thought about the relationship between his alleged payment to Kim and Huizar's political prospects. The best evidence the government has is that it was a one-off payment designed to move the 940 Hill project forward, without any other considerations. Anything else is pure conjecture.

Third, under the header "concealing financial activities" and "protecting the enterprise by obstructing justice," the government points to supposed efforts by Mr. Lee to insulate himself from liability for the alleged bribe. Gov. Br. at 10–11. The government alleges without detail that unspecified others engaged in unspecified similar activity, but does not offer evidence tying Mr. Lee or 940 Hill's alleged intentions to the purported single scheme the governments was supposed to prove. Rather, it appears the government's argument is that similar methods are evidence of a common objective, a contention which is obviously unsupportable (and which the government understandably stops short of articulating). The government's evidence taken as true establishes at most only that Mr. Lee sought to avoid exposure of his own purported wrongdoing, not that he was trying to shield some larger "enterprise."

In short, the government offers no evidence to demonstrate that Mr. Lee or 940 Hill were aware of the supposedly corrupt acts of other developers, that their benefits were probably dependent upon the success of the entire operation, or that they shared a common goal. The government's offer of proof is nothing more than confirmation that the government has no evidence to support the notion of a single, overarching scheme of which Mr. Lee and 940 Hill were a part. Rather, the evidence demonstrates at most that Mr. Lee and 940 Hill were part of a scheme to obtain the necessary approvals to develop the property they owned at 940 S. Hill, and nothing more.

### 3. The government's other "evidence" consists of naked assertions that fail to support its "single scheme" theory.

Apart from the items addressed above, the government offers a few unsupported assertions without citations to evidence. These do not support the claim that Mr. Lee and 940 Hill were part of a larger, single scheme involving more than the property at 940 S. Hill.

First, the government notes that the public officials who participated in the supposed single scheme "stayed constant"; that Mr. Lee and 940 Hill had contact with Huizar and Esparza related to two projects in CD-14;[4] and that Mr. Lee received an offer letter for the purchase of 940 Hill that Chiang signed as a broker.[5] Gov. Br. at 12–13. Of course, the fact that Huizar, Esparza, Kim, or Chiang were "constant" participants in the multiple schemes only shows that the four of them may have participated in a single scheme together—not that Mr. Lee or 940 Hill also participated in a broader scheme involving other developers.[6]

Second, the government reiterates its assertion that "the developers" had an interest in "corrupting Huizar" and "being part of a corrupt network." Gov. Br. at 14–15, 25. Tellingly, the government cites no evidence regarding Mr. Lee or 940 Hill in relation to these assertions, but rather points to communications involving Huizar, Chan, Esparza, Kim, and Chiang in which they discuss how they could

---

[4] Again, the government fails to distinguish the fact that 940 Hill as an entity had no interest in any other property or project.

[5] Although the government asserts that Mr. Lee "was in negotiation with" Chiang regarding this sale, it offers no evidence of that beyond an offer letter from Chiang's client to Mr. Lee. There is no evidence of any response by Mr. Lee to that letter, or any indication that the offer was related to any broader scheme.

[6] There is no evidence that Mr. Lee or 940 Hill ever had contact with Huizar and Esparza about anything improper; indeed, just one page earlier the government alleges Mr. Lee used Kim as an "intermediary" for such contacts.

benefit "Chinese developers"—i.e., not Mr. Lee, a Korean immigrant. Again, while this evidence may support the existence of a single scheme involving Huizar, his staffers, and his political allies, it does not suggest the existence of a single scheme involving multiple *developers*, especially not Mr. Lee. Moreover, this is exactly the type of argument that supports severance: a general assertion about "developers" that the jury will be misled to believe applies to Mr. Lee and 940 Hill even though there is no evidence to support such application.

Finally, the government asserts that the alleged bribes were "necessary for the entire enterprise to survive and thrive." Gov. Br. at 18. First, as discussed, there is again no evidence that Mr. Lee or 940 Hill had any intention or desire to help the "enterprise … survive and thrive." Second, there is no evidence that the alleged 940 Hill bribe was in fact necessary for such survival or thriving.[7] The government points only to an alleged payment by Huang in 2014 that it says helped Huizar win reelection in 2015, but says nothing about Mr. Lee and 940 Hill. And even if Huizar and his co-conspirators had demanded the bribe from Mr. Lee and 940 Hill in order to maintain their enterprise, it does not mean that Mr. Lee or 940 Hill intended to or even knew that was the purpose when they supposedly paid the bribe. Rather, as discussed, the most that can be possibly said about the government's evidence is that Mr. Lee and 940 Hill intended to secure approval of their development plans at 940 S. Hill, and nothing more.

*  *  *

Ultimately, after presenting all of its evidence on the topic, the government has failed to prove with *any* evidence—much less by a preponderance of the evidence—that Mr. Lee and 940 Hill ever communicated with, coordinated with, or even *knew about* any of the other developers who the government alleges

---

[7] Notably, even the government does not allege that any of the money went to Huizar or "Relative 1" or was to be used to fund their campaigns.

participated in a single scheme. Nor is there evidence that Mr. Lee's alleged goal—the approval of development at 940 S. Hill—was ever dependent on the alleged actions of any other developers, or that he somehow benefited from their alleged actions. There is no evidence that Mr. Lee had any interest in keeping Huizar or his family in office, or ever thought that the money he supposedly provided to Kim would be used to assist those efforts. As alleged in the FSI, Mr. Lee's only involvement in this case was when he allegedly sought assistance from the elected representative of the district in which he wanted to complete a project, and Huizar demanded a bribe as a condition of that assistance. The government has utterly failed to establish that Mr. Lee and 940 Hill were aware of, or benefited from, the actions of other developers, and the Court should reject the government's contention that Mr. Lee and 940 Hill were involved in a single scheme that extended beyond obtaining an entitlement for 940 S. Hill.

### B. The Government "Sur-reply" Legal Arguments Should Be Disregarded, But in Any Event Also Fail to Support Joinder

Although the Court ordered that the government "narrowly tailor and limit the Offer of Proof only to the *evidence* relevant to the existence of a single scheme and Defendants 940 Hill, LLC, Dae Yong Lee, and Shen Zhen New World I, LLC's participation in that scheme" (ECF No. 330 at 2), the government uses its submission to make lengthy legal arguments, most of which were previously considered and summarized by the Court at the January 7 hearing. The Court should therefore disregard and/or strike section III of the government's brief, which amounts to an unauthorized sur-reply, in its entirety.[8]

---

[8] The government also asks that, in the event the Court rejects their offer of proof, that it be given an opportunity "to further brief that a joint trial with limited instructions would cure the limited risk of prejudicial spillover." Gov. Br. at 25. The government has already briefed this topic at length. *See* ECF No. 228 at 16–20. The Court should reject this request for a *third* bite at the apple to repeat its meritless

Mr. Lee and 940 Hill incorporate by reference their prior briefing and will not similarly engage in lengthy legal argument here absent further order from the Court.[9] Two cases cited by the government are worth briefly addressing, however.

First, the government relies at length on *United States v. Singh*, 979 F.3d 697, 708 (9th Cir. 2020), where an owner of a media platform that provided technological services for political candidates was charged with a conspiracy to commit campaign finance fraud in the 2012 San Diego mayoral elections. The defendant argued he was not part of the conspiracy because "his only objective was to make money for his social media business, not to influence elections." *Id.* at 722. His argument was rejected, however, based on *evidence* demonstrating that he was interested in the success of the mayoral campaigns more broadly, and *evidence* demonstrating that he switched between different candidates at the same time as other coconspirators, suggesting that he shared in the common goal of electing certain candidates. *Id.* at 722–23. Here, at least as to Mr. Lee and 940 Hill, there is no *evidence* demonstrating their alleged bribe was in any way tied to some interest in the success of Huizar or his family's political fortunes, and no *evidence* demonstrating that they shared any common goal with any of the other developers who allegedly engaged in misconduct. Thus *Singh* is relevant only in that it shows what the government's evidence *should* look like in order to include Mr. Lee and 940 Hill in the alleged single scheme that extends beyond 940 S. Hill.

Second, the government cites *United States v. Perry*, 550 F.2d 524, 528 (9th Cir. 1977), to argue that it does not need to show "that each of the defendants worked directly with each other nor even show[] that all of the defendants knew

---

claim that limiting instructions would insulate Mr. Lee from the grave prejudice a joint trial would cause him.

[9] Should the Court intend to rely on any of the legal arguments to deny the severance motion, Mr. Lee and 940 Hill do request an opportunity to brief the matter.

each other." Gov. Br. at 21. But the government omits language in the same paragraph stating that to establish a single conspiracy,

> [T]he government must produce enough evidence to show that each defendant knew or had reason to know the scope of the [conspiracy], and had reason to believe that their own benefits derived from the operation were dependent upon the success of the entire venture.

*Perry*, 520 F.2d at 528–29. That is exactly the evidence the Court asked for here, and that is the evidence that the government has failed to produce because it does not exist.

### III.    CONCLUSION

The government's submission only reinforces the need for a separate trial for Mr. Lee and 940 Hill. The Court should grant Mr. Lee and 940 Hill's motion for severance.

DATED:  February 4, 2022

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Ariel A. Neuman*
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee