Ariel A. Neuman - State Bar No. 241594
 aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
 rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,, <br><br> Plaintiff, <br><br> vs. <br><br> JOSE LUIS HUIZAR, et al., <br><br> Defendant. | CASE NO. 20-CR-0326-JFW <br><br> **DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE RELATED TO 2014 INVESTIGATION AND SEIZURE** <br><br> Date:   May 16, 2022 <br> Time:   8:00 a.m. <br> Crtrm:  7A <br><br> Assigned to Hon. John F. Walter |

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY NOTE ................................................................................. 1

II.   ARGUMENT ............................................................................................... 1

      A.    Legal Framework ...................................................................... 4

      B.    Evidence of the Seizure Should Not Be Admitted ................................. 5

            1.    The Proposed Evidence Is Not Admissible Under 404(b) .......... 5

            2.    Evidence of the Search/Seizure Should be Excluded Under Rule 403 ............................................................................... 7

      C.    Justin Kim's Testimony About the 2014 Seizure Should Also Not Be Admitted ......................................................................... 9

III.  CONCLUSION ......................................................................................... 12

GOVERNMENT'S OPPOSITION ......................................................................... 14

I.    INTRODUCTION ..................................................................................... 14

II.   RELEVANT FACTUAL BACKGROUND ................................................... 14

III.  ARGUMENT ............................................................................................. 17

      A.    Applicable Law ....................................................................... 17

      B.    Defendants' Possession of $4.2 Million in Cash Two Years Before the Charged $500,000 Cash Bribe Agreement Is Admissible Under 404(b) ......................................................... 18

      C.    The Evidence Is Not Unduly Prejudicial .................................. 23

IV.   CONCLUSION ......................................................................................... 26

DEFENDANTS' REPLY ..................................................................................... 27

I.    INTRODUCTION ..................................................................................... 27

II.   ARGUMENT ............................................................................................. 27

      A.    Mr. Lee's Purported Statement to Justin Kim ......................... 28

      B.    Presence of Cash .................................................................... 28

      C.    Photographs ............................................................................ 29

      D.    Mr. Lee's Statements .............................................................. 30

III.  CONCLUSION ......................................................................................... 30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Dubria v. Smith*,
  224 F.3d 995 (9th Cir. 2000) ................................................................... 24

*United States v. Bibo-Rodriguez*,
  922 F.2d 1398 (9th Cir. 1991) ................................................................ 18

*United States v. Ganoe*,
  538 F.3d 1117 (9th Cir. 2008) ................................................................ 23

*United States v. Garcia-Schober*,
  64 F.3d 667 (9th Cir. 1995) ................................................... 19, 24, 28

*United States v. Hadley*,
  918 F.2d 848 (9th Cir. 1990) ................................................................ 22

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ......................................................... 23, 26

*United States v. Hodges*,
  770 F.2d 1475 (9th Cir. 1985) .................................................................. 8

*United States v. Iverson*,
  162 F.3d 1015 (9th Cir. 1998) ................................................................ 18

*United States v. Jones*,
  982 F.2d 380 (9th Cir. 1992) ........................................................... 20, 21

*United States v. Kenny*,
  462 F.2d 1205 (3d Cir. 1972) ................................................................ 21

*United States v. Livoti*,
  196 F.3d 322 (2d Cir. 1999) .................................................................. 25

*United States v. Mehrmanesh*,
  689 F.2d 822 (9th Cir. 1982) ................................................................ 18

*United States v. Miller*,
  874 F.2d 1255 (9th Cir. 1989) .......................................................... 4, 18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Ono,*
   918 F.2d 1462 (9th Cir. 1990) ................................................................. 22

*United States v. Parker,*
   549 F.2d 1217 (9th Cir. 1977) ................................................................. 26

*United States v. Patterson,*
   819 F.2d 1495 (9th Cir. 1987) ................................................................. 23

*United States v. Romero,*
   282 F.3d 683 (9th Cir. 2002) ..................................................................... 5

*United States v. Spillone,*
   879 F.2d 514 (9th Cir. 1989) ................................................................... 22

*United States v. Tramunti,*
   513 F.2d 1087 (2d Cir. 1975) ............................................................ 21, 25

*United States v. Vo,*
   413 F.3d 1010 (9th Cir. 2005) ................................................................. 22

**Other Authorities**

Circuit Rule 36-3 ............................................................................................. 28

Fed. R. Evid. 401 .................................................................................... 12, 20

Fed. R. Evid. 403 .................................................................................... *passim*

Fed. R. Evid. 404(b) ............................................................................... *passim*

Fed. R. Evid. 609 ............................................................................................... 8

Fed. R. Evid. Rule 403 .................................................................................... 18

# **TABLE OF EXHIBITS**

| Ex. | Description | Page(s) |
|-----|-------------|---------|
| 1. | Government's Rule 404(b) Notice dated February 1, 2022. | 2, 9 |
| 2. | Excerpt of the government's draft proposed translation of its recording of a March 27, 2019 conversation between Mr. Lee and Justin Kim | 2 |
| 3. | Document produced by the government with the beginning Bates number Casino_037225 | 4, 7, 29 |
| 4. | Email dated February 25, 2022 from Veronica Dragalin to Neuman. | 9 |
| 5. | Document produced by the government with the beginning Bates number Casino_0370683 | 11 |
| 6. | Subpoena served on 940 Hill LLC on March 5, 2019. | 12 |
| 7. | September 10, 2014 Photographs of 940 HILL Office at 1020 S. Crocker Street, Los Angeles, California. | 15 |
| 8. | Report of the execution of the September 10, 2014 search warrants at 1020 S. Crocker Street, Los Angeles, California. | 15 |
| 9. | Report of the seizure of cash on September 10, 2014. | 15 |
| 10. | Report of the interview of defendant DAE YONG LEE on September 10, 2014 | 15, 20 |

1
2

## DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE RELATED TO 2014 INVESTIGATION AND SEIZURE

3   **I.   PRELIMINARY NOTE**

4   As reflected below, after Mr. Lee and 940 Hill submitted their portion of this

5   joint motion *in limine*, the government indicated it is no longer seeking to introduce

6   certain evidence related to the warrant and seizure discussed herein. The

7   government's revised position is that it intends to seek admission of the following:

8       (1)   The fact that in September 2014, defendant LEE possessed
9             approximately $4.2 million in cash in safes;

10      (2)   Trial Exhibit 152, a compilation of 17 photographs from September
              2014, showing the outside and inside of the office, three safes with
11            large sums of cash, and various money counters;

12      (3)   Mr. LEE's purported admissions to law enforcement that 15-20% of his
13            customers paid in cash, the amount of cash he kept on hand at the office
14            fluctuated between one to three million dollars, and he was the only
              person with access to the safes in the Office;
15
16      (4)   Mr. Lee's purported statement to Justin Kim that Mr. Lee was audited
17            as a result of that 2014 law enforcement presence, and that Mr. Lee
              "got away" with some unidentified crime because of law enforcement's
18            mistakes.

19   Mr. Lee and 940 Hill LLC oppose admission of that evidence for the reasons

20   indicated below.

21   **II.   ARGUMENT**

22   On September 10, 2014, as part of an investigation unrelated to the instant

23   matter, the government executed dozens of search warrants in the Fashion District in

24   downtown Los Angeles, targeting businesses allegedly involved with "black market

25   peso exchange" money laundering activities for Mexican drug cartels. As part of

26   that investigation, the government executed a search warrant at Defendant Dae

27   Yong Lee's wholesale fashion accessory business (JOIA Accessories) in downtown

28   Los Angeles and seized over $4 million in cash mainly from a safe located at the

business. The government never accused Mr. Lee or anyone associated with him of any wrongdoing in relation to that investigation or the cash, and in 2021—after the instant case was filed and in apparent recognition of the fact that the money was lawfully obtained—the government returned all of the cash it seized from JOIA.

The government has now provided notice that, purportedly pursuant to Federal Rule of Evidence 404(b), it intends to offer two categories of evidence related to the 2014 investigation at the trial of this matter: 1) testimony and photographs from an FBI agent who participated in the search and seizure, and 2) testimony by cooperating defendant Justin Kim about statements supposedly made to him by Mr. Lee about Mr. Lee's "prior interactions with law enforcement."[1] Declaration of Ariel A. Neuman ("Neuman Decl.") Ex. 1 (Feb. 1, 2022 Dragalin Letter). The government wants to offer this evidence supposedly to show that Mr. Lee had access to large amounts of cash, that it was his "custom" to engage in large transactions, and that he knew law enforcement could audit his company's books. *Id.*

The parties have conferred repeatedly on this matter and agree that the Court should resolve two issues regarding this evidence: 1) whether the jury should hear evidence that law enforcement seized $4.2 million in cash from JOIA in 2014, and 2) what, if anything, Justin Kim should be permitted to say about Mr. Lee's purported statements to him about the seizure. If the Court resolves this Motion in

---

[1] The government indicates that it also intends to offer the recordings of Mr. Lee and Justin Kim speaking on March 20 and March 27, 2019. In one of those recordings, in response to Kim's question as to whether Lee is scared, Lee responds that he was scared in "September 2014" but does not elaborate. He makes no other reference to the 2014 seizure. *See* Neuman Decl. Ex. 2 (Draft Transcript of Translation of March 27, 2019 recording) at 13-15. Mr. Lee does not in this Motion object to the introduction of those recordings—he expects to raise other objections at a later time—but does object to any additional commentary Justin Kim would offer about the statements on the recordings regarding the reference to "September 2014."

Mr. Lee's favor, the evidence would be excluded. If the Court resolves this Motion in the government's favor, based on a prior agreement through which Mr. Lee forwent filing a motion to suppress the 2014 search warrant, the parties would enter into a stipulation in lieu of the FBI agent's testimony and photographs stating 1) in September 2014, law enforcement seized approximately $4.2 million in cash from JOIA pursuant to lawful process; 2) Mr. Lee was never charged with any wrongdoing in relation to that cash; 3) the money was returned to JOIA in 2021. Justin Kim would testify as permitted by the Court.

Mr. Lee and 940 Hill respectfully submit that none of this evidence is admissible in any form under Rule 404(b), and in any event, the unduly prejudicial nature of the offered evidence—as well as the jury confusion it would cause and undue time it would consume—far outweighs any probative value it may have. The evidentiary value of the seizure is minimal to nonexistent: the fact that, on a single instance in 2014, federal investigators found and seized $4.2 million in cash does not make it more likely that Mr. Lee knowingly and intentionally paid a cash bribe to Jose Huizar or any other public official in 2017.

More importantly, this evidence is highly prejudicial and misleading. Testimony and evidence about a prior federal investigation of the defendant, including a law enforcement seizure, will only implant in the jury's mind the inaccurate suggestion that Mr. Lee is a repeat criminal who has faced more than one federal law enforcement investigation. That prejudice cannot be adequately addressed by eliciting the fact that no charges were filed and the money was returned, as that would only suggest to some jurors that Mr. Lee "got away with it" before, and perhaps sway them to convict in this case on the theory that they should not let it happen again. Further, jury time will be wasted as counsel needs to contextualize and defend what occurred in 2014. Accordingly, the evidence should be excluded.

This is especially true because the government has better, alternative sources

1  for the points it wants to make and which it argues the 2014 evidence establishes.

2  First, to establish that Mr. Lee had access to large amounts of cash from his

3  business, the government has the testimony of his employee, Jason Kang, who is on

4  the government's witness list and who told the government that Mr. Lee keeps a

5  safe in his office at JOIA and that Mr. Kang has "observed stacks of cash on Lee's

6  desk" at the JOIA office. Neuman Decl. Ex. 3 (Casino_0372250) at 2. Mr. Kang

7  also told the government that Mr. Lee told him that Mr. Lee "paid $500,000 in cash

8  as a consulting fee for entitlements . . . out of his personal cash."[2] *Id.* at 9. Second,

9  to show that Mr. Lee knew his company books could be audited, the government has

10  a recording of him talking about being "hit by the IRS" several times, and a

11  subpoena he received asking for records of company financial records. Thus the

12  2014 seizure evidence is cumulative and offers insufficient probative value to

13  outweigh its unduly prejudicial nature.

14      Moreover, at this time, Mr. Lee does not anticipate disputing that he had

15  access to sufficient cash to make a $500,000 cash payment, or that he knew the

16  government could audit his company's books.[3] Accordingly, the government's

17  evidence regarding the 2014 seizure is irrelevant, unnecessary, cumulative, and

18  unduly prejudicial.

19      **A.   Legal Framework**

20      "Rule 404(b) evidence of other crimes or wrongs is inadmissible where its

21  only relevance is to show criminal disposition." *United States v. Miller*, 874 F.2d

22  1255, 1268 (9th Cir. 1989) (citation and punctuation omitted). The Ninth Circuit has

23  articulated a four-part test to determine the admissibility of evidence pursuant to

24

25  [2]   The bribe allegedly paid by Mr. Lee was purportedly a $500,000 cash bribe

26  related to obtaining an entitlement for the project at 940 S. Hill.

27  [3]   Mr. Lee reserve the right to change tactics as the trial proceeds, but understands

28  that doing so may open the door to evidence that the Court otherwise excludes.

Rule 404(b). Such evidence "may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (citations and punctuation omitted). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Id.* (citations and punctuation omitted).

### B.    Evidence of the Seizure Should Not Be Admitted

#### 1.    The Proposed Evidence Is Not Admissible Under 404(b)

The government contends that evidence of the seizure is admissible "to prove opportunity in that it establishes that Lee had ready access to large sums of cash at his business location, and that it was his custom to deal in large quantities of cash." Ex. 1 at 2. In fact, nothing about the 2014 seizure "establishes" that Mr. Lee had "ready access" to "large sums of cash" once the government effected its seizure. It is undisputed that in 2017, at the time of the alleged bribe payments, Mr. Lee *did not* have the cash in question because it was in the government's hands. As to whether Mr. Lee might have accumulated a new large amount of cash in the interim, the seizure itself says nothing: that Mr. Lee had cash on one day in 2014 does not inform whether he had a large amount of cash in 2017. The seizure evidence does not show whether it took Mr. Lee 10 days, 10 months, or 10 years to accumulate the cash that was seized.

Nor does the 2014 seizure support the notion that it was Mr. Lee's "custom to deal in large quantities of cash." The seizure says nothing about whether Mr. Lee regularly engaged in large cash transactions. The government's evidence does not establish that Mr. Lee intended to use that cash for transactions (as opposed to depositing it in the bank, for instance), and indeed, Mr. Lee's possession of the cash only shows that he *received* cash from an unspecified number of transactions, not

that he had a "custom" of *paying others* in cash. Especially since the government recognized that this cash was not obtained from criminal activity—it was returned—the seizure evidence at most shows that Mr. Lee's business received cash from customers who purchased fashion accessories at some point prior to September 2014, and nothing else. The seizure provides no evidence that Mr. Lee himself engaged in large cash transactions.

The government also contends, without explanation, that the seizure somehow "establishes Lee's knowledge of and familiarity with law enforcement procedures of auditing business and accounting records," such that it is "admissible to prove knowledge, plan, absence of mistake and lack of accident with respect to Lee's [alleged] decision to alter 940 Hill accounting records to obstruct law enforcement." Ex. 1 at 2. There is no basis for the contention that experiencing a single seizure of cash would inform Mr. Lee about law enforcement procedures for auditing business and accounting records. The proposed evidence has nothing to do with auditing practices. Nor can it be plausibly asserted that having cash seized from one's business somehow gives insight into what sort of investigative techniques law enforcement might use, other than search and seizure warrants. Nothing about the interaction in 2014 would have given Mr. Lee the insights the government suggests. Moreover, the notion that the seizure somehow informed Mr. Lee's alleged alteration of accounting records five years later is absurd; the government is not offering evidence that Mr. Lee previously altered his books to avoid government scrutiny in 2014.

Rather, this evidence will implant in the jury's mind exactly the misconception on which the government based its inappropriate 2014 seizure: that having a large amount of cash is indicative of a criminal disposition. The jury will be led to inappropriately conclude, like the government did in 2014, that the possession and use of cash as inherently suspicious. That view will be bolstered with evidence that law enforcement seized the cash precisely because having it is

1  believed to be nefarious. Furthermore, a prior law enforcement seizure would

2  cement in the jury's mind that *Mr. Lee himself has a criminal disposition*. Not many

3  people have two such interactions with federal law enforcement—first a cash

4  seizure and now an indictment. The inescapable conclusion that the jury will reach

5  is that Mr. Lee *must* be involved in criminal conduct and have a criminal

6  disposition. The jury would left to wonder who but a criminal would twice attract

7  the attention of federal law enforcement. That is exactly the type of inference that

8  makes evidence inadmissible under Rule 404(b).

9      Accordingly, evidence of the 2014 seizure is not admissible under Rule

10  404(b).

11      ### 2.    Evidence of the Search/Seizure Should be Excluded Under

12      Rule 403

13      Even if the Court finds the evidence admissible under Rule 404(b), the Rule

14  403 balancing test weighs in favor of exclusion. First, there is alternative *and better*

15  evidence to establish that Mr. Lee had access to large amounts of cash from his

16  fashion accessory business: as noted, a key employee is prepared to so testify.

17  Neuman Decl. Ex. 3 (Casino_0372250). That testimony is also not limited to a

18  period of time in the way that the 2014 seizure is limited. Second, Mr. Lee does not

19  anticipate disputing that he had access to large amounts of cash at the relevant time

20  period. Accordingly, evidence of the 2014 seizure is not necessary to support the

21  main point that the government seeks to establish.[4]

22      The evidence is not only unnecessary, but as discussed above, its probative

23  value is non-existent. On the other hand, the undue prejudice would be immense. As

24  discussed, it would establish in the jury's mind that Mr. Lee has a criminal

25  disposition, has "gotten away with it" before, and has had multiple run-ins with the

26

27  [4]   The alternative evidence the government has that Mr. Lee knew his business's

28  books could be audited is discussed *infra*.

law. Admission of evidence of prior criminal *convictions* is severely circumscribed under the rules of evidence for this very reason. *See* Fed. R. Evid. 609. Here, the government seeks to admit evidence of a prior investigation and seizure, that *did not even result in a criminal complaint*, and arguably resulted in an *exoneration* when the government returned the seized money.

Such prejudicial evidence is particularly dangerous in a case where the evidence is relatively weak. *See, e.g.*, *United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir. 1985) (error to admit evidence that has "dubious probative value" and would "make[] conviction more likely because it provokes an emotional response in the jury or otherwise tend[] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged") (internal quotations and citation omitted). Here, the only direct evidence the government has that Mr. Lee knowingly and intentionally paid a bribe is the testimony of a cooperating defendant, Justin Kim, who the government has admitted comes with significant "baggage" based on his history of lying and criminal activity. There are no contemporaneous documents to corroborate Kim's account.[5] Evidence that Mr. Lee was the subject of a prior law enforcement investigation and seizure could very well tip the scales in favor of conviction on that fact alone.

Admission of the 2014 seizure will also cause undue confusion and waste the jury's time. The jury will be confused and may well believe that Mr. Lee was under investigation for crimes *related to this case* back in 2014, and that he had a larger and longer role than even the government alleges. Trying to alleviate that confusion would only result in the jury either a) learning that Mr. Lee was in fact targeted as part of a different investigation into alleged cartel-related money laundering

---

[5]    The government believes it has circumstantial evidence to corroborate Kim's story; Mr. Lee expects such evidence will be far less compelling than the government hopes once subjected to the adversarial process.

activities, or, if given no explanation of the prior investigation, b) left wondering what heinous crime Mr. Lee engaged in that involved millions of dollars in cash but for which he escaped the claws of justice. Either would be extremely prejudicial. In addition, all of this would result in an undue consumption of time. Mr. Lee's counsel will have to introduce testimony to contextualize the 2014 seizure, establish its irrelevance to this case, establish the importance (and rarity) of the fact that law enforcement actually returned the money, and unwind the prejudicial inferences that would inevitably follow the admission of such evidence.

All of this can be avoided by excluding evidence of the 2014 seizure and simply having Mr. Kang (or any other witness) testify that Mr. Lee had access to significant amounts of cash, a point which counsel does not expect to be in dispute. This is exactly the scenario where Rule 403 weighs in favor of exclusion.

### C.    Justin Kim's Testimony About the 2014 Seizure Should Also Not Be Admitted

The government also intends to have its cooperating defendant Justin Kim testify about Mr. Lee's purported statements to him about the search and "Lee's prior interactions with law enforcement." Neuman Decl. Ex. 1 at 2. The government has since confirmed that it intends to rely on the following excerpt from a 302 of a January 2020 interview of Kim:

> LEE's store was raided by the FBI in 2014 for the black peso investigation ( https://www.justice.gov/usao-cdca/pr/large-scale-law-enforcement-effort-targets-downtown-los-angeles-businesses-linked-money). LEE had more than $1 million seized during the raid from a safe at JOIA ACCESSORIES. LEE told KIM about the event and initially said only a couple thousand dollars were seized. LEE later told KIM it was a couple million. Many of the businesses in the fashion district were large cash businesses. LEE was the person with the most cash on hand. There was a lot of fraud and tax evasion that occurred in the fashion district and Koreatown. LEE told KIM that the government did not know what they were doing because LEE was audited and never got in trouble.

Neuman Decl. Ex. 4 (Feb. 25, 2022 Dragalin Email).

The government contends that the evidence is relevant to prove "corrupt intent, since it shows Lee confided in Kim by disclosing his prior encounters with law enforcement to encourage Kim to continue concealing their corrupt agreement from law enforcement, thereby evidencing that Lee and Kim had previously entered into a corrupt agreement," and "demonstrates knowledge of how law enforcement investigations work, including that law enforcement can audit accounting records, [and is] therefore relevant to prove intent, knowledge, plan, absence of mistake, and lack of accident regarding Lee's [alleged] decision to alter 940 Hill accounting records." Ex. 1 at 2.

Mr. Lee's purported statements to Kim about the 2014 seizure should be excluded for the reasons set forth above in the first instance. However, Kim's proposed testimony is even more prejudicial than the other proposed evidence: it would tie the seizure to the black market peso investigation, *falsely* inform the jury that Mr. Lee was the person with the most cash on hand,[6] and *falsely* inform the jury that Mr. Lee was engaged in "fraud and tax evasion" but got away with it. Defending these claims would result in even further consumption of time and jury confusion: counsel would be engaged in the defense of accusations which even the government has not raised, which are not relevant to this case, and which go back almost a decade (well outside the applicable statute of limitations). In addition, Kim likely has no knowledge that the money was returned by the government, and so the defense would need to establish and explain that fact.

While the government suggests this is evidence relevant to Mr. Lee's purported efforts to convince Kim to conceal their agreement, there is in fact no

---

[6]   In fact, other businesses were found to have tens of millions of dollars in cash on hand that day. *See, e.g.* https://ktla.com/news/local-news/feds-raid-l-a-s-fashion-district-in-drug-money-laundering-probe-2/ (citing then-Chief of the Criminal Division AUSA Robert Dugdale's press conference statement that "at least $35 million in cash" was found "stashed" at one location).

evidence that Mr. Lee encouraged Kim to conceal *anything*. Kim's statement was made during a January 2020 interview and *nowhere* does he says Mr. Lee mentioned the 2014 seizure as part of an effort to get Kim to conceal anything, or that Mr. Lee even engaged in such an effort. Neuman Decl. Ex. 5 (Casino_0370683). Indeed, Kim says nothing at all about when he purportedly learned this information, including whether it was before the alleged scheme at issue here ever began.

In fact, in the conversations recorded between Mr. Lee and Kim in March 2019, Mr. Lee repeatedly told Kim to "go in" and talk to law enforcement, even though Kim said Kim lied to his own lawyer and would have to tell the truth if he talked to law enforcement. There is no evidence that Mr. Lee told Kim to conceal their alleged agreement from law enforcement.[7] The only time Mr. Lee mentioned the 2014 seizure to Kim during their recorded conversations was in response to Kim's question of whether Lee is "scared," saying he was scared in 2014 (without further explanation) and would wait to see how the instant investigation developed before taking action. Ex. 2 at 13.[8]

Thus, the first purported basis for admission has no foundation; there is simply nothing to corroborate the government's contention that Mr. Lee told Kim about the 2014 seizure to convince him to conceal their relationship.

As to the second basis for admission—that it shows Mr. Lee's knowledge that law enforcement can audit accounting records—such evidence is again not in dispute and can be better established through other, less prejudicial means. First, in

---

[7] Kim has claimed at times that during these conversations, Mr. Lee told him to lie about the amount of money involved in the alleged bribe. The recordings refute this claim, and in any event, this is different than saying the payment did not occur.

[8] That Mr. Lee was trying to comfort Kim during the course of this conversation is obvious from the entire context of the conversation, and explanation of the brief reference to September 2014 is not necessary if the government wants to establish that Mr. Lee was in fact trying to comfort Kim.

the government's recorded conversations, Mr. Lee told Kim, "While doing business for about 30 years, I was hit by the IRS about five- four times." Ex. 2 at 14. This is stronger evidence that Mr. Lee knew his business records could be audited by the government (as do most jurors). Second, the government can also establish such knowledge by introducing the subpoenas in this case. The government is planning to offer evidence about the subpoenas issued to Mr. Lee and his companies as part of this investigation, because the government contends that the March 5, 2019 subpoena was what led Mr. Lee to allegedly alter 940 Hill's accounting records to obstruct the investigation. That subpoena demanded "all records" regarding various expenditures by 940 Hill. Neuman Decl. Ex. 6. Thus, if there was any question in Mr. Lee's mind that 940 Hill's accounting records could be audited, it was answered with that subpoena, according to the government, which supposedly caused him to go off and alter those records. The jury does not need Kim's unduly prejudicial testimony to understand that Mr. Lee knew an audit was a possibility. In any event, Mr. Lee does not expect to dispute the commonly-known fact that law enforcement can audit a business's internal accounting records.

Based on the foregoing, the undue prejudice of Justin Kim's statements, the undue consumption of time that will be required to prove that his allegations are false, and the jury confusion that will result from this side-show, Justin Kim should not be permitted to testify about anything related to the 2014 seizure. Admitting such testimony would leave Mr. Lee would be trying to prove that he did not engage in additional crimes which the government has not charged. Not only are Kim's facts wrong, but the 2014 search has nothing to do with this case and will not tend to prove any fact relevant to this matter. It is not relevant (Fed. R. Evid. 401) and any discussion about the seizure would be unduly prejudicial, confuse the issues, mislead the jury, and cause undue delay and time wasting (Fed. R. Evid. 403).

## III.   CONCLUSION

For the foregoing reasons, Defendants Dae Yong Lee and 940 Hill, LLC

respectfully request that the Court to exclude all evidence and testimony related to the 2014 seizure of cash from JOIA.

## GOVERNMENT'S OPPOSITION

### I.   INTRODUCTION

Defendant DAE YONG LEE, a wealthy and successful real estate developer and businessperson in downtown Los Angeles, and his company, defendant 940 HILL, LLC, engaged with their hand-picked City of Los Angeles liaison, Justin Kim, in a criminal conspiracy to bribe two City officials, in return for favorable treatment in the entitlement process for their development project, the 940 Hill Project.  Defendant LEE funded this bribe with a massive amount of cash, namely, $500,000, which he gave to Kim at an office located at 1020 S. Crocker Street in Downtown Los Angeles—the headquarters of defendant LEE's corporate umbrella entity and the business office of defendant 940 HILL (the "940 HILL Office").

In support of proving these crimes, the government intends to present self-sanitized evidence of an undisputed fact: in September 2014, just two years before the start of the charged conspiracy, defendant LEE possessed an even more massive amount of cash, namely, over $4.2 million in that very same office, the 940 HILL Office.  The government seeks to admit this evidence, not to prove defendant LEE's character, but to prove "opportunity" to commit the charged crimes, as permitted under Rule 404(b).  The government's proposed circumscribed presentation of this evidence – which would be limited to defendant LEE's admissions about possession of cash and photographs of the cash and money counters and would omit reference to a law enforcement search, operation, or seizure – would not be unduly prejudicial under Rule 403, especially in light of the relevant 404(b) jury instruction that would accompany this evidence.

### II.   RELEVANT FACTUAL BACKGROUND

In September 2014, federal agents seized over $4.2 million cash from the 940 HILL Office and documented the presence of cash and money counters at the office through photographs.  Specifically, on September 10, 2014, the FBI executed a

1  federal search warrant and then a rollback warrant[9] signed by former Chief
2  Magistrate Judge, the Honorable Patrick J. Walsh, at 1020 S. Crocker Street (the
3  940 HILL Office), and discovered, photographed, and seized $4,251,097 in cash and
4  ten money counters.  *See* Ex. 8 (FBI report documenting 9/10/14 searches, including
5  items photographed and seized); Ex. 9 (FBI report documenting cash seized from
6  various businesses on September 10, 2014, including $4,251,097 cash from Joia
7  Accessories).  Trial Exhibit 152, which the government will seek to introduce at
8  trial, includes 14 photographs from the execution of the search warrant depicting the
9  outside of the Joia Accessories location, a fourth-floor conference room (Room F), a
10 fourth-floor office (Room H) containing three safes, the inside of the large safe in
11 Room H depicting bundles of cash, and photographs of seven different money
12 counters, four of which were found in Room H.  Ex. 7 [Trial Exhibit 152].
13 Defendant LEE unlocked the door to Room H and subsequently unlocked the safes
14 that contained the large sums of cash, demonstrating he was the person who
15 controlled that particular office and the safes.  Ex. 8 at 3.
16      The same day, agents also interviewed defendant LEE, with counsel present,
17 about the source of the cash.  During the interview, defendant LEE stated that
18 approximately 15-20% of his customers paid in cash.  Ex. 10 [FBI report
19 documenting 9/10/14 interview of defendant LEE] at 1.  Defendant LEE also stated
20 that he maintained cash at the business to buy materials and products for the
21 business; specifically, he stated that the amount of cash he kept on hand fluctuated
22 between one and three million.  *Id.* at 2.  Defendant LEE stated that he was the only

23 _____

24      [9] Agents obtained a rollback warrant after a K-9 officer alerted to a bag of
   United States currency in Room H (a room on the fourth floor with three safes), and
25 then alerted to two safes stacked on top of each other and a third safe in the same
   room.  *See* Ex. 8 (FBI report documenting 9/10/14 search) at 4.  The rollback
26 warrant and affidavit is over 100 pages and remains under seal.  Upon the Court's
   request, the government can make a copy available for the Court's review under
27 seal.
28

1   person who had access to the room with the safes.  *Id.* at 3.

2       On January 23, 2020, during a proffer with the government, Justin Kim stated

3   that he knew that defendant LEE's store was raided by the FBI in 2014 for the black

4   market peso investigation, and that defendant LEE had more than $1 million seized

5   during the raid from a safe at Joia Accessories.  Ex. 5 (report of 1/23/20 Justin Kim

6   interview) at 4.  According to Kim, defendant LEE told him about the raid, and

7   initially said only a couple thousand dollars were seized, but later told Kim that it

8   was a couple million.  According to Kim, many of the businesses in the fashion

9   district were large cash businesses, and defendant LEE was the person with the most

10  cash on hand.  According to Kim, defendant LEE told Kim that the government did

11  not know what they were doing because defendant LEE was audited and never got

12  in trouble.  *Id.*

13      Initially, the government intended to introduce the facts that (a) law

14  enforcement lawfully seized the $4.2 million cash from the 940 HILL Office in

15  September 2014, and (b) testimony from co-conspirator Kim that defendant LEE

16  shared these facts with him, and that he apparently withheld the same facts from his

17  940 HILL business partners, Hyuk Lim and Lucy Kim—the minority owners of

18  defendant 940 HILL.  These facts tend to support the government's theory that

19  defendant LEE and co-conspirator Kim had a unique and trusting relationship that

20  involved sharing incriminating facts distinct from what defendant LEE shared with

21  his own 940 HILL partners.  This, in turn, also supports that Kim would be someone

22  that defendant LEE would trust to bribe City officials.

23      However, after further consideration and reviewing defendants' motion, and

24  in an abundance of caution, the government now agrees to further sanitize and limit

25  the scope of the 2014 evidence it will seek to introduce in its case in chief, provided

26  defendants do not open the door in opening statement or through cross examination

27

28

of government witnesses.[10]  Specifically, the government seeks only to introduce: (i) the photographs in Trial Exhibit 152 depicting cash and money counters at the 940 HILL Office in September 2014; (ii) the fact that in September 2014, there was approximately $4.2 million cash in defendant LEE's possession at the 940 HILL Office; and (iii) defendant LEE's admissions that 15-20% of his customers paid in cash, the amount of cash he kept on hand at the 940 HILL Office fluctuated between one to three million dollars, and he was the only person with access to the room and the safes that stored that cash, without introducing that law enforcement executed a search and seized that cash.

The government also agrees not to elicit testimony from Kim regarding defendant LEE's incriminating statements to Kim about the September 2014 search, that defendant LEE "had the most cash on hand," or that "there was a lot of fraud and tax evasion that occurred in the Fashion District," but plans to introduce the excerpt of the audio recording defendants describe in their motion (which defendants do not seek to exclude in this motion *in limine*).[11]

## III.   ARGUMENT

### A.   Applicable Law

Pursuant to Rule 404(b), evidence of other crimes and bad acts is admissible if relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  The Ninth Circuit consistently has held that this rule is "one of inclusion and that other acts

---

[10] For example, by arguing in opening statement or asking questions in cross examination suggesting that defendant LEE was "never investigated before," "never previously suspected of criminal activity," or "inexperienced" or "unsophisticated when it came to government investigations."

[11] The government still intends to elicit, without reference to the search warrant, defendant LEE's admission to Kim that "the government did not know what they were doing because LEE was audited and never got in trouble." Ex. 5 at 4.

evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).  The Ninth Circuit has developed a four-part test to determine the admissibility of Rule 404(b) evidence: (1) the evidence must tend to prove a material issue in the case; (2) the acts must be similar to the offense charged; (3) proof of the other acts must be based upon sufficient evidence; and (4) the acts must not be too remote in time.  *United States v. Iverson*, 162 F.3d 1015, 1026 (9th Cir. 1998) (citing *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998)).  *See also United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400-01 (9th Cir. 1991).  After analyzing the evidence through this rubric, the Court is then to examine the evidence to determine if its probative value is substantially outweighed by the danger of unfair prejudice.  *United States v. Miller*, 874 F.2d 1255, 1268 (9th Cir. 1989); Fed. R. Evid. Rule 403.  The evidence at issue here satisfies each of the prongs established by the Ninth Circuit, and its significant probative value is not substantially outweighed by a risk of unfair prejudice.

## B. Defendants' Possession of $4.2 Million in Cash Two Years Before the Charged $500,000 Cash Bribe Agreement Is Admissible Under 404(b)

The first element of the 404(b) test is whether the evidence tends to prove a material issue in the case.  Here, the government will have to prove beyond a reasonable doubt that defendant LEE gave Kim a huge amount of cash – $500,000 – to deliver to City Officials as a bribe.  Most people have likely never seen such a large sum of cash in person, let alone fathom that someone would have ready access to such a large sum of cash to spend on a criminal endeavor.  Without evidence that defendant LEE and his business routinely had large sums of cash on hand, the jury may find Esparza's and Kim's story to be fantastical or exaggerated and ultimately find it hard to believe that defendant LEE indeed paid this large cash bribe.  The

government seeks to admit this evidence, not to prove defendant LEE's character, but to prove "opportunity" to commit the charged crimes.

The Ninth Circuit's reasoning in *United States v. Garcia-Schober*, 64 F.3d 667 (9th Cir. 1995), although an unpublished opinion without precedential value, is instructive.  At a drug conspiracy trial, the government introduced evidence that law enforcement seized $1.1 million dollars from defendant in an unrelated investigation several months *after* the charged conduct as "subsequent similar act evidence."  *Id.* at *3.  Specifically, the agent who seized the $1.1 million testified that: "(1) the agent was with the Drug Enforcement Administration; (2) the money was composed of approximately 54,000 $20 bills; (3) there were no drugs discovered in Garcia's car at the time of the seizure; and (4) the agent seized the money as a result of a positive canine alert."  *Id.* at *4.  While the Ninth Circuit concluded that this testimony went beyond the permissible scope of 404(b), it held that "***evidence of the seizure was clearly relevant to show Garcia's ability to acquire money*** which could be used to finance a cocaine transaction. The evidence both falls within the scope of Rule 404(b) and is relevant."  *Id.* (emphasis added).  The Ninth Circuit explained:

> The government alleged that Garcia was the financier of the cocaine deal it was attempting to structure through an informant. ***To be the financier of the deal, it was necessary for Garcia to be able to obtain large sums of cash. The evidence of the seizure was relevant to show that Garcia had the opportunity to acquire large sums of money and, therefore, could act as the financier*** for the cocaine transaction related to the conspiracy charge in the instant case. The district court correctly determined that this evidence was within the scope of Rule 404(b).

*Id.* (emphasis added).  Here, too, the government alleges that defendant LEE "was the financier" of the bribery agreement, and to be a "financier" of that substantial cash bribe, "it was necessary for [defendant LEE] to be able to obtain large sums of cash."  Evidence that defendant LEE possessed $4.2 million in cash in September 2014 at the 940 HILL Office is relevant to show that defendant LEE had the opportunity to acquire large sums of cash and therefore act as the financier of the cash bribe charged in this case.  The point is not that defendant LEE had this

particular cash available in 2017, but that he ran a business that gave him access to large sums of cash and that it was his custom to store large sums of cash at the 940 HILL Office.  Defendant LEE in fact admitted to agents in September 2014 that the amount of cash he kept on hand fluctuated between one and three million dollars. Ex. 10 [FBI report documenting 9/10/14 interview of defendant LEE] at 2.  In 2017, defendant remained in the same business at the same location, and that business produced significant amounts of cash receipts.

The Ninth Circuit in *Garcia-Schober* went on to note that "whether or not Garcia disputed the fact that he had the opportunity to acquire large sums of money is of no consequence in determining whether evidence of opportunity is relevant." *Id.* at *4.  Here, too, defendant argues that he "does not anticipate disputing that he had access to sufficient cash to make a $500,000 cash payment."  Nevertheless, the government has the burden to prove its case beyond a reasonable doubt, and defendants have not offered to stipulate to that fact.[12]  As the Ninth Circuit pointed out, the Advisory Committee Note to Rule 401 states: "The fact to which the evidence is directed need not be in dispute.  While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute."  Fed. R. Evid. 401, Advisory Committee's Note.  *See also United States v. Jones*, 982 F.2d 380, 383 (9th Cir. 1992) (rejecting defendant's argument that "since he did not contest the elements for which the evidence was admitted, the evidence of his prior crimes had

---

[12] Even if the defendant were to stipulate to such a fact, the government believes this would be insufficient evidence because the *amount* of cash on hand in 2017 is still very relevant to defendant's opportunity and ability to make such a massive payment as a secret bribe (and not a legitimate and documented business expense).

1   very little probative value"). "The probative value of the evidence is to be measured

2   by its tendency to make the existence of [defendant]'s knowledge of and

3   participation in the conspiracy more probable than it would be without the evidence,

4   not by how vigorously he contests the elements the evidence is admitted to prove."

5   *Id.*

6        Defendants also argue that Jason Kang, a 940 HILL employee, will testify

7   that defendant LEE had access to large amounts of cash. But Kang could not

8   estimate the amount of cash he had seen in defendant LEE's office, and certainly did

9   not claim he ever saw anything close to $500,000 in cash at the office or that

10  defendant LEE would be readily able to pay such a huge cash bribe. This Court

11  should follow the reasoning and analysis of the Ninth Circuit in *Garcia-Schober* and

12  find that evidence of the presence of $4.2 million in cash at the 940 HILL Office in

13  September 2014 is admissible under Rule 404(b).

14       Other courts have similarly admitted evidence of a defendant's possession of

15  large sums of cash in cases where it is relevant to establish the charged offense. For

16  example, in *United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975), the Second

17  Circuit explained that the possession of large amounts of cash "is similar to the

18  possession of special means, such as tools or apparatus, which is admissible to show

19  the doing of an act requiring those means." *Id.* at 1105. In other words, if a crime

20  requires the possession of large sums of cash (as payment of a large cash bribe

21  does), evidence of the possession of cash on another occasion is probative of an

22  opportunity to commit the crime. Similarly, in *United States v. Kenny*, 462 F.2d

23  1205 (3d Cir. 1972), the Third Circuit explained that "the ready availability to one

24  of the conspirators of $50,090 in cash and its transfer to another conspirator at a

25  time shortly after the period during which the conspiracy is alleged to have

26  continued, as with other evidence of large unexplained hoards of currency, tended to

27  establish the offenses charges." *Id.* at 1222.

28       The remaining three elements of the 404(b) test are also satisfied. As to the

1  second element that the prior act be similar to the offense charged, here, the

2  government will have to prove at trial that defendant LEE gave Kim $500,000 in

3  cash at the 940 HILL Office in 2017.  The prior act is sufficiently similar in that it

4  establishes defendant LEE had over $4.2 million in cash at that same location.  As to

5  the third element, proof that the other act occurred, it is undisputed that defendant

6  LEE possessed over $4.2 million in safes located at the 940 HILL Office, as

7  evidenced by the FBI's seizure of that cash pursuant to the search warrant and

8  defendant LEE's own admissions.[13]

9       As to the last element, remoteness in time, the conduct underlying defendant

10 LEE's possession of over $4.2 million in cash at the 940 HILL Office occurred in

11 September 2014, approximately two years before the offense conduct in this case,

12 which charges a bribery scheme beginning in August 2016.  The Ninth Circuit has

13 repeatedly upheld the admission of prior acts evidence that are significantly more

14 remote in time, especially where, as here, there is strong similarity.  *See, e.g., United*

15 *States v. Vo*, 413 F.3d 1010 (9th Cir. 2005) (admitting thirteen-year-old conviction);

16 *United States v. Hadley,* 918 F.2d 848, 851 (9th Cir. 1990) (ten-year-old act not too

17 remote where acts are similar); *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir.

18 1989) (prior conviction more than ten years old not too remote because similar to

19 offense charged); *United States v. Ono*, 918 F.2d 1462, 1465 n.2 (9th Cir. 1990)

20 (seven-year-old prior conviction not too remote where acts are similar).

21      Defendants contend that a law enforcement seizure of a massive amount of

22

23      [13] Defendant LEE asserts that he forwent filing a suppression motion in

24 exchange for a stipulation of facts, but there is no basis to think this Court would

25 have found the probable cause finding lacking in the search and seizure warrant

26 authorized by a former Chief Magistrate Judge Walsh, Case No. 14-MJ-1731, and

27 the rollback warrant authorized later the same day of the search warrant execution in

28 Case No. 14-MJ-1731(A).  Moreover, even in that unlikely event, there is nothing to

indicate the search warrant would not have been upheld under the good faith

doctrine.

cash from defendant's business in the same location where defendant is alleged to have provided a $500,000 cash bribe to Kim to deliver to City Officials says "nothing" about whether "Mr. Lee had ready access to large sums of cash once the government effected its seizure." (Motion at 7-8.) This overstatement is better suited for a jury argument than a ruling on admissibility. The obvious relevance is that it tends to support that defendant LEE owns a lucrative business that earns and maintains a significant amount of cash on hand. The government need not prove that defendant LEE made all the money back by the time of the bribe. The presence of $4.2 million in cash, as well as money counters, at the 940 HILL Office in September 2014 makes more probable that defendant LEE could afford and could have ready access to $500,000 in cash in 2017.

## C.   The Evidence Is Not Unduly Prejudicial

The Ninth Circuit has made clear that "[Rule] 403 favors admissibility," *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000), and that excluding evidence under Rule 403 is an "extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Patterson*, 819 F.2d 1495, 1504 (9th Cir. 1987) (cleaned up). As the Ninth Circuit explained in a case admitting evidence of the defendant's and a witness's unfavorable connection to a criminal organization:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. ***Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing***. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Hankey*, 203 F.3d at 1172 (cleaned up) (emphasis added). Further, Rule 403 does not require that a trial be "scrub[bed] . . . clean of all evidence that may have an emotional impact." *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008) (cleaned up).

In *Gracia-Schober*, the defendant argued that evidence of the seizure of $1.1 million from him in an unrelated investigation should have been excluded under Rule 403.  Specifically, the defendant argued that "the subsequent-act evidence was offered to inflame the jury and to show he had a criminal propensity and the character of a drug dealer."  64 F.3d 667, at *4.  The Ninth Circuit rejected that argument.  "The district court's careful tailoring of the subsequent-act evidence allowed before the jury combined with the repeated limiting instructions were sufficient to satisfy Rule 403, and the district court's determination that the prejudice did not outweigh the probative value of the evidence was not an abuse of its discretion."  *Id.*  In that case, "the district court gave the following limiting instruction to the jury both at the time the evidence was offered and again at the conclusion of the case: 'Now, you may consider the evidence concerning this particular act only for a limited purpose, and that is, only as it bears on the defendant's opportunity to obtain money and for no other purpose.'"  *Id.*  The government agrees that a similar limiting instruction should be given at the time the evidence is offered and at the conclusion of this case.  *See, e.g., Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact.").

The risk of prejudice to defendants here is necessarily less than traditional 404(b) cases seeking to admit prior convictions or other bad acts because the government has agreed not to elicit law enforcement's involvement in the September 2014 possession of cash.  Thus, the "other act" relates to the possession of a large amount of cash at a business, a fact that, alone, is not incriminatory; indeed, some jurors may even look upon it favorably.  This is even more true when the possession is not by some alleged drug dealer or a defendant without the means to explain the large sum of cash, but instead for a wealthy developer who works on many properties worth tens of millions of dollars and admits his business generates lots of cash.  Moreover, evidence also should "not be excluded as unduly prejudicial

when it is not more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999).   When limited to a handful of photographs and in combination with a limiting instruction, the evidence is not unduly prejudicial.  *See Tramunti*, 513 F.2d at 1105 ("The argument that so much cash was so sensational, inflammatory and prejudicial as to outweigh its relevancy we find unimpressive."). In *Tramunti*, the government introduced photographs of the money, not the cash itself in the courtroom, leading the Second Circuit to conclude: "[t]he fact that the sum of money was considerable is not so remarkable in this day and age as to make it per se inadmissible." *Id.*

Trial Exhibit 152 is not inflammatory when presented as photographs of the 940 HILL Office in September 2014, without the mention that the photographs were taken by law enforcement.  The first five pages of Exhibit 152 show the outside and inside of the office and are completely innocuous.  The government expects that several trial witnesses, including Jason Kang and Justin Kim, will be able to authenticate the photographs as accurately depicting the 940 HILL Office (even in 2017), including the presence of three large safes. Ex. 7 [Trial Ex. 152] at 5.  Pages 6 through 8 are photographs of the inside of the large safe with cash inside.  The photographs of the cash are relevant because they show that defendant LEE seems to store his cash in a particular way, with rubber bands holding together what appear to be $10,000 stacks of $100 bills.  The photographs of the cash Esparza received from Kim on February 10, 2017 and March 14, 2017, similarly depict $10,000 stacks of $100 bills, some of which are held together with rubber bands.  *See* Ex. 1 [Trial Ex. 91] to Motion to Exclude Esparza Notes.  Although storing large sums of cash in this way is not particularly unique, it is unusual and relevant that defendant LEE stored a large sum of cash at the 940 HILL Office, bundled in the same way as the Esparza cash.  Most people store money at the bank, not in $10,000 stacks in an office with minimal security.  The photographs of the September 2014 cash are therefore relevant.  Lastly, pages 9 through 14 are photographs of seven money

counters at the 940 HILL Office location, which tend to prove that defendant LEE's business was a high-cash business requiring the use of multiple money counters (and corroborate witness statements regarding the same), again making it more likely that defendant LEE had ready access to $500,000 cash in 2017.

Any prejudice defendant LEE's possession of cash and money counters could create would not substantially outweigh its probative value. *See United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) (Rule 404(b) evidence "is not rendered inadmissible because it is of a highly prejudicial nature. . . . The best evidence often is."). Defendants' ready access to a large sum of cash is not being "dragged in by the heels for the sake of its prejudicial effect," *Hankey*, 203 F.3d at 1172; it is offered to help explain that defendants had an opportunity to commit this crime, meaning he could afford to pay this bribe plus have ready access to millions of dollars in cash at their business office, the same location where the government alleges defendant LEE gave Kim the $500,000 cash bribes to help ensure defendant's business continued success.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court find that the following evidence is admissible at trial: (1) the fact that in September 2014, defendant LEE possessed approximately $4.2 million in cash at the 940 HILL Office in safes; (2) Trial Exhibit 152, a compilation of 17 photographs of the 940 HILL Office from September 2014, showing the outside and inside of the office, three safes with large sums of cash, and various money counters; and (3) defendant LEE's admissions that 15-20% of his customers paid in cash, the amount of cash he kept on hand at the 940 HILL Office fluctuated between one to three million dollars, and he was the only person with access to the safes in the 940 HILL Office.

# **DEFENDANTS' REPLY**

## I.    INTRODUCTION

The government has now rightly recognized that evidence of the 2014 search and seizure would be unduly prejudicial, and claims to be prepared to offer only a "sanitized" version of the evidence.  But the government's revised position regarding the 2014 evidence is less "sanitized" than it appears at first glance, and while it is *less* prejudicial than originally contemplated, the new proposed evidence should nonetheless be precluded.

## II.    ARGUMENT

Despite the government's agreement not to reference the 2014 search and seizure, two of the four categories of evidence it still seeks to admit would require the testimony of a law enforcement agent, largely nullifying its supposed "sanitization."  That is, only law enforcement agents can authenticate the photographs of cash and money counters found on that day in September 2014; neither Justin Kim nor Jason Kang was present.[14]  Likewise, only law enforcement agents can testify about Mr. Lee's purported statements regarding customer payments, cash on hand, or access to the safe; he made those statements in an interview with agents.  Accordingly, even under the government's revised position, the jury will still learn that law enforcement was present, took photographs, and interviewed Mr. Lee.  For all of the reasons discussed in the Motion, this would be unduly prejudicial, and would require counsel to spend time "unringing" that prejudicial bell by eliciting that Mr. Lee was not arrested and was not charged with any wrongdoing—the very thing the government says might "open the door" to more extensive evidence relating to the 2014 cash seizure.

---

[14]  Those two witnesses *could* authenticate the first five photographs in Ex. 7 (Trial Ex. 152), but those are not objectionable in any event, as they do not depict money or money counters.

1   Moreover, the government's revised evidence would leave the misimpression

2   that Mr. Lee still possessed the $4.2 million found in 2014 and perhaps used it to

3   pay the alleged bribe.  Of course he did not because it was seized by law

4   enforcement.  But Mr. Lee would be left in a catch-22: either allow the

5   misimpression to stand, or seek to correct it by admitting the exact evidence that

6   even the government now recognizes is unduly prejudicial (i.e., that it was seized).

7   The government should not be permitted to force Mr. Lee into a double-bind

8   through its purported "sanitization," especially when the possession of that cash is

9   irrelevant to this case.

10   **A.    Mr. Lee's Purported Statement to Justin Kim**

11   Buried in footnote 12, the government notes that it would elicit from Justin

12   Kim that Mr. Lee was audited as a result of that 2014 law enforcement presence,

13   and that Mr. Lee "got away" with some unidentified crime because of law

14   enforcement's mistakes.  This is pure propensity evidence, and the government

15   offers no argument as to why it is relevant or admissible under 404(b).  The

16   evidence should be excluded for the reasons discussed in the Motion; the statement

17   says nothing about the instant charged offenses or Mr. Lee's knowledge, intent,

18   opportunity, etc.  It would also introduce to the jury the very fact that the

19   government agrees to sanitize: the Mr. Lee was subject to law enforcement

20   investigation based on the 2014 cash.  Accordingly, it is unduly prejudicial as well.

21   **B.    Presence of Cash**

22   As to the presence of the cash, the government relies largely on a single,

23   unpublished case—*United States v. Garcia-Schober*, 64 F.3d 667 (9th Cir. 1995) –

24   which it is not permitted to cite under Circuit Rule 36-3 and which has no

25   precedential value.  The Court should not accept the invitation to consider the case

26   or the government's attempt to apply it here.  In any event, in that case the

27   government apparently did not have what the government has here: a witness—

28   Jason Kang, one of the defendant's employees—who has told the government and is

1  expected to testify that Mr. Lee had access to large stacks of cash in his office on a

2  regular basis (i.e., during the relevant time period relevant to this case and not three

3  years earlier), and that Mr. Lee told him that Mr. Lee "paid $500,000 in cash as a

4  consulting fee for entitlements . . . out of his personal cash." Neuman Decl. Ex. 3

5  (Casino_0372250) at 2 and 9.  That is, here, the government has better, more

6  relevant, and direct evidence to prove the point it seeks to establish, which counsel

7  does not anticipate challenging at trial.  In light of Mr. Kang's testimony (which

8  corroborates Justin Kim, the very thing the government says it is concerned about),

9  the government does not need to present unduly prejudicial 2014 evidence to

10  demonstrate opportunity.

11      **C.     Photographs**

12      The photographs should be excluded for the same reasons, but they are even

13  less relevant and more prejudicial.  They are also cumulative of Jason Kang's

14  testimony.  The government contends that the 2014 photographs showing how cash

15  was stored in the JOIA office somehow tie Mr. Lee to Esparza's photographs of

16  cash because they were stored the same way.  But the government's concession that

17  "storing large sums of cash in this way is not particularly unique" is fatal to its

18  argument and only reinforces the merits of the Motion; the probative value of the

19  evidence is non-existent, and is far outweighed by the undue prejudice and likely

20  confusion.  The jury will be led to conclude that because they look the stacks look

21  the same they must be the same, even though by the government's admission such

22  an inference is not fair.  And the only way for Mr. Lee to discourage that inference

23  would be to introduce evidence that the cash had been seized by the government and

24  was in its possession in 2017—exactly the evidence that the government has now

25  agreed not to introduce.  The reality is, the government wants these photographs for

26  one thing only: their shock value.[15] That is improper, especially when the

27  _____

28  [15]  As the government writes in Opposition, "Most people have likely never seen

1  introduction of the photographs would cause all of the undue prejudice discussed
2  above and are not directly relevant to the charges in this case.

3      **D.    Mr. Lee's Statements**

4          The purported statements that Mr. Lee made to a law enforcement officer
5  about cash at his business, cash on hand at the JOIA office, or his access to safes,
6  are not in and of themselves objectionable.  The problem is that, as discussed above,
7  the government can only admit this evidence through a law enforcement officer.
8  For the reasons discussed above, such testimony would open the door to the very
9  problematic evidence that the government has now recognized is unduly prejudicial.
10 The jury would be left to speculate why Mr. Lee was having any interaction with
11 law enforcement in 2014, suggesting that he was involved in some other criminal
12 activity.  Accordingly, it should be excluded.

13 **III.   CONCLUSION**

14         The government's Opposition—in which it refers to Mr. Lee's office at JOIA
15 as "the 940 HILL Office"—demonstrates the confusion and prejudice that will result
16 from admission of any evidence regarding the 2014 cash.  The office in question is
17 Mr. Lee's office at JOIA, and was searched as a result of a search warrant directed
18 at JOIA.  It is not and has never been "the 940 Hill Office."  The Opposition's
19 conflation of that fact is just an example of the type of undue prejudice and
20 confusion that will result from admission of the evidence.  That prejudice, waste of
21 time, and confusion, would be compounded by law enforcement officer testimony, a
22 suggestion that Mr. Lee "got away" with some crime before, and photographs of
23 irrelevant stacks of cash that were not in Mr. Lee's possession at the time in
24 question.

25         The government has sufficient, alternative evidence to prove the points for
26 which it says it needs the 2014 evidence.  For the reasons discussed in the Motion

27 _____

28 such a large sum of cash in person."

1  and in this Reply, all evidence related to the 2014 search and seizure, and Mr. Lee's

2  alleged statements about it, should be excluded.

3

4

5  DATED:  April 28, 2022          Ariel A. Neuman
                                   Ray S. Seilie
6                                  Bird, Marella, Boxer, Wolpert, Nessim,
7                                  Drooks, Lincenberg & Rhow, P.C.

8

9
                                   By:      /s/ Ariel A. Neuman
10                                           Ariel A. Neuman
11                                    Attorneys for Defendants 940 Hill, LLC
                                      and Dae Yong Lee
12

13  DATED:  April 28, 2022          TRACY L. WILKINSON
14                                  United States Attorney

15                                  SCOTT M. GARRINGER
16                                  Assistant United States Attorney
                                    Chief, Criminal Division
17

18

19
                                   By:    /s/ Veronica Dragalin
20                                    MACK E. JENKINS
21                                    VERONICA DRAGALIN
                                      CASSIE D. PALMER
22                                    SUSAN S. HAR
                                      Assistant United States Attorneys
23
24                                    Attorneys for Plaintiff
25                                    UNITED STATES OF AMERICA

26

27

28

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: April 28, 2022

By: _/s/ Ariel A. Neuman_
Ariel A. Neuman