Ariel A. Neuman - State Bar No. 241594
 aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
 rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,, <br><br> Plaintiff, <br><br> vs. <br><br> JOSE LUIS HUIZAR, et al., <br><br> Defendant. | CASE NO. 20-CR-0326-JFW <br><br> **DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE GEORGE ESPARZA'S HEARSAY AUDIO AND NOTES** <br><br> Date: May 16, 2022 <br> Time: 8:00 AM <br> Crtrm.: 7A <br><br> Trial Date: June 14, 2022 <br><br> Assigned to Hon. John F. Walter |

# **TABLE OF CONTENTS**

Page

DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE GEORGE ESPARZA'S HEARSAY AUDIO AND NOTES ............................................... 1

I.    INTRODUCTION ......................................................................................... 1

    A.    All Three Categories of Esparza Statements Should Be Excluded as Hearsay .............................................................................................. 4

    B.    The Self-Serving Nature of Esparza's Notes and Statements Reduce Their Reliability and Probative Value ....................................... 7

GOVERNMENT'S OPPOSITION ........................................................................ 9

I.    INTRODUCTION ......................................................................................... 9

II.   ARGUMENT ............................................................................................... 10

    A.    Applicable Law ................................................................................... 10

    B.    All Three Categories of Esparza's Recorded Statements Are Admissible ......................................................................................... 12

        1.    Esparza's iPhone Notes Documenting Co-Conspirator Discussions ............................................................................. 12

        2.    Esparza's Napkin Notes in Photographs of Cash Bribe ............. 17

        3.    Esparza's Video Narration While Transporting Cash Bribe ...... 18

    C.    Esparza Will Be Available for Cross-Examination at Trial ................ 19

III.  CONCLUSION ............................................................................................ 20

REPLY ................................................................................................................... 21

I.    ARGUMENT ............................................................................................... 21

    A.    The Government's Assertion that Esparza's Statements Were "in Furtherance of" the Alleged Conspiracy Is Speculative and Unsupported ....................................................................................... 21

    B.    The iPhone Notes, Napkin Notes, and Video Narration Do Not Meet the Requirements for Any Hearsay Exceptions .......................... 22

        1.    iPhone Notes ............................................................................. 22

        2.    The Napkin Notes ..................................................................... 25

        3.    The Video Narration .................................................................. 26

    C.    The Government Does Not Address the Notes' Lack of Probative Value in Light of Esparza's Record of Dishonesty .............................. 27

i

II.      CONCLUSION ................................................................................................28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Bemis v. Edwards*,
   45 F.3d 1369 (9th Cir. 1995) .................................................................. 11

6
7
*Bourjaily v. United States*,
   483 U.S. 171 (1987) ................................................................... 10, 19

8
9
*Boyd v. City of Oakland*,
   458 F. Supp. 2d 1015 (N.D. Cal. 2006)..................................................... 4

10
11
*Phoenix Mut. Life Ins. Co. v. Adams*,
   30 F.3d 554 (4th Cir. 1994) ................................................................ 16

12
13
*Sendejas v. United States*,
   428 F.2d 1040 (9th Cir. 1970) .............................................................. 16

14
15
*Tome v. United States*,
   513 U.S. 150 (1995) ......................................................................... 11

16
*United States v. Astorga–Torres*,
   682 F.2d 1331 (9th Cir. 1982)............................................................... 11

17
18
*United States v. Ciresi*,
   697 F.3d 19 (1st Cir. 2012) ................................................................. 10

19
20
*United States v. Collicott*,
   92 F.3d 973 (9th Cir. 1996)................................................................. 11

21
22
*United States v. Emmert*,
   829 F.2d 805 (9th Cir. 1987)....................................................... 5, 16, 26

23
24
*United States v. Felix-Jerez*,
   667 F.2d 1297 (9th Cir. 1982)............................................................. 5, 6

25
26
*United States v. Gil*,
   58 F.3d 1414 (9th Cir.1995) ............................................................... 10

27
*United States v. Graciano-Cabanilla*,
   113 Fed. App'x 761 (9th Cir. 2004) ....................................................... 10

28

*United States v. Lewis*,
    919 F.2d 146 (9th Cir. 1990) ................................................................. 16

*United States v. Lewis*,
    919 F.3d 146 (9th Cir. 1990) ................................................................... 5

*United States v. Lloyd*,
    807 F.3d 1128 (9th Cir. 2015) ............................................................... 16

*United States v. Matlock*,
    415 U.S. 164 (1974) ............................................................................... 19

*United States v. Patterson*,
    678 F.2d 774 (9th Cir. 1982) ................................................................. 12

*United States v. Schmit*,
    881 F.2d 608 (9th Cir. 1989) ..........................................................*passim*

*United States v. Sepulveda*,
    15 F.3d 1161 (1st Cir. 1993) ................................................................. 11

*United States v. Smith*,
    893 F.2d 1573 (9th Cir. 1990) ......................................................... 10, 18

*United States v. Valdez-Soto*,
    31 F.3d 1467 (9th Cir. 1994) ................................................................. 19

*United States v. Zavala-Serra*,
    853 F.2d 1512 (9th Cir. 1988) ............................................................... 16

*Willis v. City of Fresno*,
    2013 WL 6145232 (E.D. Cal. Nov. 21, 2013) ................................... 4, 26

**Other Authorities**

Fed. R. Evid. 104(a) ................................................................................. 10

Fed. R. Evid. 104(b) ................................................................................. 21

Fed. R. Evid. 402 and 403 ....................................................................... 27

Fed. R. Evid. 801 .................................................................................. 4, 11

Fed. R. Evid. 801(d)(1)(B) ..................................................... 11, 17, 18, 19

Fed. R. Evid. 801(d)(1)(B): (1) ............................................................... 11

iv

Fed. R. Evid. 801(d)(2)(E) ................................................................*passim*

Fed. R. Evid. 802 .................................................................................4

Fed. R. Evid. 803(1) ......................................................4, 11, 16, 18, 19

Fed. R. Evid. 803 (2) ...........................................................................4

Fed. R. Evid. 803(3) ...................................................................*passim*

Fed. R. Evid. 803(5) ..............................................................5, 6, 11, 17

Fed. R. Evid. 805 ................................................................................7

# **TABLE OF EXHIBITS**

| Ex. | Description | Page(s) |
|-----|-------------|---------|
| 1. | February 10, 2017 Metadata and Photographs of Cash from George Esparza's Phone. | 1, 3, 7, 8, 22, 23, 27 |
| 2. | March 14, 2017 Video 3 from George Esparza's Phone of Liquor Box with Narration, Casino_0364439 | 1, 3, 7, 8, 27 |
| 3. | Notes Authored by George Esparza on His Phone re: 940 Hill Project Negotiations between December 28, 2016 and June 22, 2017, Casino_2085145 | 1, 3, 6, 7, 8, 26, 27 |
| 4. | Document produced by the government with the beginning Bates number Casino_0364679. | 3, 7 |
| 5. | Document produced by the government with the beginning Bates number Casino_0364710. | 4, 7 |
| 6. | Copy of the Cooperation Plea Agreement for Defendant George Esparza from the matter captioned United States v. George Esparza, No. 20-cr-00208-JFW. | 6, 7 |
| 7. | February 10, 2017 Summary Chart of Timeline from George Esparza's Phone. | 7 |
| 8. | February 22, 2017 Summary Chart of Timeline from George Esparza's Phone. | 13 |
| 9. | March 14, 2017 Summary Chart of Timeline from George Esparza's Phone. | 21, 25 |

## DEFENDANTS' MOTION *IN LIMINE* NO. 2

## TO EXCLUDE GEORGE ESPARZA'S HEARSAY AUDIO AND NOTES

I.    **INTRODUCTION**

The government intends to introduce a number of George Esparza's self-recorded statements and writings that were never communicated to anyone before this case and which Esparza, by his own admission, created in order to incriminate Huizar if something "went wrong" for Esparza. The Court should exclude these statements as hearsay not subject to any exceptions. This motion addresses three specific categories of evidence that the government has identified in its preliminary exhibit list for trial:[1]

- Trial Exhibit 91 (Declaration of Ray S. Seilie ("Seilie Decl.") Ex. 1), a compilation of photographs, four of which (on pages 4 through 8 of the exhibit) depict Esparza's handwritten notes on napkins on top of cash (the "Napkin Notes"). One of the notes (depicted on page 7 of the exhibit) says, "Giving him cash from Justin Kim for Olympic & Hill Project. No Unions. 2/10/17." The other note (which appears on pages 5, 6, and 8 of the exhibit) states, "Giving Cash to CM Huizar 2/10/2017."

- The audio component of Trial Exhibit 98, Seilie Decl. Ex. 2,[2] a video in which Esparza appears to be driving with a box of cash and says to himself, "This is, uh, one hundred thousand, putting in a Blue Label box, going to go to the council member's house, March 13—Monday, March 13—14—Tuesday—at, it's about five o'clock—five, uh, fifteen."

- Trial Exhibit 88, Seilie Decl. Ex. 3 (the "iPhone Notes"), a compilation of iPhone notes and their accompanying metadata from different dates, which Esparza apparently put into his own phone. The potentially relevant portions of those notes are summarized below in chronological order (which is the

---

[1]    To the extent the government's final exhibit list contains documents that fall within the same categories as the ones described here, or to the extent the government's preliminary list includes such documents that are inadvertently omitted here, Mr. Lee and 940 Hill seek to exclude those as well.

[2]    Exhibit 2 is a video, and will be delivered to the Court via flash drive.

reverse of how they are presented in the document):[3]

1.   A note created on December 28, 2016 at 9:31 AM and modified at 9:59 AM that states, "Olympic and hill be part of the Broadway sign district. And tell creed to dismiss appeal. Bound."

2.   A note created on January 4, 2017 and modified on January 5, 2017 that discusses a number of irrelevant topics and ends by suggesting a "lunch with Dr. Lee"—not the same person as Mr. Lee, who is not a doctor. The real Dr. Lee is known to be a significant developer with other projects in Huizar's district.

3.   A note created on January 19, 2017 at 4:38 PM and modified at 10:59 PM that covers a number of topics but, as purportedly relevant to the government's allegations against Mr. Lee, states, "1.2. 10 to 15. 1.2 goes away. Just had talk with COuncilman [sic] Huizar at 5pm about asking Justin Kim for 1.2mil for taking care of creed. 500 for him. 500 for justin. 200 for me me. Cash. 500 cm. 500 Justin. 250 George. 1.25. I am waiting [sic] this at 1057 on Jan 19th. Councilman Huizar told me to talk to Justin Kim to make an agreement on the Olympic and hill project. I spoke to him at his house earlier today. And he said 1.2 million and it will go away. Creed appeal."

4.   A note created January 30, 2017 and modified February 1, 2017 that starts with the numbers "200 / 200/ 150," and continues to discuss a number of topics irrelevant to this case.

5.   A note dated February 10, 2017 created at 3:08 PM and modified at 3:36 PM stating, "130 today. 70k Justin. After march 14 another 200 (hearing). 130 CM and G. 70k. April 14th. 100 for CM. 500cash."

6.   A note dated February 10, 2017 timestamped 4:24 PM stating, "I was given 130k cash to give to my boss."

7.   A note dated February 10, 2017 timestamped 4:34 PM stating, "Today. 200k total. 100 for him. 100 for jk. March 14 100 for CM. 100 for jk.

[3]   The version of this compilation that had been produced by the government prior to the deadline for Mr. Lee and 940 Hill to submit their portion of this joint motion in limine filing only contained the nine notes described in this section. Shortly after that deadline, on April 15, 2022, the government produced a revised version of this document which added five additional notes.

April 14th 100 for CM."

8.   A note created on February 23, 2017 at 4:33 PM and was later modified at 6:32 PM stating, "Blanchard / Aribnb [sic] / Little Tokyo in return for Olympic and hill / Event and ten05 / Hit up Craig Lawson for Salesian."

9.   A note dated March 14, 2017 and modified on April 17, 2017. The note states, "Meeting with Justin Kim on March 14fh [sic] to collect another 100k for the councilman. He asked me to pick up from Justin Kim. He asked me to talk to chris modjeski [sic] to withdraw the appeal. Appeal was withdrawn two weeks ago."

Esparza told the government that he prepared the Napkin Notes for the self-serving purpose of incriminating Huizar in the event that something "went wrong," and also confirmed that the factual details of the same were inaccurate. The 302 explains:

> ESPARZA took photos of the cash and the notations on the napkins because he knew he had to protect himself. … For ESPARZA, the photographs and notes were for his protection since HUIZAR asked him to hold on to the cash for him. If things ever went wrong, ESPARZA would at least be able to let someone know that this, indeed, happened and HUIZAR told him to do it. It was the same reason ESPARZA took photos of HUIZAR on the plane with casino chips.

Seilie Decl. Ex. 4 [Casino_0364679], Esparza also told the government:

> The photo of what appears to be $130,000 USD and the napkin with 'Giving cash to CM Huizar 2/10/2017' was not accurate because ESPARZA only showed HUIZAR $100,000 USD.

*Id.* The description of this exchange in the agent notes of this interview is more explicit: according to those notes, Esparza prepared the Napkin Notes because "he wanted to make sure he was covering his ass that [H]uizar was asking him to do this – knew he had to protect himself from [H]uizar." Seilie Decl. Ex. 5

3

[Casino_0364710]. Indeed, the same agent notes indicate that the government clearly recognized what Esparza was doing. *See id.* at Casino_0364712 ("So the 2/10 napkin is something you do to set up [H]uizar and incriminate him and protect yourself. Any chance that's what happened?"). While Esparza was not apparently asked about his motivation for the video recording and the iPhone Notes covered by this Motion, reviewing the three types of evidence together makes clear that Esparza's motivation was the same. Indeed, there is no other plausible reason for Esparza to have recorded himself talking about cash he was supposedly delivering to Huizar, or writing down, for example, that he was "given 130k cash to give to my boss." And the fact that the iPhone Notes were often modified hours, or even days, after they were initially created confirms that they were not meant to serve as contemporaneous recordings of fact.

### A.   All Three Categories of Esparza Statements Should Be Excluded as Hearsay

There can be no reasonable dispute that all of Esparza's written and oral statements at issue are hearsay: they each consist of out-of-court statements that the government will introduce to help establish the truth of the matters stated. *See* Fed. R. Evid. 801. They are therefore presumptively inadmissible. Fed. R. Evid. 802.

These materials are not admissible under any hearsay exceptions. *First*, because these materials were prepared deliberately and after reflection, the present-sense-impression and excited-utterance exceptions, Fed. R. Evid. 803(1)–(2), do not apply. *See, e.g. Willis v. City of Fresno*, 2013 WL 6145232 at *5 (E.D. Cal. Nov. 21, 2013) (present-sense-impression exception does not apply to statements made "after an opportunity for reflective thought"); *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1025–26 (N.D. Cal. 2006) (excited-utterance exception does not apply where statements are "lengthy, logical, and coherent" and demonstrates that the witness's "reflective faculties were not dominated by nervous excitement").

*Second*, the government cannot rely on the state-of-mind exception. Fed. R.

Evid. 803(3). By its terms, this exception only permits the introduction of testimony that describes the "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition," and does *not* permit the admission of "statement[s] of memory or belief to prove the fact remembered or believed." *Id.* As the Ninth Circuit has explained, the limiting language in this hearsay exception means that the state-of-mind exception is limited solely to "declarations of condition—'I'm scared'—and not belief—'I'm scared because [a co-conspirator] threatened me.'" *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) (quoting *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980)). Here, Esparza's notes do not actually "describe his mental condition or his feelings at the time [he wrote the notes]," but instead "merely described the circumstances preceding and accompanying the [writing of the notes] as he remembered them"; they are therefore not admissible under Rule 803(3). *United States v. Lewis*, 919 F.3d 146 (9th Cir. 1990).

*Third*, the recorded-recollection exception, Fed. R. Evid. 803(5), does not support admission for a host of reasons. This exception would only apply if Esparza first states, in sworn testimony, that he currently cannot remember the facts that he previously wrote down. *See United States v. Felix-Jerez*, 667 F.2d 1297, 1300 (9th Cir. 1982) ("[I]t must first be shown that the witness does not have sufficient recollection as to the matters contained in the statement to enable him to testify fully and accurately regarding them."). Based on his government interviews, this does not appear to be the case; Esparza claims to remember all the relevant facts.

Moreover, the information in the statements does not "accurately reflect[] the witness's knowledge," a requirement of the Rule 803(5) exception. Esparza admission that at least some of the information he wrote on the Napkin Notes was wrong. Although the government chose not to inquire about Esparza's motivation for creating the audio recording or the iPhone Notes, it is apparent that his motivation was the same for those items as well. Moreover, as to the iPhone notes,

1   there are strong reasons to doubt their accuracy.

2   •   Three of the iPhone notes were written on the same day (February 10, 2017)
3       within a ninety-minute period of time (3:08 PM to 4:34 PM). *See* Seilie Decl.
4       Ex. 3 (Notes 5, 6, and 7). One note states, "130k today," the second states, "I
5       was given 130k cash to give to my boss," and latest-created note written
        merely *ten minutes later* says "Today. 200k total. 100 for him. 100 for jk." In
6       other words, within a short period of time, Esparza was unable to decide
        whether he had been given $100,000 or $130,000 to give to Huizar, and
7       recorded notes indicating both.

8   •   Several of the notes were modified long after they were created. The earliest
9       message ("Olympic and hill be part of the Broadway sign district. And tell
10      creed to dismiss appeal.") was modified 30 minutes after it was created. The
        lengthy note summarizing the supposed proposal to demand $1.2 million from
11      Justin Kim was modified six hours after it was written. And the most recent
12      note—discussing the withdrawal of the appeal and the collection of
        $100,000—was modified *more than a month* after it was written. Seilie Decl.
13      Ex. 3 at 2. The government's exhibit does not identify the specific
14      information that was modified. Coupled with Esparza's statement about the
        Napkin Notes, the only reasonable conclusion is that Esparza modified the
15      iPhone Notes to fit with his agenda, not to accurately reflect what had
16      happened.

17          Since all of these notes and recordings were primarily intended to incriminate
18  Huizar if "things ever went wrong," there is no reason to believe they "correctly"
19  recorded his knowledge at the time he made them. Esparza is a convicted felon who,
20  in his plea agreement, admitted that he lied to the FBI in at least five separate
21  instances. Seilie Decl. Ex. 6 (Esparza Plea Agreement) ¶ 51. The statements at issue
22  were made while he was engaged in criminal activity, trying to create evidence
23  against Huizar if he ever needed it.

24          In addition, even if the Court concludes that the recorded-recollection applies,
25  that would not support introduction of the actual documents—instead, the prior
26  recorded recollection would be "read into evidence," not "received as an exhibit."
27  Fed. R. Evid. 803(5); *see also Felix-Jerez*, 667 F.2d at 1300.
28

*Finally*, the documents that are potentially most pertinent to Mr. Lee and 940 Hill—the Napkin Note that states "Giving him cash from Justin Kim for Olympic & Hill Project. No Unions. 2/10/17," Seilie Decl. Ex. 1 at 7, and several of the iPhone Notes that purport to describe the terms of the alleged bribe—contain multiple layers of hearsay. Not only do these notes themselves constitute out-of-court statements by Esparza that do not qualify under a hearsay exception for the reasons explained above, but their contents also recount hearsay from Justin Kim (and potentially also Jose Huizar) regarding the purported terms of the payment. To be clear, *Esparza had no communications with Mr. Lee whatsoever about this cash or its intended purpose*. Thus, if the government's story is that Kim obtained the cash from Mr. Lee, who gave it to Kim for the purpose of the "Olympic & Hill Project. No Unions," that is information that Kim obtained from Mr. Lee and then provided to Esparza, which Esparza then wrote on a napkin.

Likewise, the iPhone Notes that summarize the purported terms of the alleged bribe reflect not only hearsay from Esparza's perspective, but also statements by Huizar and Kim (assuming the documents are even accurate). These documents are therefore inadmissible unless each hearsay component separately falls into an exception, which none of them do. Fed. R. Evid. 805.

## B.   The Self-Serving Nature of Esparza's Notes and Statements Reduce Their Reliability and Probative Value

To the extent the Court concludes that there are non-hearsay reasons to admit this evidence (or that they fall into a hearsay exception), it should still exclude these materials because their reliability and probative value is minimal to nonexistent. Esparza admitted to the government that he prepared the Napkin Notes not to accurately record what happened, but as part of an effort to incriminate Huizar in case "things ever went wrong." The other items were apparently created with similar motive. Esparza is also a convicted felon who has admitted lying to the FBI repeatedly—his assurances to the FBI that these statements happen to be truthful

completely lack credibility. The government should not be permitted to take the position that Esparza's past recorded and self-serving statements should be considered reliable and probative after requiring him to admit under oath that he repeatedly lied to the FBI. Esparza can testify as to his memory of what occurred, without the use of hearsay recordings and notes to bolster himself.

\* \* \*

For these reasons, the Court should enter an order excluding from admission at trial Trial Exhibits 88, 91, and 98 (Seilie Decl. Exs. 1–3).

1

## GOVERNMENT'S OPPOSITION

2

## I.   INTRODUCTION

3      Defendant 940 HILL, LLC, and its majority-owner, defendant DAE YONG
4  LEE, own a development project in Downtown Los Angeles, within former-
5  Councilmember JOSE HUIZAR's Council District 14.  At trial, the government will
6  establish that defendants 940 HILL and LEE, their agent (Justin Kim),
7  Councilmember HUIZAR, and the Councilmember's Special Assistant (George
8  Esparza) participated in an honest services scheme to defraud involving bribery.
9  Specifically, defendants LEE and 940 HILL agreed to pay and ultimately paid
10 $500,000 in cash as a bribe, through Kim, to Huizar and Esparza.  The developers
11 paid this bribe in exchange for Huizar's and Esparza's help in resolving a labor
12 union appeal that jeopardized the approval process of their lucrative development
13 project, the 940 Hill Project.

14      At trial, the government will seek to admit, among other things, Esparza's
15 recorded statements from his iPhone: (1) notes authored on the phone's Notes
16 application; (2) handwritten notes he wrote on a napkin next to photographs of the
17 cash bribe he received from defendants LEE and 940 HILL through Kim; and (3)
18 Esparza's narration during a video recording while taking a portion of the cash bribe
19 to his boss's (Huizar's) house.  The statements themselves, their context, and their
20 timing establish that the statements were recorded contemporaneously with
21 Esparza's conversations with co-conspirators and in furtherance of the conspiracy,
22 that he described events while perceiving them or immediately thereafter, and that
23 the statements reflected his then-existing state of mind, intent, and plan.
24 Alternatively, the recorded statements should be admitted as prior consistent
25 statements if his credibility is called into question, and/or be read into evidence as
26 recorded recollections if Esparza does not recall the details of the recorded
27 statements at trial.

28

1   **II.    ARGUMENT**

2       **A.    Applicable Law**

3       A statement is not hearsay if "[t]he statement is offered against a party and is

4   . . . a statement by a coconspirator of a party during the course and in furtherance of

5   the conspiracy." Fed. R. Evid. 801(d)(2)(E).  To admit a co-conspirator statement

6   for the truth of its contents, the Court must find preliminary questions of

7   admissibility by a preponderance of the evidence.  Fed. R. Evid. 104(a); *Bourjaily v.*

8   *United States*, 483 U.S. 171, 176 (1987).  Here, the government must show by a

9   preponderance that: (1) a conspiracy existed; (2) the author of the statement and the

10  party against whom they are offered were members of the conspiracy; (3) the

11  statement was made in furtherance of the conspiracy; and (4) the statement was

12  made during the conspiracy.  *United States v. Gil*, 58 F.3d 1414, 1420 (9th

13  Cir.1995).

14      Courts routinely admit written and audio recorded statements like those at

15  issue here as co-conspirator statements under Rule 801(d)(2)(E).  *See, e.g.*, *United*

16  *States v. Schmit*, 881 F.2d 608, 613 (9th Cir. 1989) ("pages from desk top calendars

17  for 1984 and 1985 bearing notations of payments of over $300,000 to 'Dad'" and

18  tape recorded statement of co-conspirator's narration to himself were admissible as

19  co-conspirator statements under Fed. R. Evid. 801(d)(2)(E)); *United States v. Smith*,

20  893 F.2d 1573, 1578 (9th Cir. 1990) (calendar/drug ledger was admissible as co-

21  conspirator statement where government established statements were made during

22  course and in furtherance of conspiracy, and identity of author of ledger was

23  reasonably certain); *United States v. Graciano-Cabanilla*, 113 Fed. App'x 761, 762

24  (9th Cir. 2004) (pay-owe ledger seized from alleged co-conspirator was admissible

25  as non-hearsay co-conspirator's statement); *United States v. Ciresi*, 697 F.3d 19, 28-

26  30 (1st Cir. 2012) (conspirator's statements that hinted that other bribes might be in

27  store and described how simple the first bribe had been to arrange were not simply

28  idle chatter or narratives of past events, but rather, satisfied the "in furtherance"

requirement for admission of a co-conspirator's statement as a non-hearsay); *United States v. Sepulveda*, 15 F.3d 1161, 1181 (1st Cir. 1993) ("the sharing of pertinent information about a conspiracy's mode of operation furthers the conspiratorial ends").

Rule 803(3) excepts "the declarant's then-existing state of mind (such as motive, intent, or plan)" from the general rule against hearsay.  Fed. R. Evid. 803(3). "[A] statement of the declarant's intent to do something is competent…. Evidence of that intent can then be considered by the jury in determining whether the declarant subsequently performed the intended act." *United States v. Astorga–Torres*, 682 F.2d 1331, 1336 (9th Cir. 1982).

Rule 803(1) excepts present sense impressions from the general rule against hearsay, defined as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1). This exception requires that "a declarant have personal knowledge of the events described." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995).

"Rule 801 defines prior consistent statements as nonhearsay only if they are offered to rebut a charge of 'recent fabrication or improper influence or motive.'" Fed. Rule Evid. 801(d)(1)(B)." *Tome v. United States*, 513 U.S. 150, 157 (1995). "[A] proponent must establish four elements under Rule 801(d)(1)(B): (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996).

Lastly, under Rule 803(5), a recorded recollection may be read into evidence if certain requirements are met.  Fed. R. Evid. 803(5).  "A document is admissible as

past recorded recollection if 1) the witness once had knowledge about the matters in the document, 2) the witness now has insufficient recollection to testify fully and accurately, and 3) the record was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly." *United States v. Patterson*, 678 F.2d 774, 778 (9th Cir. 1982).

>   **B.   All Three Categories of Esparza's Recorded Statements Are Admissible**

>>   **1.   Esparza's iPhone Notes Documenting Co-Conspirator Discussions**

Between December 28, 2016 and June 22, 2017, Esparza created 14 notes in his iPhone Notes Application, to document conversations he had in furtherance of the conspiracy to solicit and accept a cash bribe from defendants LEE and 940 HILL. *See* Ex. 3 [Trial Ex. 88].  The metadata on Esparza's phone shows the precise date and time the original Note was created, and the date it was last modified, meaning the date when Esparza last opened the Note on his phone and made any edits (which could include something like modifying spacing and not necessarily changing the text).  *Id.*

The government expects Esparza will testify that he created these Notes during or immediately following conversations with his boss (Jose Huizar), his friend (Justin Kim), and a lobbyist (Chris Modrzejewski).  The metadata on Esparza's phone corroborates that the Notes were created during or immediately following these conversations.

For example, Trial Exhibit 145 shows a timeline of information extracted from Esparza's phone for February 10, 2017, the day Esparza first picked up cash from defendants LEE and 940 HILL through Kim.  *See* Ex. 7 [Trial Ex. 145].  Text messages from Esparza's phone show that Esparza and Kim arranged to meet at 3:00 p.m. at the office of defendants LEE and 940 HILL, at 1020 S. Crocker Street.  GPS data from Esparza's phone place him near that location at 2:44 p.m.  Text

1    messages at 3:01 p.m., establish that Esparza was parked near the building, while

2    Kim was on the side of the building.  At 3:08 p.m., Esparza created a Note on his

3    iPhone, writing:



4

5

6

7

8

9

10

11   Esparza then wrote additional notes on the iPhone Notes application later that day, a

12   few minutes after speaking to Kim on the phone.  Text messages show that Esparza

13   arranged to meet with Huizar the next morning at 9:00 a.m.  At 9:14 a.m. on

14   February 11, 2017, Esparza created another Note documenting his conversation with

15   Huizar: "Want the appeal withdrawn or the commissions to vote it down.  Either

16   way."  Esparza then wrote additional Notes minutes later documenting additional

17   details of the conversation with his boss, such as: "CM [Councilmember Huizar]

18   said to leave the money in my safe. 100k." *Id.*

19        Trial Exhibit 146 similarly shows that on February 22, 2017, Esparza spoke to

20   Kim by phone and text messages.  *See* Ex. 8 [Trial Ex. 146].  The same day, Esparza

21   also spoke to Chris Modrzejewski, the lobbyist for CREED, and arranged a meeting

22   for the next day.  Text messages show that the next day, Esparza and Modrzejewski

23   agreed to meet at 3:30 p.m. at the café at The Standard.  GPS data shows Esparza

24   located at The Standard in Downtown Los Angeles at 3:06 p.m.  According to text

25   messages, Esparza was in the lobby at 3:39 p.m., while Modrzejewski indicated he

26   would arrive in 5 minutes.  At 4:33 p.m., Esparza created a Note on his phone,

27

28

writing, among other things:[4] "Little Tokyo in return for Olympic and hill."  Esparza

then met Kim at 5:01 p.m. the same day.  At 6:32 p.m., Esparza again opened the

same Note he created a few hours earlier.  *Id.*

Trial Exhibit 151 shows that on March 14, 2017, Esparza and Kim again met

at defendants' office.  *See* Ex. 9 [Trial Ex. 151].  According to GPS data and text

messages, Esparza arrived at the corner at 2:43 p.m. to meet Kim.  At 2:44 p.m.,

Esparza created a Note documenting: "Meeting with Justin Kim on march 14th to

collect another 100k for the councilman.  He asked me to pick up from Justin Kim.

He asked me to talk to chris modjeski [sic] to withdraw the appeal.  Appeal was

withdrawn 2 weeks ago."  *Id.*

Esparza's Notes are admissible under Rule 801(d)(2)(E) as co-conspirator

statements.  *Schmit* is particularly instructive.  *Schmit*, 881 F.2d at 613.  There, two

defendants appealed their convictions for a drug conspiracy, arguing that a tape

recording of a co-conspirator's statements and his handwritten notes were

improperly admitted.  *Id.*  The Ninth Circuit affirmed the convictions and held that

the co-conspirator's tape recorded statements and notes were admissible.  The

handwritten notes at issue appeared on "pages from desk top calendars for 1984 and

1985 bearing notations of payments of over $300,000 to 'Dad.'"  *Id.* at 612.  The

Court explained: "The evidence that Gary Schmit was the author of the notations,

plus the overwhelming evidence offered at trial that Gary Schmit was a participant

in the conspiracy, indeed its leader, was sufficient to establish that the notations

were made by a coconspirator as required for admission under Rule 801(d)(2)(E)."

*Id*. at 614.  The tape recorded statement began with: "I am putting this on tape

because I've got a lot to say regarding what we're about to do and what we're gonna

---

[4] To the extent Esparza's Notes include recorded statements that are irrelevant in this trial, those statements can be redacted.  For purposes of showing the full content and context of the Notes, the Trial Exhibits attached to this motion redact only personal identifying information (personal cellphone numbers), but not content.

do and who's involved." *Id.* The Court held that the tape recorded statement by Gary Schmit, defendant's son, describing the scope of the conspiracy was also admissible, rejecting defendants' argument that "the recorded statement cannot be regarded as made 'in furtherance of the conspiracy' because it consists of 'casual admissions of culpability' and 'idle chatter.'" *Id.* at 612. Defendants also argued that "the government offered no proof the tape was played for others or used in any other way to 'advance the objectives of the conspiracy.'" *Id.* The Ninth Circuit rejected that argument, noting that from the content and context of the recorded statement," the trial court could infer "that [the co-conspirator] intended to use it in advancing the common enterprise to produce and distribute methamphetamine." *Id.* In addition, "[t]he content of the statement indicates it was dictated at a critical juncture in the history of that enterprise. The participants faced a decision either to end the undertaking or to initiate a new production effort. The statement catalogued and analyzed factors relevant to that decision. It was preserved with other records of the planning and execution of the enterprise's activities." *Id.*

Here, there is no doubt that Esparza was the author of the Notes on his iPhone, and metadata offers definitive proof of the timing of the Notes. Esparza made the Notes in furtherance of the conspiracy, to document his conversations with co-conspirators, and to then relay those discussions to other members of the conspiracy. He too, like in *Schmit*, made the Notes to advance the common purpose of arranging a bribe payment, and the Notes were made at critical junctures of the conspiracy.

The Notes are admissible even if they were never communicated to another co-conspirator. *Schmit*, 881 F.2d at 613 ("Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated.") (citations omitted). The metadata evidence in this case shows that Esparza consulted the Notes during his

1  meetings with co-conspirators, indicating that he used the Notes in furtherance of
2  the conspiracy to document the terms of the agreement.

3       That defendants LEE and 940 HILL were not participants in those
4  conversations does not bar admissibility under Rule 801(d)(2)(E).  "It is well settled
5  that a conversation between two co-conspirators which takes place out of the
6  presence of a third co-conspirator is admissible into evidence against the third co-
7  conspirator."  *See Sendejas v. United States*, 428 F.2d 1040, 1045 (9th Cir. 1970).
8  Although Modrzejewski was not a member of the conspiracy, Esparza's statements
9  to CREED's lobbyist were in furtherance of the conspiracy and are admissible as
10  co-conspirator statements.  *See United States v. Zavala-Serra*, 853 F.2d 1512, 1516
11  (9th Cir. 1988); *United States v. Lloyd*, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It
12  is not necessary that the statement be made to another member of the conspiracy for
13  it to come under [R]ule 801(d)(2)(E).").

14       In addition, the Notes are admissible as a present sense impression under Rule
15  803(1) and as then-existing state of mind under Rule 803(3).  *See, e.g., Phoenix Mut.*
16  *Life Ins. Co. v. Adams*, 30 F.3d 554, 566–67 (4th Cir. 1994) (holding that a
17  handwritten note that the declarant made "substantially contemporaneous with the
18  telephone conversation he had" was admissible as "a hearsay exception under Rule
19  803(1) as a present sense impression, *i.e.*, a statement describing or explaining an
20  event or condition made while the declarant was perceiving the condition or event or
21  immediately thereafter"; the "district court also held correctly that the note's
22  implicit statement that Bill indicated a desire to change beneficiaries was admissible
23  pursuant to 803(3)").

24       Esparza's Notes do not include belief statements like those at issue in the case
25  relied on by defendants, *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987)
26  (Rule 803(3) limits "admissible statements to declarations of condition-'I'm scared'-
27  and not belief-'I'm scared because Galkin threatened me.'").  Defendants' reliance
28  on *United States v. Lewis*, 919 F.2d 146 (9th Cir. 1990), an unpublished opinion, is

16

equally misplaced.  In *Lewis*, the statement at issue was the defendant's post-arrest interview: "nowhere in the post-arrest interview did Lewis describe his mental condition or his feelings at the time of the fight; he merely described the circumstances preceding and accompanying the altercation as he remembered them. Accordingly, these portions of his statement were not admissible under this court's decision in *Emmert*."  *Id.* at *1.  This statement is nothing like Esparza's contemporaneous Notes documenting his then-existing state of mind, intent, and plan with respect to the bribery conspiracy.

If the Court disagrees that Esparza's Notes are admissible as co-conspirator statements and as statements falling under the 803(1) and 803(3) exceptions to hearsay, the government should be permitted to introduce the statements on re-direct examination as prior consistent statements under Rule 801(d)(1)(B).

Lastly, to the extent Esparza does not recall details of the conversations he documented in his Notes, the content of the Notes should be read into evidence as a recorded recollection under Rule 803(5), even if the Notes are otherwise inadmissible.

### 2.    Esparza's Napkin Notes in Photographs of Cash Bribe

On February 10, 2017, the day Esparza received $130,000 in cash from defendants LEE and 940 HILL through Kim, Esparza took photographs of the cash at his home.  Ex. 1 [Trial Ex. 91].  Metadata from Esparza's phone shows that he took photographs of the cash with a napkin containing handwriting starting at 11:18 p.m. on February 10, 2017.  *Id.* at items 1-5.  The next morning at around 8:30 a.m., Esparza took photographs of the cash inside a liquor box on his bed and in his car. *Id.* at items 6-8.  The government seeks to admit four photographs showing a napkin with two different handwritten notes: (1) "Giving cash to CM Huizar 2/10/2017"; and (2) "Giving him cash from Justin Kim for Olympic & Hill project. No unions 2/10/2017."  *Id.*

Much like the "pages from desk top calendars for 1984 and 1985 bearing

notations of payments of over $300,000 to 'Dad'" were admissible as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) in *Schmit*, so too are Esparza's handwritten notes on the napkins made in furtherance of the conspiracy.  881 F.2d at 613; *see also Smith*, 893 F.2d at 1578 (calendar with notations of persons who received and paid for drugs admissible as co-conspirator statement).  Like the co-conspirator in *Schmit*, Esparza was documenting a payment to another co-conspirator, his boss.  In addition, for the same reasons that apply to the electronic Notes on Esparza's phone, the handwritten notes are admissible as a present sense impression under Rule 803(1) and as a then-existing state of mind, plan, and intent under Rule 803(3).  If the Court disagrees, the handwritten notes should be admitted as prior consistent statements on re-direct under Rule 801(d)(1)(B).

### 3.     Esparza's Video Narration While Transporting Cash Bribe

On March 14, 2017, on his way to Jose Huizar's residence, Esparza took various photographs and videos of a liquor box with cash that he had received earlier that day from Kim and was transporting to his boss's house.  Ex. 9 [Trial Ex. 151] at items 24-40.  At 5:15 p.m., Esparza took a video of the liquor box on the passenger seat of his car, and narrated:  "This is, uh, one hundred thousand, putting in a Blue Label box, going to go to the council member's house, March 13—Monday, March 13—14—Tuesday—at, it's about five o'clock—five, uh, fifteen." *Id.* at item 40; Ex. 2 [Trial Ex. 98].

Like the tape recording in *Schmit*, Esparza's narration in the video recording is admissible as a co-conspirator statement.  "A microcassette tape, like a note or a ledger, is an accepted place to record information."  *Schmit*, 881 F.2d at 613 (citation omitted).  "Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated."  *Id.* (citations omitted).  "[T]he taped recording of [Esparza]'s statement" is admissible as "a record of information relevant to the

1   activities of the common enterprise." *Id.*

2        In addition, the narration is admissible under Rule 803(1) and 803(3), since

3   the statement reflected Esparza's present sense impression of the event while

4   perceiving it, and reflected Esparza's then-existing state of mind, his intent and plan

5   with respect to the cash bribe he was going to show his boss.  If the Court disagrees,

6   the narration should be admitted as a prior consistent statement on re-direct

7   examination under Rule 801(d)(1)(B).

8        **C.    Esparza Will Be Available for Cross-Examination at Trial**

9        As courts have observed, "the degree of reliability necessary for admission

10  [of an out-of-court statement] is greatly reduced where, as here, the declarant is

11  testifying and is available for cross-examination, thereby satisfying the central

12  concern of the hearsay rule."  *United States v. Valdez-Soto,* 31 F.3d 1467, 1472 (9th

13  Cir. 1994) (quoting *United States v. McPartlin*, 595 F.2d 1321, 1350-51 (7th Cir.

14  1979)); *United States v. Matlock*, 415 U.S. 164, 177 (1974) (because witness "was

15  available for cross-examination, ... the risk of prejudice, if there was any, from the

16  use of hearsay was reduced"); *see also Bourjaily*, 483 U.S. at 183–84 ("the

17  Confrontation Clause does not require a court to embark on an independent inquiry

18  into the reliability of statements" admitted as coconspirator statements).

19       Defendants will be able to cross-examine Esparza at trial regarding the

20  circumstances of the iPhone Notes, his handwritten notes, and his video recording.

21  Defendants point to a report and notes from an interview of Esparza conducted on

22  June 6, 2019.  Ex. 4 and 5.  At that time, the government was probing Esparza's

23  credibility regarding this bribery scheme, not laying foundation for admissibility of

24  evidence at trial.  As the agent notes indicate, when the government asked the

25  probing questions about whether Esparza wanted to set up his boss, the AUSA was

26  "playing Huizar's attorney."  Ex. 5 at Casino_0364712.  Defendants omit from their

27  motion Esparza's response to that question: "No I promise on anything that it was

28  two drops, and I didn't write it on napkin just to do that [set up Huizar]."  *Id.*  When

the government then asked Esparza to "sit here and look us in the eye and say that's def[initely] not what happened," Esparza responded: "The absol[ute] truth is that I did not set him up."  *Id.*  Defendants will have the ability to cross examine Esparza at trial and make the points they raise in their motion.

## III.   CONCLUSION

For the foregoing reasons, the government requests that the Court find that the following exhibits are admissible: (1) Trial Exhibit 88 (Notes Authored by George Esparza on His Phone re: 940 Hill Project Negotiations between December 28, 2016 and June 22, 2017, Casino_2085145); (2) Trial Exhibit 91 (February 10, 2017 Metadata and Photographs of Cash from George Esparza's Phone); and (3) Trial Exhibit 98 (March 14, 2017 Video 3 from George Esparza's Phone of Liquor Box with Narration, Casino_0364439).

1

<u>**REPLY**</u>

2

**I.    ARGUMENT**

3

**A.    The Government's Assertion that Esparza's Statements Were "in Furtherance of" the Alleged Conspiracy Is Speculative and Unsupported**

4

5

6

The government argues all three categories of Esparza's hearsay statements are admissible under the co-conspirator exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(E). But that exception only to statements by co-conspirators "*in furtherance of* the conspiracy." Fed. R. Evid. 801(d)(2)(E). And as the government acknowledges, it bears the burden of showing that a statement was "in furtherance of" a conspiracy by the preponderance of the evidence. Fed. R. Evid. 104(b). The government has failed to carry that burden.

7

8

9

10

11

12

Here, the only evidence about Esparza's motivations for producing the recorded statements is what he told the government in his previous interviews: that, Esparza wrote the Napkin Notes to "make sure he was covering his ass that [H]uizar was asking him to do this." Seilie Decl. Ex. 9 [Casino_0364710]. In other words, by Esparza's own admission, these notes were not made "in furtherance of the conspiracy" but rather to *incriminate other members of the conspiracy* in the event that he was caught. Although the government did not ask him to explain his motivation for writing his iPhone Notes or recording the video at issue in this motion, there is no other evidence to suggest that Esparza had a less craven and self-serving motivation when preparing those materials.

13

14

15

16

17

18

19

20

21

The absence of any other statements by Esparza, in this context, is conspicuous. Despite having interviewed Esparza numerous times, having access to Esparza and his attorney, and a plea agreement requiring Esparza to provide "substantial assistance," the government did not obtain a statement (sworn or otherwise) from Esparza explaining that his motivation for producing these notes was something other than "covering his ass." Nor has the government introduced

22

23

24

25

26

27

28

any other evidence about Esparza's motivations in recording any of these other statements.

Instead, the government resorts to baseless speculation. For example, it claims that Esparza recorded certain of the iPhone notes "to document his conversations with co-conspirators, and to then relay those discussions to other members of the conspiracy." But that claim is not substantiated by any competent evidence. The government has failed to meet its burden of establishing that any of these statements were, in fact, made "in furtherance of" any conspiracy, rather than to protect Esparza's own interests, potentially at the cost of his alleged co-conspirators.

## B. The iPhone Notes, Napkin Notes, and Video Narration Do Not Meet the Requirements for Any Hearsay Exceptions

### 1. iPhone Notes

After Mr. Lee and 940 Hill submitted their portion of the joint motion *in limine*, the government disclosed a new version of Esparza's "iPhone Notes" exhibit, which includes five additional notes. *See* Seilie Decl. Ex. 1 [Trial Ex. 88]. All fourteen notes should be excluded for the same reasons: there is no evidence that they were written "in furtherance of" the alleged conspiracy rather than to potentially incriminate his co-conspirators; there is no reason to believe that they recorded Esparza's "present sense impressions;" and there is no reason to believe that they reflected his state of mind.

The government claims that it "expects Esparza will testify that he created these Notes during or immediately following conversations with" Huizar, Kim, or Modrzejewski. Again, there is no evidence submitted to support this. Instead, the government relies on extensive speculation about the circumstances surrounding the

notes' creation. For example, consider the following note that the government discusses at length in its opposition:

```
130 today

70k Justin

After march 14th another 200( hearing)
130 CM and G
70k

April 14th
100 for CM

500cash
```

This note is the fifth note compiled in Exhibit 88. The metadata of this note shows that it was created at 3:08 p.m., but that it was modified at 3:36 p.m. While the government is correct that the "modified" time could signify something as minor as the insertion of a blank space, it could also signify that the text of the note was completely erased and rewritten. The only person who may know is Esparza (if he remembers), and the government apparently has not asked him.

The government also says that this note was written seven minutes after a text message indicated that Esparza was parked near the 940 Hill offices. The implication is that the note was intended to record a conversation that took place in that period of time. But there no reason to believe that. To the contrary, a note that was prepared a mere hour later (4:34 p.m.) sets forth a completely different distribution (Seilie Decl. Ex. 1 [Trial Ex. 88], Note 7):



In other words, there is considerable reason to doubt that these notes

1   contemporaneously recorded Esparza's present-sense-impressions or actual

2   statements. And many of the other notes have similar, or more serious issues.[5]

3         The government's extensive reliance on *United States v. Schmit*, 881 F.2d 608

4   (9th Cir. 1989), is misplaced. In *Schmit*, the Ninth Circuit held that it was not clear

5   error[6] for a trial court to admit a tape recording in which the alleged leader of a

6   conspiracy to produce and distribute methamphetamine set forth a "tentative

7   proposal" for future conduct. 881 F.2d at 611. The defendants argued that the

8   recording was not made "in furtherance of" the conspiracy to the extent it contained

9   "idle chatter" or "casual admissions of culpability." *Id.* at 612. The court

10  acknowledged that this argument raised "serious questions," but concluded that

11  other "portions of the statement" were in furtherance of the conspiracy because they

12  described future plans to produce additional narcotics, where the production would

13  occur, and problems of risk and security to that should be avoided in the future. *Id.*

14  at 612. In addition, because the declarant "was the leader of the criminal enterprise,"

15  the portions "catalogued and analyzed factors" relevant to the decision whether to

16  continue or terminate that enterprise. *Id.* The court then stated that because the

17  appellants "did not submit to the district court and the district court did not decide

18

19  [5]   For example, Note 3 was modified six hours after it was created; Note 4 was
20  modified more than *two days* after it was created; and Note 12 was modified two
     hours after it was created. The government has offered no evidence concerning how
21  and to what extent these notes were modified (or how many modifications took
22  place) between the notes' creation time and the "last modified" time.

23  [6]   The court in *Schmit* made clear that its ruling was based on the clear error
24  standard of review, not because it agreed with the trial court's decision to admit the
     recording on the merits. *See* 881 F.2d at 613 ("The trial judge's inference … was not
25  clearly wrong, whether or not the inference is one we would have drawn were we
26  the fact finders."). Here, of course, the Court should not be applying a "clear error"
     standard—it should be asking whether the government has established, by a
27  preponderance of the evidence, that Esparza's statements were "in furtherance of the
28  conspiracy." They have not.

1    whether particular passages in the statement may have been excludable," it was not

2    clear error for the trial court to admit the entire recording. In other words, the court

3    appeared to agree with the appellants' argument that "idle chatter" and "casual

4    admissions of culpability" were *not* statements "in furtherance of" a conspiracy, but

5    concluded that the appellants had failed to narrow their objections to the portions of

6    the statement that did *not* meet the co-conspirator exception.

7         Here, there is no portion of Esparza's notes which appears to have helped

8    "further" any part of the alleged scheme. Instead, the *entirety* of the notes appear to

9    have been at most "casual admissions of culpability," both as to Esparza himself and

10   the others with whom he was communicating. Nor is there evidence like in *Schmit*

11   that Esparza intended to use these notes to help continue the criminal scheme (or

12   that he was even in a position to do so). Esparza is not alleged to have been the

13   "leader" of the alleged conspiracy, nor—despite the government's unsupported

14   assertion to the contrary—is there any indication in the iPhone Notes that they were

15   intended to be used to communicate with other alleged co-conspirators. There is no

16   evidence that Esparza created the notes to help him decide whether to continue or

17   terminate of the alleged scheme. The only evidence of Esparza's intent is what he

18   said to the government about the Napkin Notes: that he prepared recorded

19   statements to protect himself against other co-conspirators. *Schmit* is simply

20   inapposite here.

           ## 2.      The Napkin Notes

22        The government again asserts without support that the Napkin Notes were

23   written "in furtherance" of the alleged scheme, but completely ignores that for these

24   statements, Esparza *admitted to the government* that he wrote them to "make sure he

25   was covering his ass that [H]uizar was asking him to do this." Seilie Decl. Ex. 9

26   [Casino_0364710]. The government compares these notes to the calendar notes in

27   *Schmit.* But in *Schmit*, the court noted that "[a]ppellants *have not challenged* the

28   sufficiency of the evidence to show the notations were made during and in

furtherance of the conspiracy"—the issue with those calendar notes was whether the government established the identity of their author, not their purpose. 801 F.2d at 614. Here, where the author of the notes has stated to the government that they were prepared to incriminate his co-conspirators, rather than to "further" any conspiracy, the co-conspirator exception does not apply.

Moreover, although the government asserts that these notes reflect Esparza's "present sense impressions" or "state of mind," it fails to explain how the statement that the cash was "from Justin Kim for Olympic and Hill" falls into either of those exceptions. As explained in the Motion, the present-sense-impression exception does not cover statements made deliberately and "after an opportunity for reflective thought." *Willis v. City of Fresno*, 2013 WL 6145232 at *5 (E.D. Cal. Nov. 21, 2013). And the state-of-mind exception does not permit introduction of statements beyond "declaration[s] of condition," including those that explain that condition. *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987). The government also completely ignores that both Napkin Notes contain multiple layers of hearsay—the hearsay from Esparza himself, and the hearsay from whoever provided the information on the Napkin Notes. The government only addresses the former.

### 3.     The Video Narration

The government's response as to the video narration, Seilie Decl. Ex. 3 [Trial Ex. 98], is also conclusory and unpersuasive. The government fails to explain or offer evidence to support that Esparza's decision to record a verbal statement that he was bringing cash to Huizar was intended to be "in furtherance of" an alleged conspiracy rather than to "cover his ass," as was true for the Napkin Notes. Given that the video appears to have been created under the same circumstances as the Napkin Notes, there is no reason to believe that Esparza's motivation for creating the recording was any different. And since Esparza's narration appears to have been recorded after he had the opportunity for "reflective thought," and since it goes beyond mere "statements of condition"—i.e., by stating the amount of cash

supposedly in the box—neither the present-sense-impression nor the state-of-mind exceptions apply.

### C. The Government Does Not Address the Notes' Lack of Probative Value in Light of Esparza's Record of Dishonesty

The government also fails to explain why Esparza's recorded hearsay statements contain any probative value in light of Esparza's admission that at least some of these statements were made to protect himself, as well as his sworn statement that he has lied to the FBI at least five times. As the government acknowledges, Esparza will be testifying, and can therefore provide testimony that covers the same subject matter as the notes. The only potential probative value of these statements and recordings, then, is to support the credibility of Esparza's testimony. But in light of Esparza's statements to the government about his motivation for producing some of the notes, they are not even helpful on that front. Accordingly, regardless of whether Esparza's statements fall within a hearsay exception, they provide minimal to no probative value in this case and should be excluded under Rules 402 and 403.

1  **II.    CONCLUSION**

2         For these reasons, the Court should exclude Trial Exhibits 88, 91, and 98

3  (Seilie Decl. Exs. 1, 2, and 3).

4

5  DATED:  April 28, 2022              Ariel A. Neuman

6                                      Ray S. Seilie
                                       Bird, Marella, Boxer, Wolpert, Nessim,
7                                      Drooks, Lincenberg & Rhow, P.C.

8

9

10                                     By:    _/s/ Ariel A. Neuman_
                                              Ariel A. Neuman
11                                     Attorneys for Defendants 940 Hill, LLC
                                       and Dae Yong Lee
12

13 DATED:  April 28, 2022              TRACY L. WILKINSON

14                                     United States Attorney

15                                     SCOTT M. GARRINGER
                                       Assistant United States Attorney
16                                     Chief, Criminal Division

17

18

19                                     By:   _/s/ Veronica Dragalin_
                                             MACK E. JENKINS
20                                           VERONICA DRAGALIN
21                                           CASSIE D. PALMER
                                             SUSAN S. HAR
22                                           Assistant United States Attorneys

23
                                             Attorneys for Plaintiff
24                                           UNITED STATES OF AMERICA

25

26

27

28

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: April 28, 2022

By:      */s/ Ariel A. Neuman*
　　　　　　　　Ariel A. Neuman