Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,, <br><br> Plaintiff, <br><br> vs. <br><br> JOSE LUIS HUIZAR, et al., <br><br> Defendant. | CASE NO. 20-CR-0326-JFW <br><br> **DEFENDANTS DAE YONG LEE AND 940 HILL'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE 940 HILL APPRAISALS** <br><br> Date:    May 16, 2022 <br> Time:    8:00 AM <br> Crtrm.:  7A <br><br> Trial Date: June 14, 2022 <br><br> Assigned to Hon. John F. Walter |

1

## <u>**TABLE OF CONTENTS**</u>

2

<u>Page</u>

DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE 940 HILL
     APPRAISALS ............................................................................................ 1

    A.    The 2019 Appraisal Is Irrelevant to Mr. Lee's State of Mind in
           2017. .................................................................................................. 2

    B.    The Appraisals Are Not Probative of the Value of the
           Entitlement Received by 940 Hill ..................................................... 2

    C.    Any Probative Value of the Appraisals Is Outweighed by Their
           Likely Prejudicial Effect .................................................................. 3

    D.    If the Court Excludes the 2019 Appraisal, the 2015 Appraisal
           Becomes Irrelevant .......................................................................... 4

GOVERNMENT'S OPPOSITION ......................................................................... 5

I.      INTRODUCTION ...................................................................................... 5

II.     ARGUMENT ............................................................................................... 6

    A.    The 2015 Appraisal Is Relevant and Admissible as a Party
           Admission ........................................................................................ 6

    B.    The 2019 Appraisal Is Relevant and Admissible ............................. 8

    C.    The Government Will Not Call Expert Witnesses to Opine on the
           2015 and 2019 Appraisals .............................................................. 11

III.    CONCLUSION ......................................................................................... 12

DEFENDANTS' REPLY ...................................................................................... 13

I.      INTRODUCTION .................................................................................... 13

II.     ARGUMENT ............................................................................................. 13

    A.    The Government's Opposition Confirms That the 2019 Appraisal
           Is Irrelevant ................................................................................... 13

    B.    The 2019 Appraisal Is Not An Adoptive Admission ...................... 14

    C.    The 2015 Appraisal Is Also Irrelevant ........................................... 14

    D.    The Court Should Not Consider the Government's Belated
           Request that the Court Rule on the Admissibility of the
           Appraisals Without Expert Testimony ............................................ 15

III.    CONCLUSION ......................................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Crawford v. Washington*,
    541 U.S. 36 (2004) ............................................................... 12

6
7
*Jensen v. Pliler*,
    439 F.3d 1086 (9th Cir. 2006) ............................................ 12

8
9
*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................. 9

10
11
*Transbay Auto Serv., Inc. v. Chevron USA Inc.*,
    807 F.3d 1113 (9th Cir. 2015) ................................... 7, 8, 14

12
13
*United States v. Brinson*,
    772 F.3d 1314 (10th Cir. 2014) .......................................... 11

14
15
*United States v. Licavoli*,
    604 F.2d 613 (9th Cir. 1979) .............................................. 11

16

17

**Other Authorities**

18

Fed. R. Evid 801(d)(1)(B) ............................................................ 8

19
Fed. R. Evid 801(d)(2)(A) .......................................................... 11

20
Fed. R. Evid. 402 ......................................................................... 1

21
Fed. R. Evid. 403 ..................................................................... 1, 4

22
23
Fed. R. Evid. 701(c) ................................................................... 15

24
Fed. R. Evid. 801(d)(2) .............................................................. 11

25
Fed. R. Evid. 801(d)(2)(B) ........................................................... 7

26
Fed. R. Evid. 801(d)(2)(D) ......................................................... 10

27
Michael H. Graham, 30B Federal Practice and Procedure § 7015 .......................... 11

28

4 John Henry Wigmore, Evidence § 1048, at 4 (Chadbourn rev. 1972)................11

## TABLE OF EXHIBITS

| Ex. | Description | Page(s) |
|---|---|---|
| 1. | August 5, 2016 Email Chain with CREED, Julia Chang, Joon Cheon, Fred Shaffer, and City Planning re: Appraisal Report for 940 Hill, Casino_0367748 | 1, 6, 7 |
| 2. | February 21, 2019 Email Chain with David Lee and Jason Kang re: 940 Hill Entitlement and Appraisal Report Showing Value of $31.5 Million as of January 2019, Casino_1677844. | 1, 3, 8, 14, |
| 3. | Government's March 18, 2022 Supplemental Government Expert Disclosure | 3 |
| 4. | July 5, 2016 Email Chain with David Lee, Justin Kim, Fred Shaffer, and Joon Cheon re: 940 Hill TFAR Application Showing Appraisal of $13.6 Million as of May 2015, Casino_1676742. | 6, 15 |
| 5. | August 8, 2016 CREED Appeal Application for 940 Hill Project, Casino_1699820. | 7 |
| 6. | February 26, 2016 Letter of Intent to David Lee re: Offer to Purchase 940 Hill for $34 Million, Casino_1677699. | 9 |
| 7. | March 29, 2016 Email from David Lee to 940 Hill LLC General Counsel re: Letter of Intent to Purchase 50% Interest in $30 Million 940 Hill Project, Casino_1676913. | 9 |
| 8. | December 13, 2016 Email from Robert Cho to David Lee re: Letter of Intent to Purchase 940 Hill for $33.8 Million, Casino_1700136. | 10 |

1

2

## DEFENDANTS' MOTION *IN LIMINE* NO. 3
## TO EXCLUDE 940 HILL APPRAISALS

3

4

5

6

7

8

Mr. Lee and 940 Hill respectfully request an order prohibiting the government from introducing testimony conveying the results of appraisal reports of the 940 Hill property dated May 20, 2015, Declaration of Ray S. Seilie ("Seilie Decl.") Ex. 1 [Trial Ex. 112], and January 25, 2019, Seilie Decl. Ex. 2 [Trial Ex. 59]. The Court should also exclude live testimony conveying the conclusions provided in those documents.[1]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The government contends that these appraisals—which valued the property at $13.6 million in 2015 and $31.5 million in 2019—establish that Mr. Lee had a financial motive for allegedly paying a bribe to Huizar to secure entitlements for the 940 Hill property. But the valuation of the property in 2019 is irrelevant to Mr. Lee's state of mind in early 2017, when the alleged bribe took place. Moreover, the 2019 Appraisal does not specify what portion of the appraised value can be attributed to the development entitlement the property received in 2016. And in any event, permitting the government to present evidence concerning the value of the 940 Hill property in 2019 would require Mr. Lee to present opposing evidence explaining how the appraised value in 2019 does not accurately reflect Mr. Lee's expectations of value from any entitlements in 2017, creating a side-trial on a marginal issue that would waste the Court's and the jury's time. There is no real dispute that there is value to the entitlement, and the government's witness list contains several witnesses who can so testify. For these reasons, the Court should exclude both appraisals under Federal Rules of Evidence 402 and 403.

24

25

26

27

28

---

[1]   The appraisals themselves are hearsay, as the government appears to recognize, as the government suggests it intends to offer the appraisers' testimony, but not the appraisals themselves. If the government intends to introduce the appraisal documents, they should also be excluded for the reasons stated herein and for the additional reason that they are hearsay.

**A.  The 2019 Appraisal Is Irrelevant to Mr. Lee's State of Mind in 2017.**

The 2019 Appraisal is irrelevant to the charges against Mr. Lee and 940 Hill, which concern Mr. Lee's state of mind in *2017*, when the government alleges he bribed Huizar. Although the government is free to introduce evidence demonstrating that Mr. Lee had reason to believe that the city's approval of his development proposal (and CREED's withdrawal of its appeal of the same) would increase the value of the 940 Hill property, an appraisal prepared *nearly two years later* is not probative of that belief.

To illustrate the problem with the government's argument, suppose the appraised value of the 940 Hill property *decreased* between 2015 and 2022 (for example, because of the pandemic). Under the government's logic, in that situation, the value reduction would be exculpatory evidence because it would establish that Mr. Lee would have a *disincentive* to obtain the entitlement. Of course, that argument makes no sense. Regardless of what actually happened with the property's value, the government would presumably argue and present evidence that Mr. Lee *believed* the entitlement would result in an increase in value. In other words, whether the value of the property *actually* increased by 2019 is irrelevant to whether Mr. Lee *subjectively believed* that an entitlement would increase the value of the property in 2017. The 2019 Appraisal only establishes the former, and is simply not probative of the latter.

**B.  The Appraisals Are Not Probative of the Value of the Entitlement Received by 940 Hill**

A further reason to exclude the 2019 Appraisal is that it does not actually establish the 940 South Hill Property's improvement in value due to the entitlement. To the contrary, the 2019 Appraisal does not articulate what portion of the $31.5 million valuation was attributable to the entitlement and what portion was attributable to other factors unrelated to the entitlement (for example, general

increases in property values across the city). Nothing in the appraisal document links a specific amount of the value increase to the entitlement.

Nor can the government address this issue through the live testimony of one of the appraisers who prepared the report. The government's supplemental expert disclosure was due and made on March 18, 2022. That disclosure referenced the possibility that the government would call one of the appraisers who prepared the 2019 Appraisal "to opine that the appraisal value of the 940 Hill property as of January 25, 2019 was $31.5 million." It cited, as the sole "basis for this opinion," the 2019 Appraisal. Seilie Decl. Ex. 3. But nothing in that appraisal attributes a specific amount of value increase to development rights—it simply analyzes comparable properties with similar development rights with no breakdown. *See generally* Seilie Decl. Ex. 2. The government cannot now, after Mr. Lee has identified a deficiency in the government's evidence as part of the *in limine* meet and confer process, seek additional expert testimony that addresses the different question of how much value was added to the 940 South Hill property by the entitlement.

## C.   Any Probative Value of the Appraisals Is Outweighed by Their Likely Prejudicial Effect

To the extent the 2019 Appraisal offers any probative value to the issues in this case, that value is outweighed by the likelihood of prejudice to Mr. Lee. Since the appraisal itself does not articulate what percentage of the 940 Hill property's valuation can be attributed to development rights, there is a strong likelihood that the jury could conclude from an unrebutted presentation of the two appraisals, that Mr. Lee personally profited by more than $15 million from his alleged conduct—a number which has no basis in the appraisals themselves.

Moreover, admitting this evidence may result in the undue consumption of time on the periphery issue of just how much the entitlement was "worth," a subject that requires expert testimony on an issue tangential to the case. The undue delay

and waste of time that would arise from such a side proceeding alone warrants exclusion of the 2019 Appraisal under Rule 403.

### D. If the Court Excludes the 2019 Appraisal, the 2015 Appraisal Becomes Irrelevant

Finally, if the Court agrees that the 2019 Appraisal is inadmissible, then it should also exclude the 2015 Appraisal. The latter is only relevant if the Court admits the 2019 value, as a point of comparison.

\* \* \*

For these reasons, the Court should exclude the documents Bates-numbered Casino_0367752 and Casino_1677845, as well as any testimony conveying those appraisals' conclusions.

1

**GOVERNMENT'S OPPOSITION**

2 **I.      INTRODUCTION**

3        The indictment alleges that defendants DAE YONG LEE and 940 HILL, LLC

4 paid a $500,000 cash bribe to resolve an obstacle in the City approval process of the

5 940 Hill Project.  Defendants' motivation for paying this bribe was financial, which

6 directly bears on an element the government must prove at trial: their corrupt

7 intent—an appeal filed by a labor organization stood in the way of the substantial

8 profits that the defendants stood to gain after the project was successfully "entitled,"

9 meaning if and when they obtained all City approvals to build a 20-story apartment

10 building.  Defendants' own emails and business records demonstrate that the value

11 of the unentitled property, before the City approved their development plans, was

12 $13.6 million.  After the project successfully obtained its entitlements—that is, after

13 the City approved the development—the property's value increased significantly.  In

14 January 2019, an appraisal completed at the company's behest valued the then-

15 entitled property at $31.5 million.  Other 940 HILL business records corroborate the

16 substantial profit the company and defendant LEE personally stood to gain from

17 successfully obtaining the entitlements.  Between February 2016 and June 2017,

18 defendants LEE and 940 HILL received offers to purchase the entitled property

19 from third parties for between $30 million and $34 million.  At trial, the government

20 should be permitted to introduce this evidence to establish defendants' state of

21 mind—here, their corrupt intent and motivation for paying the bribe—the likely key

22 contested issue at trial.  The property values are offered for a non-hearsay purpose

23 of effect on the listeners (defendants LEE and 940 HILL), their notice of the same,

24 and their state of mind.  Further, the appraisals are party admissions by defendants

25 LEE and 940 HILL and therefore admissible non-hearsay.  The appraisal reports are

26 admissible without the testimony of the appraisers who prepared the reports.

27

28

## II.    ARGUMENT

### A.    The 2015 Appraisal Is Relevant and Admissible as a Party Admission

In May 2015, defendant 940 HILL hired an appraiser to conduct a property valuation of the 940 Hill Property to submit to a bank for purposes of refinancing. The appraiser, Moon Hee Nam, concluded that the fair market value of the property as of May 2015 was $13.6 million.  (Ex. 1 [Trial Ex. 112] at 4, 6.)  Defendant 940 HILL then relied on this $13.6 million valuation in its 940 Hill Project applications with the City, specifically, to calculate the company's public benefit payment as part of the entitlement process.  That $13.6 million valuation was the subject of the CREED appeal filed against the project in August 2016.  At trial, the government will seek to introduce this $13.6 million appraisal to show the value of the 940 Hill Property before entitlements, that is, before defendant 940 HILL received City approvals for development.  This evidence is relevant and admissible as a party admission.

As part of the entitlement process, defendant 940 HILL filed a Transfer of Floor Area Rights ("TFAR") Application with the City.  In that application, defendant 940 HILL relied on the appraisal conducted by Moon Hee Nam on May 20, 2015, valuing the property at $13.6 million, to calculate its Public Benefit Payment.  (Ex. 4 [Trial Ex. 37] at 7.)  Defendant LEE signed the TFAR Application on July 21, 2015, under penalty of perjury before a notary.  (*Id.* at 13-14.)  The TFAR Application was subsequently circulated by email among defendant LEE, his hired consultants and agents on the 940 Hill Project, Joon Cheon and Fred Shaffer, as well as City liaison Justin Kim.  (*Id.* at 1.)

On June 22, 2016, the Los Angeles City Planning Department approved the 940 Hill Project, which involved the demolition of a 24,432 square-foot one-story commercial building and the construction of a mixed-use 20-story building with 232 apartment units and 14,000 square feet of ground floor commercial space.  On

August 8, 2016, CREED, a labor union organization, filed an appeal of the Planning Department's approval of the 940 Hill Project, alleging that: (1) the environmental clearance for the project was based on an inadequate initial study in violation of the California Environmental Quality Act (CEQA); and (2) the project improperly calculated the TFAR Public Benefit Payment. As to the second ground, the appeal alleged that the appraisal report relied on by defendant 940 HILL in its TFAR application, which calculated a fair market value of $13.6 million, did not meet the TFAR ordinance requirement. (Ex. 5 [Trial Ex. 113] at 3, 9-10.) Defendant 940 HILL's consultants submitted the full appraisal report to CREED three days before CREED filed its appeal with the City. (Ex. 1 [Trial Ex. 112].)

The Federal Rules of Evidence establish that a statement that a "party manifested that it adopted or believed to be true" is not hearsay. Fed. R. Evid. 801(d)(2)(B). Here, defendants LEE and 940 HILL adopted the 2015 Appraisal report by submitting it to a bank and later the City and CREED, therefore demonstrating that they believed the report to be true and accurate. The report is therefore admissible as a party admission under Rule 801(d)(2)(B). The Ninth Circuit has held "that when a party acts in conformity with the contents of a document—e.g., by giving an independent appraisal to a lender in support of accomplishing its objective to secure a commercial loan—such an action constitutes an adoption of the statements contained therein even if the party never reviewed the document's contents." *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1118 (9th Cir. 2015) (holding that an appraisal report should have been admitted under Rule 801(d)(2)(B)). "'Even if the person adopting the statement had no personal knowledge or first hand information about the reports, if a person manifests their acceptance of information, the admission by adoption is admissible non-hearsay evidence.'" *Id.* (quoting *Grundberg v. Upjohn Co.*, 137 F.R.D. 365, 370 (D. Utah 1991)). Here, defendants LEE and 940 HILL manifested their acceptance of the 2015 Appraisal report by submitting it to: (1) a bank to secure

refinancing, (2) the City in connection with its entitlement application, and (3) CREED in connection with appeal.  The 2015 Appraisal report accordingly is admissible as an adoptive admission under Rule 801(d)(1)(B).

The 2015 Appraisal is admissible for the additional reason that it is offered not for the truth of the matters asserted in the report (the actual fair market value of the 940 Hill Property), but for the effect on defendants LEE and 940 HILL, their notice and state of mind.  Whether the appraisal valuation was accurate or not, defendants LEE and 940 HILL were put on notice that the value of their property was $13.6 million based on this report.

**B.     The 2019 Appraisal Is Relevant and Admissible**

In January 2019, defendant 940 HILL again commissioned an appraisal report of the now-entitled 940 Hill Property "for loan underwriting purposes and-or credit decisions by [a] Bank."  (Ex. 2 [Trial Ex. 59] at 11.)  The cover page of the 2019 Appraisal report notes that it was prepared for a bank officer.  (*Id.* at 1.)  The 2019 Appraisal concluded that the market value of the property was $31.5 million.  (*Id.* at 4.)  Jason Kang, a 940 HILL employee, emailed the appraisal report to defendant LEE on February 21, 2019, and defendant LEE then sent the report to another individual the same day.  (*Id.* at 1.)  Again, the 2019 Appraisal is an adoptive admission by defendants LEE and 940 HILL.  "[The Ninth Circuit] and other courts have previously held that a party who relies on a third-party document by submitting the document to another—but after reviewing its contents—constitutes an adoptive admission."  *Transbay Auto Serv.,* 807 F.3d at 1119.  In addition, the 2019 Appraisal report is admissible for the non-hearsay purpose of showing the effect on defendants LEE and 940 HILL, their notice and state of mind.

At trial, the government will seek to establish that defendants LEE and 940 HILL corruptly intended to pay a significant $500,000 bribe to secure the entitlements and City approval of the 940 Hill Project, because the entitlements greatly increased the property's value.  In other words, defendant LEE, as a 50%

owner of the company, and the company stood to profit tremendously from the successful entitlements.  The CREED appeal jeopardized that profit.  The best evidence to prove defendants' corrupt intent and financial motive is the company's own property valuations before and after the entitlements.  The 2015 Appraisal was submitted by defendants to the City as the fair market value of the 940 Hill Property at the time of the application.  The January 2019 Appraisal shows defendants' state of mind and belief of the property's value less than two years after the bribe payment and entitlements.  The value in 2019 is probative of defendants' intent in 2017, because it establishes and corroborates the fact that the property's value would indeed increase dramatically after the successful City approvals.

The January 2019 valuation of $31.5 million is reliable and representative of the property's value in 2016 and 2017, at times much closer to the negotiation and payment of the bribe.  The evidence at trial will show that between August 2016 and July 2017, to benefit defendants LEE and 940 HILL, defendant LEE negotiated and then paid $500,000 in cash to Justin Kim, which defendant LEE intended to be a bribe to Councilmember Jose Huizar and his Special Assistant George Esparza to resolve the CREED appeal.  Defendants needed to guarantee that the CREED appeal would be resolved in their favor because it stood in the way of huge profits.

Approximately six months before the CREED appeal was filed, the company had received offers from interested buyers to purchase the entitled 940 Hill Project for $34 million (in February 2016) and $30 million (in March 2016).  The February 2016 offer for $34 million was contingent on successful City approvals of the entitlements, setting the closing date 45 days after the "issuance of entitlements and approved parcel map acceptable to Buyer from the City of Los Angeles."  (Ex. 6 [Trial Ex. 28] at 4.)  The March 2016 offer similarly required defendant 940 HILL to "complete all entitlement[s] already in progress."  (Ex. 7 [Trial Ex. 29] at 2.)  These letters of intent are admissible for the non-hearsay purpose of establishing defendants' knowledge and state of mind.  *See, e.g., Metro-Goldwyn-Mayer Studios,*

*Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (emails received by company or its agents were admissible as non-hearsay "to show knowledge and state of mind, even if the emails were not created by StreamCast agents and thus do not qualify as vicarious admissions under Rule 801(d)(2)(D)").

In December 2016, while the CREED appeal was pending, defendant 940 HILL received another offer from an interested buyer to purchase the entitled property for $33.8 million, which tied the closing date to "the final resolution of all appeals related to the current Property Entitlements." (Ex. 8 [Trial Ex. 30] at 3.) After the CREED appeal was dropped on March 3, 2017, defendant 940 HILL continued to receive offers from interested buyers for double the value of the unentitled property—an offer for $33 million in May 2017 and an offer for $32 million in June 2017. The 2019 Appraisal value of $31.5 million is therefore consistent with the property's anticipated post-entitlement value at the time of the offense conduct—that is, shortly before, during, and after the negotiation and payment of the $500,000 cash bribe.

Defendants' arguments to exclude the 2019 Appraisal report go to the weight not the admissibility of this evidence. The government intends to call the two 940 HILL minority owners, a 940 HILL employee, and several 940 HILL agents in its case-in-chief. Defendants will be able to elicit from their own representatives and agents on cross examination any favorable information about the 2015 and 2019 Appraisals, including whether the increase in the property's value may have been partially attributable to factors other than the entitlements (which the government does not dispute). The jury should be entitled to consider the significant profit defendants LEE and 940 HILL expected to gain from the successful entitlements, in determining whether they had the requisite corrupt intent and a motive to pay a bribe to secure and guarantee those entitlements. The evidence is relevant to a key issue at trial, is admissible for the non-hearsay purposes of effect on the listener, notice, and state of mind, and as adoptive party admissions, and is not unduly prejudicial.

## C.   The Government Will Not Call Expert Witnesses to Opine on the 2015 and 2019 Appraisals

To address defendants' concern that admitting "expert testimony on an issue tangential to the case" would be a waste of time, the government will not seek to admit expert testimony from the appraisers who conducted the 2015 and 2019 appraisals in its case-in-chief.  Because defendants relied on the appraisal values in their representations to the City, to CREED, and to banks, they adopted those statements as their own, making them admissible as party admissions, as discussed above.  The reports are admissible as party admissions and business records without the expert testimony of the appraisers who prepared the reports.  *See United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) (affirming admission of appraisal as business record, rejecting argument that expert testimony opinion was required, noting "the insurer's reliance on Aranoff's appraisal is affirmative evidence of the reliability of the appraisal").

The government may admit the reports without calling the expert witnesses to testify about their contents, without running afoul of the Confrontation Clause. When the hearsay declarant is the defendant (here, defendants LEE and 940 HILL became the declarants by adopting the appraisal reports), there is no Confrontation Clause issue: a party whose own out-of-court statement is offered against him "does not need to cross-examine himself."  4 John Henry Wigmore, Evidence § 1048, at 4 (Chadbourn rev. 1972).  "Lack of opportunity to cross-examine is deprived of significance by the incongruity of the party objecting to his own statement on the ground that he was not subject to cross-examination by himself at the time." Michael H. Graham, 30B Federal Practice and Procedure § 7015 (Evidence) (2014 ed.); *cf.* Fed. R. Evid. 801(d)(2) (characterizing admission by party-opponent as "not hearsay" and thus not barred by the hearsay rule); *United States v. Brinson*, 772 F.3d 1314, 1320-21 (10th Cir. 2014) (admission by party-opponent under Rule 801(d)(2)(A) is by definition not hearsay and thus not governed by Confrontation

1   Clause).  The appraisal reports are also not "testimonial" under *Crawford v.*

2   *Washington*, 541 U.S. 36 (2004).  *See Jensen v. Pliler*, 439 F.3d 1086, 1089 (9th

3   Cir. 2006) (listing the core class of "testimonial" statements under *Crawford*).

## III.   CONCLUSION

5          For the foregoing reasons, the government requests that the Court find that the

6   following exhibits are admissible: (1) Trial Exhibit 112 (August 5, 2016 Email

7   Chain with CREED, Julia Chang, Joon Cheon, Fred Shaffer, and City Planning re:

8   Appraisal Report for 940 Hill, Casino_0367748); and (2) Trial Exhibit 59 (February

9   21, 2019 Email Chain with DAVID LEE and Jason Kang re: 940 Hill Entitlement

10  and Appraisal Report Showing Value of $31.5 Million as of January 2019,

11  Casino_1677844).

**DEFENDANTS' REPLY**

**I.    INTRODUCTION**

Reversing its position articulated in its March 18 Supplemental Expert Disclosure, its April 15 witness list, and the parties' meet-and-confer discussions, the government now states that it no longer intends to call Moon Hee Nam, Steven J. Johnson, and/or Chris Karlen to opine about the appraised value of the 940 Hill property on May 20, 2015 and January 25, 2019. Rather, it seeks to introduce the appraisal reports themselves *with no supporting witness testimony at all*, on the grounds that the reports supposedly constitute "adoptive admissions" by Mr. Lee and 940 Hill. The government's arguments fail to establish the relevance of either appraisal, do not establish that the 2019 Appraisal is an adoptive admission, and do not establish why they should be permitted to introduce the appraisals *without giving Mr. Lee and 940 Hill a chance to cross-examine their authors*.

**II.   ARGUMENT**

**A.    The Government's Opposition Confirms That the 2019 Appraisal Is Irrelevant**

The government claims that the 2019 Appraisal is relevant because it "shows defendants' state of mind and belief of the property's value less than two years after the bribe payment" which it asserts, with no explanation, is somehow "probative of defendants' intent in 2017 because it establishes and corroborates the fact that the property's value would indeed increase" after receiving the entitlement. That makes no sense. Following the government's logic, if the property's value then *fell* between 2019 and 2022, that drop in value would be *exculpatory* as to Mr. Lee and 940 Hill's intent in 2017. Neither claim makes a valid argument. What is relevant to this case is Mr. Lee's state of mind *in 2017, as he was making the alleged payment*. The appraised value of the property from 2019 cannot possibly have had an impact on Mr. Lee's state of mind from two years earlier unless he is a time traveler.

More significantly, the government's opposition confirms that the 2019

Appraisal is not necessary for it to establish that Mr. Lee and 940 Hill had reason to expect that the issuance of an entitlement would improve the value of the 940 Hill property. As the government notes, 940 Hill received multiple letters of intent offering to purchase the 940 Hill property at amounts exceeding $30 million *in 2016 and 2017*. The government intends to introduce some of these letters at trial. Seilie Decl. Exs. 4, 6, 7, 8. Mr. Lee and 940 Hill have not challenged the relevance of these letters, and to the extent the government can establish the other requirements for their admissibility, it can prove its point using those materials. But these letters only underscore that the 2019 Appraisal is neither relevant nor necessary to make the government's point that receiving an entitlement would increase the value of the property.

### B.   The 2019 Appraisal Is Not An Adoptive Admission

The government also claims that the 2019 Appraisal is an adopted admission by Mr. Lee because he forwarded the appraisal to someone named "Danyel" *two minutes* after receiving it from Jason Kang. *See* Seilie Decl. Ex. 2 [Trial Ex. 59]. But there is no evidence that Mr. Lee ever reviewed it, or that he otherwise "manifest[ed] an intent to adopt [its] contents by using the document to accomplish an objective or by acting in conformity with the document." *Transbay Auto Service, Inc.*, 807 F.3d at 1120. Under the government's theory of adoption for the 2019 Appraisal, anyone who ever forwards an email attachment to another person should be automatically deemed to have adopted the full contents of that attachment. That is, of course, not the rule, even under the precedents cited.

### C.   The 2015 Appraisal Is Also Irrelevant

Although it appears that Mr. Lee did adopt the 2015 Appraisal through his inclusion of the document in various submissions to the government, the government still fails to explain why it is relevant. The government's sole proffer of relevance for this document is that it "put [Mr. Lee and 940 Hill] on notice that the value of their property was $13.6 million based on this report." But other than the

ultimate valuation of the property, the government does not identify any other statements in the 133-page appraisal report that are relevant to the issues in this case. The $13.6 million valuation itself can be introduced by the very document in which Mr. Lee supposedly "adopted" the appraisal: the TFAR application that Mr. Lee signed and had notarized, which states that his valuation of the property is $13.6 million. Seilie Decl. Ex. 4 [Trial Ex. 37].The Court should not permit the government to introduce the full appraisal report when it is only seeking to introduce the valuation and has other admissible evidence it can use to do so.

**D.     The Court Should Not Consider the Government's Belated Request that the Court Rule on the Admissibility of the Appraisals Without Expert Testimony**

Despite listing the authors of both appraisals on its witness list, the government's opposition indicates for the first time that it seeks to introduce the appraisals *without any accompanying testimony*, and requests an order from the Court that both documents are "admissible" before laying the foundation for them. To the extent the government is asking the Court to rule on that request now, it is premature and inappropriate, and the Court should not resolve it at this stage. If the government wanted to a pretrial ruling permitting them to introduce these documents without calling their authors as witnesses, they should have filed their own motion *in limine* seeking such a ruling. The government never raised this request during the parties' meet-and-confer discussions on the motions *in limine*, and should not be given the benefit of having initiated their own motion filing several weeks after the deadline to do so has passed. Accordingly, even if the Court does not grant Mr. Lee and 940 Hill's motion in limine, it should still require the government to establish the foundation before introducing the appraisals, and should decline the government's request for an order affirmatively finding that both documents are "admissible."

### III.    CONCLUSION

For these reasons, the Court should exclude Trial Exhibits 112 and 59 (Seilie Decl. Exs. 1 and 2).


DATED:  April 28, 2022          Ariel A. Neuman
                                Ray S. Seilie
                                Bird, Marella, Boxer, Wolpert, Nessim,
                                Drooks, Lincenberg & Rhow, P.C.



                                By:     */s/ Ariel A. Neuman*
                                            Ariel A. Neuman
                                        Attorneys for Defendants 940 Hill, LLC
                                        and Dae Yong Lee

DATED:  April 28, 2022          TRACY L. WILKINSON
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division



                                By:   */s/ Veronica Dragalin*
                                        MACK E. JENKINS
                                        VERONICA DRAGALIN
                                        CASSIE D. PALMER
                                        SUSAN S. HAR
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>LOCAL RULE 5-4.3.4 ATTESTATION</u>

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: April 28, 2022

By:  ___*/s/ Ariel A. Neuman*___
Ariel A. Neuman