TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
CASSIE D. PALMER (Cal Bar. No. 268383)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0647/0363
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Veronica.Dragalin@usdoj.gov
                Cassie.Palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-326(A)-JFW-5, 6 |
|---|---|
| Plaintiff, | JOINT MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS |
| v. | |
| DAE YONG LEE, aka, "David Lee," 940 HILL, LLC, | Trial Date: June 14, 2022 Trial Time: 8:00 A.M. Location:   Courtroom of the Hon. John F. Walter |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Attorneys Mack E.

Jenkins, Veronica Dragalin, and Cassie D. Palmer, and defendants DAE

YONG LEE and 940 HILL, LLC, by and through their counsel of record

Ariel A. Neuman and Ray S. Seilie, hereby submit their Joint

Memorandum of Law in Support of Disputed Jury Instructions.

1    This Memorandum of Law in Support of Disputed Jury Instructions

2  is based upon the attached memorandum of points and authorities, the

3  files and records in this case, and such further evidence and

4  argument as the Court may permit.

5    The disputed jury instructions in the parties' Joint Proposed

6  Jury Instructions are instructions 18, 22, 24, 25, 26, and 27.  The

7  text of each disputed instruction is reproduced below, followed by

8  the parties' respective position regarding the instruction.

9  Dated: June 6, 2022              Respectfully submitted,

10                                  TRACY L. WILKISON
                                    United States Attorney
11
                                    SCOTT M. GARRINGER
12                                  Assistant United States Attorney
                                    Chief, Criminal Division
13

14                                    */s/ Cassie D. Palmer*
                                    MACK E. JENKINS
15                                  VERONICA DRAGALIN
                                    CASSIE D. PALMER
16                                  Assistant United States Attorneys

17                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
18

19

20  Dated: June 6, 2022              /s/ via e-mail authorization
                                    ARIEL A. NEUMAN
21                                  RAY S. SEILIE
                                    Attorneys for Defendants
22                                  DAE YONG LEE and 940 HILL, LLC

23

24

25

26

27

28

                                    2

**INDEX OF DISPUTED PROPOSED JURY INSTRUCTIONS –**

**END OF TRIAL**

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| 18 | | Government's Use of Undercover Agents and Informants (Disputed, Government's Version) | Ninth Circuit Model Criminal Jury Instructions, No. 3.10 (2022 ed.) (modified) | 1 |
| 18 | | Government's Use of Undercover Agents and Informants (N/A Defendants Do Not Believe This Instruction Should Given) | Ninth Circuit Model Criminal Jury Instructions, No. 3.10 (2022 ed.) (modified) | 2 |
| | | Government's Position re: Proposed Instruction No. 18 | | 3 |
| | | Defendants' Position re: Proposed Instruction No. 18 | | 5 |

i

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| 22 | | Honest Services Wire Fraud (Disputed, Government's Version) | Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.) (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) (modified); 18 U.S.C. § 666(a)(1) & d; United States v. Kincaid-Chauncey, 556 F.3d 923, 939 (9th Cir. 2009); Seventh Circuit Model Criminal Jury Instructions, 18 U.S.C. §§ 1341, 1343 & 1346 (2020 ed.) | 6 |
| 22 | | Honest Services Wire Fraud (Disputed, Defendants' Version) | Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.) (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) (modified); McDonnell v. United States, 579 U.S. 550 (2016) | 10 |
| | | Government's Position re: Proposed Instruction No. 22 | | 14 |

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| | | Defendants' Position re: Proposed Instruction No. 22 | | 18 |
| 24 | | Bribery Concerning Programs Receiving Federal Funds (Disputed, Government's Version) | 18 U.S.C. §§ 666(a)(2), (b), (d); Ninth Circuit Model Criminal Jury Instructions, No. 10.2 (2022 ed.); Sabri v. United States, 541 U.S. 600 (2004); Salinas v. United States, 522 U.S. 52, (1997); United States v. Roberson, 998 F.3d 1237 (11th Cir. 2021); United States v. Ng Lap Seng, 934 F.3d 110 (2d Cir. 2019); United States v. Porter, 886 F.3d 562 (6th Cir. 2018); United States v. Garrido, 713 F.3d 985 (9th Cir. 2013) | 21 |
| 24 | | Bribery Concerning Programs Receiving Federal Funds (Disputed, Defendants' Version) | 18 U.S.C. §§ 666(a)(2), (b), (d); Ninth Circuit Model Criminal Jury Instructions, No. 10.2 (2022 ed.) (modified); McDonnell v. United States, 579 U.S. 550 (2016) | 24 |
| | | Government's Position re: Proposed Instruction No. 24 | | 26 |

iii

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| | | Defendants' Position re: Proposed Instruction No. 24 | | 27 |
| 25 | | Defense Theory of the Case Instruction (Disputed, No Government Version) | | 29 |
| 25 | | Defense Theory of the Case Instruction (Defendants' Version) | <u>United States v. Escobar de Bright</u>, 742 F.2d 1196, 1201 (9th Cir. 1984) | 30 |
| | | Government's Position re: Proposed Instruction No. 25 | | 31 |
| | | Defendants' Position re: Proposed Instruction No. 25 | | 32 |
| 26 | | Obstruction of Justice (Disputed, Government's Version) | Ninth Circuit Model Criminal Jury Instructions, No. 19.4 (2022 ed.) (modified) | 34 |
| 26 | | Obstruction of Justice (Disputed, Defendants' Version) | Ninth Circuit Model Criminal Jury Instructions, No. 19.4 (2022 ed.) (modified) | 35 |

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| | | Government's Position re: Proposed Instruction No. 26 | | 36 |
| | | Defendants' Position re: Proposed Instruction No. 26 | | 38 |
| 27 | | Corporate Responsibility (Disputed, Government's Version) | Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2021 ed.) (modified); Seventh Circuit Model Criminal Jury Instructions, No. 7.06 (2018 ed.) (modified); United States v. Hilton Hotels Corp., 467 F.2d 1000 (9th Cir. 1973); United States v. Basic Const. Co., 711 F.2d 570 (4th Cir. 1983); United States v. Mongol Nation, 370 F. Supp. 3d 1090 (C.D. Cal. 2019); United States v. Shortt Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986) | 39 |
| 27 | | Corporate Responsibility (Disputed, Defendants' Version) | 1A Fed. Jury Prac. & Instr. § 18:05 (6th ed.) | 41 |
| | | Government's Position re: Proposed Instruction No. 27 | | 43 |

v

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| | | Defendants' Position re: Proposed Instruction No. 27 | | 47 |

**DISPUTED INSTRUCTION NO. 18 RE: GOVERNMENT'S USE OF UNDERCOVER AGENTS**

**AND INFORMANTS PROPOSED BY THE GOVERNMENT**

You have heard testimony from Justin Kim who was a cooperating witness involved in the government's investigation in this case.  Law enforcement officials may engage in stealth and deception, such as the use of cooperating witnesses, to investigate criminal activities and record conversations.

Ninth Circuit Model Criminal Jury Instructions, No. 3.10 (2022 ed.) [Government's Use of Undercover Agents and Informants] (modified to reflect facts of case)

**DISPUTED INSTRUCTION NO. 18 RE: GOVERNMENT'S USE OF UNDERCOVER AGENTS**

**AND INFORMANTS PROPOSED BY DEFENDANTS**

Not applicable.  Defendants do not believe this instruction should be given for the reasons set forth below.

**GOVERNMENT'S POSITION RE: INSTRCUTION NO 18:**

This instruction is both necessary and appropriate in this case.

First, it directly relates to facts the jury will hear in this case. That is, the jury will hear that the government used a cooperating witness to surreptitiously record a conversation with one of the defendants. Jurors will come into the courthouse with their own concerns about privacy and law enforcement investigative practices, including with potential adverse biases against such practices. As such, it is important that the jury hear directly from the Court that law enforcement is permitted to engage in such practices.

Second, defendants have signaled that they intend to attack investigative practices in this case. Specifically, they stated in their response to the government's trial memorandum that they intend to seek admission of video recordings of the cooperators' interviews to, among other things, attack law enforcement tactics. (Dkt. 476 ("Those videos will be introduced . . . for the non-hearsay purpose of demonstrating what occurred during the meetings (e.g., how the FBI pressures witnesses . . .)"). This suggests that the defense intends to question the propriety of the government's use of lawful and permissible law enforcement tactics at trial. See, e.g, Leahy v. United States, 272 F.2d 487, 490 (9th Cir. 1959) ("[S]tealth and strategy are necessary weapons in the arsenal of the police officer."); United States v. Wahchumwah, 710 F.3d 862, 867 (9th Cir. 2013) (government agents may make concealed audio-video recording of a suspect's statements inside the suspect's home, with the consent of the government agent, without a warrant); Jacobson v. United States, 503 U.S. 540, 548 (1992) ("[T]here can be no dispute that the

Government may use undercover agents to enforce the law;" "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." (citations omitted)); United States v. Slaughter, 891 F.2d 691, 696 (9th Cir. 1989) ("The Government may use informants and pay them" and the informant who must "win a suspect's confidence . . . must make overtures of friendship and trust and must enjoy a great deal of freedom in deciding how best to establish a rapport with the subject.").

In the absence of this instruction, the jury may be left with a misleading and incorrect impression that the law enforcement tactics used in this case were not lawful or permissible, which is contrary to the law.  The defense has noted that the comment states this instruction should be used when an entrapment defense is asserted.  But the comment further notes that the instruction may be given when a defendant contends the government has acted improperly.  In United States v. Winslow, 962 F.2d 845 (9th Cir. 1992), which permitted this instruction, the defense objected to the inclusion of the undercover agent instruction in the absence of the entrapment instruction.  Id. at 848.  The defense had insinuated "that the government and [its undercover informant] acted improperly," including by characterizing in the defense opening that the informant "engaged in lies and deceit" and was like a "spider pouncing on its prey."  Id.  Under those circumstances, the Court in held that the district court "did not abuse its discretion by giving the undercover agent instruction to help the jury understand the nature of undercover police work."  Id.  So too should this Court provide the requested instruction to help the jury properly understand the law and to prevent any misleading suggestion that the government acted improperly.

**DEFENDANTS' POSITION RE: INSTRCUTION NO 18:**

The government requests that the Court provide Model Instruction 3.18, which states that the government is permitted to rely on "stealth and deception" through the use of "undercover agents and informants" during their investigations. But the comment to the model rule states that "[t]his instruction should be given <u>when the entrapment defense is being asserted</u>." (Emphasis added). No such defense is being asserted here, nor does the defense presently plan to suggest that the government's use of cooperating witnesses and recorded conversations, writ large, is improper.

Including this instruction would inappropriately elevate Justin Kim's credibility and the propriety of his conduct. The jury should not be instructed to treat him any differently than any other witness. The Court should decline to provide this instruction.

**DISPUTED INSTRUCTION NO. 22 RE: WIRE FRAUD -- SCHEME TO DEFRAUD -- DEPRIVATION OF INTANGIBLE RIGHT OF HONEST SERVICES PROPOSED BY THE GOVERNMENT**

The defendants DAE YONG LEE and 940 HILL, LLC are charged in Count Five of the indictment with honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a bribe in exchange for at least one official act by Jose Huizar or George Esparza, that is, using their official positions to resolve the CREED LA appeal filed against the 940 Hill Project. The "exchange" may be express or may be implied from all the surrounding circumstances;

Third, Jose Huizar and George Esparza owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, the defendant acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services; an intent to defraud is an intent to deceive and cheat;

Fifth, the defendant's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, the defendant used or caused to be used, an interstate wire communication to carry out or attempt to carry out or attempt to carry out the scheme or plan.

6

Scheme to Defraud

In determining whether a scheme to defraud exists, you may consider not only the defendant's and co-schemers' words and statements, but also the circumstances in which they are used as a whole.

Official Acts

An "official act" is any decision or action on a question, matter, cause, suit, proceeding, or controversy involving the formal exercise of governmental power.  The question, matter, cause, suit, proceeding, or controversy must be pending, or be able by law to be brought, before a public official, and the question, matter, cause, suit, proceeding, or controversy must be something specific and focused, rather than a broad policy objective.

The official's decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official. The bribe recipient need not be the final decisionmaker.

The government does not need to prove that the official ever actually intended to perform an official act or that the official ever did, in fact, perform an official act, provided that he agreed to do so.

Merely arranging a meeting, hosting an event, or giving a speech do not qualify as the taking of a specific action.

Public Official and Fiduciary Duty

A "public official," includes an agent of a State or local government, or any agency thereof, that is, a person authorized to

7

act on behalf of a government, including an employee, officer, manager, or representative.

A public official serves as a trustee for the citizens and the local government, and thus owes a fiduciary duty to the citizens and the local government.  A public official has a fiduciary duty to act only for the benefit of the public.

The defendant need not owe the fiduciary duty personally, so long as the defendant devises or participates in a bribery scheme intended to deprive the public of its right to a fiduciary's honest services.

Interstate Wire Communication

A "wire communication" involves the use of a wire, radio, or television communication in interstate commerce.  A wire communication is caused when one knows that a wire, radio, or television communication will be used in the ordinary course of business or when one can reasonably foresee such use.

The interstate wire communication charged in Count Five of the indictment is an e-mail sent on or about August 9, 2016 from Justin Kim to George Esparza, forwarding an e-mail from defendant LEE attaching a copy of the CREED LA appeal filed against the 940 Hill Project.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature.  Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

1

2

3

4

5

6

7

8

9

10

11

12

13

14  Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.)

15  [Mail Fraud -- Scheme to Defraud -- Deprivation of Intangible Right

16  of Honest Services (18 U.S.C. §§ 1341 and 1346)] (modified to reflect

17  facts of the case); Ninth Circuit Model Criminal Jury Instructions,

18  No. 15.35 (2022 ed.) [Wire Fraud (18 U.S.C. § 1343)] (defining "wire

19  communication"); Ninth Circuit Model Criminal Jury Instructions, No.

20  10.1 (2022 ed.) [Official Act -- Defined] (modified to reflect facts

21  of case); 18 U.S.C. § 666(a)(1) & d (defining public official and

22  agent); United States v. Kincaid-Chauncey, 556 F.3d 923, 939 (9th

23  Cir. 2009) (citations omitted) (public officials owe a fiduciary duty

24  to the public), abrogated on other grounds by Skilling v. United

25  States, 561 U.S. 358 (2010);  Seventh Circuit Model Criminal Jury

26  Instructions, 18 U.S.C. §§ 1341, 1343 & 1346 [Definition of "Honest

27  Services"] (2020 ed.) (fiduciary duty of public officials; defendant

28  need not owe a fiduciary duty).

**DISPUTED INSTRUCTION NO. 22 RE: WIRE FRAUD -- SCHEME TO DEFRAUD -- DEPRIVATION OF INTANGIBLE RIGHT OF HONEST SERVICES PROPOSED BY DEFENDANTS**

The defendants DAE YONG LEE and 940 HILL, LLC are charged in Count Five of the indictment with honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346. For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services;

Second, the scheme or plan consisted of a bribe in exchange for at least one official act by Jose Huizar, specifically a promise to cast a vote in the PLUM committee to deny the CREED LA appeal filed against the 940 Hill Project.  The "exchange" may be express or may be implied from all the surrounding circumstances;

Third, Jose Huizar owed a fiduciary duty to the City of Los Angeles or its citizens;

Fourth, the defendant acted with the intent to defraud by depriving the City of Los Angeles or its citizens of their right of honest services; an intent to defraud is an intent to deceive and cheat;

Fifth, the defendant's act was material; that is, it had a natural tendency to influence, or was capable of influencing a person or entity's acts; and

Sixth, the defendant used or caused to be used, an interstate wire communication to carry out or attempt to carry out or attempt to carry out the scheme or plan.  The interstate wire communication

10

charged in Count Five of the indictment is an e-mail sent on or about August 9, 2016 from Justin Kim to George Esparza, forwarding an e-mail from defendant LEE attaching a copy of the CREED LA appeal filed against the 940 Hill Project.

Scheme to Defraud

In determining whether a scheme to defraud exists, you may consider not only the defendant's and co-schemers' words and statements, but also the circumstances in which they are used as a whole.

Official Acts

An "official act" is any decision or action on a question, matter, cause, suit, proceeding, or controversy involving the formal exercise of governmental power.  The question, matter, cause, suit, proceeding, or controversy must be pending, or be able by law to be brought, before a public official, and the question, matter, cause, suit, proceeding, or controversy must be something specific and focused, rather than a broad policy objective.

The official's decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official. The bribe recipient need not be the final decisionmaker.

The government does not need to prove that the official ever actually intended to perform an official act or that the official ever did, in fact, perform an official act, provided that he agreed to do so.

11

Merely arranging a meeting, hosting an event, or giving a speech do not qualify as the taking of a specific action.

Public Official and Fiduciary Duty

A "public official," includes an agent of a State or local government, or any agency thereof, that is, a person authorized to act on behalf of a government, including an employee, officer, manager, or representative.

A public official serves as a trustee for the citizens and the local government, and thus owes a fiduciary duty to the citizens and the local government.  A public official has a fiduciary duty to act only for the benefit of the public.

The defendant need not owe the fiduciary duty personally, so long as the defendant devises or participates in a bribery scheme intended to deprive the public of its right to a fiduciary's honest services.

Interstate Wire Communication

A "wire communication" involves the use of a wire, radio, or television communication in interstate commerce.  A wire communication is caused when one knows that a wire, radio, or television communication will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature.  Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an

12

interstate wire communication must have actually occurred in furtherance of the scheme.

Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.) (2022 ed.) (modified); Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) (modified); McDonnell v. United States, 579 U.S. 550 (2016)

**GOVERNMENT'S POSITION RE: INSTRCUTION NO 22:**

The parties' have three main disputes as to this instruction: (1) the government contends George Esparza should be included; (2) the defense adds specific means with respect to the official act; and (3) the defense would require specific issue unanimity as to those means.  The government addresses each in turn:

First, defendants improperly omit George Esparza from this count entirely.  But the allegations in the First Superseding Indictment ("FSI") and the government's theory of the case include co-schemers Jose Huizar, Justin Kim, and George Esparza.  Huizar is listed as a defendant in Count Five, and Esparza's and Kim's names appear in the specific wire count charged.  Further, the scheme to defraud is pleaded broadly to include all "co-schemers," named and unnamed, including with respect to Count Five, and Esparza is Huizar's co-schemer.

The government addresses the issues of the means and unanimity together.  Here, the defendants seek to specify the two avenues for accomplishing the official act and to require unanimity regarding the same.  But such unanimity is not required because the proposed alternates are merely means of satisfying the "official act" element.  The government's proposed language encompasses both means of accomplishing the official act: "Second, the scheme or plan consisted of a bribe in exchange for at least one official act by Jose Huizar or George Esparza, that is, using their official positions to resolve the CREED LA appeal filed against the 940 Hill Project."  The jury need not find more.

"In the typical case, a . . . general unanimity instruction to the jury adequately protects a defendant's right to a unanimous jury

14

1  verdict." United States v. Gonzalez, 786 F.3d 714, 717 (9th Cir.

2  2015) (citing United States v. Liu, 631 F.3d 993, 1000 (9th Cir.

3  2011)). "Courts must make a 'threshold inquiry' whether the 'listed

4  items' in an 'alternatively phrased' statute are 'elements or

5  means.'" United States v. Mickey, 897 F.3d 1173, 1181 (9th Cir.

6  2018) (quoting Mathis v. United States, 136 S. Ct. 2243, 2256

7  (2016)). "[E]lements are those circumstances on which the jury must

8  unanimously agree, while means are those circumstances on which the

9  jury may disagree yet still convict." Id. (internal quotation marks,

10 italics, and brackets omitted). Alternative elements require a

11 specific unanimity instruction, while alternative means do not. See

12 id. at 1181-82; United States v. Kim, 196 F.3d 1079, 1082 (1999)

13 (holding there was no abuse of discretion to decline to give specific

14 unanimity instruction when the defendant was charged with a single

15 crime based on single set of facts and where prohibited acts were

16 merely alternative means by which defendant could be held criminally

17 liable for underlying substantive offense); see also Schad v.

18 Arizona, 501 U.S. 624, 631-32 (1991) ("We have never suggested that

19 in returning general verdicts in such cases the jurors should be

20 required to agree upon a single means of commission, any more than

21 the indictments were required to specify one alone. In these cases,

22 as in litigation generally, different jurors may be persuaded by

23 different pieces of evidence, even when they agree upon the bottom

24 line. Plainly there is no general requirement that the jury reach

25 agreement on the preliminary factual issues which underlie the

26 verdict.") (internal citations and quotation marks omitted).

27      As this Court noted in its order denying defendants' motion to

28 strike language from the indictment, in an honest services fraud case

15

that requires proof of an official act: "The agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain.  Nor must the public official in fact intend to perform the 'official act,' so long as he agrees to do so." (CR 324 at 6 (quoting McDonnell v. United States, 136 S. Ct. 2355, 2371 (2016)) (emphasis added).

Here, "the Government has identified Labor Organization A's appeal, which would ultimately reach the PLUM Committee (chaired by Defendant Huizar), as the relevant 'question, matter, cause, suit, proceeding, or controversy' that meets these requirements.  Second, the Government has alleged facts demonstrating that Huizar made a decision or took an action on that matter or agreed to do so, including that Huizar agreed to 'deal[ ] with the appeal', 'deny[ ] the appeal,' assist or help with the appeal, 'resolve the appeal,' 'ensur[e] the 940 Hill Project moved forward through the City approval process,' and/or 'oppose the appeal in the PLUM Committee,' in exchange for $300,000 cash." (Id.)  This Court also rejected defendants' argument that "using [Huizar's] office to negotiate with and exert pressure on labor unions to resolve issues on projects" cannot constitute an "official act."  (Id.)

Here, the two avenues for accomplishing the promise made are means of meeting the "official act" element, not two sets of facts requiring unanimity.  The CREED appeal was the specific matter that was pending and capable of being brought before Huizar and was filed and appealable to PLUM and City Council.  Huizar and Esparza agreed to help resolve the appeal in exchange for cash.  Under McDonnell, Huizar and Esparza did not need to specify, and the co-schemers did not need to agree upon, how they would accomplish that promise.

16

Finally, even assuming the Court were to require unanimity, the defendants' proposed framing of the "specific issue" on which they seek unanimity misstates the government's allegations in the FSI and its theory of the case.  Here, the government specifically alleged as a means of the scheme that Huizar and his co-schemers would agree to perform official acts, including "using their office to negotiate with and exert pressure on labor unions to resolve issues on projects" (FSI ¶ 45(b)).  Defendants' proposed means omits this means altogether and instead focuses only on Huizar's ability to vote on the appeal (the government understands defendants disagree with the Court's ruling on this issue, but the Court has ruled).

**DEFENDANTS' POSITION RE: INSTRCUTION NO 22:**

The parties agree that a conviction for honest services fraud requires the government to prove, beyond a reasonable doubt, that a public official promised an "official act" in exchange for a bribe.

First, consistent with the Court's ruling on defendants' earlier-filed motion to strike language from Count 5 (ECF No. 324) and the Supreme Court's ruling in McDonnell v. United States, 579 U.S. 550 (2016), the jury should be instructed that the only "official act" alleged by the government is that Huizar promised to vote to deny the CREED appeal if it reached the PLUM committee. As the Court held in McDonnell, an instruction on the "official act" element must inform the jury that such an act "must be something specific and focused that is 'pending' or 'may by law be brought before any public official." 579 U.S. at 578-79. That task is simplified here, where there is only a single possible official act: the casting of a PLUM Committee vote by Huizar. There is no need to force the jury to perform additional guesswork: the Court should simply tell the jury that it must find beyond a reasonable doubt that Huizar promised to cast such a vote in exchange for the alleged bribe.

The government takes the position that it can also establish an official act by proving that Huizar or Esparza pressured CREED LA to dismiss the project voluntarily. That position is contrary to this Court's ruling. Even though the Court denied defendants' motion to strike, the Court agreed with defendants "that negotiating and exerting pressure on labor unions to resolve issues on projects does not typically, without more, constitute an official act." (ECF No. 324 at 6). It denied defendants' request to strike the "union-

18

pressuring" language from the FSI because it concluded that "the allegation is neither irrelevant nor prejudicial" because the act of pressuring a union could be <u>evidence</u> of a promise to vote to deny the appeal. Accordingly, the instruction for Count 5 should reflect that defendants can only be convicted of honest services fraud if the government proves beyond a reasonable doubt that Huizar promised to vote to deny the CREED appeal if it reached the PLUM Committee.

Second, for the same reasons, references to George Esparza should be removed from the instruction for Count 5 because, as Huizar's staffer, Esparza was not in a position to commit the official act alleged in the FSI. He could not have performed the "official act" of casting a vote in the PLUM Committee, and the inclusion of his name could therefore potentially confuse the jury into convicting defendants even if they concluded that Huizar did not make a promise to vote to deny the appeal in the PLUM Committee.

Third, even if the Court concludes that defendants can be convicted solely on the government's "pressuring unions" allegation, its instruction to the jury should expressly limit their consideration of "official acts" to the ones that are relevant to the government's case. On April 8, 2021, the government confirmed in a letter to counsel that the only official acts relevant to Count 5 are the same acts alleged in Count 25: i.e., "(1) pressuring [CREED LA] to dismiss its appeal against the 940 Hill Project and (2) voting to deny [CREED LA]'s appeal against the 940 Hill Project in the PLUM Committee." (ECF No. 230-1 Ex. 1). Thus, at a minimum, the jury should be instructed that it must unanimously conclude that Huizar promised one of those actions in exchange for the alleged bribe.

Fourth, under no circumstances should the instruction contain the language proposed by the government that the relevant official act is that Huizar or Esparza "us[ed] their official positions to resolve the CREED LA appeal filed against the 940 Hill Project." That language is not in the model instruction, and is inconsistent with the government's prior representations that the "official acts" it was seeking to prove are limited to the two it specified in its April 8, 2021 letter. Such an instruction fails to convey to the jury that it must identify "something specific and focused that is 'pending' or 'may by law be brought before any public official,'" and would therefore result in reversible error under McDonnell.

Fifth, to clarify that the jury should only consider the specific wire communication alleged in the FSI, the section of the instruction describing that communication should be moved to immediately after the description of the corresponding element, as reflected in defendants' proposed instruction.

1

<u>**DISPUTED INSTRUCTION NO. 24 RE:**</u>

2

<u>**BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS PROPOSED BY THE**</u>

3

<u>**GOVENRMENT**</u>

4      Defendants DAE YONG LEE and 940 HILL, LLC are charged in Count

5  Twenty-Five of the indictment with bribery concerning programs

6  receiving federal funds, in violation of Title 18, United States

7  Code, Section 666(a)(2).

8      In order to prove that charge, the government must prove each of

9  the following elements beyond a reasonable doubt:

10      First, Jose Huizar or George Esparza was an agent of a local

11  government -- specifically, the City of Los Angeles ("City");

12      Second, the defendants gave, offered, or agreed to give a thing

13  of value to Jose Huizar, George Esparza, or Justin Kim -- namely,

14  cash;

15      Third, the defendants acted corruptly, that is, with an intent

16  to influence or reward Jose Huizar or George Esparza in connection

17  with any business, transaction, or series of transactions of the City

18  involving anything of value of $5,000 or more; and

19      Fourth, the City received benefits in excess of $10,000 under a

20  Federal program involving a grant, contract, subsidy, loan,

21  guarantee, insurance, or other form of Federal assistance in any one-

22  year period.

23      The term "agent" means a person authorized to act on behalf of

24  a local government, including an employee, officer, manager, or

25  representative.

26      The term "local" means of, or pertaining to, a political

27  subdivision within a State of the United States.

28      The phrase "in any one-year period" means a continuous period

21

that commences no earlier than 12 months before the commission of the offense or that ends no later than 12 months after the commission of the offense. Such period may include time both before and after the commission of the offense.

The government does not need to prove that any of the Federal benefits in excess of $10,000 received by the City were misappropriated or otherwise connected to the commission of the offense.

18 U.S.C. §§ 666(a)(2), (b), (d); Ninth Circuit Model Criminal Jury Instructions, No. 10.2 (2022 ed.) [Bribery of Federal Public Official (18 U.S.C. § 201(b)(2))] (defining "corruptly"); Sabri v. United States, 541 U.S. 600, 604-05 (2004) (no connection between the federal funds and criminal activity required); Salinas v. United States, 522 U.S. 52, 56-57 (1997) (same); United States v. Roberson, 998 F.3d 1237, 1247 (11th Cir. 2021), cert. denied, 142 S. Ct. 1109 (2022) (holding that section 666 bribery does not require the government to prove an "official act"); id. ("The only Circuit Courts of Appeals to directly consider the issue [of whether section 666 requires an 'official act'] in published cases post-McDonnell, the Second and Sixth, have not imported an 'official act' requirement into section 666. In considering the purpose of section 666 to protect the integrity of entities receiving substantial sums of federal funds and the statute's expansive, unqualified language, the court has repeatedly rejected statutory constructions aimed at narrowing section 666's scope. Consistent with the views of our sister Circuits, we hold that McDonnell does not disturb this court's holding

in McNair and we do not read into section 666 limitations unsupported by the language of the statute.") (internal quotations and citations omitted); United States v. Ng Lap Seng, 934 F.3d 110, 134 (2d Cir. 2019) (McDonnell's "official act" standard does not pertain to section 666 bribery, only to section 201 bribery); United States v. Porter, 886 F.3d 562, 565-66 (6th Cir. 2018) (same); United States v. Garrido, 713 F.3d 985, 996-97 (9th Cir. 2013) (no quid pro quo of benefits in exchange for an official act required for section 666 bribery).

1                 **DISPUTED INSTRUCTION NO. 24 RE:**

2 **BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS PROPOSED BY**

3                               **DEFENDANTS**

4     Defendants DAE YONG LEE and 940 HILL, LLC are charged in Count

5 Twenty-Five of the indictment with bribery concerning programs

6 receiving federal funds, in violation of Title 18, United States

7 Code, Section 666(a)(2).

8     In order to prove that charge, the government must prove each of

9 the following elements beyond a reasonable doubt:

10     First, Jose Huizar or George Esparza was an agent of a local

11 government -- specifically, the City of Los Angeles ("City");

12     Second, the defendants gave, offered, or agreed to give a thing

13 of value to Jose Huizar, George Esparza, or Justin Kim -- namely,

14 cash;

15     Third, the defendants acted corruptly, that is, with an intent

16 to influence or reward Jose Huizar or George Esparza in connection

17 with any business, transaction, or series of transactions of the City

18 involving anything of value of $5,000 or more.  Specifically, the

19 government must prove that defendants intended to influence and

20 reward Huizar and Esparza for voting to deny CREED LA's appeal

21 against the 940 Hill Project in the PLUM Committee.  You must all

22 agree as to what the defendants intended Jose Huizar to do in return

23 for the thing of value.

24     Fourth, the City received benefits in excess of $10,000 under a

25 Federal program involving a grant, contract, subsidy, loan,

26 guarantee, insurance, or other form of Federal assistance in any one-

27 year period.

28     The term "agent" means a person authorized to act on behalf of

a local government, including an employee, officer, manager, or representative.

The term "local" means of, or pertaining to, a political subdivision within a State of the United States.

The phrase "in any one-year period" means a continuous period that commences no earlier than 12 months before the commission of the offense or that ends no later than 12 months after the commission of the offense. Such period may include time both before and after the commission of the offense.

The government does not need to prove that any of the Federal benefits in excess of $10,000 received by the City were misappropriated or otherwise connected to the commission of the offense.

18 U.S.C. §§ 666(a)(2), (b), (d); Ninth Circuit Model Criminal Jury Instructions, No. 10.2 (2022 ed.) [Bribery of Federal Public Official (18 U.S.C. § 201(b)(2))] (defining "corruptly") (modified); McDonnell v. United States, 579 U.S. 550 (2016).

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 24:**

The government incorporates by reference its arguments with respect specific means (and narrowing of the means to Huizar only) and unanimity set forth above in its position regarding Disputed Instruction No. 22.  Further, as to the 18 U.S.C. § 666 violation, this Court has already held that an "official act" is not an element of that offense.  (CR 324 at 14.)  To satisfy the elements of § 666, the jury needs to find that defendants corruptly gave, offered, or agreed to give $500,000 in cash intending to influence or reward Huizar or Esparza in connection with the 940 Hill Project, including in: "(1) pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project" or "(2) voting to deny Labor Organization A's appeal against the 940 Hill Project in the PLUM Committee."  (Id.)  Here again, the alternates defendants propose including constitute separate means of proving an element, not separate elements.  Specific-issue unanimity is not required.

Finally, defendants' proposed framing of the "specific issue" on which they seek unanimity again misstates the government's allegations in the FSI and its theory of the case because it omits that the government alleged "using their office to negotiate with and exert pressure on labor unions to resolve issues on projects" and instead only includes "voting to deny CREED LA's appeal against the 940 Hill Project in the PLUM Committee."

**DEFENDANTS' POSITION RE: INSTRUCTION NO. 24:**

The Court should provide defendants' proposed instruction for Count 25 (for which there is no model instruction) to ensure that the jury does not convict defendants based on theories that are not alleged in the indictment.

First, as defendants argued in their motion to strike regarding Count 25 (ECF No. 231), the jury should be instructed that it can only convict defendants based on the vote-promise theory, not the union-pressuring theory, because of the statutory requirement that the bribe be "intended to influence or reward" an agent "in connection with any business, transaction, or series of transactions" of the government. As explained in that motion, the overly broad interpretation of this language proposed by the government would run afoul of the constitutional concerns raised in McDonnell. Although defendants recognize that the Court rejected this argument when it denied their motion to strike, they urge the Court to reconsider its ruling and provide an instruction that limits Count 25 to the vote-promise theory.

Second, even if the Court concludes that Section 666 need not be limited in scope as discussed above, the instruction on Count 25 should specify the two theories articulated in the FSI, i.e. the union-pressuring and vote-promising allegations described in the indictment. Given that the government's two primary cooperating witnesses were involved in a slew of illegal activities, and that the government's case agent investigated the same, it is likely that the jury will be exposed to testimony concerning a broad variety of misconduct by government actors. Such evidence could, without a specific instruction, confuse the jury into considering defendants'

role in misconduct for which they were not indicted. Accordingly, the Court should provide the version of the instruction requested by defendants.

**DISPUTED INSTRUCTION NO. 25 RE:**

**DEFENSE THEORY OF THE CASE INSTRUCTION PROPOSED BY THE GOVERMENT**

Not applicable.  The government does not believe this instruction should be given for the reasons set forth below.

**DISPUTED INSTRUCTION NO. 25 RE:**

**DEFENSE THEORY OF THE CASE INSTRUCTION PROPOSED BY DEFENDANTS**

If you conclude that either defendant intended to pay Justin Kim and/or CREED LA in exchange for dismissal of CREED LA's appeal, and did not intend for money to go to George Esparza or Jose Huizar in exchange for an official act, you must find that defendant not guilty of Count 5.

If you conclude that either defendant intended to pay Justin Kim and/or CREED LA in exchange for dismissal of CREED LA's appeal, and did not intend for money to influence or reward George Esparza or Jose Huizar in connection with any business, transaction, or series of transactions of the City of Los Angeles, you must find that defendant not guilty of Count 25.

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 25:**

Defendants style this instruction as a "defense theory of the case instruction." It is not. It contains no new legal theories or concepts not otherwise included in the instructions. Instead, it merely constitutes argument best saved for counsel.

"A defendant is entitled to have the jury instructed on his or her theory of defense, as long as the theory has support in the law and some foundation in the evidence." United States v. Perdomo-Espana, 522 F.3d 983, 986-87 (9th Cir. 2008). However, "the instruction need not be given in the form requested, nor if it merely duplicates what the jury has already been told." United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir. 1992). The latter is precisely the situation here: the substantive instructions for the charged offenses already provide the elements the government must prove beyond a reasonable doubt. Defendants are free to argue that the specific factual scenarios they identify do not satisfy those elements. Instead, however, defendants have proposed a standalone instruction that identifies certain factual scenarios and then describes the conclusions the jury must draw from them. In other words, this "instruction" is merely defense argument, instead of a "theory of the case" instruction based on a legal theory or concept not otherwise contained in the instructions. As a result, this instruction would merely serve to confuse the jury and is duplicative of the substantive instructions.

**DEFENDANTS' POSITION RE: INSTRUCTION NO. 25:**

Defendants request that the Court provide a "theory of defense" instruction that instructs the jury that they cannot convict defendants if they conclude that defendants only intended that a payment be received by Justin Kim and/or CREED LA, instead of Huizar or Esparza. The Ninth Circuit has held that "if a defendant's theory of the case is supported by law, and if there is some foundation for the theory in the evidence, the failure to give the defendant's proposed jury instruction concerning his theory is 'reversible error.'" United States v. Escobar de Bright, 742 F.2d 1196, 1201 (9th Cir. 1984).

Here, the theory reflected in the instruction is both supported by law and the evidence that the government intends to offer. First, there is no dispute that if the evidence establishes that defendants believed that the money paid to Justin Kim would be used to pay himself and/or CREED LA, defendants should be acquitted. The government does not appear to disagree: its proposed instructions for Counts 5 and 25 identify only Esparza and Huizar as alleged beneficiaries of the alleged bribe.

Second, the government's own exhibits contain factual support for this theory of defense. In two of the translated recorded conversation transcripts that it plans to offer, Mr. Lee asked Justin Kim, "How much was given to the union" and noted that it "is not a problem" if Justin Kim had paid CREED LA. Tr. Ex. 118A, 118B. And in one of the emails offered by the government, a consultant states, "Regarding 940 Hill project, developer's team has been working on negotiating with Creed LA, and it is almost in final phase now." Tr. Ex. 51 at 1. Defendants expect additional evidence in support of this

32

theory of defense will emerge at trial, though the above is sufficient to justify the theory of defense instruction.

Accordingly, the Court should give the jury this theory of defense instruction.

**DISPUTED INSTRUCTION NO. 26 RE:**

**RE: OBSTRUCTION OF JUSTICE—DESTRUCTION, ALTERATION, OR FALSIFICATION**

**OF RECORDS IN FEDERAL INVESTIGATIONS PROPOSED BY THE GOVERNMENT**

Defendants DAE YONG LEE and 940 HILL, LLC are charged in Count Thirty-Eight of the indictment with obstruction of justice in violation of Title 18, United States Code, Section 1519.  For a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly altered, falsified, or made a false entry in, a record or document; and

Second, the defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States, that is, the United States Attorney's Office or the Federal Bureau of Investigation.

The government need not prove that the defendant's sole or even primary intention was to obstruct justice so long as the government proves beyond a reasonable doubt that one of the defendant's intentions was to obstruct justice.  The defendant's intention to obstruct justice must be substantial.

Ninth Circuit Model Criminal Jury Instructions, No. 19.4 (2022 ed.) [Obstruction of Justice—Destruction, Alteration, or Falsification of Records in Federal Investigations] (modified to reflect facts of case).

1    <u>**DISPUTED INSTRUCTION NO. 26 RE:**</u>

2    <u>**RE: OBSTRUCTION OF JUSTICE—DESTRUCTION, ALTERATION, OR FALSIFICATION**</u>

3    <u>**OF RECORDS IN FEDERAL INVESTIGATIONS PROPOSED BY DEFENDANTS**</u>

4         Defendants DAE YONG LEE and 940 HILL, LLC are charged in Count

5    Thirty-Eight of the indictment with obstruction of justice in

6    violation of Title 18, United States Code, Section 1519.  For a

7    defendant to be found guilty of that charge, the government must

8    prove each of the following elements beyond a reasonable doubt:

9         First, the defendant knowingly altered or falsified a record or

10   document; and

11        Second, the defendant acted with the intent to impede, obstruct,

12   or influence an actual or contemplated investigation of a matter

13   within the jurisdiction of any department or agency of the

14   United States.

15        The government need not prove that the defendant's sole or even

16   primary intention was to obstruct justice so long as the government

17   proves beyond a reasonable doubt that one of the defendant's

18   intentions was to obstruct justice.  The defendant's intention to

19   obstruct justice must be substantial.

26   Ninth Circuit Model Criminal Jury Instructions, No. 19.4 (2022 ed.)

27   [Obstruction of Justice—Destruction, Alteration, or Falsification of

28   Records in Federal Investigations].

35

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 26:**

18 U.S.C. § 1519 holds liable anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . ." Id. (emphasis added). The FSI adopts this statutory language, alleging that "DAE YONG LEE and 940 HILL, LLC knowingly altered, falsified, and made a false entry in records and documents with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Justice" and, specifically, "made a false entry in 940 HILL, LLC accounting and tax records for the calendar year 2018." FSI ¶ 62 (emphases added).

Defendants claim this language should be excised merely because it does not appear in the Ninth Circuit model. But the Ninth Circuit has cautioned against such blind adherence to model instructions. In a "Caveat" section preceding the model instructions, the Committee warns: "These model jury instructions are written and organized by judges who are appointed to the Ninth Circuit Jury Instructions Committee by the Chief Circuit Judge. The Ninth Circuit Court of Appeals does not adopt these instructions as definitive. Indeed, occasionally the correctness of a given instruction may be the subject of a Ninth Circuit opinion." Ninth Cir. Model Criminal Jury Instructions at V. Defendants' blind adherence to the model is particularly misguided here because the government's suggested language not only appears in the statute, but also is a correct

statement of the law, was pleaded in the FSI, and will be consistent with evidence the government is expected to adduce at trial.  It should be included here.

On the same basis, defendants object to the government's inclusion of language specifying the specific department of the United States that the defendants are alleged to have obstructed, that is, the United States Attorney's Office or the Federal Bureau of Investigation.  While the model does not *require* this specificity, it would be helpful to the jury.

1    **DEFENDANTS' POSITION RE: INSTRUCTION NO. 26:**

2          The Court's Criminal Trial Order (ECF No. 51) "directs counsel

3    to use the instructions from the <u>Manual of Model Criminal Jury</u>

4    <u>Instructions for the Ninth Circuit</u> (West Publishing, most recent

5    edition) where applicable." Defendants' proposed instruction is the

6    unmodified model instruction requested by the Court. The government

7    proposes a number of modifications that are unnecessary and appear to

8    be designed to steer the jury towards its theory of prosecution.

9    There is no reason to deviate from the Court's preference for the

10   model instruction. The Court should therefore provide the unmodified

11   model instruction.

1       **DISPUTED INSTRUCTION NO. 27 RE:**

2     **CORPORATE LIABILITY PROPOSED BY THE GOVERNMENT**

3       Defendant 940 HILL, LLC is a limited liability company ("LLC").

4    An LLC may be found guilty or not guilty of a criminal offense.

5       An LLC can act only through its agents, that is, its members,

6    managers, directors, officers, employees, and other persons

7    authorized to act for it or with authority to direct others to act

8    for it. The knowledge obtained by agents of LLCs acting within the

9    scope of their employment is imputed to the LLC.  Accordingly, if a

10   specific agent knows something within the scope of his or her

11   employment, then the LLC can be said to know the same thing.

12       To find an LLC guilty, you must find beyond a reasonable doubt

13   that:

14       First, each element of the crime charged against the LLC was

15   committed by one or more of its agents;

16       Second, in committing those acts the agent(s) intended, at least

17   in part, to benefit the LLC; and

18       Third, each act was within the scope of employment of the agent

19   who committed it.

20       For an act to be within the scope of an agent's employment, it

21   must relate directly to the performance of the agent's general duties

22   for the LLC. It is not necessary for the act itself to have been

23   authorized by the LLC.

24       If an agent was acting within the scope of his or her

25   employment, the fact that an agent's act was illegal, contrary to his

26   or her employer's instructions, or against the LLC's policies will

27   not relieve the LLC of criminal responsibility for it.

28

39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21  Eighth Circuit Model Criminal Jury Instructions, No. 5.03 (2021 ed.)

22  [Corporate Responsibility] (modified); Seventh Circuit Model Criminal

23  Jury Instructions, No. 7.06 (2018 ed.) [Corporate Criminal

24  Responsibility] (modified); United States v. Hilton Hotels Corp., 467

25  F.2d 1000, 1004-07 (9th Cir. 1973); United States v. Basic Const. Co.,

26  711 F.2d 570, 572 (4th Cir. 1983); United States v. Mongol Nation, 370

27  F. Supp. 3d 1090, 1128-29 (C.D. Cal. 2019); United States v. Shortt

28  Accountancy Corp., 785 F.2d 1448 (9th Cir. 1986).

## DISPUTED INSTRUCTION NO. 27 RE:

## CORPORATE LIABILITY PROPOSED BY DEFENDANTS

Defendant 940 HILL, LLC is a limited liability company ("LLC").

An LLC is a legal entity that may act only through its agents. The agents of a corporation are its officers, directors, employees, and certain others who are authorized by the LLC to act for it.

A corporate defendant is entitled to the same individual and impartial consideration of the evidence that the jury gives to a personal defendant. An LLC may be found guilty of the offense charged or be found not guilty of the offense charged under the same instructions that apply to a personal defendant.

In order to sustain its burden of proof for the crime of 940 HILL, LLC as charged in Counts Five, Twenty-Five, and Thirty-Eight of the indictment against Defendant 940 HILL, LLC, the government must prove to you, beyond a reasonable doubt, that each of the Essential Elements of the Offense, as given to you earlier, was committed by an officer, director, employee, or agent of the corporation.

In addition to the above, the government must also establish the following two (2) elements beyond a reasonable doubt in order to sustain its burden of proof as to Defendant 940 HILL, LLC:

First: That each of the acts committed by the officer, director, employee, or agent were within the course and scope of the employment or agency given to the officer, director, employee, or agent by Defendant 940 HILL, LLC or if not then within the course and scope of employment or agency, the act or omission of the officer, director, employee, or agent was later approved or adopted by Defendant 940 HILL, LLC; and

41

Second: That the officer, director, employee, or agent committed each of the Essential Elements of the Offense with the intent to benefit Defendant 940 HILL, LLC.

In order to establish that an act was committed or omitted within the course and scope of employment, the evidence must show that the act or omission related directly to the general duties that this officer, director, employee, or agent was expected to perform by the defendant corporation. It is not necessary for the government to prove that the act was authorized by the corporation formally or in writing.

An officer, director, employee, or agent is not acting within the course and scope of his employment, however, if that person performs an act which Defendant 940 HILL, LLC has, in good faith, forbidden its officers, directors, employees, or agents to perform. A corporate defendant—like an individual defendant—however, may not avoid responsibility for its actions by meaningless or purely self-serving pronouncements. Similarly a corporate defendant—like an individual defendant—may not be held responsible for acts which it tries to prevent.

1A Fed. Jury Prac. & Instr. § 18:05 (6th ed) (modified to fit facts of case)

42

**GOVERNMENT'S POSITION RE: INSTRUCTION NO. 27:**

The defense proposes the O'Malley Instruction on Corporate Responsibility. While the government understands that the Court generally prefers O'Malley instructions in the absence of a Ninth Circuit model, it is proposing the Eighth Circuit Model Instruction on Corporate Responsibility with modifications based on Ninth Circuit precedent and other precedent applicable to the facts of this case. The government's instruction is clearer and conforms with Ninth Circuit precedent, while the defendants' instruction is confusing, redundant of other instructions, and misstates Ninth Circuit precedent in several key respects.

First, paragraph two of the government's proposed instruction recognizes that knowledge obtained by agents acting within the scope of their authority is imputed to the LLC. See United States v. Pacific Gas and Elec. Co., Case No. 14-cr-00175-THE, 2015 WL 9460313, at *3-5 (N.D. Cal. Dec. 23, 2015); United States v. T.I.M.E.-D.C., Inc., 381 F. Supp. 730, 739 ("knowledge acquired by employees within the scope of their employment is imputed to the corporation"); see also United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1454 (9th Cir. 1986) (corporation guilty given collective intent in submitting false tax returns). This concept directly relates to facts the government intends to prove at trial and would be helpful to the jury.

Second, the defendants' paragraph beginning with "A corporate defendant is entitled to the same individual and impartial consideration of the evidence that the jury gives to a personal defendant" is redundant. This is covered by Ninth Circuit Model

43

Criminal Jury Instruction No. 6.16 (Corporate Defendant]), upon which the parties have agreed.

Third, defendants proposed paragraph four states: "each of the Essential Elements of the Offense, as given to you earlier, was committed by an officer, director, employee, or agent of the corporation."  This phrasing is repeated throughout the instructions and suggests that the elements must be satisfied by a single actor instead of by different or multiple actors, the former of which is at odds the Ninth Circuit's holding in United States v. Hilton Hotels Corp., 467 F.2d 1000, 1001, 1004-07 (9th Cir. 1973).

Fourth, the language in defendants' proposed paragraph seven that the agent must act "with the intent to benefit Defendant 940 HILL, LLC" removes critical language that the agent need only have intended to benefit the LLC, *at least in part*.  The government's proposed instruction reflects Ninth Circuit precedent and would be helpful to the jury: "Second, in committing those acts the agent(s) intended, at least in part, to benefit the LLC."

Finally, and perhaps most importantly, the government's proposed instruction properly allows a jury to find the LLC responsible based upon theories of express, implied, and apparent authority, whereas defendants' instruction suggests only express authority is applicable.  Defendants' proposed language is directly at odds with Ninth Circuit precedent.  Specifically, paragraph nine states: "An officer, director, employee, or agent is not acting within the course and scope of his employment, however, if that person performs an act which Defendant 940 HILL, LLC has, in good faith, forbidden its officers, directors, employees, or agents to perform."  This suggests that an agent's actions contrary to express instructions are never

44

within the scope of employment.  The Ninth Circuit has held the opposite.  In Hilton Hotels, the Ninth Circuit held that a corporation can be liable for acts of agents even though they are contrary to corporate policy or express instructions given to the agent.  467 F.3d at 1007 ("Such liability may attach without proof that the conduct was within the agent's actual authority, and even though it may have been contrary to express instructions.").  "For these reasons we conclude that as a general rule a corporation is liable . . . for the acts of its agents in the scope of their employment, even though contrary to general corporate policy and express instructions to the agent."  Id.; United States v. Mongol Nation, 370 F. Supp. 3d 1090, 1129 (C.D. Cal. 2019) ("Such liability may attach without proof that the conduct was within the agent's actual authority, and even though it may have been contrary to express instructions.  Actual authority can be either express or implied." (citations omitted)).

Of course, the Ninth Circuit's reasoning in Hilton Hotels makes good sense, because most companies will have some statement or policy that forbids criminal or illegal acts.  But the absence of such express authority does not absolve the company of liability under an implied or apparent liability theories.  See Slayers v. Metro. Life Ins. Co., 871 F.3d 934, 940 (9th Cir. 2017) ("The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied) or apparent authority"); Continental Baking Co. v. United States, 281 F.2d 137, 150-51 (6th Cir. 1960) ("A corporation is legally bound by the acts and statements of its agents done or made within the scope of their express or apparent authority.  Express authority is that

45

specifically given to an agent by his superior; apparent authority is the authority which outsiders would normally assume that the agent would have, judging from his position with the company and the circumstances surrounding his past conduct.").  Here, the government should be permitted to argue that while defendant Lee and Justin Kim may have been acting contrary to policy, the LLC nevertheless may be held liable if Lee and/or Kim was acting within the scope of their employment and directing other agents to do the same, even if contrary to such policy.  The jury instruction given at trial should encompass all three legal theories.

**DEFENDANTS' POSITION RE: INSTRUCTION NO. 27:**

The Ninth Circuit does not have a model instruction on corporate liability. Paragraph 25 of the Court's Criminal Trial Order (ECF No. 51) prescribes that in such a situation, "counsel are directed to use the instructions from O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u> (Thomson/West, most recent edition)." Defendants' proposed instruction follows this order (and slightly modifies the instruction to make it clear that it applies to an LLC like 940 Hill). Moreover, defendants' proposed instruction more thoroughly and accurately instructs the jury about the specific manner in which it should deliberate about the charges against 940 Hill. The government's proposed instruction does not comply with the Court's order. Accordingly, the Court should provide defendants' proposed instruction.