Ariel A. Neuman - State Bar No. 241594
  aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
  rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL LLC'S RESPONSE TO GOVERNMENT'S OFFER OF PROOF RE: 404(B) EVIDENCE**<br><br>Assigned to Hon. John F. Walter |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE GOVERNMENT'S 404(b) DISCLOSURE IS UNTIMELY .................. 2

III. THE ALLEGED 404(b) EVIDENCE IS INADMISSIBLE ............................ 5

    A. Legal Standard ........................................................................................ 5

    B. Materiality ............................................................................................... 6

    C. Similarity ................................................................................................. 7

    D. Remoteness ............................................................................................. 8

    E. Insufficient Evidence of Alleged Prior Acts ........................................... 9

    F. The Proffered Evidence Should Be Excluded Under Rule 403 ............ 11

IV. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Government of Virgin Islands v. Toto*,
   529 F.2d 278 (3d Cir. 1976) ................................................................................ 12

*United States v. Berckmann*,
   971 F.3d 999 (9th Cir. 2020) ................................................................................. 5

*United States v. Blackwell*,
   No. CR-13-01462-001-PHX, 2014 WL 4954399 (D. Ariz. Sept. 30,
   2014) ..................................................................................................................... 6

*United States v. Corey*,
   566 F.2d 429 (2d Cir. 1977) .................................................................................. 8

*United States v. Garcia*,
   291 F.3d 127 (2d Cir. 2002) .................................................................................. 8

*United States v. Hadley*,
   918 F.2d 848 (9th Cir. 1990) ................................................................................. 5

*United States v. Hernandez-Miranda*,
   601 F.2d 1104 (9th Cir. 1979) ............................................................................... 6

*United States v. Johnson*,
   132 F.3d 1279 (9th Cir. 1997) ............................................................................... 7

*United States v. Luna*,
   21 F.3d 874 (9th Cir. 1994) ................................................................................... 9

*United States v. Mayans*,
   17 F.3d 1174 (9th Cir. 1994) ................................................................................. 6

*United States v. Miller*,
   874 F.2d 1255 (9th Cir. 1989) ............................................................................. 11

*United States v. Perez-Tosta*,
   36 F.3d 1552 (11th Cir. 1994) ............................................................................... 4

*United States v. Romero*,
   282 F.3d 683 (9th Cir. 2002) ................................................................................. 5

*United States v. Vega*,
   188 F.3d 1150 (9th Cir. 1999) .................................................................................. 4

*United States v. Verduzco*,
   373 F.3d 1022 (9th Cir. 2004) .................................................................................. 5

*United States v. Whittemore*,
   776 F.3d 1074 (9th Cir. 2015) .................................................................................. 9

**Federal Statutes**

52 U.S.C. § 30122 ............................................................................................................ 10

**Other Authorities**

Federal Rule of Evidence 403 ................................................................................ 5, 11, 12

Federal Rule of Evidence 404 ........................................................................................... 11

Federal Rule of Evidence 404(a) ........................................................................................ 6

Federal Rule of Evidence 404(a)(1) ................................................................................. 11

Federal Rule of Evidence 404(b) ............................................................................. *passim*

## I. INTRODUCTION

The government's belated attempt to introduce purported Rule 404(b) evidence of two uncharged criminal offenses on the eve of trial should be rejected as unfair, meritless, and prejudicial. The government first advised defendants of this 404(b) evidence in a disclosure sent to defendants *four months after* the February 1, 2022 deadline for disclosing Rule 404(b) evidence. The government offers no good cause for its delay, other than a claim that it "recently" discovered the alleged facts. However, the source of the allegations is the government's key cooperating witness, Justin Kim, to whom it has had access for years during which he sat for multiple interviews. The government offers no explanation of why it either failed to ask the right questions of Justin Kim earlier, or why he failed to disclose these allegations until now. Either the government was dilatory in seeking out 404(b) evidence, or Justin Kim failed to truthfully disclose information in prior interviews.

Allowing the government allegations of these uncharged crimes before the jury would result in undue prejudice to defendants, who would be forced to investigate and defend *two additional criminal accusations unrelated to the charged offenses,* based on alleged conduct that took place over a decade ago. Defendants should not be forced to assume this burden for the first time on the eve of trial, especially absent any showing of good cause for the government's delay. For this reason alone, the Court should not permit the government to introduce any of the alleged 404(b) evidence.

The government's offer of proof should also be denied on the merits. The government's offer of proof fails to establish the four factors required by Federal Rule of Evidence 404(b): (1) materiality, (2) similarity, (3) recency, and (4) sufficiency of proof. There is no logical connection or similarity between defendant Dae Yong Lee's ("Mr. Lee") prior political contributions and cash payments on the one hand and the charged crimes of honest services fraud, federal-funds bribery, or obstruction on the other. A single, vague allegation of conduit contributions from

"2011 or 2012" to some unknown candidate is not relevant to this case, nor is an uncorroborated allegation about a real estate transaction *that occurred in 2008* (a fact the government neglects to mention). The government fails to show that the proffered evidence is in any way material, similar, recent, or sufficient enough to be probative of Mr. Lee's alleged intent and knowledge underlying the bribery.

Even if unsupported testimony by Justin Kim—a person who has admitted lying to the FBI despite being warned that it is a crime—had any probative value (it does not), it would clearly be outweighed by the prejudice that would arise from allowing him to make additional unfounded criminal accusations against Mr. Lee. Such testimony would unfairly paint Mr. Lee as a career criminal, despite the fact that he was never *charged* with these alleged crimes, much less convicted. Moreover, allowing Justin Kim to make these accusations would result in not one, but *two* side-trials, since Mr. Lee would be forced to present evidence and testimony to defend against them. Finally, given that the government's only evidence of criminal conduct by Mr. Lee is the word of an admitted liar, the evidence itself is highly unreliable. While the government has attempted to cobble together donation records to corroborate the conduit contribution allegation, they have no witness beyond Justin Kim to corroborate that this actually occurred on even a single occasion. And while the government cites Jason Kang's statement, it does not apply to the same transaction as that discussed by Justin Kim, and is anyway equivocal at best, indicating that the payment he was talking about may well have been properly recorded, which would not corroborate Justin Kim.  In the interest of fairness and judicial economy, the evidence should be excluded under Rule 404(b).

## II. THE GOVERNMENT'S 404(b) DISCLOSURE IS UNTIMELY

Pursuant to the Court's May 13, 2021 scheduling order, the deadline for the government's Rule 404(b) disclosure was February 1, 2022. (Dkt. 187.) The government served a disclosure that day, but despite the fact that it had full access to Justin Kim since he began cooperating in March 2019, it did not disclose either

alleged act now presented in its offer of proof. This "other act" evidence was not disclosed to the defense until June 3, 2022, *ten days* before trial and more than *four months* after the February 1 deadline.[1] (Gov. Offer Ex. 1.) The government does not offer any justification for this late disclosure other than that it "recently discovered" the evidence in question. (Gov. Offer at 1.) That is not good cause for the delayed disclosure under these circumstances. Either the government never bothered asking Mr. Kim for potential 404(b) evidence *even when it knew the deadline for that evidence was approaching*, or he lied by omission to the government in all of his prior interviews about the information he had about Mr. Lee—rendering his new disclosures especially unreliable. Moreover, the documentary evidence cited by the government in support of the conduit campaign contribution allegation—none of which establishes criminal conduct on its own, without Justin Kim's substantiated assertions—was fully accessible to the government since the beginning of this case:

- The political contribution records cited by the government have been available at all times on the Los Angeles City website, www.ethics.lacity.org (Gov. Offer at 3). The government offers no explanation why it did not access this information until now.
- The government seized Justin Kim's phone and was able to review his text messages after they executed a search warrant in March 2019.
- The pertinent JOIA records (Gov. Offer Ex. 4) were produced to the government in 2018 in response to a subpoena.

Notably, the government does not have a single document to support the allegations regarding Mr. Lee's cash payments during real estate transactions . (Gov. Offer at 5-6.) The only purported support for Justin Kim's allegation is a statement by Jason Kang which does not relate to the 2008 transaction referenced by Justin Kim, and who anyway "was not sure whether" the other alleged cash payment he

---

[1] The government's draft report of Justin Kim's May 17 interview at which these allegations were apparently raised was not produced to defendants until June 2.

was discussed was reported or not (thereby failing entirely to corroborate the accusation lodged by Justin Kim). In any event, the government interviewed Jason Kang in May 2020 and he testified before the grand jury in July 2020; like Justin Kim, the government had access to him long before the 404(b) disclosure deadline in this case.

The government's absence of any good cause explanation for its belated disclosure violates Rule 404(b)'s notice requirement, which is intended "to reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153-55 (9th Cir. 1999) (holding that the government's failure to provide reasonable notice rendered the other acts evidence inadmissible). Moreover, the government should be charged with knowledge of this "newly-discovered" evidence. "To protect defendants from 'trial by ambush,' the Government should be charged with the knowledge of 404(b) evidence that a timely and reasonable preparation for trial would have revealed." *United States v. Perez-Tosta*, 36 F.3d 1552, 1561 (11th Cir. 1994). There is no dispute that the government had unfettered access to Justin Kim, the *only* source of the claim that Mr. Lee actually engaged in criminal conduct, since 2019. There was nothing stopping them from asking him about other criminal conduct by Mr. Lee years before the February 1, 2022 404(b) disclosure deadline. And the other evidence cited by the government—which is fully consistent with *legal* political contributions and *legal* cash payments in the absence of Justin Kim's accusations—have all been (or could have been) in the government's possession for years.

Defendants should not be forced to deal with the unfair surprise that the government sprung on them without good cause on the eve of trial. This is especially true where, as here, the accusations are so vague that defendants would not even know where to start with their investigation. Justin Kim's allegation that Mr. Lee engaged in conduit contributions is based on "one occasion in 2011 or 2012" to some unidentified candidate. (Gov. Offer at 3). And his accusation that Mr.

Lee used cash payments to lower tax liabilities is based on the contention that Mr. Lee "was known in the Korean community to use cash as a means to lower tax liabilities" and an assertion that he did this for the Little Tokyo property, without any description of how Justin Kim claims to know this or any document or witness to back it up.[2] (*Id.* at 6). Moreover, because the government is suggesting that there was criminal conduct underlying contributions and transactions *as far back as 2005 or 2009* (*see* Gov. Offer Ex. 2), defendants would be put in the position of having to investigate events from *over a decade ago* that never even resulted in an *criminal investigation*, much less charges or a conviction. It would be fundamentally unfair to force defendants to do this in less than a week before trial. The government's inexcusable untimeliness—and the prejudice to defendants that would result—is reason enough to exclude the government's additional 404(b) evidence.

### III.     THE ALLEGED 404(b) EVIDENCE IS INADMISSIBLE

#### A.     Legal Standard

In the Ninth Circuit, evidence is admissible under Rule 404(b) if it meets four requirements: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged. *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004); *United States v. Hadley*, 918 F.2d 848, 850–51 (9th Cir. 1990). It is the government's burden to establish all four requirements. *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020). And even if the evidence meets the Rule 404(b) test, the court must still exclude the evidence if its probative value is substantially outweighed by the prejudicial impact under Rule 403. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

---

[2] For that additional reason, the government's offer of proof is deficient, as it does not actually fully identify the proof it intends to offer.

### B. Materiality

To establish materiality, the government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (quoting *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982)). When the government's theory is one of knowledge or intent, as here, "the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *Mayans*, 17 F.3d at 1182.

The government fails to establish that either the conduit contribution or tax liability reduction allegations are material to the bribery or obstruction allegations in this case. Nothing about the prior alleged acts provided knowledge to Mr. Lee that is at issue here. The only connection between JOIA employees' political contributions from 2017 and earlier, and the allegations in this case, is that Huizar was one of the many recipients of those contributions. And the only commonality between tax liability reduction allegation and the allegations in this case is the unsupported assertion that Mr. Lee used cash to accomplish this goal. But the fact that two offenses were allegedly committed involving the same means is not enough to establish that the earlier one is material to proving the later one. *See e.g., United States v. Blackwell*, No. CR-13-01462-001-PHX, 2014 WL 4954399, at *3 (D. Ariz. Sept. 30, 2014) (no logical connection between defendant's prior DUI arrest [at which time cash and marijuana were found in his car] and his knowledge and intent underlying the crimes to distribute marijuana and conspiracy to launder money).

The government contends that Mr. Lee's alleged willingness to violate the law and utilize large cash transactions in the past tends to make it more probable that he knowingly bribed Huizar. This demonstrates that the government intends to use the evidence to show that Mr. Lee has the propensity to commit bribery using large sums of cash, a use which is clearly prohibited under Rule 404(a). *See United*

*States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979) ("the common thread of smuggling" between prior act and present offense cannot justify government's theory that a person who has shown an inclination to smuggle contraband across the border on one occasion may be inclined to do so on another, which is precisely the use of a prior bad act that is forbidden).

### C.     Similarity

The government also fails to show that the evidence of past conduct is "similar enough to be probative of intent." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997). Just as there is no material link between the prior acts and the crime of bribery, there is no meaningful similarity between Mr. Lee's alleged prior acts and bribery to Huizar or obstruction.

The prior political contributions documented in Government's Exhibit 2 were made to numerous candidates not limited to Huizar. These contributions were made through checks – some written by Mr. Lee and some by others – between 2005 and 2017, which has only a minimal overlap with the relevant time frame of 2016-2017 for the alleged bribery payments. (Gov't Ex. 2.) Importantly, the only incident that Justin Kim recalls in which Mr. Lee allegedly asked his employees to write contribution checks occurred in "2011 or 2012," and the government believes *but does not know* that those checks were directed to Herb Wesson, not Huizar. (Gov. Offer at 3-4.) Simply put, there is no similarity between the government's "conduit contribution" allegations and the offenses charged in this case. The mere fact that Justin Kim collected some contribution checks directed to different candidates does not make these unrelated events similar to the alleged bribery to Huizar.

Mr. Lee's alleged reduction of tax liability is also dissimilar to the offenses alleged in this case. The offer of proof refers to two unrelated real property projects in 2008 and 2012, neither of which had anything to do with the 940 Hill project. (Gov. Offer at 5-6.) The mere allegation that Mr. Lee used large sums of cash several years prior in unrelated real property transactions—which may well have

been reported properly, according to Jason Kang—does not establish sufficient similarity to the crime of bribery. *See United States v. Garcia*, 291 F.3d 127, 138–39 (2d Cir. 2002) (holding that defendant's prior drug conviction was not meaningfully probative: "The only similarity between the two drug transactions, which twelve years separated, is that both involved cocaine[.] The government did not offer evidence of any other similarity or connection between the two transactions."). The use of cash on another occasion says nothing about whether Mr. Lee intended to bribe Jose Huizar and George Esparza.

### D. Remoteness

Justin Kim's new accusations also concern events too remote in time to have any probative value to the events at issue in a trial of events that took place in 2016 and 2017. The government suggests (with no evidence whatsoever, not even the word of Justin Kim), that Mr. Lee facilitated conduit contributions in 2005, *twelve years* before the events at issue in this case. It claims that another "conduit contribution" was paid in 2009 (again with no evidence whatsoever of its "conduit" nature). The purchase of the Little Tokyo property took place in 2008 (and Mr. Lee was just one member of a larger group of investors). The cash transaction identified by Jason Kang (but not in connection with any illegal act) took place in 2012, and no subsequent transactions were identified by the government. (Gov't Offer at 5-6.) The sheer distance between these alleged past acts and the events at issue in this trial should weigh against the government's introduction of the prior act evidence at trial. *See e.g., United States v. Corey*, 566 F.2d 429, 432 (2d Cir. 1977) (no probative value from acts that took place five to seven years before relevant period); *Garcia*, 291 F.3d at 138 (no probative value from twelve-year-old conviction). Moreover, the remoteness of the allegations, together with the fact that they were never previously investigated or proven, contributes to the unfair prejudice that would result from their introduction in this trial.

### E. Insufficient Evidence of Alleged Prior Acts

The government's proposed 404(b) evidence should also be excluded because it is not "sufficient to support a finding that the defendant committed the other act[s]." *United States v. Luna*, 21 F.3d 874, 878 (9th Cir. 1994). Here, the only evidence that Mr. Lee committed prior criminal acts is the word of a convicted felon who has previously lied to the FBI.

Although the government contends that public contribution records support its conduit contribution allegations, in reality, it is assertions by Justin Kim—and *only* assertions by Justin Kim—that could support any finding that these contributions are illegal. Even then, Justin Kim only told the government about a single "occasion in 2011 and 2012" to an unidentified candidate—not the years and years of conduit contributions that the government asks the Court to conclude took place and that it apparently wants to put before the jury. Here, the government is trying to turn a single witness account of a single possible event from eleven years ago—a witness whose reliability is dubious to being with—into a pattern of illegality with no other evidence whatsoever.[3] And the public contributions data introduced by the government contains no indications whatsoever that they were impermissible "conduit" contributions. (Gov. Offer Exs. 2, 4.)

Moreover, to establish an illegal conduit contribution, the government would have to establish that Mr. Lee acted "knowingly and willfully"—i.e., that he *knew his acts were illegal*. *See United States v. Whittemore*, 776 F.3d 1074, 1080 (9th Cir. 2015). Kim's statements do not say anything about what Mr. Lee intended or knew. Because the government failed to supply any evidence—much less sufficient evidence—to support the elements of a conduit contribution offense, the Court

---

[3] Even Justin Kim's account does not establish criminality—although Justin Kim asserts that he heard Mr. Lee promise his employees a reimbursement, Justin Kim does not say that he knows they were actually reimbursed by anyone.

should not permit Justin Kim to testify in a conclusory fashion that Mr. Lee committed such an offense.[4]

The evidence relating to Mr. Lee's alleged use of cash payments to lower his tax liability on purchased property is equally unreliable. According to the government, Justin Kim will testify that he "heard of Lee engaging in this type of practice" to use cash to lower tax liability, and he somehow (without explanation) knows that Mr. Lee did this on the Little Tokyo project.[5] (Gov. Offer at 5-6.) The government offers no transaction records to support this allegation, though such records could easily be obtained and despite knowing about the allegations since mid-May.[6] The government's other supposed evidence—the testimony of Jason Kang—suggests that Mr. Lee made a cash payment in 2012 as part of a real estate deal, but does not in any way corroborate Justin Kim's vague and unsupported assertion that cash payments were used to do anything illegal. Kang did not identify the specific property that was supposedly purchased with a partial cash payment in 2012, nor does he offer any details. And Kang is apparently not even sure whether the alleged cash paid was "a side deal or a legitimate part of the reported purchase price"—meaning, he does not know whether Mr. Lee's use of cash was off the books or not. (*Id.* at 6.) Of course, without more detail, Mr. Lee would be unable to refute or answer even Jason Kang's non-criminal allegation. Finally, the government has no evidence to show that these alleged cash transactions were intended to reduce tax liability, or that Mr. Lee actually received any tax benefits through these

---

[4] Tellingly, the government has never charged Mr. Lee for any crime under 52 U.S.C. § 30122 or any other campaign finance laws.

[5] This is not proper reputation evidence either, since it has no bearing on the issues in this case.

[6] To rebut the allegation, Mr. Lee would need such records, which he may need to obtain via subpoena. His inability to do so in a timely fashion given the belated disclosure is yet another reason to exclude this allegation.

transactions.

The government's unsupported, vague allegations about prior acts are thus insufficient for the jury to reasonably find by a preponderance of evidence that Mr. Lee actually engaged in these prior acts. Allowing Justin Kim to make these assertions without any support would only create a serious risk that the jury will wrongly assume that Mr. Lee is a career criminal based on two allegations of uncharged conduct. That is exactly the type of evidence Rule 404 seeks to preclude. *See United States v. Miller*, 874 F.2d 1255, 1268 (9th Cir. 1989) ("Rule 404(b) evidence of other crimes or wrongs is inadmissible where its only relevance is to show criminal disposition.") (citation and punctuation omitted).

**F.     The Proffered Evidence Should Be Excluded Under Rule 403**

Even if the government's belatedly disclosed evidence had any probative value under Rule 404(b), the Court should still exclude that evidence because it is unduly prejudicial, will waste time, and will confuse the jury under Rule 403.

As described above, it is undeniable that the government's proposed evidence would result in unfair prejudice to Mr. Lee because of its belated disclosure, vague nature, and lack of relevance to the facts at issue in this case. This prejudice is heightened at this late hour, where he and his counsel have little to no ability to investigate and refute the allegations while also preparing for trial on the issues that are actually relevant to this case. The undue prejudice that would arise from allowing Justin Kim to present these vague, uninvestigated, and uncorroborated allegations on its own provides a sufficient basis to exclude the proposed evidence.

Moreover, the allegations are really designed to do nothing more than implant in the jury's mind the inaccurate suggestion that Mr. Lee is a repeat criminal even though he has never been accused of illegal contribution or tax evasion. Thus, even if the government's proposed 404(b) evidence had any probative value, it is far more likely that the jury would use that evidence for the purpose of inferring Mr. Lee's propensity to commit crimes, which is prohibited under Rule 404(a)(1). Similarly,

the jury will potentially be confused by unsupported allegations of illegal campaign contributions to other candidates (a far cry from the type of bribery alleged in this case), or why it is hearing about real estate transactions that have nothing to do with 940 Hill.

Rule 403 also requires the Court to exclude this testimony because it would result in an undue consumption of time. If allowed, it would necessarily would entail mini-trials on the peripheral issues of whether Mr. Lee was involved in two separate and unrelated uncharged crimes. The jury's time will be wasted—and their attention would be diverted from the actual issues in the case—as defense counsel would need to defend against Justin Kim's vague and uncorroborated accusations about events that happened years before any of the events relevant to this trial took place. The government's trial presentation in this case has already ballooned from its initial estimate, and the proffered 404(b) evidence threatens to send this trial off the rails.

Accordingly, while the probative value of the prior acts is minimal to nonexistent, the evidence is highly prejudicial. No limiting instruction can cure such prejudice. *See Government of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976) (When unrelated prior criminal acts reached the attention of the jury, albeit with a limiting instruction, "it is most difficult, if not impossible, to assume continued integrity of the presumption of innocence. A drop of ink cannot be removed from a glass of milk.").[7]

## IV.   CONCLUSION

The proffered 404(b) evidence is irrelevant to the charges subject to trial. It is, however, inflammatory and will cause unfair prejudice, confusion, and undue delay.

---

[7] During his interview with the government on May 17, 2022, Kim apparently stated that he believed Mr. Lee "may" have paid cash to an appraiser to reduce the appraised value of 940 Hill and other real estate projects. Given that the offer of proof and 404(b) notice does not reference this specific statement, defendants assume the government will not elicit that testimony from Justin Kim at trial.

Defendants respectfully request that this Court preclude the government from introducing this evidence at trial.

DATED: June 10, 2022

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC and Dae Yong Lee