Ariel A. Neuman - State Bar No. 241594
 aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
 rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA,, | CASE NO. 20-CR-0326-JFW |
|---|---|
| Plaintiff, | **DEFENDANTS LEE AND 940 HILL, LLC'S BRIEF IDENTIFYING POTENTIAL ISSUES FOR OPENING STATEMENT AND EARLY WITNESS TESTIMONY** |
| vs. | |
| JOSE LUIS HUIZAR, et al., | |
| Defendant. | Assigned to Hon. John F. Walter |

## I. INTRODUCTION

Defendants Dae Yong Lee and 940 Hill, LLC submit this brief to address three issues that they anticipate will come up during the opening statement and the first two or three days of witness testimony. *First*, the government has indicated to defendants that it intends to elicit testimony—presumably from Agent Civetti—that Mr. Lee received a grand jury subpoena for testimony in March 2019, and that he chose not to speak to the government. *Second*, the government has indicated that it intends to ask Jason Kang, Hyuk Lim, and Lucy Kim about Mr. Lee's payment of their attorney fees in this matter as part of an effort to establish their bias, even though Mr. Lee has explained in detail that he is legally obligated to pay those fees. The government should not be permitted to pursue either of these lines of questioning at trial. *Third*, the day before trial, the government indicated that it intended to reference during its opening statement records of attorney-fee payments for government witnesses by 940 Hill. The government should not be permitted to do so.

## II. MR. LEE'S NON-RESPONSE TO GRAND JURY SUBPOENA

### A. Background

On March 5, 2019, over a year before Defendant Dae Yong Lee was indicted in this case, the Government served him with a grand jury subpoena. In April 2019, before the deadline to appear had passed, the Government agreed to hold the subpoena in abeyance. But even though the government thus voluntarily withdrew the subpoena, it now apparently intends to elicit testimony from FBI Agent Civetti about Mr. Lee's non-response to the subpoena as evidence of consciousness of guilt.

This "evidence" has no probative value whatsoever. Furthermore, the Government's characterization of Mr. Lee's failure to respond to a subpoena, which was effectively withdrawn before the compliance deadline, as a deliberate decision not to respond is highly misleading and prejudicial. More gravely, introducing evidence of Mr. Lee's silence in response to the Government's subpoena would

2

DEFENDANTS' BRIEF RE OPENING STATEMENT & EARLY WITNESS TESTIMONY

violate the Fifth Amendment's self-incrimination privilege, which squarely prohibits inquiry into a defendant's silence "under . . . official compulsion," such as silence in response to a subpoena carrying the force of law issued by the Government. *United States v. Oplinger*, 150 F.3d 1061, 1066 (9th Cir. 1998).

The Court should preclude the Government from introducing any argument or evidence of Mr. Lee's lack of response to the subpoena.

### B. Mr. Lee's Lack Of Response to the Government's Subpoena Is Irrelevant and Highly Prejudicial

Evidence of a defendant's "silence"—whether introduced as evidence of the defendant's substantive guilt, or to attack the defendant's credibility—is only relevant where the defendant remained silent "in circumstances in which" the defendant "naturally" would have asserted a statement in their defense. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) (explaining circumstances under which evidence of silence can be used for impeachment); *United States v. Giese*, 597 F.2d 1170, 1196 (9th Cir. 1979) ("Before admitting the proffered admission by silence, the trial judge must determine, as a preliminary question, whether the statement was such that under the circumstances an innocent defendant would normally be induced to respond.") (quoting *United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975)). The Supreme Court has warned against the use of silence as impeachment evidence, stating that "evidence of silence at the time of arrest [is] generally not very probative of a defendant's credibility." *United States v. Hale*, 422 U.S. 171, 180 (1975).

These concerns warrant preclusion of the Government's strained attempt to characterize Mr. Lee's lack of response to the subpoena as reflecting on his guilt or credibility.

*First*, Mr. Lee had no reason to "speak" to the Government in the time between the Government's issuance of the subpoena and its subsequent effective withdrawal of the subpoena. That Mr. Lee did not respond to a subpoena that was effectively withdrawn before the time he was required to respond is entirely

unremarkable—people in receipt of subpoenas regularly take the time afforded to them to plan accurate and sufficiently thorough responses to the noticing party's anticipated questions. His lack of response therefore cannot even be called "silence." *See United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975) (for a defendant's silence to be admissible a substantive proof of guilt, the defendant must have had an opportunity to respond). Mr. Lee's lack of response does not indicate, as the Government apparently intends to suggest, that he was aware of an ongoing investigation but refused to cooperate, and it should not be presented to the jury to support that point.

*Second*, while evidence of Mr. Lee's lack of response to the subpoena is probative of neither his guilt nor his credibility, "evidence of silence at the time of arrest . . . has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted." *Hale*, 422 U.S. at 180. Here, although he was not under arrest, the danger is the same. By characterizing Mr. Lee's lack of response as an intentional refusal to cooperate with an investigation, or by implying that Mr. Lee passed on an obvious opportunity to assert his innocence, the government will misrepresent to the jury Mr. Lee's plainly benign behavior, undoubtedly causing irreparable prejudice to Mr. Lee. Accordingly, not only is this evidence irrelevant, but even if the Court disagrees, the evidence must still be excluded under Rule 403 of the Federal Rules of evidence.

### C. Mr. Lee's Fifth Amendment Privilege Against Self-Incrimination Prohibits the Government from Referencing His Non-Response

Even if the Court otherwise considers evidence of Mr. Lee's lack of response to the Government's withdrawn subpoena admissible, introducing this evidence would violate the Fifth Amendment's self-incrimination privilege and potentially result in reversible error. This privilege is applicable when, as here, the defendant "was in a position to have his testimony compelled and" nevertheless remained

silent. *Jenkins*, 447 U.S. at 244 (1980) (Stevens, J., concurring); *United States v. Oplinger*, 150 F.3d 1061, 1066 (9th Cir. 1998) (same) (quoting *Jenkins*, 447 U.S. at 244). A government demand for information issued through a subpoena, which can be enforced by court order, is plainly an act of official compulsion that triggers the protections of the Fifth Amendment if the defendant chooses to remain silent in response.

\* \* \*

For the foregoing reasons, Defendants respectfully request that the Court preclude the Government from introducing any evidence or argument regarding Mr. Lee's lack of response to the Government's subpoena.[1]

### III. MR. LEE'S PAYMENT OF ATTORNEY FEES OF EMPLOYEES AND LLC PARTNERS

#### A. Background

As discussed in defendants' Response to the Government's Trial Brief, the Government has indicated that it intends to inquire at trial who is paying for certain witnesses' legal fees, including those of Jason Kang, an employee, and Hyuk Lim and Lucy Kim, his partners in 940 Hill. Doubling down on this strategy, the government last week issued a trial subpoena to 940 Hill seeking records reflecting all payments for these witnesses' legal fees from March 1, 2019 to the present, presumably so it can present those records to the jury. As defendants' previously raised with the Court, the government apparently intends to introduce this evidence

---

[1] For the same reasons, the Court should preclude any attempt by the government to elicit testimony that the AUSA asked counsel to arrange a "voluntary" interview of Mr. Lee after he was identified as a target of the government's investigation. Explaining to the jury what it means to be a target, and that counsel responded with an attorney proffer after which the AUSAs indicated they would not accept the proffered statements as truthful, would be a waste of time, confusing, and unduly prejudicial under Rule 403.

to paint a misleading portrait to the jury that 940 Hill and Mr. Lee have improperly influenced these witnesses' testimony by paying for their counsel. The real reason, of course, is more mundane: Mr. Lee is legally obligated to pay for these witnesses' attorney fees, and is complying with his obligations. Allowing the government to suggest something more sinister—despite its knowledge to the contrary—would unfairly prejudice 940 Hill and Mr. Lee. Consequently, all evidence and testimony relating to payments for these witnesses' legal fees by 940 Hill should be excluded.[2]

### A. Evidence or Testimony of Legally-Mandated Attorney Fee Payments Lack Probative Value and Would Unfairly Prejudice Defendants

The Court should preclude any testimony or evidence about Mr. Lee's legally-mandatory payment of the attorney fees of Mr. Kang, Mr. Lim, and Ms. Kuk under Rule 403. The government has not attempted to argue that such testimony or evidence is directly relevant to any issues in the case. Instead, it has suggested that this evidence about Mr. Lee's payment of any witnesses attorney fees is relevant to demonstrate the bias of witnesses whom the government apparently intends to call, but expects may provide testimony favorable to the defense.

But as counsel has repeatedly explained to the government, Mr. Lee is obligated to pay Mr. Kang's fees because, as a California employer, he is obligated by law to

> indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of

---

[2] Defendants previously raised this issue in its response to the government's trial brief. (*See* ECF No. 476 at 2–3). The issue has since ripened because of the government's issuance for a trial subpoena requesting payment records for attorney fees. 940 Hill will produce the records, but requests that they not be admitted at trial.

obeying the instructions, believed them to be unlawful."
Cal. Labor Code § 2802(a). If Mr. Lee *didn't* pay Mr. Kang's fees, he would be exposing himself to significant penalties. Likewise, as the government knows, 940 Hill is contractually obligated to indemnify its members, including Mr. Lim and Ms. Kim. It is therefore both unfair and misleading to suggest that Mr. Lee is paying those fees to influence these witnesses' testimony, as he is contractually and legally obligated to do so.

The government's introduction of this testimony and evidence would have the prejudicial effect of misleadingly suggesting to the jury that Mr. Lee has attempted influence the testimony of those individuals, when in fact, 940 Hill was *required* to pay those witnesses' legal fees. Moreover, to the extent a witness is unaware of the reasons that their legal fees are paid for by 940 Hill, it would be impossible to cure the government's implication of bias or unfair influence on cross-examination.

If the government wants to establish the bias of its own witnesses, it can do so through any number of lines of questioning that it may pursue without creating false impressions for the jury which the defense cannot adequately address.

*  *  *

For the foregoing reasons, Defendants Dae Yong Lee and 940 Hill, LLC respectfully request that the Court exclude all evidence and testimony related to the payment of witness' attorneys' fees by 940 Hill, LLC.

**IV.  REFERENCES TO ATTORNEY FEE PAYMENT RECORDS IN OPENING STATEMENT**

On July 13, 2022, the government indicated that it may seek to refer to the subpoenaed records during opening statement. The government has not explained why records of attorney fee payments—including for those witnesses discussed in Section III above—could possibly have any relevance at this stage of the case. Though it has suggested that this information may be relevant to show bias, that is a reason that it might *become* admissible as impeachment evidence. At this

7
DEFENDANTS' BRIEF RE OPENING STATEMENT & EARLY WITNESS TESTIMONY

stage, though, no witnesses have testified, and there is nothing to impeach. Isolated references to these payments would therefore be misleading, prejudicial, and irrelevant. Accordingly, the Court should order the government not to reference these exhibits in its opening statement.

## V. CONCLUSION

For these reasons, the Court should enter an order prohibiting the government from (1) eliciting testimony or introducing evidence about Mr. Lee's receipt of and non-response to a grand jury subpoena, (2) eliciting testimony about Mr. Lee's payment of attorney fees for Jason Kang, Hyuk Lim, or Lucy Kim, or (3) referencing the subpoenaed attorney fee payment records in its opening statement.

DATED: June 13, 2022

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee