Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOSE LUIS HUIZAR, et al.,<br><br>    Defendant. | CASE NO. 20-CR-0326-JFW<br><br>**DEFENDANTS DAE YONG LEE AND 940 HILL, LLC'S BRIEF IN SUPPORT OF RULE 29 MOTION TO DISMISS COUNT FIVE**<br><br>Assigned to Hon. John F. Walter |

## I. INTRODUCTION

Count Five in the First Superseding Indictment charges Defendants Dae Yong Lee and 940 Hill, LLC with wire fraud and honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346. The predicate interstate wire for this count is an August 9, 2016 email from Justin Kim to George Esparza forwarding a blank email from Lee to Kim that attaches a copy of CREED LA's appeal against the 940 Hill construction project. *See* FSI at ¶ 46; Trial Exhibit 104. The original email from Lee to Kim contains no text written by Lee. *See* Trial Exhibit 104.

To obtain a conviction for wire fraud, the government must prove that the defendant used the charged interstate wire transmission to further a scheme to defraud. Now that the government has rested, the evidence demonstrates, without contradiction, that the charged transmission—dated August 9, 2016—predates the "scheme" alleged by the government. Instead, the consistent testimony and evidence demonstrated that the email was sent by Mr. Lee and forwarded by Justin Kim as a request for information, before there was ever any discussion of any illegal scheme. No one was contemplating anything illegal with regard to the Creed appeal until, under the best case scenario for the government, September 1, 2016. Accordingly, the Court should enter a judgment of acquittal on Count Five of the FSI for lack of sufficient evidence to sustain a conviction pursuant to Rule 29 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 29(a).

## II. LEGAL ARGUMENT

Rule 29(a) states that "[a]fter the government closes its evidence, … the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Evidence is insufficient to support a verdict where, construed in favor of the government, it is "insufficient to establish every element of the crime," including "where mere speculation, rather than reasonable inference, supports the government's case" or "there is a total failure of proof of a requisite element." *United States v. Nevils*, 598 F.3d 1158, 1167
1

DEFENDANTS' BRIEF IN SUPPORT OF RULE 29 MOTION TO DISMISS COUNT FIVE

(9th Cir. 2010) (cleaned up). Here, the government has failed to introduce sufficient evidence to support all the elements of the honest services wire fraud charged in Count 5.

### A. A Conviction for Wire Fraud Requires that the Wires Be Used In Furtherance of a Fraudulent Scheme

The wire fraud statute requires the Government to establish that the defendant "having devised or intending to devise any scheme or artifice to defraud," used the wires "*for the purpose of executing such scheme or artifice*." 18 U.S.C. 1343 (emphasis added). The elements of wire fraud are "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television *to further* the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (emphasis added). Put simply, for an email to be considered as a "use of the wires" in furtherance of a scheme to defraud, it must have been sent *after* the scheme was formed—not before. *See United States v. Williams*, 743 F. App'x 791, 793–94 (9th Cir. 2018) (stating that appellant "must have formulated his scheme to defraud *before* causing the wire fraud transfers to occur, which is a necessary element of the wire fraud charges") (emphasis added) (citing 18 U.S.C. § 1343; Model Crim. Jury Instr. 9th Cir. 8.124 (2010); *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017); *United States v. Sullivan*, 522 F.3d 967, 975 (9th Cir. 2008)).

This understanding is also reflected in the Ninth Circuit's Model Criminal Jury Instruction 8.124, which requires the finder of fact in a wire fraud case to find beyond a reasonable doubt that, among other things, the interstate wire was sent "*to carry out or attempt to carry out an essential part of the scheme*." Model Crim. Jury Instr. 9th Cir. 8.124 (2021) (emphasis added). Although the transmission itself need not be "essential" to a wire fraud scheme, courts require that it must be "incident to the execution of the scheme" or "a 'step in the plot.'" *Jinian*, 725 F.3d at 960; *see also United States v. Lo*, 231 F.3d 471, 478 (2000) ("[T]he government

may not prevail without demonstrating that the mailings were incident to the execution of the scheme, rather than part of an after-the-fact transaction that, although foreseeable, was not in furtherance of the defendant's fraudulent scheme."). And no scheme to defraud can exist until the defendant formed the specific intent to commit the fraudulent act. *See Jinian*, 725 F.3d at 960.

### B. No Scheme to Defraud Existed on August 9, 2016

The transmission at issue is Trial Exhibit 104, which is an August 9, 2016 email in which Kim forwarded to Esparza a textless email from Lee that attached CREED LA's appeal. *See* June 17, 2022 Transcript ("Tr.") at 934:10-935:7, 976:11-977:25 (Esparza); June 22, 2022 Tr. at 1443:3-24, 1449:7-18 (Kim); Trial Exhibits 40, 104. Kim's email to Esparza reads "Can u have Shawn [Kuk] look review this…." Trial Exhibit 104. The testimony from Kim and Esparza explaining this email and the preceding and following events confirm that the August 9, 2016 emails from Lee to Kim and Kim to Huizar were sent *before* there was ever any discussion of a bribery scheme. And since no scheme existed at the time, the emails could not have been sent "for the purpose of executing such scheme or artifice." The evidence on this point is clear and undisputed:

- When asked about this email, Justin Kim testified that it was "[c]orrect" that he forwarded the August 9 email to Esparza because he was "just trying to figure out what CREED is and what [the appeal] is all about and if [he] can help." June 23, 2022 Tr. at 1668:10-1669:12.

- Both Kim and Esparza confirmed that no one had directly asked Huizar for assistance with the CREED appeal until a dinner September 1, 2016, nearly a month after the email was sent. *See* June 22, 2022 Tr. at 1458:14–1459:7 (Kim); June 21, 2022 Tr. at 1128:16-1129:5 (Esparza).

- Kim testified, "it was at the [September 1, 2016] dinner meeting" that he "asked [Huizar] for CREED appeal help." June 22, 2022 Tr. at 1458:14-1459:9.

- Esparza similarly responded "Correct" when asked, "It's not until a month later that Justin Kim asks Huizar for help on the CREED appeal; correct?"

June 21, 2022 Tr. at 1128:16–24.

Both Kim and Esparza also testified that it was only on September 2, 2016—about a month after the emails were sent—that Kim learned from Esparza that Huizar would require a financial benefit in exchange for his help ensuring the CREED LA appeal against the 940 Hill Project was dropped or denied. *See* June 22, 2022 Tr. at 1465:11-1466:4 (Kim); June 17, 2022 Tr. at 944:12-22, 985:5-988:5 (Esparza); June 21, 2022 Tr. at 1138:2-8 (Esparza). Esparza testified that it was on that date he met with Kim and first conveyed "that the councilmember won't be doing this for free" (June 17, 2022 Tr. at 944:12-22), but there were "no specifics" (June 21, 2022 at Tr. at 1138:2-8).[1] Kim further testified that it was a day later, on September 3, 2016, that he first conveyed to Lee, while meeting with him in person, that Huizar required a financial benefit in return for his assistance with the 940 Hill construction project. *See* June 22, 2022 at Tr. 1467:17-1468:18. Construing the evidence most favorably to the government, September 1—the date of the dinner and karaoke meeting—is the earliest possible date on which a "scheme to defraud" was formed, and it was nearly a month after the initial email.

And it was not until January 19, 2017, that Huizar and Esparza decided on the specific amount of money they would demand from Kim to assist with the CREED LA appeal, which Esparza later conveyed to Kim. *See* June 17, 2022 Tr. at 953:13-955:2 (Esparza); June 21, 2022 Tr. at 1141:12-18, 1143:7-19, 1170:7-13 (Esparza); *see also* June 22, 2022 Tr. at 1489:12-1490:11 (Kim).

Kim and Esparza's respective testimony therefore confirms that there existed no scheme to defraud between Kim and Huizar, let alone among Lee, 940 Hill, Esparza, Kim, and Huizar, on August 9, 2016. The evidence is undisputed that the

---

[1] Kim testified that Esparza told him that "there's going to be some cost associated with" resolving the CREED LA appeal, but that "[n]othing specific was requested," and that Esparza "d[id] not say you need to pay a bribe" or "Mr. Lee needs to pay a bribe." (June 23, 2022 Tr. at 16761-12).

4
DEFENDANTS' BRIEF IN SUPPORT OF RULE 29 MOTION TO DISMISS COUNT FIVE

emails sent in Exhibit 104 were intended to gather information, and did not further any existing scheme. Lee and 940 Hill could therefore not have possessed the requisite intent to further a fraudulent scheme in August 2016, when it is undisputed that no bribe was being contemplated—indeed, the evidence indicates that *Huizar was not even aware of the appeal at that point*.

The Court should therefore enter a judgment of acquittal on Count Five of the FSI for lack of evidence.

### C. The Government Cannot Rely on Other Interstate Wire Communications to Convict Defendants of Count 5

At this point, the government may not remedy this fatal deficiency in Count 5 by identifying other interstate wire transmissions that postdate the formation of the alleged scheme to defraud. After an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by either literal or constructive amendment, except by the grand jury itself. *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002) (citing *Stirone v. United States*, 361 U.S. 212, 215–16(1960); *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir.1983)). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir.1981)). "[A] constructive amendment always requires reversal." *Adamson*, 291 F.3d at 614–15.

Even assuming the Government has presented evidence of other uses of the wires by Lee or 940 Hill in furtherance of the alleged bribery scheme, a conviction based on those uses would be a constructive amendment or a prejudicial variance of the FSI. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (finding fatal variance in wire fraud conviction where misrepresentation specified in indictment diverged from the misrepresentation relied on by government at trial).

## III. CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal for Defendants Lee and 940 Hill on Count Five of the FSI.

DATED: June 24, 2022       Respectfully submitted,

Ariel A. Neuman
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
      Ariel A. Neuman
Attorneys for Defendants 940 Hill, LLC
and Dae Yong Lee