1  Ariel A. Neuman - State Bar No. 241594
       aneuman@birdmarella.com
2  Ray S. Seilie - State Bar No. 277747
       rseilie@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
6
   Attorneys for Defendants 940 Hill, LLC
7  and Dae Yong Lee

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 | UNITED STATES OF AMERICA,,          CASE NO. 20-CR-0326-JFW

12 |        Plaintiff,                   **DEFENDANTS DAE YONG LEE
                                        AND 940 HILL, LLC'S RESPONSE
13 |   vs.                              TO GOVERNMENT BRIEF RE
                                        PROPOSED JURY INSTRUCTION
14 | JOSE LUIS HUIZAR, et al.,          NO. 18**

15 |        Defendant.                   Assigned to Hon. John F. Walter

16

17

18

19

20

21

22

23

24

25

26

27

28

3798841.1

## I.      INTRODUCTION

The government's eleventh-hour submission requesting Instruction No. 18 regarding "lawful government tactics" is wrong on two fronts. First, the Court should not provide any version of Model Instruction 3.10 because the defense has never suggested that the government's investigative tactics were illegal or improper—instead, it has criticized the overall quality of the investigation and the credibility of its cooperating witnesses, which are both fair game for the jury to consider. Second, if the Court determines that some version of Model Instruction 3.10 is appropriate, it should not include the modifications that the government proposes, which substantially broaden its effect from the narrow purposes contemplated by the model instruction.

### A.      The Government's Proposed Instruction Is Not Necessary and Would Be Misleading

Model Instruction 3.10 states,

> You have heard testimony from [an undercover agent] [an informant] who was involved in the government's investigation in this case. Law enforcement officials may engage in stealth and deception, such as the use of informants and undercover agents, to investigate criminal activities. Undercover agents and informants may use false names and appearances and assume the roles of members in criminal organizations.

The comment to the model instruction states that it should only be given "when the entrapment defense is being asserted" or "when the defendant contend[s] the government agent acted improperly." Mr. Lee and 940 Hill have never asserted an entrapment defense. Nor has the defense ever claimed that Justin Kim "acted improperly" solely by virtue of his decision to surreptitiously record his conversation with Mr. Lee. To the contrary, the defense's criticism of Justin Kim has focused entirely on his credibility and the government's willingness to turn a blind eye to his prior lies in its effort to convict Mr. Lee. Those criticisms are fair

1    game for a jury to consider.

2         The government nevertheless claims that the instruction is appropriate

3    because defense counsel's criticisms of the government's investigation may leave

4    the jury "with the misleading and incorrect impression that the law enforcement

5    tactics used in this case were not lawful or permissible." (ECF No. 553 at 6). But

6    while it is true that defendants criticized the quality of the government's

7    investigation and the credibility of its primary cooperating witness, at no point have

8    defendants ever attacked the *legality* of those tactics.

9         For example, the government cites references to surreptitious video

10   recordings and searches during the defense's opening statement and cross-

11   examination of Agent Civetti. (ECF No. 553 at 3–4). But the purpose of those

12   references was to (1) establish that the government had all the resources it wanted to

13   conduct its investigation into Mr. Lee and (2) demonstrate the types of evidence that

14   the government collected during other parts of its investigation into Jose Huizar but

15   did not collect as to Mr. Lee. Defense counsel never implied that these tactics were

16   improper—to the contrary, the defense argued at length that the government had all

17   of these tools at its disposal because they were *legal*, yet did not use them to gather

18   evidence against Mr. Lee.

19        The government also cites a line of questioning in which the defense

20   confirmed that Justin Kim was instructed by the FBI to elicit a confession from Mr.

21   Lee. (ECF No. 553 at 2:10–27). But the point of these questions was not to imply

22   that there was something wrong with the surreptitious recording of the translation.

23   To the contrary, the point of this exchange was to establish that Justin Kim had

24   every incentive to elicit a more clearly incriminating statement from Mr. Lee during

25   this conversation, yet was unable to do so.

26        Finally, the government cites statements from defense counsel's closing

27   arguments in which he criticized the government's decisions to (1) center its case on

28   the word of a single cooperating witness with a history of dishonesty; (2) present a

3798841.1

3

LEE/940 HILL'S RESPONSE TO GOVERNMENT BRIEF RE PROPOSED JURY INSTRUCTION NO. 18

1  misleadingly incomplete picture of the evidence available to them; (3) halt its

2  investigation of its cooperating witnesses once they agreed to cooperate; and (4) not

3  include a forfeiture allegation in Justin Kim's plea agreement. (ECF No. 553 at 5).

4  But nowhere in closing argument did defense counsel imply that any of these

5  decisions by the government were "not lawful or permissible"—to the contrary,

6  these arguments were straightforward criticisms about the *quality* of the

7  government's investigation, which defendants are fully permitted to make. *See, e.g.*,

8  *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (plain error and abuse

9  of discretion for trial court to preclude cross-examination relating "to the quality of

10  the investigation" and to instruct the jury "that it may not consider whether or not

11  the investigation was flawed").

12        Since the defense has never suggested that the government relied on illegal

13  tactics, providing Instruction 18 would only create the risk of inappropriately

14  bolstering Justin Kim's credibility. Indeed, this problem was recognized in the sole

15  case that the government cites in support of this instruction, *United States v.*

16  *Winslow*, 962 F.2d 845 (1992). In that case, the trial court provided the "undercover

17  agent instruction" in the absence of an entrapment defense, but immediately

18  followed it with a cautionary instruction about the witness's credibility, instructing

19  the jurors "to 'examine [the informant's] testimony with greater caution than that of

20  an ordinary witness,' and 'consider the extent to which it may have been influenced

21  by the receipt of benefits and compensation from the Government.'" *Id.* at 848. The

22  Ninth Circuit affirmed the trial court's decision to include the undercover agent

23  instruction because the follow-up cautionary instruction "neutralized whatever

24  prejudicial effect the undercover agent instruction may have caused." Unless the

25  Court also provides a similar cautionary instruction regarding the testimony of

26  Justin Kim, it should not provide an instruction that risks inappropriately bolstering

27  his credibility.

28        Ultimately, the government appears to be asking the Court to provide this

1  instruction not merely for the intended, narrow purpose of informing the jury that

2  there is nothing *illegal* about surreptitious or undercover activity during an

3  investigation, but to instruct the jury that they should not view its investigation in a

4  negative light. But defendants are entitled to have the jury consider whether the

5  government's investigation decisions create reasonable doubt regarding their guilt,

6  and there is no authority to support the idea that the Court may artificially tip the

7  scales in the government's favor with regard to that analysis. The Court should not

8  provide any version of the government's proposed instruction.

9      **B.    If the Court Concludes that Model Instruction 3.10 Is Appropriate,**

10          **It Should Not Include the Government's Modifications**

11          To the extent the Court concludes that Model Instruction 3.10 is appropriate,

12  it should not include the government's proposed modifications. The model

13  instruction is there for the limited purpose of establishing that the government may

14  legally use undercover agents and deceptive strategies to collect evidence during an

15  investigation. To the extent the Court believes it is appropriate, it should limit the

16  instruction to that narrow purpose, and reject the government's proposed

17  modifications to it.

18          First, the instruction should use the model instruction's word "informant"

19  instead of the government's proposed "cooperating witness." In the context of the

20  surreptitious recordings that make this instruction even potentially necessary, Justin

21  Kim was acting as an informant, not a "witness."[1] The use of the word "witness"

22  would suggest that the Court is commenting on his status as a witness, not merely

23  confirming that his prior conduct as a surreptitious informant was permissible.

24          Second, there is no reason to include any names in the instruction, as that

25

26  ─────────────────────

[1]  Indeed, Agent Civetti attempted to clarify repeatedly that it was not until April 4,

27  2019—a week *after* Justin Kim had made his latest surreptitious recording of Mr.

28  Lee—that the government considered him a "cooperator."

1  would inappropriately direct the jury to specific witnesses instead of simply

2  confirming that the government's use of informants writ large is permissible and

3  legal (which is the only valid purpose of the instruction). And in any event, Esparza

4  should not be named, as he never surreptitiously recorded Mr. Lee, and his

5  credibility was not actually attacked by counsel during cross-examination or closing

6  argument. While the government did introduce evidence relating to Esparza's

7  surreptitious recording of a conversation with Huizar, defense counsel never

8  addressed that recording—which has nothing to do with Mr. Lee's intent—

9  anywhere in its trial presentation.

10      Third, the government's proposed modification improperly drops the last

11  clause, "to investigate criminal activities," from the last sentence. This is also

12  inappropriate. The instruction is only designed to clarify for the jury that the use of

13  certain investigative tactics is legal from the perspective of the investigation itself.

14  By removing the qualifier "to investigate criminal activities," the government

15  appears to be asking the Court to suggest that its reliance on cooperating witnesses

16  at *trial* was appropriate. But that is a question for the jury to decide, not something

17  on which the Court should provide an instruction.

18      Fourth, there is no basis to specify that the government may use "cooperating

19  witnesses, surreptitiously recording conversations, and using ruses," none of which

20  appears in the model instruction. The defense never suggested that any of these

21  specific methods was illegal. But providing this language risks misleading the jury

22  into believing that it may not question, for example, whether the steps that the

23  government took to secure "cooperation" from a witness makes that witness's

24  testimony unreliable; or whether their decision to omit significant portions of a

25  surreptitiously recorded conversation from a trial presentation could make the other

26  portions misleading. Once again, there is no basis for the Court to "tip the scales" in

27  the direction the government prefers.

28      Accordingly, if the Court concludes that Model Instruction 3.10 is

1 | appropriate, it should reject the government's proposed deviations from the model,

2 | and read the following instruction:

3 | > You have heard testimony from an informant who was
4 | > involved in the government's investigation in this case.
5 | > Law enforcement officials may engage in stealth and
6 | > deception, such as the use of informants, to investigate
   | > criminal activities.

7 | In addition, as stated in *Winslow*, if the Court provides Instruction 18, the

8 | Court should also provide an additional instruction about Justin Kim's credibility to

9 | address any prejudice:

10 | > You have heard testimony from Justin Kim. You should
11 | > examine Justin Kim's testimony with greater caution than
    | > that of an ordinary witness, and you should consider the
12 | > extent to which it may have been influenced by the receipt
13 | > of benefits and compensation from the government.

14 | **II.    CONCLUSION**

15 | For these reasons, the Court should reject the government's request to provide

16 | Instruction 18. If it determines that some version of the instruction is appropriate, it

17 | should provide the model instruction, reject the government's proposed revisions,

18 | and provide a cautionary instruction about Justin Kim's credibility to offset the

19 | prejudice from the government's proposed instruction.

20 | DATED:  June 26, 2022                    Ariel A. Neuman
21 |                                          Ray S. Seilie
    |                                          Bird, Marella, Boxer, Wolpert, Nessim,
22 |                                          Drooks, Lincenberg & Rhow, P.C.

23 |

24 |

25 | By: _____
26 |                                          Ray S. Seilie
    |                                          Attorneys for Defendants 940 Hill, LLC
27 |                                          and Dae Yong Lee

28 |