# EXHIBIT 3

```
 1                    UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3           HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

 4

 5  UNITED STATES OF AMERICA,     )
                                  )
 6                  Plaintiff,    )
                                  )
 7      v.                        )  Case No. CR 20-326(A) JFW
                                  )
 8  DAE YONG LEE,                 )         VOLUME 3
    940 HILL, LLC,                )      (Pages 523 - 785)
 9                                )
                    Defendants.   )
10  _____)

11

12              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                            TRIAL DAY 3
13                    THURSDAY, JUNE 16, 2022
                            7:47 A.M.
14                   LOS ANGELES, CALIFORNIA
```

MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA  90012
(213) 894-2305

UNITED STATES DISTRICT COURT

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

    TRACY L. WILKISON
    United States Attorney
    BY: MACK E. JENKINS
    BY: VERONICA DRAGALIN
    BY: CASSIE D. PALMER
        Assistant United States Attorneys
    United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012


**FOR THE DEFENDANTS:**

    BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS,
    LINCENBERG & RHOW
    BY: ARIEL A. NEUMAN
    BY: RAY S. SEILIE
        Attorney at Law
    1875 Century Park East, 23rd Floor
    Los Angeles, California 90067


**KOREAN INTERPRETERS:**

    KATHY SIM
    MARY ANN YI


**ALSO PRESENT:**

    ANDREW CIVETTI, FBI Special Agent

**INDEX OF WITNESSES**

PLAINTIFF'S WITNESSES                                               PAGE

CIVETTI, Andrew

    Cross-Examination (Resumed) by Mr. Neuman            534
    Redirect Examination by Ms. Dragalin                 602
    Recross-Examination by Mr. Neuman                    630


SHAFFER, Fred

    Direct Examination by Ms. Palmer                     636
    Cross-Examination by Mr. Seilie                      697
    Redirect Examination by Ms. Palmer                   751
    Recross-Examination by Mr. Seilie                    762


KUK, Shawn

    Direct Examination by Mr. Jenkins                    763

```
 1   Planning Department to create the plans that led to the
 2   Planning Department's approval?
 3        A.    Yes.
 4        Q.    And Jose Huizar was not part of that department?
 5        A.    No.
 6        Q.    And although there was sort of in the back of
 7   everyone's minds we had to make sure he was on board, he wasn't
 8   directly involved in the process of getting that -- the project
 9   approved by the Planning Department?
10        A.    No.
11        Q.    Now, as part of the approval process, you and your
12   team actually had to work with a number of different local
13   agencies to prepare various reports and make sure everything
14   about the project complied with the laws and regulations of the
15   city; correct?
16              Sorry, we need a verbal --
17        A.    Yes.
18              MR. SEILIE:  If we could -- I believe Exhibit 305
19   has been previously stipulated to.  If I could publish it.  Or
20   if we could admit Exhibit 305.
21              MS. PALMER:  No objection.
22              THE COURT:  Exhibit 305 will be admitted without
23   objection.
24              (Exhibit 305 for identification
25                and received into evidence.)
```

**UNITED STATES DISTRICT COURT**

|          |    |                                                                         |
|----------|----|-------------------------------------------------------------------------|
|          | 1  |         MR. SEILIE:  If we could publish page 3, Ms. Capata.            |
|          | 2  |         And if you want to take a look at the -- actually,              |
|          | 3  | if we could go to the first page.  My apologies.  We should             |
|          | 4  | tell everyone what this is.                                             |
| 12:51PM  | 5  |    Q.   (BY MR. SEILIE:)  This is a Planning Department                 |
|          | 6  | staff report that predates the Planning Department hearing;             |
|          | 7  | correct?                                                                |
|          | 8  |    A.   Correct.                                                        |
|          | 9  |    Q.   And if you look at page 3, it lists a bunch of                  |
| 12:51PM  | 10 | reports that were prepared by a bunch of different city                 |
|          | 11 | agencies; correct?                                                      |
|          | 12 |    A.   Correct.                                                        |
|          | 13 |    Q.   Bureau of Engineering is one of them.  Do you see               |
|          | 14 | that?                                                                   |
| 12:51PM  | 15 |    A.   Yes.                                                            |
|          | 16 |    Q.   Two different divisions of the Department of                    |
|          | 17 | Building and Safety.  Do you see that?                                  |
|          | 18 |    A.   Yes.                                                            |
|          | 19 |    Q.   Department of Transportation had to sign off on some            |
| 12:51PM  | 20 | aspects of the project; correct?                                        |
|          | 21 |    A.   Correct.                                                        |
|          | 22 |    Q.   The Fire Department had to sign off on various                  |
|          | 23 | aspects of the project; correct?                                        |
|          | 24 |    A.   Correct.                                                        |
| 12:52PM  | 25 |    Q.   The Department of Water and Power had to sign off on            |

```
 1    a bunch of -- on aspects of the project?
 2         A.    Yes.
 3         Q.    The Bureau of Street Lighting had to sign off on the
 4    project?
 5         A.    Yes.
 6         Q.    The Bureau of Sanitation had to sign off on the
 7    project?
 8         A.    Yes.
 9         Q.    Each and every single one of these local city
10    agencies, they had to look closely at some aspect of the
11    project and say -- at some point approve it; correct?
12         A.    Correct.
13         Q.    And your team worked with these different agencies
14    in order to make sure that they were okay with the details of
15    the project?
16         A.    Correct.
17         Q.    And that's why it took so long.  You were contracted
18    in 2015, the Planning Department hearing is in June 2016.  In
19    that time, you're doing a lot of work to make sure that all of
20    the agencies are on board?
21         A.    Correct.
22         Q.    Another one of the things that you were -- your
23    company was hired to do was to get neighborhood support for the
24    project; correct?
25         A.    Correct.
```

|  |  |  |
|---|---|---|
| | 1 | Q.   And you actually obtained an approval from the |
| | 2 | Neighborhood Council; correct? |
| | 3 | A.   I believe we did, yes. |
| | 4 | MR. SEILIE:  Your Honor, at this time -- |
| 12:53PM | 5 | Q.   (BY MR. SEILIE:)  Could you take a look at |
| | 6 | Exhibit 301 in your binder.  I think it's in a binder on -- |
| | 7 | it's on the shelf next to you. |
| | 8 | A.   You're asking me to look here? |
| | 9 | Q.   It should say defense exhibits.  It's a blue covered |
| 12:53PM | 10 | binder, I'm being told.  Look at Exhibit -- yes.  Exhibit 301. |
| | 11 | THE COURT:  Are you going to offer 301? |
| | 12 | MR. SEILIE:  Yes, Your Honor. |
| | 13 | THE COURT:  And you have an objection? |
| | 14 | MS. PALMER:  Yes, Your Honor.  Hearsay. |
| 12:53PM | 15 | THE COURT:  All right.  The objection is sustained. |
| | 16 | Q.   (BY MR. SEILIE:)  But you were able to succeed in |
| | 17 | your -- in the job that you were hired to do, which was obtain |
| | 18 | approval from the neighborhood -- |
| | 19 | A.   Correct. |
| 12:53PM | 20 | Q.   -- for the project; correct? |
| | 21 | A.   Correct. |
| | 22 | Q.   And that just meant that there was a council in the |
| | 23 | neighborhood that had the right to provide input on the |
| | 24 | project, and they said that the project was fine with that? |
| 12:54PM | 25 | MS. PALMER:  Objection.  Calls for hearsay. |

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Overruled.
 2              THE WITNESS:  We did obtain a recommendation letter
 3   from the Neighborhood Council in support of the project, yes.
 4        Q.    (BY MR. SEILIE:)  And then you also took steps
 5   before the hearing in June 2016 to notify the public about the
 6   project so that they could voice any concerns at the hearing;
 7   correct?
 8        A.    Correct.
 9              MR. SEILIE:  And, Your Honor, at this time, we would
10   ask to move in previously stipulated Exhibit 302.
11              THE COURT:  All right.  302 will be received into
12   evidence without objection.
13              (Exhibit 302 for identification
14               and received into evidence.)
15        Q.    (BY MR. SEILIE:)  And this is you providing notice
16   of the planning hearing that was going to move forward on
17   June 15th; correct?
18        A.    Yes.
19              MR. SEILIE:  Your Honor, I'd also like to move in
20   previously stipulated Exhibit 303.
21              THE COURT:  303 will be received into evidence
22   without objection.
23              (Exhibit 303 for identification
24               and received into evidence.)
25              MR. SEILIE:  And if we could publish that.
```

|  |  |  |
|---|---|---|
| | 1 | Q.  (BY MR. SEILIE:)  And this e-mail confirms that, in fact, details of the project were published in the *L.A. Times*; correct? |
| | 4 | A.  Yes. |
| 12:55PM | 5 | Q.  Again, the purpose of this publication was to ensure that the neighborhood could have its say on the project? |
| | 7 | A.  Correct. |
| | 8 | Q.  Did you attend the hearing on June 15th? |
| | 9 | A.  Yes. |
| 12:55PM | 10 | Q.  So at this hearing a few neighbors complained about the parking situation, but, otherwise, there weren't any objections that were raised; correct? |
| | 13 | A.  I think that's right. |
| | 14 | Q.  So as a result of this publicly noticed hearing, the Planning Department approved the project on the spot; correct? |
| | 16 | A.  Correct. |
| | 17 | MR. SEILIE:  And I'd like to move in previously stipulated Exhibit 308. |
| | 19 | THE COURT:  All right.  308 will be received into evidence without objection. |
| | 21 | (Exhibit 308 for identification and received into evidence.) |
| | 23 | MR. SEILIE:  If we could show the first page of that, please. |
| 12:56PM | 25 | Q.  (BY MR. SEILIE:)  After the Planning Department held |

Times on left: 12:55PM (line 5), 12:55PM (line 10), 12:55PM (line 15), 12:56PM (line 20), 12:56PM (line 25).

**UNITED STATES DISTRICT COURT**

|  |  |  |
|---|---|---|
|  | 1 | its hearing and tentatively approved the project, they |
|  | 2 | eventually issued written findings about a month later; |
|  | 3 | correct? |
|  | 4 | A.    Correct. |
| 12:56PM | 5 | Q.    And this is a copy of the written conclusions that |
|  | 6 | the Planning Department issued in support of the project? |
|  | 7 | A.    Correct. |
|  | 8 | Q.    It's a 32-page document; right? |
|  | 9 | A.    Yes. |
| 12:56PM | 10 | Q.    And so, basically, the experts at the Planning |
|  | 11 | Department reached -- took all of the reports that they |
|  | 12 | received, took all of the analysis they had done, and condensed |
|  | 13 | it into a set of findings about how the project would impact |
|  | 14 | the community? |
| 12:56PM | 15 | A.    Correct. |
|  | 16 | Q.    If we could turn to page 19.  I just want to go |
|  | 17 | through a few examples of what the Planning Department |
|  | 18 | concluded.  Actually, if we can just go to page 20. |
|  | 19 | So one of the findings that the Planning Department |
| 12:57PM | 20 | made was that the current site is an underutilized one-story |
|  | 21 | commercial/office building and surface parking lot and the |
|  | 22 | proposed project would replace the current underutilized use |
|  | 23 | with a mixed-use development that will activate the surrounding |
|  | 24 | streetscape, provide new housing units and commercial |
| 12:58PM | 25 | opportunities and add to the rehabilitation efforts of |

**UNITED STATES DISTRICT COURT**

|  |  |  |
|---|---|---|
|  | 1 | downtown. |
|  | 2 | Q. They conclude that? |
|  | 3 | A. Yes. |
|  | 4 | Q. And if you want to look through your binder so we |
| 12:58PM | 5 | don't have to keep popping up other things, if you look at |
|  | 6 | Tab 308 in your binder.  It's a copy of this document.  I can |
|  | 7 | just go through a few other things that the Planning Department |
|  | 8 | said. |
|  | 9 | If you look on page 25 of the document. |
| 12:58PM | 10 | The Planning Department -- the experts at the |
|  | 11 | Planning Department, they all concluded that this is a project |
|  | 12 | that would increase the number -- the amount of housing |
|  | 13 | available in the downtown area, and it wouldn't displace |
|  | 14 | anybody because it wasn't removing any residential units; |
| 12:58PM | 15 | correct? |
|  | 16 | A. Correct. |
|  | 17 | Q. So all it would do is revitalize an underutilized |
|  | 18 | site by adding more housing, adding more commercial |
|  | 19 | opportunities; correct? |
| 12:59PM | 20 | A. Correct. |
|  | 21 | Q. Now, this is a document that goes on for 30 pages. |
|  | 22 | There are a lot of statements there along the same lines; |
|  | 23 | right? |
|  | 24 | A. Yes. |
| 12:59PM | 25 | Q. The Planning Department took its time.  And after |

|  |  |  |
|---|---|---|
|  | 1 | doing -- conducting a full year of analysis, they concluded |
|  | 2 | this is a development that was going to help benefit the local |
|  | 3 | community; correct? |
|  | 4 | A.    Correct. |
| 12:59PM | 5 | Q.    It was a project that would improve the neighborhood |
|  | 6 | and the community substantially; correct? |
|  | 7 | A.    Correct. |
|  | 8 | Q.    And this is a conclusion reached by experts at the |
|  | 9 | City Planning Department, not politicians; correct? |
| 12:59PM | 10 | A.    Correct. |
|  | 11 | Q.    Jose Huizar didn't help draft this document; |
|  | 12 | correct? |
|  | 13 | A.    Correct. |
|  | 14 | Q.    The document was actually drafted by two people |
| 12:59PM | 15 | named Nicholas Hendricks and Heather Bleemers, who were both |
|  | 16 | city planners with the Planning Department; correct? |
|  | 17 | A.    Correct. |
|  | 18 | Q.    Now, I think as you testified earlier, in terms of |
|  | 19 | the city process, after the Planning Department approved the |
| 01:00PM | 20 | project, this redevelopment could move forward unless someone |
|  | 21 | appealed; right? |
|  | 22 | A.    Correct. |
|  | 23 | Q.    There were no more affirmative approvals that were |
|  | 24 | needed. |
| 01:00PM | 25 | A.    That's correct.  The TFAR, the final TFAR approval. |

**UNITED STATES DISTRICT COURT**

```
                1   their objectives, CREED was basically coming up with whatever
                2   complaints it could put on paper about a project and then using
                3   the delay and cost to strong-arm developers into hiring unions;
                4   correct?
01:10PM         5               MS. PALMER:  Objection, Your Honor.  Improper
                6   question.  Calls for speculation.  Argumentative.
                7               THE COURT:  Yes.  The objection is sustained.
                8               You can ask him what his understanding of CREED LA
                9   was, but you can't characterize it and then ask him to confirm
01:10PM        10   it.
               11        Q.   (BY MR. SEILIE:)  Well, let's go back.
               12             So as we learned earlier, the appeal itself didn't
               13   say anything about union labor; correct?
               14        A.   Correct.
01:11PM        15        Q.   But you understood that if CREED LA -- if a
               16   developer wanted to negotiate with CREED LA, often all that
               17   CREED LA cared about was getting a PLA; correct?
               18        A.   Correct.
               19        Q.   If they got a PLA, they wouldn't care about the soil
01:11PM        20   and debris haul routes; correct?
               21        A.   Correct.
               22        Q.   If they got a PLA, they wouldn't care about studies
               23   that calculated greenhouse gas emissions; correct?
               24        A.   Correct.
01:11PM        25        Q.   If they got their PLA, they wouldn't care about how
```

|  |  |
|---|---|
|  | 1  much of a -- how big the TFAR payment was; correct? |
|  | 2       A.   Correct. |
|  | 3       Q.   So all of this stuff that they said they care about |
|  | 4  in this letter, that was just a way for them to -- to -- to |
| 01:11PM | 5  create leverage for negotiations? |
|  | 6            MS. PALMER:  Objection, Your Honor.  Argumentative. |
|  | 7  Calls for speculation. |
|  | 8            THE COURT:  In this witness's view. |
|  | 9       Q.   (BY MR. SEILIE:)  In your view, Mr. Shaffer, what |
| 01:11PM | 10 CREED LA was basically doing was coming up with arguments that |
|  | 11 it could use to slow down a project and use that delay as |
|  | 12 leverage to strong-arm developers into signing PLAs; correct? |
|  | 13      A.   That's correct. |
|  | 14      Q.   And, in fact, you learned that many developers would |
| 01:12PM | 15 sign a PLA just to get CREED to stop opposing a project? |
|  | 16      A.   Correct. |
|  | 17      Q.   You also testified that CREED could file a lawsuit |
|  | 18 even if the city council denied their appeal? |
|  | 19      A.   Correct. |
| 01:12PM | 20      Q.   So even if Jose Huizar voted to deny the appeal at |
|  | 21 the PLUM level and at the council level, CREED could still keep |
|  | 22 fighting; correct? |
|  | 23      A.   That's correct. |
|  | 24      Q.   And as a practical matter, CREED could also either |
| 01:12PM | 25 seek an injunction or proceed with a lawsuit that would cause |

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES )
)
STATE OF CALIFORNIA )

     I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

     DATED THIS 17TH DAY OF JUNE, 2022.

     /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER