E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CASSIE D. PALMER (Cal. Bar No. 268383)
Assistant United States Attorney
Deputy Chief, Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3289
    Facsimile: (213) 894-6436
    E-mail:   Mack.Jenkins@usdoj.gov
             Cassie.Palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>DAE YONG LEE,<br>  aka, "David Lee,"<br>940 HILL, LLC,<br><br>       Defendants. | No. CR 20-326(A)-JFW-5, 6<br><br>GOVERNMENT'S RESPONSE TO THE SENTENCING MEMORANDA FILED BY DEFENDANTS' DAE YONG LEE & 940 HILL, LLC; DECLARATION OF CASSIE D. PALMER; ATTACMENT C<br><br>Hearing Date: July 21, 2023<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>          Hon. John F. Walter |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins and Cassie D. Palmer, hereby files its response to the sentencing memoranda filed by defendants DAE YONG LEE (Dkt. No. 1083) and 940 HILL, LLC (Dkt. No. 1080) and the exhibits submitted in support thereof.

//

//

This response is based upon the attached memorandum of points and authorities; the declaration of Cassie D. Palmer and Attachment C attached thereto; the government's sentencing position and attachment A thereto (Dkt. No. 1086); the declaration of Cassie D. Palmer and accompanying exhibits and Attachment B thereto (Dkt. No. 1085); the files and records in this case; and such further evidence and argument as the Court may permit.

Dated: July 7, 2023                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                       _____
                                       CASSIE D. PALMER
                                       MACK E. JENKINS
                                       Assistant United States Attorneys

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES...............................................i

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    OVERVIEW....................................................1

II.   Guidelines Sentences, Not Substantial Variances, Are
      Necessary to Address the Seriousness of Defendants LEE/940
      HILL's Crimes...............................................3

      A.    Defendant LEE's Behavior Was Ongoing and Well-Planned,
            Not Aberrant..........................................3

      B.    If Anything, the Value of the Bribe Understates, Not
            Overstates, the Seriousness of the Offenses...........5

      C.    Any Collateral Consequences Defendants LEE/940 HILL
            Have Suffered From Their Criminal Acts Is An Improper
            Basis to Vary Downward................................7

III.  Defendants LEE/940 HILL's Substantial Recommended Variances
      Would Result in Unwarranted Disparities....................10

      A.    Huizar and Englander Are Not Similarly Situated to LEE...10

      B.    Defendant LEE's Selective Presentation of Guidelines
            Data Is Unavailing...................................11

      C.    Defendants LEE's Citation to Other "Corruption
            Defendants" Is Misplaced.............................12

IV.   The Court Should Impose the Maximum Fines in This Case;
      Neither Defendant LEE Nor Defendant 940 HILL Has Met Their
      Burden of Demonstrating an Inability to Pay................13

      A.    An Offset of Defendant 940 HILL's Fine Is Appropriate,
            But the Fines Should Not Be Reduced Further...........13

      B.    Defendants LEE/940 HILL Have Failed to Meet Their
            Burden of Establishing an Inability to Pay the Maximum
            Fines................................................16

V.    CONCLUSION.................................................20

i

# **TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

**Federal Cases**

<u>Koon v. United States</u>,
    518 U.S. 81 (1996) ......................................... 8-9

<u>United States v. Bistline</u>,
    665 F.3d 758 (6th Cir. 2012) ................................. 8

<u>United States v. Evridiki Navigation Inc.</u>,
    No. 22-2032, 2023 WL 3734961 (3d Cir. May 31, 2023) ....... 18, 19

<u>United States v. Morgan</u>,
    635 F. App'x 423 (10th Cir. 2015) ............................ 9

<u>United States v. Nathan</u>,
    188 F.3d 190 (3d Cir. 1999) ................................. 16

<u>United States v. Rafferty</u>,
    911 F.2d 227 (9th Cir. 1990) ................................ 16

<u>United States v. Treadwell</u>,
    593 F.3d 990 (9th Cir. 2010) ................................ 13

**Sentencing Guidelines & Commission Publications**

U.S.S.G. § 2B1.1 ................................................. 6

U.S.S.G. § 2C1.1 ............................................. 5, 6

U.S.S.G. § 5K2.20 ............................................ 3, 4

U.S.S.G. § 8, Introduction Commentary........................ 20, 6

U.S.S.G. § 8C2.4 ................................................ 6

U.S.S.G. § 8C2.5 ............................................... 15

U.S.S.G. § 8C2.10 .............................................. 16

U.S.S.G. § 8C3.3 .............................................. 19

U.S.S.G. § 8C3.4 ........................................... 13, 14

United States Sentencing Commission, Judiciary Sentencing Information
(JSIN), https://jsin.ussc.gov/analytics/saw.dll?Dashboard......... 12

United States Sentencing Commission, <u>The Organizational Sentencing
Guidelines</u>, (Aug. 2022),
https://www.ussc.gov/sites/default/files/pdf/research-and-
publications/research-publications/2022/20220829_Organizational-
Guidelines.pdf........................................... 13, 15-16

i

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   OVERVIEW

3     Defendant DAE YONG LEE (also known as, "David Lee") ("LEE") is

4  nothing if not a careful, deliberate planner, and his sentencing

5  submissions are the ultimate culmination of the plan he hatched in

6  2019 when he first learned that the FBI was focusing on his

7  misconduct: "have to blame [Huizar]" and "should emphasize that we

8  were played by Huizar," after all, "we're probably [*chuckling*] just a

9  drop in the ocean."

10     While the government initially was heartened to read that

11  defendant LEE -- for the very first time and only after a jury

12  unanimously found him guilty of all counts -- finally admitted <u>some</u>

13  wrongdoing, that sentiment was short-lived because his and defendant

14  940 HILL, LLC's ("940 HILL") sentencing submissions largely ignore or

15  profoundly minimize defendant LEE and 940 HILL's criminal conduct and

16  shift the blame onto others.  Defendants LEE/940 HILL primarily blame

17  Huizar (according to plan), but they also blame George Esparza,

18  Justin Kim, and even CREED for appealing their worthy entitlements in

19  the first place.  Indeed, defendant LEE would justify his crimes by

20  presenting facts contrary to the evidence at trial: that **he** was a

21  "victim" who was <u>extorted</u> by Huizar and Esparza and manipulated by

22  Kim.  (<u>See, e.g.</u>, Dkt. No 1083 at 17 (claiming he was "convicted of

23  acceding to an illegal demand for payment and then making an effort

24  to make it appear legitimate"), 20 ("Justin Kim was already looking

25  to exploit Mr. Lee for his own ambitions"), 21 (stating that

26  defendant LEE "acceded to an <u>extortionate</u> demand" and was "<u>a victim</u>

27  of Huizar and Esparza" and that Kim was seeking "to leverage the

28

financial position of Mr. Lee") (emphases added).)  This is not acceptance of responsibility, and these are not the facts.[1]

To be clear: the evidence at trial showed that defendant LEE was the person who reached out to Huizar (via Kim) for help the same day that CREED filed its appeal; _after_ Huizar responded that the help defendant LEE sought would not be free, defendant LEE was the person who engaged in months-long negotiations regarding the amount and form of the bribe; defendant LEE was the person who came up with the substantial and attractive offer that Huizar ultimately accepted: **half-a-million dollars in cash on behalf of defendant 940 HILL for Huizar's help**; and defendant LEE was the person who chose to pay out the bribe to a public official **over a nearly six-month period**.  Years later, defendant LEE was the person who falsified defendant 940 HILL's accounting records and _then_ submitted false tax returns on behalf of 940 HILL to cover up his crimes; and defendant LEE was the person who told his co-schemer that they should falsely align their stories and blame Huizar.  The jury saw through this blame game at trial, and the Court should decline to credit it now.

As discussed at length in the government's sentencing position, many of facts defendant LEE cites as mitigating actually cut against him.  He is a man who had every advantage in life and who knew right from wrong but nevertheless chose to commit these crimes.  And the _reason_ he chose to commit bribery was simple: _greed_; as was the reason he chose to commit obstruction: _to save himself_.  As such, what marginal remorse defendant LEE now claims to have found

---

[1] Defendant LEE's argument regarding these "facts" without citation to evidence is telling.  There are no citations to the record because none exist.

(belatedly and only partially) is at odds with the man who laughed at the seriousness of his crimes; cavalierly explained that he had become "nonchalant" to government investigations after he had failed to be held accountable; and thought he could cheat the system on behalf of defendant 940 HILL, lie, and avoid responsibility.

Finally, to account for this serious conduct and serve the goals of deterrence, the statutory maximum fines (both of which are **below** the Guidelines ranges) are warranted, and neither defendant LEE nor defendant 940 HILL has met their burden of establishing an inability to pay the full fines.

## II. Guidelines Sentences, Not Substantial Variances, Are Necessary to Address the Seriousness of Defendants LEE/940 HILL's Crimes

### A. Defendant LEE's Behavior Was Ongoing and Well-Planned, Not Aberrant

Defendant LEE attempts to paint a picture of his crimes as aberrant, that is, momentary, misguided lapses in the judgment in an otherwise speckless life and asks the Court to vary downward on this basis. (See Dkt. No. 1083 at 6 ("Mr. Lee's mistakes with regard to 940 Hill, while grave, were an aberration"); 8 ("the conduct for which he was convicted was an aberration" in "a life that would otherwise represent a remarkable exemplar of the American dream"); 22 (his criminal actions "are an aberration in the story of Mr. Lee's life"). But far from being aberrant, defendant LEE's criminal conduct spanned years, took multiple forms, and was methodically planned, which supports a Guidelines sentence, not a profound downward variance.

U.S.S.G. § 5K2.20 contains a policy statement that courts may depart downward for aberrant behavior only if the defendant committed a "single criminal occurrence or single criminal transaction that was

3

committed without significant planning" and "was of limited duration." U.S.S.G. § 5K2.20(b).[2] The commentary notes that "repetitious or significant, planned behavior" does not meet the requirements for a departure for aberrant behavior. U.S.S.G. § 5K2.20(b), Application Note 2.

Here, defendant LEE's criminal conduct was neither a single occurrence without significant planning nor of limited duration. To the contrary, defendant LEE did not bribe Huizar on the spur of the moment; rather, he bribed Huizar as part of a calculated decision after months of negotiation and contemplation. And then defendant LEE paid out the bribe over a period of approximately six months. At no time during that period did he have a crisis of faith or stop going down the illegal path he had chosen. In further aggravation, he doubled down on his calculated, criminal choices and acts when he feared getting caught. Rather than coming clean, he instructed his employee to create false accounting records. Defendant LEE then went even further by submitting false tax returns on behalf of defendant 940 HILL, incorporating the lies he had concocted, all in a craven attempt to paper over his bribe. And during the same period, defendant LEE encouraged a witness to fire his attorney so they could falsely align their stories.

The government finds defendant LEE's failure to accept responsibility and overall minimization troubling, but his framing of his obstruction of justice conduct is particularly stark and at odds

---

[2] Defendant asks for a variance from the Guidelines instead of a departure, but the policy statements about the grounds for departure are instructive (though obviously not determinative) in assessing the appropriateness of variance from the Guidelines on the same basis.

4

with true acceptance of responsibility.[3]  Put simply, defendant LEE's prolonged, calculated conduct on behalf of defendant 940 HILL was the opposite of aberrant and accordingly supports a Guidelines term of imprisonment, not a significant variance.

**B.  If Anything, the Value of the Bribe Understates, Not Overstates, the Seriousness of the Offenses**

Defendant LEE requests a 13-level downward variance arguing, in part, that the amount of the bribe "is not an appropriate metric by which to determine his sentence."  (Dkt. No. 1083 at 8.)  But, if anything, the amount of the bribe in this case is substantially less than the amount defendants LEE/940 HILL gained by paying the bribe and accordingly understates the seriousness of the offense.  Here, the entitlements themselves increased the value of the Property by at least $15 million and defendants believed they were saving many millions by resolving the appeal expeditiously.

The enhancement under § 2C.1.1(b) is intended to reflect a defendant's culpability, based on "the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest."  U.S.S.G. § 2C1.1(b)(2) & Application Note 3 (emphases added).  Per the Sentencing Guidelines, "for deterrence purposes, the punishment [for bribery crimes] should be commensurate with the gain to the payer."  U.S.S.G. § 2C1.1, Background (emphasis

---

[3] After explaining that he was a victim who was extorted and manipulated by others, defendant LEE explains his obstruction conduct as follows: "He then compounded the error through his actions with respect to 940 Hill's books that led to the conviction for obstruction of justice."  (Dkt. No. 1083 at 22).

added).[4]  Here, the bribe defendants LEE/940 HILL paid is a fraction
of their gain.  It is undisputed that the 940 HILL Property was
appraised at $13.6 million as part of the entitlement application and
then received purchase offers of $30 to $34 million with the
entitlements that were the subject of the bribe; it is also
undisputed that the developed Property offered a financial upside
that was many magnitudes higher than that.  Further, avoiding delays
and having to employ union workers on the 940 HILL project would have
saved defendants LEE/940 HILL many millions of dollars.  The value of
each of these benefits to defendants LEE/940 HILL therefore exceeds
the value of the bribe by many millions and the value of them
collectively does so astronomically.

That said, because calculating a reasonable estimate of these
benefits is difficult, the government conservatively adopted the
amount of the bribe payment, which is substantially lower and
consequently results in a lower Guidelines range for defendants
LEE/940 HILL.  See U.S.S.G. § 2C1.1, Background (where "the value of
the benefit cannot be determined, the value of the bribe is used
because it is likely that the payer of such a bribe expected
something in return that would be worth more than the value of the
bribe"); U.S.S.G. § 2B1.1, Application Note 3 (c) (explaining
"reasonable estimate of loss") .  Thus, the value of $500,000 bribe
that defendants paid -- expecting much, much more in exchange -- is

---

[4] The pecuniary gain principle for calculating the appropriate
fine for corporate entities, as set forth in U.S.S.G. § 8C2.4(a)(2),
Background, and Application Notes 1-2 and 4, relies on similar
principles and specifically references § 2C1.2.  See also U.S.S.G.
§ 8, Introduction Commentary ("The seriousness of the offense
generally will be reflected by the greatest of the pecuniary gain,
the pecuniary loss, or the amount in a guideline offense level fine
table.").

an appropriate, if understated and conservative, metric by which to measure the seriousness of the offenses here.

### C. Any Collateral Consequences Defendants LEE/940 HILL Have Suffered From Their Criminal Acts Is An Improper Basis to Vary Downward

Defendant LEE argues that the collateral consequences he has suffered as a result of his criminal acts and the government's prosecution of them are sufficient punishment warranting a substantial variance.[5]  Among other things, defendant LEE cites the letters in support, which speak to defendant LEE's life, and the toll the criminal case has taken on his family, livelihood, and reputation.  In support of his position, defendant LEE submitted numerous letters of support detailing (among other things) his many personal and professional accomplishments, including from family, friends, members of his church, members of the Korean American community in Los Angeles, and former colleagues and employees.  Many of the letters speak to defendant LEE's business acumen and his involvement in his community and church.

In his sentencing position, defendant LEE argues that the reputational harm he has suffered should be considered in reducing his sentence because such a loss has already punished him.  (Dkt. No. 1083 at 24 ("As to punishment, Mr. Lee's life and reputation are in tatters.  His indictment, trial, and conviction have been covered at length in the national and local press, as well as various Korean-language newspapers.  His ability to conduct normal business is

---

[5] In requesting a minimal fine, defendant 940 HILL similarly claims that "the indictment, trial, and conviction of the company has taken a serious toll on both the company itself and its owners," such that the company has had trouble refinancing and its development remains "in jeopardy" because of the "publicity surrounding the property."  (Dkt. No. 1080 at 8-9.)

stalled.").)  While there may be other reasons for mitigation, defendant's former status, connections, resources, and privileges, and, in particular, the loss of them due to his own conduct should not be among them.

As numerous courts, the Sentencing Guidelines, and the other authorities detailed in the government's sentencing position have explained (see Dkt. No. 1086 at 28-29, 30-32), the law mandates that courts refrain from weighing the § 3553(a) factors to favor certain classes of defendants and disfavor others.  Importantly, defendant LEE's prior privileged status and the attendant financial opportunities and socioeconomic advantages are simply not mitigating factors.  Along those same lines, the loss of defendant's stature and reputation in the community, in many ways, is merely a reflection of that privileged background and a consequence of his own criminal and unethical actions—and not a consequence of his sentence, which must "reflect the seriousness of the offense."  United States v. Bistline, 665 F.3d 758, 765 (6th Cir. 2012) (disapproving of district court's "recitation of [defendant's] collateral consequences" which did nothing to show that the sentence "reflects the seriousness of his offense"; "Were it otherwise, these sorts of consequences—particularly ones related to a defendant's humiliation before his community, neighbors, and friends—would tend to support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along these lines.  And '[w]e do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose.'" (citation omitted)); cf. Koon v. United States, 518 U.S. 81, 110 (1996) (finding district court abused its discretion by improperly considering adverse

collateral employment consequences in imposing a downward departure based upon defendant police officer's loss of job and bar on future law enforcement employment).

For these same reasons, while defendant LEE's letters of support are laudable and somewhat mitigating, the Court should consider the letters in their proper context and refrain from giving them undue weight. See United States v. Morgan, 635 F. App'x 423, 449-50 (10th Cir. 2015) (explaining that the trial court placed "undue emphasis on the numerous letters" in which many of the authors "believed [defendant] had been adequately punished by the collateral consequences of his prosecution and conviction" (citations omitted)). On balance, defendant's well-lived life and social resources suggest he is less likely to re-offend, but also cut against him because those relationships and resources did not prevent him from offending in the first place.[6]  Even those who defendant LEE has harmed -- like the former employee created false records for LEE and the apparently unwitting business partners on whose behalf defendant LEE paid bribes and submitted false tax returns -- take pains to say good things about defendant LEE at sentencing, even after knowing the full scope of the criminal conduct he drew them into.  Finally, crediting defendant LEE achieving financial success is only rewarding the trait that brought him here in the first place: the single-minded pursuit of success and the ambition that drove him to place those things over abiding by law and the moral principles he claims to hold dear.

---

[6] If anything, the economic and social privilege that defendant LEE enjoyed before and while engaging in his criminal course of conduct only underscores that he was motivated by greed and a sense of entitlement as opposed to any potential arguable mitigating socio-economic or personal factors.

### III. Defendants LEE/940 HILL's Substantial Recommended Variances Would Result in Unwarranted Disparities

For the reasons discussed in the government's sentencing memorandum and below, defendant LEE's requested 13-level downward variance would result in unwarranted sentencing disparities, as would defendant 940 HILL's request for a significant reduction in its fine.

### A.    Huizar and Englander Are Not Similarly Situated to LEE

In support of defendant LEE's requested variance, he points to various individuals who are not similarly situated, including Huizar and Englander.  Huizar faces a significantly longer sentence than defendant LEE: 9 to 13 years' imprisonment, which is two to six years (nearly double) longer than the term recommended here.  Further, Huizar's variance was based upon an individual assessment of the sentencing factors, and <u>not</u>, as the defense claims, a "[r]ecogni[tion by the government] that the Guidelines are not a reasonable measure of the sentences that should be imposed in this case."  (Dkt. No. 1083 at 26.)  Indeed, Huizar's much higher sentencing range (even with the variance) and anticipated recommended sentence will reflect Huizar's distinct offense conduct and characteristics, as well as his acceptance of responsibility before trial and public admission of his crimes in an extremely detailed factual basis.  The public and fulsome admission of corrupt conduct meaningfully serves the public by providing finality and clarity.  Unlike Huizar, defendant LEE never admitted any misconduct, until it served his interests at sentencing; and his "admissions" now minimize the scope and seriousness of his conduct and place the true blame on others.

On the other end of the spectrum, defendant LEE points to Englander's 14-month sentence to support the profound reduction he

10

seeks here.  But Englander, unlike LEE, also pled guilty pretrial, and Englander's offense conduct is plainly less serious than, and accordingly distinguishable from, the conduct here.  While a councilmember, Englander accepted gifts from a businessperson and then agreed to broker a meeting between the businessperson and a developer.  Englander failed to report those gifts but never took, or promised to take, official acts in favor of the businessperson.  Thus, Englander's case involved ethical violations that had not yet ripened into federal bribery, which is in stark contrast to defendant LEE soliciting a public official's assistance for half-a-million dollars to resolve a pending City matter.  Further, defendant LEE's comment that Englander's conduct was more serious because he lied and encouraged witnesses to lie is curious given that defendant LEE not only did the latter with Kim but also ordered his employee to create false records to obstruct the federal investigation.  Defendant LEE's requested sentence of 20 months is essentially on par with Englander's sentence, which is wholly inappropriate and unwarranted, given the scope and seriousness of defendant LEE's conduct and his lack (even now) of genuine acceptance of responsibility.

All of this is to say that these defendants cannot be said to be similarly situated to defendant LEE; thus, any disparities in their sentences are warranted.

**B.   Defendant LEE's Selective Presentation of Guidelines Data Is Unavailing**

Defendant LEE employs fuzzy math to justify his request for an unwarranted 13-level downward variance from the Guidelines.  He selectively uses Sentencing Guidelines data from 2022, noting that bribery defendants are sentenced to an average of 19 months'

imprisonment, with a "median sentence of 12 months across all defendants." (Dkt. No. 1083 at 30.) While he correctly notes that those averages ignore criminal history category, he omits that they also ignore offense level[7] and include defendants who received departures for substantial assistance. When accounting for the relevant factors here, including: (1) criminal history (category I) and (2) total offense level (28), and (3) (appropriately) excluding defendants who received a reduction for substantial assistance under § 5K1.1, the average (both mean and median) length of imprisonment for defendants sentenced under the bribery guidelines over the last five years is 68 months' imprisonment. (See United States Sentencing Commission, Judiciary Sentencing Information (JSIN), https://jsin.ussc.gov/analytics/saw.dll?Dashboard, last visited July 6, 2023, Attachment C (screenshots of results).) This figure, which appropriately incorporates pertinent factors, more closely aligns with the government's Guidelines recommendation, as opposed to defendant's figures, which are untethered to any relevant factors and lacking in critical context.

### C. Defendants LEE's Citation to Other "Corruption Defendants" Is Misplaced

Defendant LEE cites various cases where courts imposed below Guidelines sentences on "other corruption defendants," none of which appear to involve an analogous scope of conduct, including defendant LEE's obstruction of justice and his efforts to align his co-schemer's story with his own. (Dkt. No. at 27-29.) Further, almost all of the cases defendant LEE cites imposed sentences above, many

---

[7] As noted above in Section 2.C supra, the value of the bribe is an appropriate, if understated and conservative, metric to measure the seriousness of defendant's offenses.

well above, his requested sentence here.  Of course, the government also cited examples of corruption cases imposing similar or higher sentences than the government's recommended sentence.  (See Dkt. No. 1086 at 31 n.10.)  While the parties undoubtedly could write entire memos analogizing and distinguishing such cases, imposing a sentence within the Guidelines remains the best way to avoid sentencing disparities.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) (overruled on other grounds) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); United States Sentencing Commission, The Organizational Sentencing Guidelines, (Aug. 2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220829_Organizational-Guidelines.pdf ("One of the primary motivations for the Sentencing Reform Act was to eliminate unwarranted disparity in sentencing and to address the inequalities created by unfettered sentencing discretion.").

**IV.  The Court Should Impose the Maximum Fines in This Case; Neither Defendant LEE Nor Defendant 940 HILL Has Met Their Burden of Demonstrating an Inability to Pay**

Defendants LEE/940 HILL's requests for a total fine of only $750,000 ($150,000 for Defendant LEE and $600,000 for defendant 940 HILL) are at odds with the goals of the sentencing and the requirement that the Court consider each defendant separately.

**A.  An Offset of Defendant 940 HILL's Fine Is Appropriate, But the Fines Should Not Be Reduced Further**

As a preliminary matter, the government agrees that an offset under U.S.S.G. § 8C3.4 is appropriate under the Guidelines because defendant 940 HILL is a closely held company.  (Dkt. No. 1025 ("940

HILL PSR") ¶¶ 117-19.)   Specifically, because defendant LEE owns
56.25% of defendant 940 HILL, the fine imposed on defendant 940 HILL
may be offset by up to 56.26% of defendant LEE's individual fine,
i.e., by $421,875 if the fine imposed on defendant LEE's individually
is $750,000.  (Id. ¶ 119.)   Offsetting the recommended fine of
$1,500,000 for defendant 940 HILL by 56.26% results in an effective
fine of $1,078,125[8] for defendant 940 HILL.

But that defendant LEE has agreed to pay the minority
shareholders' portions of the fine does not warrant a reduction of
either defendant LEE's fine or defendant 940 HILL's fine for several
reasons.  First, defendants LEE and 940 HILL are separate entities
and separate defendants under the law, and sentencing is necessarily
an individualized assessment.  Indeed, in Chapter 8 of the
Guidelines, the Sentencing Commission notes that "[f]ederal
prosecutions of organizations . . . frequently involve individual and
organizational co-defendants," and both need to be sentenced in
accordance with the distinct applicable chapters of the Guidelines.
Under § 8C2.8, the Guidelines Policy Statement for "Determining the
Fine Within the Range" does not list as a factor for consideration
how or whether individual executives or employees are also being
sentenced and how their sentences might impact the corporation's
sentence or culpability.  Instead, that fact is accounted for under
the offset reduction outlined above.

Second, in support of defendant 940 HILL's request for a
significantly below-Guidelines fine, it points to fines imposed on

---

[8] The government's understanding is that the appropriate manner
to achieve the offset is to impose the full fine amount but note the
offset in the judgment for defendant 940 HILL.

other corporate entities in this case -- specifically, Shen Zhen New World I, LLC ($4,000,000), Carmel Partners ($1,200,000), and Hazens ($1,050,000).  (Dkt. 1080 at 12-15.)  However, as discussed in the government's sentencing position, those entities are not similarly situated to defendant 940 HILL for the reasons stated therein, most notably that, unlike 940 HILL, they did not obstruct justice by falsifying their corporate records and filing false tax returns, and in the case of Carmel Partners and Hazens, accepted responsibility pre-indictment and cooperated with the government's investigation. (Dkt. No. 1086 at 35-36.)  The $600,000 fine defendant 940 HILL requests would be the lowest fine by far imposed in this case, which is wholly inappropriate in light of defendant 940 HILL's conduct and accordingly would result in unwarranted sentencing disparities.

Third, certain factors defendant 940 HILL claims are distinguishable and warranting of a variance -- for example, that 940 HILL is a much smaller corporate entity -- are accounted for in two ways by the Guidelines range for fines.  The first is the offset imposed on closely held organizations, as discussed above and agreed upon by the government.  The second is the culpability score under § 8C2.5, which imposes additional points based upon the size of the organization, the involvement of high-level personnel in the crime, and the degree of "tolerance of the offense by substantial authority" within the organization.  U.S.S.G. § 8C2.5(b)(1)-(5).  In other words, those distinguishing factors already are baked into the relative culpability scores for computing the fine range for organizational defendants and accordingly are an inappropriate grounds for a further reduction of the fine.  See supra United States Sentencing Commission, The Organizational Sentencing Guidelines, at 1

15

1   (noting that the organizational Guidelines are designed to: (1)

2   "incentiviz[e] organizations to self-police their behavior;" (2)

3   provide guidance on effective compliance and ethics programs that

4   organizations can implement to demonstrate efforts to self-police;

5   and (3) "hold[] organizations accountable <u>based on specific factors</u>

6   <u>of culpability</u>." (emphasis added)).

7   **B.   Defendants LEE/940 HILL Have Failed to Meet Their Burden of Establishing an Inability to Pay the Maximum Fines**

8

9        Defendants LEE/940 HILL have not demonstrated an inability to

10   pay the maximum fines, as they must.  **Defendants bear the burden** of

11   establishing that they are unable to pay the fine by a preponderance

12   of the evidence.  <u>See</u> <u>United States v. Rafferty</u>, 911 F.2d 227, 232

13   (9th Cir. 1990) (defendant has burden of establishing inability to

14   pay fine); <u>United States v. Nathan</u>, 188 F.3d 190, 213 (3d Cir. 1999)

15   ("The sentencing court must take account of the corporate defendant's

16   financial resources, putting the burden on the defendant to produce

17   relevant materials."); <u>see also</u> U.S.S.G. § 8C2.10 (directing courts

18   imposing fines on corporate defendants to apply the restitution

19   provisions of the United States Code, that is, 18 U.S.C. §§ 3553 and

20   3572).  Defendants LEE/940 HILL have not satisfied this burden.

21        As defendant LEE concedes, one of the factors the Court may

22   consider in assessing a closely held organization's ability to pay a

23   fine is the ability of its individual members to pay the fine (which

24   is the very reason why an offset for individual members of a closely

25   held organization exists).  Aside from defendant LEE, the individual

26   members have provided no evidence relating to their ability to pay

27

28

the fine.[9]  And for the single member who provided such information -- defendant LEE -- that information plainly demonstrates that he is able to pay the maximum individual fine and the maximum fine for defendant 940 HILL (both the portion of his fine commensurate with his ownership of defendant 940 HILL and the balance of $1,078,125 fine the government has requested).

The minority shareholders' "sentencing memorandum" does not alter this analysis.  (Dkt. No. 1077.)  As an initial matter, this "sentencing memorandum" is procedurally problematic because it fails to identify the mechanism or authority by which the minority shareholders, who properly identify themselves as a "non-party," have standing to file such a position at all, especially given that defendant 940 HILL is a represented party in this case.[10]  But the position is also striking for its lack of evidence relating to the minority shareholders' ability to pay.[11]

Perhaps most importantly, however, the argument that a fine imposed on defendant 940 HILL would unfairly penalize the investors is untenable for two reasons.  First, defendant LEE has agreed to pay any fine imposed on defendant 940 HILL, a fact that he repeatedly asks this Court to credit in imposing his sentence.  Second, from a policy perspective, crediting this argument would essentially shield

----

[9] The government has some understanding that the minority owners have substantial financial assets, but should they wish to claim an inability to pay a fine, they certainly can submit evidence of their financial resources for a detailed analysis by the United States Probation & Pretrial Services Office.

[10] See Note 6, supra.

[11] Nor do the minority shareholders appear to be claiming standing as victims in this case, though they explain that they have "suffered adverse consequences as a result of the conduct at issue." (Dkt. No. 1077 at 2.)

17

every company with innocent shareholders (which would be the vast majority) from paying a fine, which would defeat the primary mechanism available to punish corporate entities that commit crimes. The minority owners are not without recourse: they may avail themselves of civil remedies against defendant LEE for his criminal conduct that devalued the company and resulted in losses to them. Thus, they have a means of vindicating their financial rights, should they choose to pursue it (which seems unlikely given their attitude towards defendant LEE throughout the trial and at sentencing, including their opinion that he is "an honorable person," despite his conduct and convictions here).  (Dkt. 1077 at 2.)

To decline to punish defendant 940 HILL on this basis would sanction its bribe-paying conduct and send a very public message that bribe-paying companies can immunize themselves from meaningful punishment where punishment would hurt other investors.  That is not, and cannot be, the case.

Finally, while defendant 940 HILL is operating at loss and defendant LEE points to a lack of liquid assets to satisfy the maximum fines, cash flow is merely one factor the Court may consider, and is not determinative of the ability to pay.  See United States v. Evridiki Navigation Inc., No. 22-2032, 2023 WL 3734961, at *3 (3d Cir. May 31, 2023) (holding that district court did not err in imposing $1 million and $2 million fines against two corporate defendants that were operating at loss, noting, "although it has recently operated at a loss, the District Court found that it could borrow against its equity").  "[C]urrent cash flow is not the only consideration in an ability-to-pay determination as additional

financial resources 'shall' also be considered," including available

equity and other assets.  Id. (cleaned up, emphasis added).

On the record before the Court, both defendant LEE and defendant

940 HILL have more than sufficient financial resources to pay the

maximum fines.  Defendant LEE's financial resources are discussed at

length in his PSR.  And while not all of his financial resources are

liquid, he has sufficient liquid assets to pay a substantial portion

of the fine within 90 days and then to liquidate additional assets or

draw on equity to satisfy the remainder of the fine within six

months.[12]  Additionally, defendant 940 HILL's suggestion that the

Court should decline to require 940 HILL to pay the maximum fine

because that "would be tantamount to an order for the company to

dissolve" is incorrect.  First of all, the notion that the maximum

fine would threaten defendant 940 HILL's viability is unfounded

because defendant LEE appears to have significant assets, aside from

his interest in the 940 HILL Property, to satisfy the fine.  Second,

to the extent that defendant 940 HILL chose to sell the property that

was the subject of the bribe, in part to satisfy the fine, that would

be appropriate, and not at odds with U.S.S.G. § 8C3.3(b).  As 940

---

[12] Defendant LEE requests that the Court allow him one year to
satisfy any fine of more than $750,000 in total.  The minority
shareholders also request "much more time to pay [any fine imposed]
so that the property can be sold on reasonable terms," though they do
propose a particular time period.  (Dkt. No. 1077 at 3.)  The
government disagrees that a year is necessary, as defendants LEE/940
HILL have had several years to prepare to pay fines in this case, and
defendant LEE has arranged his assets meticulously in advance of
sentencing by, among other things, transferring them to his wife.
That said, the government understands that some additional time may
be warranted here and agrees that six months from sentencing is
appropriate for the satisfaction of any fine over $750,000 total.  As
always, should defendants LEE/940 HILL be unable to satisfy the fine
within that time period, they can submit information to the Court
regarding such efforts, and the Court can modify its order if so
warranted.

HILL concedes, defendant 940 HILL is operating at a loss, has no employees or public operations, and "exists solely to enable its three owners to own and eventually develop a single property."  (Dkt. No. 1080 at 8-9).  Where, as here, defendant 940 HILL exists only exists to hold a property that directly and substantially benefited from the crime by unlawfully receiving entitlements that greatly increased its value and which remain intact today, the continued viability of the entity holding such property is a less compelling interest.  See, e.g., U.S.S.G. § 8, Introduction Commentary ("if the organization operated primarily for a criminal purpose or primarily by criminal means, the fine should be set sufficiently high to divest the organization of all its assets") & 8C1.1.

Thus, to account of the seriousness of the offenses, promote respect for the law, and afford adequate deterrence, the Court should impose the statutory maximum fines (which are below the Guidelines ranges) of $750,000 on defendant LEE and $1,500,000 on defendant 940 HILL, with an offset of $421,875.

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose Guidelines sentences on both defendants, as follows: (1) defendant LEE: (a) 84 months' imprisonment; (b) a three-year term of supervised release; (c) a fine of $750,000, due within 90 days; and (d) a $300 special assessment; and (2) defendant 940 HILL: (a) a fine of $1,500,000, offset by $421,875, due within six months; (b) a 5-year term of probation with all the terms and conditions set forth in the 940 HILL PSR Letter; (c) a $1,200 mandatory special assessment; and (d) the costs of prosecution as set forth in the bill of costs.