1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3            HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,          )
                                        )
6                    Plaintiff,         ) CASE NO.
                                        ) 20-CR-0326-JFW
7          vs.                          )
                                        )
8    DAE YONG LEE,                      )
       aka, "DAVID LEE,"                )
9    940 HILL, LLC,                     )
                                        )
10                   Defendants.        )
     _____)

11

12

13

14

15            REPORTER'S TRANSCRIPT OF SENTENCING

16                 FRIDAY, JULY 21, 2023

17                      8:01 A.M.

18              LOS ANGELES, CALIFORNIA

19

20

21

22
     _____
23
                MAREA WOOLRICH, CSR 12698, CCRR
24            FEDERAL OFFICIAL COURT REPORTER
              350 WEST FIRST STREET, SUITE 4311
25              LOS ANGELES, CALIFORNIA 90012
                   mareawoolrich@aol.com

1                        **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF:**

4        E. MARTIN ESTRADA
         United States Attorney
5        CASSIE D. PALMER
         Assistant United States Attorney
6        MACK E. JENKINS
         Assistant United States Attorney
7        SUSAN HAR
         Assistant United States Attorney
8        1500 United States Courthouse
         312 North Spring Street
9        Los Angeles, CA 90012

10

11   **FOR DEFENDANT:**

12       BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
         DROOKS, LINCENBERG, & RHOW, P.C.
13       By:  Ariel A. Neuman
         By:  Ray S. Seilie
14       1875 Century Park East, 23rd Floor
         Los Angeles, CA 90067
15

16

     **ALSO PRESENT:**
17

18       FBI Agent Andrew Civetti
         Agnes Woo, Korean Language Interpreter
19       Myoung Sun Lim, Korean Language Interpreter

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JULY 21, 2023

 2                           8:01 A.M.

 3                            -oOo-

 4

 5              THE COURTROOM DEPUTY:  Calling CR 20-326(A) JFW,

 6   United States of America versus Dae Yong Lee and 940 Hill, LLC.

 7              Counsel, please state your appearance.

 8              MS. PALMER:  Good morning, Your Honor.

 9   Cassie Palmer, Mack Jenkins, Susan Har for the United States.

10   And along with us at counsel table is FBI Agent Andrew Civetti.

11              THE COURT:  All right.  Good morning.

12              MR. NEUMAN:  Good morning, Your Honor.  Ariel Neuman

13   and Ray Seilie on behalf of Defendants Dae Yong Lee and

14   940 Hill.  Mr. Lee is present being assisted by a Korean

15   language interpreter.  Also in the courtroom is Pamela Johnston

16   who represents the two minority owners of 940 Hill.

17              THE COURT:  All right.  And would the interpreter

18   please announce her appearance and confirm that her oath is on

19   file.

20              THE INTERPRETER:  Good morning, Your Honor.  Agnes

21   Wu --

22              THE COURT:  You are going to have to get closer to

23   the microphone or turn it on.  Thank you.

24              THE INTERPRETER:  Good morning, Your Honor.

25   Agnes Woo, Korean Certified Court Interpreter, Certification
```

UNITED STATES DISTRICT COURT

```
 1    Number 301099, oath on file.
 2              THE COURT:  All right.
 3              THE INTERPRETER:  Good morning, Your Honor.  Second
 4    interpreter.  My oath is on file.  M-y-o-u-n-g, S., last name
 5    L-i-m.  Thank you.
 6              THE COURT:  All right.  Good morning to all and
 7    welcome back.  It's been a long time since we've been together.
 8    This matter is before the Court for pronouncement of judgment
 9    and imposition of sentence.
10              Is there any reason why judgment and sentence should
11    not be imposed at this time?
12              MS. PALMER:  No, Your Honor.
13              MR. NEUMAN:  Not that I'm aware of, no, Your Honor.
14              THE COURT:  All right.  Have you and your clients
15    reviewed the presentence report as well as the addenda and the
16    revised presentence reports?
17              MR. NEUMAN:  We have, Your Honor.  And we have some
18    comments at the appropriate time.
19              THE COURT:  All right.  Although the United States
20    sentencing guidelines are now advisory, the Court must still
21    consider the advisory guideline range in addition to the other
22    directives set forth in Section 3553(a) and impose a sentence
23    that is sufficient but not greater than necessary to comply
24    with the purposes of the act.
25              As counsel know, this Court follows a two-step or a
```

1    two-phase sentencing process.

2            In Phase 1, I will determine or calculate the

3    applicable advisory guideline range which will require the

4    Court to resolve any objections to the presentence report

5    guideline calculations as well as any factual disputes.

6            Thereafter, the Court will determine whether

7    pursuant to the Sentencing Commission policy statements any

8    departures from the guidelines clearly apply.

9            In this case, in June of last year, the defendants

10   were found guilty by a jury on Counts 5, 25, and 38 of the

11   First Superseding Indictment.

12           On March 27th of this year, 2023, the probation

13   officer filed its presentence reports and letters of

14   recommendation as to both Mr. Lee and 940 Hill, LLC, which I'll

15   refer to during the course of this hearing simply as 940 Hill.

16           On July 14th, the probation officer filed revised

17   presentence reports, addenda, and revised letters of

18   recommendation.  And those appear as Docket Nos. 116, 117,

19   and 118 as to Mr. Lee and Docket Nos. 113, 114, and 115 as to

20   940 Hill.

21           The probation officer has made the following

22   advisory guideline calculations, and I'll take first as to

23   940 Hill.

24           The probation officer in Paragraph 96 has determined

25   that the base offense level is level 12.  To that, the

probation officer has added a 12-level enhancement pursuant to
Paragraph 97 of the revised presentence report.  And that's
pursuant to Guideline Section 2C1.1(b)(2).

The probation officer has also added a four-level
enhancement as set forth in Paragraph 98 pursuant to
Guideline Section 2C1.1(b)(3) for a total offense level of 28.

The probation officer has also calculated the base
fine at $10 million.  And the probation officer also concluded,
based upon the defendant's culpability score computation, the
total culpability score is 8.  That results in a guideline
range of $16 million to $32 million.  However, pursuant to
8C3.1(b), this fine range is limited by the statutory maximum
fine.  As a result, the guideline fine is $1.5 million.

The probation officer has also discussed a fine
adjustment in Paragraphs 117, 118, and 119.  However, the
letters of recommendation -- or the letter of recommendation
for 940 Hill did not include any offset for the fine to be
imposed on 940 Hill.

As to Mr. Lee, the probation officer in the
presentence report has made the following guideline
calculations:  The base offense level is level 12.  That's set
forth in Paragraph 76 of the presentence report.  To that, the
probation officer has added a 12-level enhancement as set forth
in Paragraph 77 of the presentence report based upon
Guideline Section 2C1.1(b)(2).

1          The probation officer has also added a four-level

2   enhancement as set forth in Paragraph 78 pursuant to

3   Guideline Section 2C1.1(b)(3).

4          And finally, the probation officer has added a

5   two-level enhancement for the obstruction of justice which is

6   set forth in Paragraphs 82 and 83 for an adjusted offense level

7   of 30.

8          The defendant did not receive any points for

9   reduction for acceptance of responsibility.  So the total

10  offense level calculated by the probation officer is level 30.

11         The defendant is in Criminal History Category I with

12  zero criminal history points.  And the probation officer, based

13  upon those calculations, concludes that the advisory sentencing

14  guideline range is 97 to 121 months with a fine range of

15  $30,000 to $300,000.

16         The parties have filed their respective sentencing

17  position papers, and those -- the defendant's papers appear at

18  Docket Nos. 1059, 1066, 1080, 1083, 1095, 1111, 1119, and 1125.

19         The Government's papers appear as Docket No. 1078

20  which was withdrawn in favor of the final version of the

21  Government's sentencing position papers which is 1085, then

22  1086 and 1096.

23         The parties have also filed a joint statement on

24  July 14th which appears as Docket No. 1108 pursuant to my

25  request to meet and confer and agree on the amount of costs to

1    be -- that were incurred by the Government and to be awarded

2    against 940 Hill.  And that joint statement -- the agreement in

3    that joint statement is or was that the total amount of costs

4    to be awarded is $6,775.50.

5            As to the advisory guideline calculation, the

6    Government agrees with the probation officer's calculation as

7    to both defendants, and it appears to conditionally agree to a

8    two-level variance in the offense level in connection with the

9    proposed guideline amendment which is the zero criminal history

10   points amendment to the guidelines which is 4C1.1.

11           I didn't quite understand the Government's position

12   with respect to its agreement to the two-level variance if the

13   defendant would not seek a further reduction as set forth in

14   your papers at Footnote 7 on Page 19.

15           What does that mean?

16           MS. PALMER:  Yes, Your Honor.  The idea is that once

17   those amendments actually go through, the defendant would not

18   be able to seek relief through some other means with the Court

19   to reduce his sentence based upon those amendments going

20   through later.  So basically, he wouldn't double-dip.

21           THE COURT:  All right.  Well, if the Government

22   wants to object to my proposed variance of two levels in

23   connection with the proposed amendment, you can object.  But

24   I'm not going to require the defendant to make any commitment

25   with respect to what the defendant may or may not do after the

```
 1   amendments.
 2            So if you want to make an objection, go ahead and
 3   object.
 4            MS. PALMER:  Yes, Your Honor.  Then we would object.
 5            THE COURT:  All right.  That objection will be
 6   overruled.  And I will vary by two levels for the proposed
 7   amendment to the Sentencing Guidelines 4C1.1.
 8            The defendant agrees with the guideline calculations
 9   as to Mr. Lee and 940 Hill and requests that Mr. Lee be given
10   the benefit of a two-level reduction which I will.
11            As a result, the guideline range for Mr. Lee is
12   based upon a total offense level -- and this is really a
13   variance.  So it's probably not proper to do it in Phase 1, but
14   I'm going to for purposes of calculating it.  It will be a
15   total offense level of 28 with a range of 78 to 97 months.
16            So unless counsel have any additional objections,
17   I'm prepared to calculate the advisory guideline range as to
18   Mr. Lee at a total offense level of 28 which includes the
19   two-level reduction for 4C1.1, Criminal History Category I,
20   with a range of 78 to 97 months; and as to 940 Hill, total
21   offense level of 28.
22            I recognize that there are certain factual
23   objections to the presentence report which I'll deal with in a
24   minute.  But is there any other issues with respect to the
25   guideline calculations?
```

1          MS. PALMER:  Nothing with respect to the offense

2     level guidelines calculations, Your Honor.

3          I did want to correct one statement relating to the

4     fines guideline that was in our sentencing response.  So that

5     is at Page 7 of Document No. 1096.  And that has to do with the

6     range -- the guidelines range for the fine.

7          And with respect to Mr. Lee, the guidelines range

8     for the fine is $30,000 to $300,000.  Therefore, the

9     Government's seeking the statutory maximum would be above the

10     guidelines, not below with respect to him.

11          THE COURT:  Okay.

12          MR. NEUMAN:  And I appreciate Ms. Palmer correcting

13     that.  We discussed it prior to today.

14          The only note I would make, Your Honor -- I

15     appreciate the Court's variance to offense level 28.  That

16     brings with it a fine range, as I understand it, under 5E1.2 of

17     $25,000 to $250,000 rather than the $30,000 to $300,000 that

18     applies to an offense level 30.  Otherwise, no objections.

19          THE COURT:  All right.  Then I'll move on to the

20     factual objections.

21          The 940 Hill and Mr. Lee have raised various factual

22     objections to the presentence report.  Those were raised by

23     940 Hill in Docket No. 1059 and as to Mr. Lee in

24     Docket No. 1066.  Each of those objections were addressed by

25     the probation officer in an addendum that was filed as to

**UNITED STATES DISTRICT COURT**

1    Mr. -- or 940 Hill.  It was the addendum which appears as

2    Docket No. 115.  And as to Mr. Lee, it was the addendum that

3    appears as Docket No. 118.

4            I'll take first the 940 Hill.  In response to

5    940 Hill's objections, the probation officer has revised

6    paragraphs 62, 63, and 72.  The probation officer, for the

7    reasons stated in the addendum, declined to revise

8    Paragraph 88 and didn't address Paragraph 131 and did not also

9    address Condition No. 13 of the letter of recommendation or

10   Condition No. 14 in the letter of recommendation.

11           So the -- I assume, Mr. Neuman, that the addendum

12   covers the issues that you raised in your objection is to

13   Paragraphs 62, 63, and 72?

14           MR. NEUMAN:  As to 940 Hill, yes, Your Honor.

15           THE COURT:  All right.  And your objection as to 131

16   which was not addressed with the probation officer, I have

17   reviewed the sentencing position papers of the shareholders and

18   will consider their positions when fashioning the appropriate

19   sentence for 940 Hill in Phase 2.

20           Although I --

21           MS. PALMER:  Your Honor --

22           THE COURT:  Yes?

23           MS. PALMER:  I believe you said that the

24   probation officer did not address Conditions 13 and 14.

25           THE COURT:  Yes.

```
 1              MS. PALMER:  But in the addendum at Docket No. 1115,
 2    they did say -- the probation officer did say Condition Nos. 13
 3    and 14 are recommended to give the probation officer the
 4    ability to monitor the defendant or --
 5              THE COURT:  I understand that.  But they didn't
 6    really address the substance of the objection.
 7              MS. PALMER:  I see, Your Honor.  I just wanted you
 8    to know they did --
 9              THE COURT:  All they did was note it.  There wasn't
10    any analysis.
11              So although I typically consider issues with respect
12    to the fine and conditions of probation to be more appropriate
13    in Phase 2 and arguing the appropriate sentence, if you want to
14    be heard in Phase 1, I'll hear from you.  But I think it's more
15    appropriate in Phase 2.
16              MR. NEUMAN:  I can wait.  That's fine.
17              THE COURT:  All right.  Is that acceptable to the
18    Government?
19              MS. PALMER:  Yes, Your Honor.
20              THE COURT:  All right.  In response to the
21    objections that were raised by Mr. Lee in Docket No. 1066, the
22    probation officer has revised Paragraphs 20, 66, and 116.
23              As to those objections, Mr. Neuman, I assume you are
24    satisfied with the response?
25              MR. NEUMAN:  Yes.  Thank you, Your Honor.
```

 1          THE COURT:  All right.  The probation officer did

 2    not address your objections in the Paragraphs 1- -- your

 3    objections to Paragraphs 124A, 125, and 126.  And I figured out

 4    why those were not addressed by the probation officer.  Because

 5    those were under seal, and the probation officer didn't have

 6    access to them.

 7          MR. NEUMAN:  We actually sent them to the probation

 8    officer directly.  So I'm not sure why they weren't addressed.

 9    But they weren't.

10          THE COURT:  All right.  In any event, I have --

11    those, it seems to me, don't need any argument.  I understand

12    the medical condition as set forth in the most recent filings

13    by both Drs. Kim, Janet Kim and Hans Kim.  So I don't think

14    there's any ruling that I need to make on 124A, 125, and 126.

15          But, Mr. Neuman, I'll hear from you.

16          MR. NEUMAN:  Thank you, Your Honor.  Can I approach

17    the lectern?

18          THE COURT:  Yes.

19          MR. NEUMAN:  So, Your Honor, the ruling I would ask

20    for is just to grant the objections and direct that the PSR be

21    revised as requested.  As to 124, Footnote 5, we'd ask that it

22    be removed so there is no question that Timolol drops are

23    appropriate and prescribed here for the conditions that Mr. Lee

24    has.

25          As to 125, we want to make sure that it's understood

1    by the BOP that these do need to be monitored to confirm they

2    remain benign.  And so there is a diagnosis.

3           Paragraph 126, I would just ask -- that one is less

4    important, quite frankly.

5           But we have these concerns about medical treatment

6    by the BOP.  And I want to make sure that 124, Footnote 5, and

7    125 are addressed as well as our more recent requests.

8           THE COURT:  All right.  Well, I'll have the

9    probation officer prepare a revised report including that

10   medical information.

11          MR. NEUMAN:  I would ask the Court also to direct

12   the probation officer to include in the revised PSR the

13   information that we set forth from the July letters from

14   Drs. Kim to make sure that the new medications and the new

15   diagnoses are included in the PSR for BOP to consider.

16          THE COURT:  You want both letters from Dr. Kim?

17   They are different doctors.

18          MR. NEUMAN:  They are Drs. -- if I didn't say it

19   clearly, Drs. Kim, yes, as set forth in our filings.

20          THE COURT:  All right.  As long as we're there, then

21   we have the probation officer did not revise --

22          MR. NEUMAN:  Your Honor, I'm sorry.  Is the Court

23   ordering the probation officer to include those letters?

24          THE COURT:  Yes.

25          MR. NEUMAN:  Thank you.

1          THE COURT:  -- did not revise Paragraphs 95, 120,

2    134, 150, 162, 166, and 168.  168 relates to the fine.

3          If you want to be heard on any of the other

4    objections that were not -- that the probation officer declined

5    to revise in the presentence report, I'll hear from you.  But,

6    quite frankly, I've looked at each one of those, and my ruling

7    is ultimately going to be that no ruling is necessary because

8    they don't affect the guideline calculations.  And I'm not

9    going to consider them in fashioning the sentence in this case.

10         MR. NEUMAN:  As long as the Court is not going to

11   consider them, I don't need to address them.

12         THE COURT:  All right.  Then as we said, we'll talk

13   about the fine in Phase 2.

14         All right.  So that -- unless there are any other

15   issues in Phase 1, that will conclude Phase 1.  And then I'll

16   move to Phase 2.

17         Any other issues?

18         MS. PALMER:  Not from the Government, Your Honor.

19         THE COURT:  Any other issues from the Government?

20         MS. PALMER:  Not from the Government, Your Honor.

21         THE COURT:  All right.  Mr. Neuman?

22         MR. NEUMAN:  I'm just looking, Your Honor.  I think

23   that covered it.  Thank you, Your Honor.

24         THE COURT:  All right.  Then after calculating the

25   advisory guideline range, the Court must take into account and

consider the goals of sentencing as set forth in the Sentencing

Reform Act and impose a sentence that is sufficient but not

greater than necessary to reflect the principles stated in

3553(a) and accomplish the goals or needs of sentencing as set

forth in 3553(a)(2).

The Government sentencing recommendation is for a

near low-end term of 84 months and three years of supervised

release, special assessment of $300, and the fine -- maximum

fine of $750,000 as to Mr. Lee.

As to 940 Hill, the Government asks for a --

recommends a maximum fine of $1.5 million, five-year term of

supervised release, and all of the terms and conditions set

forth in the letter of recommendation and the special

assessment of $1,200 and the cost of prosecution which I've

already referred to.  It's $6,775.50.

The defendant argues for a sentence as to Mr. Lee

not to exceed 20 months and a fine -- a total fine of $750,000,

$150,000 to be imposed on Mr. Lee, $600,000 to be imposed on

940 Hill.

And the defense has no objections to the terms and

conditions of probation as to 940 Hill set forth in the letter

of recommendation except for Condition 13 and for the

compliance program to be submitted to the Probation Department

rather than the Court.

So I'll hear from counsel.  Let me first hear from

1    the Government if you have anything that you wish to add to

2    your papers.

3            I can tell you that with respect to the Condition 13

4    of the terms and conditions for Hill which is set forth in the

5    revised letter of recommendation which is Docket No. 1113, I do

6    not intend to impose that.  But all the other conditions, I

7    will impose.  I'm going to put a deadline for the submission of

8    the compliance program that's recommended in Condition 14.

9            But if you want to argue that or anything else, I

10   will hear from you.

11           MS. PALMER:  Your Honor, with respect to the

12   publication condition, No. 13, the reason the Government has

13   recommended it is because there is value in having the

14   defendant here, 940, admit publicly what has occurred.  And we

15   understand the Court's position that there is media coverage

16   and so that this will already be out there, so to speak.  But

17   we can't rely on media coverage alone.  And that may not have

18   all of the details that we are asking for the publication.

19           The Court did impose this condition on the other

20   defendant in this case, Shen Zhen, although it had it put it on

21   their website.  Here 940 Hill does not have a website.

22           So we do think there is a value in the public airing

23   and having the defendant in this case admit publicly what

24   occurred.

25           With respect to -- does the Court want general

1    argument with respect to the 3553(a) factors or just with

2    respect to those conditions right now?

3            THE COURT:  Whatever you want to argue in Phase 2

4    that is not in your papers.  Because after I hear arguments,

5    I'm then going to impose sentence.

6            MS. PALMER:  Okay.  Briefly, Your Honor, then with

7    respect to Mr. Lee, just to address some of the arguments that

8    were raised in the defendant's most recent filing, the

9    defendants, again with Mr. Lee, they are painting him as

10   someone who this was an aberrant situation where he made a

11   split-second decision and otherwise, you know, has led a

12   blameless life.

13           The Government disagrees with that.  He is someone

14   who had it all.  He's someone who had a life of abundance, and

15   he wanted more.  This was a calculated business decision that

16   took place over a series of months of negotiations.

17           This is someone who then, after that decision was

18   made, he not only was relying on Justin Kim as the defense

19   attempts to suggest, but he was relying on his own advisors.

20   The Court has Fred Shaffer's e-mail, for example, which is

21   Trial Exhibit 44.  And in that Fred Shaffer talks about the

22   fact that the appeal may not have merit but also discusses

23   nonetheless, that this is something that could delay the

24   project for years.

25           So this isn't a situation where the defendant is a

victim or made an unwitting decision and was taken in by
others.  This is a situation where he made a calculated
decision and one that he thought would make more money.  It was
a decision about greed, and it was a decision about
self-interest.

Of course, his conduct did not end there.  After he
paid -- after he agreed to pay the bribe, he then actually paid
it over a series of six months.  At no point during that time
did he have a crisis of conscience and decide the path he was
going down was not something he should continue.  He continued
on.

THE COURT:  He certainly didn't have a crisis of
conscience because then he phonied up the records of 940 Hill.

MS. PALMER:  Correct, Your Honor.  And that is
probably one of the most aggravating facts here is that, once
the Government turned its investigation on Mr. Lee, instead of
deciding to come forward, instead of telling the truth, he
falsified documents, and he had his own employees do so.

THE COURT:  Mr. Kang.

MS. PALMER:  Yes, Mr. Kang at his direction.

THE COURT:  As you remember, I was here during the
trial.

MS. PALMER:  Yes, Your Honor.  And so, you know,
this is not something where it was a short-term thing that
happened.  And he wasn't under pressure, financial pressure or

1    something like that that many people are.  He had a lot of

2    money, and he wanted more.

3           And as far as the obstruction of justice, the

4    Government finds his -- what the defense has characterized as

5    his acceptance of responsibility now or his acceptance of the

6    jury's verdicts to ring hollow given the totality of their

7    filings which seek to blame Huizar, which seek to blame

8    Esparza, which seek to blame Kim, which seek to blame CREED for

9    filing the appeal in the first place.

10          And so that is not acceptance of responsibility.

11   And, frankly, the facts that are cited therein are counter to

12   the facts that were received during the trial.

13          And the defense has also talked at length in their

14   filings about the fact that the $500,000 cash bribe that the

15   defendant decided to pay is actually not an appropriate metric

16   to use, that it's too high.  But that is actually belied by the

17   evidence in this case that shows he -- the property value

18   increased many millions of dollars.  Those entitlements are

19   still in place on the property.

20          Even if it has gone down because of what they call

21   the publicity of the case, which is actually just his own

22   conduct, that value has still increased greatly from before

23   those entitlements were there.  So that property still is

24   profiting many millions more from this illegal conduct.

25          With respect to 940 Hill, the Government is

1    concerned that even after this case, the filing of this case,

2    the trial, Defendant Lee remained the managing partner.  And

3    contrary to the filings in this case, the Government did not

4    feel that the minority shareholders fully cooperated with the

5    Government.

6              As the Court will recall -- and I won't get into the

7    details of that -- but Mr. Kim -- Mr. Lim, Hyuk Lim, actually

8    moved to quash his trial subpoena.  And contrary to many

9    corporations in this case who came forward who provided full

10   opening of their books and materials to the Government, that

11   was the opposite here, what 940 did.

12             And the Government does reward corporations.  The

13   guidelines reward corporations who self-police, who have

14   transparency.  And that is the opposite of what 940 Hill did

15   here.

16             So, Your Honor, with that, the Government believes

17   that the guidelines range does capture accurately the

18   seriousness of the offense.  It captures accurately also all of

19   the other factors in this case, both the mitigating and

20   aggravating factors.

21             And, therefore, the recommendation of seven years

22   imprisonment along with the other fines and the full sentence

23   is appropriate for Mr. Lee.  And the full statutory maximum for

24   both the defendants in this case for the fine is also

25   necessary.  They have not shown, as is their burden, that they

1    have an inability to pay.

2             So with that, Your Honor, unless you have any

3    questions, we would submit.

4             THE COURT:  You do agree with the probation

5    officer's analysis in the presentence report with respect to

6    the offset?

7             MS. PALMER:  Yes, Your Honor.

8             THE COURT:  Okay.

9             All right.  Mr. Neuman?

10            MR. NEUMAN:  Thank you, Your Honor.  Before I begin,

11   I would be remiss if I don't just tell the Court that Mr. Lee's

12   family is here, many of the people who wrote letters.  His wife

13   is here in the front row, and he wanted me to thank them all

14   for coming and for their support.

15            THE COURT:  One thing I wanted to point out to

16   you, and maybe you already know this, but I -- Exhibit 1 to

17   Docket No. 1083, which is Mr. Lee's letter to the Court, is not

18   under seal.  The only thing that you asked to seal were the

19   other exhibits.  So I wanted to call that to your attention

20   because I found it -- I found it strange that that was not

21   requested as to one of the documents to be filed under seal.

22            MR. NEUMAN:  And that was an oversight, Your Honor.

23   If the Court would consider sealing it, I will make that

24   request.

25            THE COURTROOM DEPUTY:  Do you want me to seal it?

1          THE COURT:  Yeah.  It's Docket No. 1083-1.

2          MS. PALMER:  No objection from the Government.

3          THE COURT:  Go ahead.

4          MR. NEUMAN:  Thank you, Your Honor.

5          I think -- obviously, I'm well aware that the Court

6    has reviewed the papers and they're voluminous.  I don't intend

7    to repeat them and what's in them.

8          Two aspects of the briefs that I want to talk about

9    from the Government and us, and then I want to address the

10   disparity issue and our recent filings this week in that

11   regard, the evidence that we submitted but were not able to

12   discuss.

13         The Government in its briefs -- and I guess I should

14   note -- I don't know if the Court wants to hear from

15   Miss Johnston on the minority members issue, but --

16         THE COURT:  No.  I've read their sentencing position

17   papers.  There's nothing that I -- unless they have something

18   to add to their papers, which I doubt, I'm not -- it's not

19   necessary for them to address the Court.

20         MR. NEUMAN:  Understood.

21         The Government in its papers and again today seems

22   to misapprehend our argument about the fact that this was

23   aberrant behavior.  We have not at any point said that this was

24   a split-second decision or something that didn't continue over

25   a period of months.

1          In fact, throughout our papers -- I read them again

2    last night -- we have been very careful and clear that these

3    were choices by Mr. Lee and he understands that those were

4    choices.  They were mistakes that he made.  And that word I

5    think appears over and over again because he understands that

6    they were choices.

7          Our point on referring to these as aberrant conduct

8    is really what we think and what we understand is meant to be

9    taken into consideration in terms of the history and

10   characteristics of the defendant.  And I know the Court has

11   looked at the papers and I'm sure read the letters.  But really

12   they tell a very different story than the conduct here, and

13   that is our point.

14         Our point is that, when we look at the history and

15   the characteristics of Mr. Lee -- and I'll get to 940 Hill in a

16   minute -- they tell an incredible story.  Not a man who has cut

17   corners, not a man who has a history of misconduct, and

18   somebody who has really lifted up the people around him in many

19   ways, both family, church, and business.

20         The -- you know, the letters are striking in the

21   sense that not only has he obviously attained business success,

22   but he has helped others along the way.  This innovation that

23   he did with the showrooms in the Fashion District to help

24   others build equity is a noteworthy one.  But so is his efforts

25   to keep his employees all employed during COVID on a business

1  that largely turns on personal sales as well as his devotion to

2  his faith and church.

3          The Government almost seeks to weaponize that

4  against him, his history, in the sense that they say, well, he

5  had all of these great things, and that's why he should get a

6  harsher sentence.  I think that argument, it can't fly because

7  the opposite will be true always too; right?  The defendant who

8  committed crimes throughout their life, well, they just -- they

9  need a harsher sentence as well.

10         It really goes to the nature and circumstances of

11  the offense.  But when we look at the history and

12  characteristics of the defendant, when we look at Mr. Lee, the

13  papers and the filings don't support the idea that this is

14  someone who has done this before over or that there's a risk of

15  re-offense based on his history and based on who he is, based

16  on what people have said about him.  They show somebody who

17  made some serious and grave mistakes and stands here ready to

18  face the consequences of those.

19         You know, it's the same thing for 940 Hill.  When we

20  look at the history and circumstances -- excuse me, the nature

21  and history and characteristics of the defendant, 940 Hill is

22  seen as a positive.  The development is seen as a positive by

23  the community.  There's letters that we pointed the Court to

24  from the community telling the story of how the community

25  supported this project.

```
 1              The Government -- this is part of my problem with
 2    how the Government is approaching sentencing here.  The
 3    Government tells a story of community opposition as if CREED
 4    was a real community group opposing this project.  That's not
 5    the case.  There was no community opposition.
 6              This was a project that did everything by the book
 7    until this issue came up obviously but until that point had
 8    gone through the proper processes, the proper channels, Mr. Lee
 9    leading the way, as he had done on all of his other projects,
10    doing everything correctly and as we would want them to do and
11    as the City consistently praised this project for doing and as
12    Mr. Lee has been praised for how he's lived his life.
13              When we look at this particular 3553(a) factor,
14    Your Honor, I submit that it does weigh in favor of a
15    significant variance downward of the sort that we are
16    requesting.  This was aberrant behavior by both.  It doesn't
17    mean it wasn't their choice.  It doesn't mean that they didn't
18    make a mistake, a grave mistake as I said.  Of course they did.
19    Of course it was his choice.
20              THE COURT:  It's more than a mistake.  It was a
21    crime.
22              MR. NEUMAN:  I agree.  I agree.  And he acknowledges
23    that, Your Honor.
24              And when we talk about the nature and circumstances
25    of the offense, the analysis really goes together obviously.
```

1    940 Hill is here because of what Mr. Lee did.  And yeah, I

2    think he has acknowledged his culpability for 940 Hill being

3    here by the fact of his agreement to take care of the fine

4    that's imposed and take care of the legal fees that have been

5    incurred.

6              There is some dispute in the papers about the nature

7    and circumstances of the offense.  And I think this has been a

8    difficult line -- I'll be frank with the Court -- a difficult

9    line for me as counsel to walk because we want to be sure that

10   he is sentenced and the record accurately reflects what

11   occurred here and what didn't occur here.  And we've addressed

12   many of those factors in our response brief.

13             The Government, I think, views that as walking away

14   and trying to diminish the seriousness of the offense.  And I

15   reject that characterization.  We have throughout our papers

16   and again here today, I think I will tell you and I think

17   Mr. Lee will tell you, we acknowledge the seriousness of the

18   offenses.  We acknowledge that they are multiple offenses.  And

19   nobody is trying to walk away from that.

20             I have a concern that the Government, in its zeal to

21   obtain a sentence that I, quite frankly, think is completely

22   inappropriate, is recharacterizing certain facts.  And again

23   today -- as I say, we've addressed many of them.  But again

24   today, Ms. Palmer talks about months of negotiations and so on.

25             And, you know, I look back at the facts of the

1   case -- and I have Trial Exhibit 88 if the Court wants to see.

2   It's -- I'm not going to put it up unless the Court wants me

3   to.  But this is the note from Esparza that was shown as trial.

4        And if the Court remembers -- briefly I'll just go

5   through the timeline.  Mr. Lee turned to Justin Kim and

6   ultimately Huizar for assistance in August, was told in early

7   September that he would help but there would be something

8   required.  It was very unclear.  And then --

9        THE COURT:  It was the meeting at the karaoke bar

10  where Huizar was there and Mr. Kim was invited and Mr. Huizar

11  said that he would support the project, and then a day later,

12  Mr. Esparza called Mr. Kim and indicated that Huizar, yes, was

13  going to support but it was going to cost him.  I mean, I --

14       MR. NEUMAN:  All correct, Your Honor.  But the

15  point -- here's my point.  I'm not disputing any of that.  And

16  this is why I'm telling you this is a difficult line for me to

17  walk.  And I acknowledge.  Because what happens then is it's

18  months of silence until January 19th, and that's when

19  Mr. Huizar and -- Mr. Huizar -- I'm going to read from Trial

20  Exhibit 88.  This is Esparza's notes --

21       THE COURT:  But it really is irrelevant to the

22  nature and circumstances of the offense because ultimately

23  there's a $500,000 bribe that's paid.

24       MR. NEUMAN:  The only reason I'm pointing it out,

25  Your Honor, is because the Government is creating a narrative

1    of Mr. Lee driving this thing forward, coming up with cash --

2          THE COURT:  Mr. Lee is driving it forward in the

3    sense that he's providing the cash to pay the bribe.  I mean,

4    to me this has always been a very simple case.  And we've spent

5    years and months and thousands of pieces of paper on motion

6    practice.  But in terms of the ultimate facts of this case, it

7    was always very simple.

8          And I severed the case to give Mr. Lee an

9    opportunity to not be tainted with the Huizar/Shen Zhen/New

10   World and give him what I viewed to be what you always argued

11   is you had certain facts that you wanted to put on, and it

12   would be -- it would be a much fairer trial if Mr. Lee was

13   tried alone.

14         And I'm sure the Government was not happy with my

15   decision, but I did decide to sever the case.  And to me, it

16   always boiled down to whether or not they were going to -- the

17   jury was going to believe Kim and/or -- and Esparza.  And it's

18   a simple matter that Mr. Lee made the decision based upon the

19   effect of what the CREED appeal meant to the development of

20   940 Hill.  And an amount of money was arrived at, and that

21   amount of money in cash was paid, and that was the bribe.

22         It's -- we spent years litigating this.  And I

23   understand there are legal issues that are involved, but the

24   factual issues to me were always very simple.

25         MR. NEUMAN:  And I don't dispute any of those facts

1    as the result of the trial obviously.  But what I will say --

2    the reason -- and I preface this by saying this is a hard line

3    for me to walk is because I do think the Government in its

4    papers -- and I think the Court in its comments has recognized

5    without overtly recognizing this, there are -- there's the way

6    it happened and there's the way it's being portrayed.  I think

7    it's relevant to the nature and circumstances of the offense

8    how Mr. Lee handled this.  I think we've addressed it.  I don't

9    have any more on that.

10          But this is -- I do think it's relevant.  And I

11   think the Government unfortunately has now painted a different

12   picture of what happened.  The facts that the Court just

13   recited we are not here to dispute.  And this is what I'm

14   saying.  We are not here to walk away from them.

15          So I hope -- I hope my point is clear on that.  I

16   hope we've been clear in the papers on that.

17          The Government today again has focused -- and this

18   will take us into this disparity point that we've been focused

19   on.  The Government today again said that our argument is that

20   the bribe does not accurately reflect the offense and is too

21   high or the guidelines resulting are too high as a result of

22   the bribe.  Again, I think that's a misapprehension of our

23   argument.

24          Our argument is not that the guidelines should be

25   different in this case.  Our argument is that the guidelines

```
 1   are not the appropriate measure of what sentence should be
 2   imposed in this case.  They obviously have to be the starting
 3   point.
 4           But given what is happening in corruption cases,
 5   both in this one and in others around the country, variances
 6   and large variances of the type that we are pointing to are the
 7   norm.  And what the Government is asking for here within
 8   midrange, I would call it, a guideline sentence --
 9           THE COURT:  It's near low.
10           MR. NEUMAN:  I guess it depends who you ask.  I'm
11   not sure that --
12           THE COURT:  I didn't look up the definition of
13   "near."
14           MR. NEUMAN:  Right.  You know, and there's sort of a
15   few areas on that.  I think we've talked about in our papers --
16   and unless the Court has questions on this -- this Government
17   argument about well-heeled defendants versus others, I think
18   it's quite not well taken.  There's no evidence to support
19   their argument.
20           And, in fact, the evidence we've submitted shows
21   that defendants across the board convicted of these crimes are
22   being given significant variances from the guidelines and that
23   a variance is far more consistent with avoiding unwarranted
24   disparities than what the Government is suggesting here.
25           There's really three factors that we've pointed to.
```

1    One are the other cases that we've specifically cited.  I don't

2    intend to go through those.  But I think it makes the point

3    that far more egregious conduct, far more central figures, in

4    far more egregious conduct have received guideline variances,

5    significant guideline variances.

6             Some of them have received sentences around what we

7    are requesting.  Others have received higher sentences.  But

8    all of them or almost all of them have Government

9    recommendations below the guidelines and some ultimate

10   sentences below the guidelines.

11            We've then focused on the national statistics and

12   had a little bit of back and forth with the Government on that

13   point on the Sentencing Commission statistics.  And I just want

14   to briefly explain to the Court what we submitted this week in

15   Exhibits --

16            THE COURT:  I've read it.  In fact, I've already

17   went back.  Before you filed it, I went and looked at those --

18   that information.  So it was -- quite frankly, it was not new.

19            MR. NEUMAN:  Very good.  I appreciate that,

20   Your Honor.  Then I won't spend significant time on it.  I knew

21   the Court would have looked at this.

22            But I think it's worth pointing out that the offense

23   level 28 that the Government pointed to, the 68-month sentence

24   there, is higher than all the sentences around it until we get

25   to offense level 32 which seems to be an outlier.  And the

sentence that the Government is recommending for Mr. Lee is far
above these national means and medians even when we remove the
5K, as the Government suggests we should, which I understand
why they say that, and even when we account for offense levels.

What we see in our Exhibit 10, Page 2 -- what we
tried to demonstrate -- this takes me to the third place we
focused our disparity argument -- is that the -- what the
Government calls the appropriate sentence for Huizar actually
falls much more in line with that national mean and median.

And the Government -- and I'm not arguing that's
inappropriate.  What I'm saying is Mr. Lee should get the same
treatment, and he should be sentenced more in accord with what
is happening in these cases around the country and then in this
case as well than what the Government is recommending and even
what the probation officer is recommending here.

I think as to Mr. Huizar, we've obviously made some
significant arguments about what the Government is doing with
regard to Huizar as opposed to what it is doing with regard to
Mr. Lee.  And we posed in our response the question of whether
this is all because Mr. Huizar pleaded guilty and Mr. Lee did
not and explained why that is obviously inappropriate.

In its simultaneously-filed brief, the Government
essentially concedes that that's what it's doing.  On
Page 32 -- excuse me -- Page 10 of the response brief, the
Huizar recommendation is based on, quote, "his acceptance of

1  responsibility before trial and public admission of crimes."
2  That is severely problematic that the Government is treating
3  two defendants so differently based on one accepting
4  responsibility and one exercising his constitutional right to
5  go to trial.
6          THE COURT:  Of course, I have not accepted that plea
7  agreement.
8          MR. NEUMAN:  I understand that, and I expected the
9  Court would tell me that.  And that's --
10         THE COURT:  The guideline range for Huizar, after
11  considering all of the adjustments pursuant to the plea
12  agreement, is 262 to 327 months.
13         MR. NEUMAN:  Exactly my point, Your Honor.
14         THE COURT:  And the plea agreement, if -- the plea
15  agreement has a range of 108 to 156 months which is nine years
16  to 13 years which is not binding on me.  That sentence is not
17  binding on me unless and until I agree to be bound under
18  Rule 11.
19         MR. NEUMAN:  I understood that.  And I expected the
20  Court would note that.  And my point is more of how the
21  Government is treating these two defendants and how the
22  Government's recommendation here is really out of line with how
23  it's treating the far more culpable defendant.  And the only
24  explanation is because Mr. Lee went to trial.
25         We look at his conduct.  We compare it to not only

1  Huizar but also the other defendants in the other cases we

2  pointed to and who got big variances from the guidelines, and

3  we have to ask ourselves what about Mr. Lee and his conduct is

4  so much more egregious that he should be treated so

5  differently?  And we would submit that he shouldn't be and a

6  significant variance of the sort that we requested is

7  appropriate.

8           In terms of 940 Hill specifically, Your Honor, I

9  just note this is a -- somewhat of an unusual situation at

10  least for me, perhaps not for the Court, where the corporate

11  structure -- really nothing about that structure aggravated the

12  offenses or aided the offenses.

13          It was Mr. Lee's conduct that led the day, and

14  that's why 940 Hill is here.  And that's why we structured our

15  recommendation as we did to account for that fact and take into

16  account that he is going to be taking responsibility for both

17  fines.

18          The -- again, the Government falls back on -- when

19  we talk about disparities, the Government again falls back on

20  the fact that the other companies didn't go to trial.  I think

21  we've addressed that at this point in our briefs.

22          In terms of the offset, the Court has asked about

23  that.  Our position is that it really depends on what sentence

24  and what fine the Court imposes.  I think the Court

25  understands.

1          The publication provision, I appreciate the Court's

2     comments.  And unless the Court intends to change its

3     tentative, I don't need to address that.

4          And the compliance program, as we noted in our

5     papers, the program has been imposed.  And I think what the

6     Government specifically is requesting is completely unnecessary

7     and inappropriate for an entity of this size.  But in terms of

8     the compliance plan, we have no problem with the compliance

9     plan.  We have a compliance plan, and we are happy to submit it

10    to the Court or to the probation as the Court prefers.

11          THE COURT:  All right.  Anything else?

12          MR. NEUMAN:  The only other point, Your Honor, is in

13    terms of the size of the fine imposed on the entity and

14    Mr. Lee, I would request the Court consider that this really is

15    a joint punishment on Mr. Lee at the end of the day.

16          I understand that both entity and individual need to

17    be punished, and that's obviously appropriate.  But what the

18    Government is requesting of a statutory maximum fine as to

19    both, especially as to Mr. Lee, again, it appears that's not

20    justified by the conduct, by his history and nature, and his

21    history and characteristics.  That's really driven by the fact

22    that he's a man of means.  And I suggest that that's

23    inappropriate.  So we would ask that the Court impose a within

24    guideline fine for Mr. Lee and an additional fine as suggested

25    for the company.

1          In terms of Mr. Lee, I think he has made clear in

2    his submission to the Court how he is dealing with the fallout

3    from this, how his family is dealing with the fallout from

4    this, Mrs. Lee's letter as well, how he intends to use his time

5    in custody to reorient himself and get back to who he was

6    before all of this occurred.

7          And, you know, I'm asking on his behalf that the

8    Court let him come back in time to be with his family and his

9    ailing mother and ask that his sentence not be harsher than

10   necessary.

11         I know Mr. Lee also wishes to address the Court.

12         THE COURT:  All right.  Before I forget, with

13   respect to that medical information that the probation officer

14   is going to include in the presentence report, I'm going to ask

15   you to get together with the Government and come up with a

16   stipulation in terms of those changes so I can just simply

17   submit it to the Probation Office.

18         MR. NEUMAN:  Thank you.  When should we do that,

19   Your Honor?

20         THE COURT:  Within ten days.

21         MR. NEUMAN:  Very good.  That's easy enough.

22         THE COURT:  Mr. Lee wants to address the Court?

23         MR. NEUMAN:  He does.

24         THE COURT:  All right.  I'll hear from him.

25         MR. NEUMAN:  Mr. Lee.

1          Come up to the lectern, Your Honor?

2          Mr. Lee, come up here.

3          THE DEFENDANT:  Your Honor, thank you for allowing

4     me to stand here to express my thoughts and feelings.  I have

5     a -- I have submitted my statement, but I never had opportunity

6     to address the Court directly.  With due respect, I want to

7     thank you for allowing me to speak today.

8          The past three years have been most difficult and

9     regretful time in my life.  Due to my careless and foolish

10    decision, I have caused much pain and heartache for my family

11    and people around me.

12         Also, I'm sorry to this Court and the people of

13    Los Angeles for my inexcusable, unwise actions.  I'm especially

14    sorry to my wife who always stood by me and has given me

15    strength for over 30 years.  I will regret for the rest of my

16    life putting her through this as well as my daughter and two

17    sons.

18         Also, I don't know what to say to my mom.  She's

19    97 years old who I always prayed for all my life.  She's

20    very ill.  I pray that she can be with us and I can be back

21    home.

22         Due to greed and ambition, I committed something

23    that I will regret for rest of my life.  I know I cannot change

24    the past, but I will take responsibility.  And I can say I have

25    learned.  I'm still learning from my mistake.  And I know for

1  certain my actions starting now define my future.  I will make

2  great positive changes making sure my mistakes don't happen

3  again.  I plan to devote the rest of my time to earn back the

4  trust from my family, friends, and the community.

5        I'm very sorry that I have put myself in this

6  position and hope that you will take these words in

7  consideration.  I thank you again for giving me this

8  opportunity.

9        THE COURT:  All right.  Is there any reason why the

10  Court should not impose sentence?

11        MS. PALMER:  No, Your Honor.

12        MR. NEUMAN:  No, Your Honor.

13        THE COURT:  All right.  In fashioning the sentence

14  to be imposed in this case, I've made an individual assessment

15  based upon the facts and arguments presented by the parties,

16  and I've considered all of the 3553(a) factors.  However, I

17  want to discuss several of those.

18        First, the nature and circumstances of the offense.

19  Defendant 940 Hill acquired the property which is the subject

20  of the $500,000 bribe to former council member Jose Huizar in

21  2008 or 2009 for approximately $9 million.  The property

22  consisted of a one-story building and a parking lot located at

23  940 South Hill in Downtown Los Angeles in Huizar's Council

24  District No. 14.

25        Defendant was the majority shareholder and managing

member of 940 Hill.  And he was responsible for the day-to-day

operations including accounting and tax returns.

In December of -- I'm sorry.  In 2015 Mr. Lee

decided to develop the property which became known as the

940 Hill project into a 20-story mixed-use high-rise that was

going to include over 200 residential units and 20,000 square

feet of commercial space at a projected cost of $170 million.

In July of 2016, 940 Hill received conditional

approval from the City of Los Angeles to redevelop the property

which significantly increased the value of property by tens of

millions of dollars over the original purchase price of

$9 million.

Although Mr. Lee was a very successful real estate

developer, as he notes, the 940 Hill project was one of

Defendant Lee's most ambitious real estate projects which

defendant describes as a complete redevelopment from the ground

up.

It's undisputed that Mr. Lee hired a team of very

knowledgeable and competent professionals including

Mr. Shaffer, Julia Chang, and a Joon Cheon to assist in the

complex development of the 940 Hill project.

Mr. Lee's team worked closely with the LA City

Planning Department to create a development plan that would

benefit the neighborhood and, of course, provide significant

return on investment to 940 Hill.

1          Based on the evidence at trial, Mr. Lee succeeded in

2     his efforts to ensure that the 940 Hill project met all the

3     requirements and requests of the City Planning Department.  And

4     as the defendant points out at Page 19, the City Planning

5     Department issued a detailed report describing the benefits

6     that the community would realize for the successful development

7     of the project.

8          The project also received significant community

9     support from Downtown Los Angeles Neighborhood Council.

10          Up to that point in time, according to the lead

11     architect on the project, although the development process had

12     been slow and frustrating, the defendant had not made any

13     efforts to take any shortcuts or attempt to get around any law

14     or city officials.

15          Unfortunately, all of that changed when in August of

16     2016, the project was faced with an appeal of the conditional

17     approval by the labor organization Coalition for Responsible

18     Equitable Economic Development which is also known as CREED.

19          Although the defense characterizes the appeal as

20     frivolous and a blatant attempt to obtain labor concessions by

21     interfering with the approval process, it's undisputed that it

22     presented a significant hurdle to the successful development of

23     the project.

24          Even defendant's team of professionals recognized

25     and advised the defendant of the serious problems that the

1    CREED appeal presented in terms of delay which meant increased

2    costs and, because of the political implications, the possible

3    death of the project.  The latter concern was well known

4    because the project was located in Councilman Huizar's

5    district, and Huizar enjoyed considerable support and was very

6    loyal to labor organizations.

7            Huizar was also the chair of the powerful PLUM

8    committee.  And a vote by Huizar in favor of the CREED appeal

9    would have had catastrophic consequences to the success or

10   viability of the 940 Hill project.

11           Defendant's consultants very clearly explained the

12   importance of obtaining Huizar's support for the project, and

13   Mr. Lee was advised that resolving the appeal would save many

14   millions of dollars in development costs and ensure that the

15   project would be approved by the PLUM committee and ultimately

16   by the full city council.

17           The bottom line was that Mr. Lee's team advised him

18   that, if they fought the CREED appeal, Huizar would likely take

19   CREED's side and vote in favor of the CREED appeal, and the

20   940 Hill project would be in jeopardy.

21           Being an astute businessman, Mr. Lee realized the

22   crisis that he was facing -- that was facing the 940 Hill

23   project and turned to Justin Kim who was a real estate

24   appraiser and top fundraiser for Mr. Huizar for help.

25   According to the defendant, he had a close relationship with

1  Mr. Kim that was based on trust and a friendship that went back

2  many years.

3       According to the testimony -- trial testimony of

4  Mr. Esparza, Kim was the number one fundraiser for Huizar, and

5  Kim was what was known as, quote, "a friend of the office,"

6  closed quote.

7       Esparza was in contact with Kim on an almost daily

8  basis.  And Mr. Lee was aware of Kim's relationship with

9  Mr. Huizar.  And Mr. Lee was a frequent contributor to

10 Mr. Huizar via Kim.

11      Defendants are correct that the Court is aware of

12 the nature and scope of the ongoing extortion scheme run by

13 Huizar and Esparza carried out by Justin Kim in this case.

14 However, the Court disagrees with the defendant's

15 characterization that Mr. Lee was somehow an innocent victim of

16 the Huizar scheme.

17      As the Government points out, the day that the CREED

18 appeal -- CREED filed the appeal, Mr. Lee immediately contacted

19 Kim and asked Lee to have the Government -- have the appeal go

20 away or drop the appeal and to have Councilman Huizar to assist

21 or help avoid the costly delay in the 940 Hill project.  Lee

22 immediately forwarded the CREED appeal to Kim.

23      Ultimately, Lee received the assurances that he was

24 looking for from Huizar during a private meeting at a karaoke

25 bar attended by Lee, Huizar, and Esparza when Huizar in the

context of discussions about the CREED appeal advised that the project could count on Huizar's support.  Of course, as expressly stated by Esparza to Kim on the morning after the karaoke meeting, Mr. Huizar's support would not be free, and Mr. Huizar wanted money to make the CREED appeal go away.

The question then became how much would the bribe cost.  During the months that followed, Defendant Lee via Kim and Huizar and Esparza discussed Mr. Lee's payment of a substantial bribe of $500,000 to Mr. Huizar to resolve the CREED appeal and allow the project to move forward in the city approval process.

The details of those discussions or negotiations and ultimately the payment or payments of the bribe were fully explored during trial.  But it was undisputed that Mr. Lee, who was accustomed to doing business in cash, suggested a cash bribe of 500,000 to Mr. Huizar to make the CREED appeal go away.

Mr. Kim testified that Mr. Lee preferred to pay the bribe with cash because Lee thought that there would be no trace and no one would know.  And that testimony was found at the trial transcript at Page 1492 at Lines 5 through 16 and 1502 at Lines 4 through 10.

Mr. Lee makes the statement in his sentencing position paper at Page 2122 at Docket 1093 that, of course, just because a bribe is demanded does not mean a bribe has to

1    be paid.  And Mr. Lee knows that none of this excuses his

2    conduct.

3          However, Mr. Lee continues that he was faced with a

4    horribly corrupt situation which I conclude he readily accepted

5    and exploited to save his years of work and investment and that

6    he fell short of the years of goodwill and good faith that he

7    had spent a lifetime building, and no words can convey the

8    remorse and regret that Mr. Lee feels for making that choice.

9          However, I conclude that the choice was easy for the

10   defendant.  He readily accepted and exploited his relationship

11   with Mr. Huizar.  And the $500,000 bribe was minuscule in light

12   of the cost-benefit analysis of the millions of dollars in

13   costs that the CREED appeal could add to the project or the

14   loss of the entire project with an adverse vote in the PLUM

15   committee.

16         As with most white-collar defendants who appear

17   before the Court, in my view, the only regret they have is that

18   they got caught.  And as is typical of most white-collar

19   criminals, they believe that, if they get caught, they'll never

20   be charged.  And if they are charged, they can favorably

21   resolve the charges.  And certainly they'll not be sentenced to

22   a substantial term of imprisonment for their, quote, "wrong

23   choices."

24         These beliefs and attitudes are present in this case

25   based upon Mr. Lee's additional criminal conduct in deciding to

1   obstruct justice relating to the Government's investigation.

2   That criminal conduct was fully explored at trial, and the jury

3   had no difficulty in finding defendants guilty on Count 38.

4          In summary, when the Government's investigation

5   began to focus on Mr. Kim and when in March of 2019 the

6   Government served a subpoena on Defendant 940 Hill requesting

7   records relating to Huizar, Esparza, Kim, and any donations to

8   Huizar, Mr. Lee recognized that he had a significant problem

9   and he needed to cover up the $500,000 cash bribe that he had

10  paid to Huizar.

11         As a result, Mr. Lee instructed his employee,

12  Mr. Kang, to alter 940 Hill's accounting records with a false

13  entry characterizing the $500,000 bribe paid to Huizar as a

14  quote, "non-operating expense, entitlement, experts" for the

15  CREED LA matter with an offset for a personal loan from

16  Defendant Lee and a date of December 31st, 2018.

17         Mr. Lee via Kang then notified 940 Hill's tax

18  preparer about the so-called late discovery of this entry which

19  was admitted by Mr. Kang to be false because he was instructed

20  by Mr. Lee to make the phony entry.  However, that phony entry

21  was incorporated into 940 Hill's tax return, and the false tax

22  return was signed by Mr. Lee on behalf of 940 Hill and filed

23  with the IRS.

24         Defendant's lack of remorse and arrogance is further

25  evidenced by his conversations with Mr. Kim about the FBI

1   investigation.  In a recorded conversation on March 20th of

2   2019, Mr. Lee certainly did not fit the current

3   characterization of the defendant as a victim of the

4   Huizar/Esparza pay-to-play scheme.

5          Instead, he made several comments that demonstrate

6   the type of arrogance that I previously described.

7   Specifically, Mr. Lee stated as follows:  "Take it easy.  I

8   think they'll just catch a few big bad guys and end it.  Don't

9   worry too much.  I think for the past ten years that they,"

10  meaning Huizar and Esparza, "probably pocketed tremendous

11  amounts.  Issues just work out on their own.  With Government

12  work, they are all employees after all."

13         And Mr. Lee casually and calmly concluded by saying,

14  "It's not like we committed a deadly sin."  Moreover, in a

15  later conversation with Kim, Mr. Lee attempted to coach Kim to

16  lie to investigators and advise them that they were, quote,

17  "played by Huizar," closed quote.

18         So in conclusion, my analysis of this factor, this

19  is a very serious offense which requires, in my view, a

20  significant or a substantial prison sentence.

21         The history and characteristics of Mr. Lee are

22  captured by the defendant's sentencing papers including over

23  25 letters from family, business associates, friends, and

24  fellow church members which I incorporate as part of my

25  analysis of this factor.

1          This factor weighs heavily in favor of Mr. Kim and

2    his request for leniency; however, not the 20-month sentence

3    that he suggests is the appropriate sentence in this case.

4          Mr. Lee's history and characteristics are not unlike

5    many white-collar criminals that I have sentenced in the past

6    20 years.  However, Mr. Lee is unique in that his life story is

7    full of struggle, hardship, hard work, and ultimate success for

8    that hard work that has brought him significant or substantial

9    wealth.

10          During his journey, the defendant has never lost

11    sight of the importance of family, church, and friends.  And

12    based upon his letter to the Court, he continues to recognize

13    the importance of family, church, and friends.

14          Mr. Lee was born in Seoul, Korea, in 1964 and is the

15    youngest of four children.  Because of difficult economic times

16    after the Korean War, defendant's family attempted

17    unsuccessfully to move to the United States in 1972 -- 1970.

18    And in 1972 his father moved to Brazil where his father worked

19    for a friend who owned a ladies clothing store.

20          In 1974 defendant and his other family members

21    joined his father in Brazil.  And later his mother and father

22    purchased the store, and they worked tirelessly to provide for

23    their family.

24          In 1984 Mr. Lee and his sister came to the

25    United States on a student visa and attended school at

```
 1   Queens College in New York.  Ultimately, the entire family
 2   moved to Los Angeles and lived in a home in Koreatown.
 3            Defendant discovered that he was a good salesman and
 4   opened a small business at a swap meet in Downtown LA and sold
 5   tube socks, t-shirts, and accessory items.  From these humble
 6   beginnings, defendant grew his business, Joia, J-o-i-a, which
 7   means jewel.  And as it became successful, he was able to add
 8   more employees which at one point in time totaled 90 to 100
 9   employees.
10            The customer base -- defendant's customer base was
11   mainly retail accessory business owners that purchased
12   defendant's fashion accessories, shoes, handbags, and jewelry,
13   to sell in their own retail stores.
14            As defendant became more successful, he invested in
15   real estate and purchased and renovated buildings in the
16   Fashion District in Downtown Los Angeles including a building
17   that Mr. Neuman referred to that became a successful showroom
18   in the Fashion District.
19            In 2009, as I indicated, the defendant and several
20   other business owners in the Fashion District purchased the
21   property located at 940 Hill.  And in 2014, the defendant and
22   his partners saw the need for housing and decided to develop
23   the 940 Hill property.
24            Defendant pointed out that during the time that he
25   was developing the 940 Hill project, he was, quote, "not
```

himself," because he was also involved in a time-consuming national retail clothing business that required a huge investment of cash by the defendant to keep the doors open and hundreds of employees working.

The letters submitted by the defense, which included the defendant's letter which is Exhibit 1, and the other letters, Exhibits 2-1 to 2-28, demonstrate that defendant is a fundamentally good, trusting, and generous individual. The letters attest to his good character traits such as his honesty, integrity, humility, and compassion and describe him as hard working and a good person who is kind to all including the homeless who populate the fashion district.

The letters express complete shock and surprise at defendant's criminal conduct and are consistent in their observation that defendant's criminal conduct is totally out of character.

Defendant's family is most important to him, and he views his family as one of the tremendous successes in his life. He has a devoted wife of 30 years and adult children who are all successful and productive members of their community. All have written letters in support of the defendant, but the most persuasive was the letter of his wife who attended the trial each day of the trial.

Defendant's wife describes their struggles and ultimate success in business and in raising their children and

1   the incredible shock and disbelief that she experienced when

2   she learned that -- of defendant's criminal conduct.

3           Defendant's wife notes the defendant's prison

4   sentence will be the first time that they will be separated for

5   any length of time during their 30 years together and concludes

6   by stating that she knows the kindness in his heart and the

7   defendant is a good man who made a huge mistake.

8           Defendant's mother is 95 years old and is in poor

9   health.  And the defendant is rightly concerned that his prison

10  sentence will mean that he will not be there for her and that

11  he may never see her again.

12          Although the letters of support were important in

13  providing the Court with a complete picture of the defendant

14  from the perspective of his business associates, church

15  members, and friends, none were as powerful as those from his

16  family explaining the role and significance that defendant has

17  had on his family and the effect his absence will have on the

18  family.

19          Unfortunately, this is extremely common in these

20  types of cases.  And it's why defendants should think about

21  their families before committing crimes, not after they've been

22  caught.

23          The other letters of support show a lifelong

24  devotion to his faith and church.  The defendant is an ordained

25  deacon in his church and has shown a lifetime commitment to his

1    Christian values.  The letters also show that in his business
2    endeavors, he has consistently acted in an exemplary
3    community-focused manner with dignity, honesty, and integrity
4    and always has been concerned about others and acted with
5    kindness and generosity.
6           In summary, I've been provided with an extensive
7    picture of his true nature and character.  And I agree with his
8    wife's stated observation that defendant is a good man who made
9    a huge mistake.
10          In any event, as I indicated at the outset, this
11   factor weighs heavily in defendant's favor.
12          As to medical issues, the defendant has medical
13   issues described in the presentence report and in the recent
14   filings of both Drs. Kim which I have considered but I'm not
15   going to discuss out of respect for defendant's privacy.
16          Defendant does have substance issues with alcohol
17   and drinks daily to combat insomnia and has a DUI conviction.
18   However, the defendant is currently dealing with those issues.
19          The defendant went to trial and therefore did not
20   receive any reduction in the guideline calculations for
21   acceptance of responsibility.  However, I want to assure the
22   defendant, both defendants, and make it clear that the sentence
23   imposed today in no way was influenced or affected by the
24   defendant's decision to go to trial rather than to enter a plea
25   of guilty.

1        The defendant has expressed remorse in his letter

2    and also in his comments to the Court today which I do find is

3    sincere.

4        The Court has also considered the kinds of sentences

5    available, the advisory guideline range, and the pertinent

6    policy statements of the Commission.  The Court has considered,

7    taken into account, and consulted the advisory guideline range

8    of 78 to 97 months after the two-level downward variance due to

9    the upcoming changes in the sentencing guidelines.

10        The Court finds that the advisory guideline range

11    adequately takes into consideration the specific facts and

12    circumstances of this case, that the range is sufficient to

13    satisfy the purposes of sentencing under 3553(a)(2).

14        Mr. Lee requests the Court impose an extremely low

15    20-month custodial sentence which constitutes a 13-level

16    downward variance or just 25 percent of the low end of the

17    guideline range after applying the downward variance.

18        Mr. Lee requests the substantial downward variance,

19    repeatedly citing his aberrant behavior and claiming that the

20    amount of the bribe is not an appropriate metric by which to

21    determine his sentence.  Although the Court agrees that a

22    downward variance is appropriate in this case, the Court

23    rejects that these particular reasons justify such a variance.

24        As an initial matter, the Court does not view

25    Mr. Lee's conduct as aberrant.  Although defendant asks for a

54

1  variance from the guidelines based upon his aberrant behavior

2  instead of a departure, the guideline policy statements

3  regarding a departure for aberrant behavior is instructive,

4  albeit not determinative, in assessing the appropriateness of a

5  variance from the guidelines on those same bases.

6          Section 5K2.20(b) provides that courts may depart

7  downward for aberrant behavior only if the defendant committed

8  a single criminal occurrence or a single criminal transaction

9  that was committed without significant planning, was of limited

10  duration, and represented a marked deviation by the defendant

11  from an otherwise law-abiding life.

12          In this case, Mr. Lee's criminal conduct was neither

13  committed without significant planning nor of limited duration.

14  Indeed, Lee only paid the bribe after months of discussions and

15  paid the bribe in installments over a period of six months.

16          Moreover, two years later when Mr. Lee was afraid of

17  getting caught, he committed another serious crime and

18  obstructed justice by instructing his employees to create false

19  accounting records and submitting false tax returns on behalf

20  of 940 Hill.

21          Accordingly, the Court does not consider Mr. Lee's

22  criminal conduct aberrant and will not vary downward on this

23  basis.

24          As to the value of the bribe, contrary to Mr. Lee's

25  argument, the Court also concludes that the value of the bribe,

if anything, understates rather than overstates the seriousness of the offense in this case.  As pointed out by the Government, the enhancement under 2C1.1(b)(2) is intended to reflect a defendant's culpability based upon the value of the payment, the benefit received or to be received in exchange for the payment, the value of anything obtained by a public official or others acting with a public official, or the loss to the Government from the offense, whichever is greatest.

The guidelines indicate in order to ensure adequate deterrence, the punishment for bribery crimes should be commensurate with the gain to the payor.  In this case, Mr. Lee's $500,000 bribe was a fraction of the benefit he expected to receive.  For example, avoiding delays and labor concessions on the 940 Hill project would have saved Mr. Lee and 940 Hill many millions of dollars, possibly up to the estimated $30 million in development costs.

Although the Court did not use this $30 million figure for purposes of calculating the enhancement because it was unknown if it was a, quote, "reasonable estimation," closed quote, the Court is certain that the amount of the bribe, $500,000, was substantially less than the value Mr. Lee expected to receive in return.

Accordingly, the Court concludes that the value of the $500,000 -- using the value of the $500,000 bribe to calculate the enhancement was appropriate, if not understated,

1    metric by which to measure the seriousness of Mr. Lee's

2    offense.

3            The next factor considered by the Court is

4    unwarranted sentencing disparity as to both defendants.

5    Section 3553(a)(6) directs the Court to consider the need to

6    avoid unwarranted sentencing disparities among defendants with

7    similar records who have been found guilty of similar conduct.

8            Mr. Lee is the first individual defendant to be

9    sentenced in this pay-to-play scheme.  The Court agrees with

10   the defendant that the Government's plea agreement with

11   Mr. Huizar provides an appropriate or an acceptable starting

12   point for the disparity analysis.

13           The Court agrees that Mr. Huizar, who pled guilty to

14   one count of RICO conspiracy and one count of tax evasion, was

15   the most culpable individual in this scheme.

16           As agreed to by Huizar and the Government in its

17   binding plea agreement under Rule 11(c)(1)(C), Huizar's total

18   offense level of 39 -- Mr. Huizar has a total offense level of

19   39 taking into account the various adjustments agreed to by the

20   parties.  With a Criminal History Category of I, the applicable

21   sentencing guideline range for Mr. Huizar's offenses is 262 to

22   327 months.

23           In the plea agreement, however, the Government and

24   the defendant have agreed that an appropriate disposition would

25   be for the Court to impose a term of imprisonment of 108 months

1    to 156 months.  This range represents an approximately 41 to

2    48 percent of the agreed-upon guideline range of 262 to 327.

3         If the Court accepts Huizar's plea agreement, this

4    guideline range will be binding on the Court pursuant to

5    Rule 11.

6         In this case, the Court concludes that the

7    Government has failed to adequately or persuasively explain why

8    Huizar's proposed sentence would not create an unwarranted

9    sentencing disparity.

10        The Court has also considered the sentences imposed

11   on Mr. Englander and all of the other politicians and

12   individuals identified in Mr. Lee's sentencing position papers

13   and the Government's sentencing position papers.

14        I've also considered the United States Sentencing

15   Commission sourcebook and data dealing -- detailing the average

16   sentence lengths and the lengths of imprisonment for

17   bribery-related offenses.

18        As indicated by the Government, when accounting for

19   the relevant factors here, including Criminal History

20   Category 1, a total offense level of 28, excluding defendants

21   who received a reduction for substantial assistance, the

22   average both mean and median length of imprisonment for

23   defendant's sentence under the bribery guidelines over the past

24   five years is 68 months imprisonment.

25        After considering this factor and the arguments of

1 counsel, the Court concludes that the Court's sentence fulfills

2 or satisfies the goals of preventing unwarranted sentencing

3 disparity.

4    In fashioning the sentence in this case, the Court

5 has also considered the goals or purposes of sentencing and

6 concludes that the Court's sentence is sufficient but not

7 greater than necessary to meet the four purposes of sentencing

8 as set forth in 3553(a)(2).

9    I've already concluded this is a very serious

10 offense and requires a sentence that will promote respect for

11 the law and provide just punishment.

12    As to deterrence, the Court concludes that given the

13 facts of this case, both specific and general deterrence are

14 appropriate goals of a just sentence.

15    When applied to sentencing, the concept of

16 deterrence has two components.  The first relates to or deals

17 with deterring crimes of individuals or entities similarly

18 situated to the defendants.  It favors exemplary sentences so

19 that punishment can serve as a warning to others.

20    The second aspect focuses on recidivism by the same

21 person or business.  It supports a sentence tailored to

22 individual circumstances and are just severe enough to ensure a

23 company or individual will not commit other crimes in the

24 future.

25    Although the Court agrees that defendants are not

1    likely candidates for recidivism, the Court must send a message

2    in order to discourage others in similar situations from

3    engaging in similar crimes.  This is a particular concern for

4    white-collar crimes because they are often perceived as

5    carrying substantially lesser punishment than other comparable

6    crimes.

7             When a white-collar defendant such as Mr. Lee

8    receives too lenient of a sentence, the public understandably

9    loses confidence in the integrity of its system of Government,

10   and it sends the wrong message to other similarly situated

11   individuals who maybe contemplated similar crimes.

12            Moreover, as the Court stated in the sentencing of

13   co-defendant Shen Zhen on New World, the Court is of the view

14   that the political -- that political corruption is unique and

15   infectious crime with rippling and enormous consequences to

16   society.  Keeping political corruption in check has been a

17   matter of public urgency throughout our nation's history.  The

18   crushing weight of corruption on the integrity of every

19   democratic element of our Government has been and will continue

20   to be a constant concern.

21            In addition to promoting respect for any corruption

22   laws and deterring corporations and individuals in positions of

23   political clout, strict sentences also serve to protect the

24   public from further harm.

25            As to the issue with respect to the fine, the -- as

1    to Mr. Lee, Guideline Section 5E1.2 governs fines for
2    individuals, and it provides that the Court shall impose a fine
3    in all cases except where the defendant establishes he is
4    unable to pay and not likely to become able to pay any fine.
5              Pursuant to 18 United States Code Section 3571(b),
6    the maximum fine that the Court may impose is $250,000 per
7    count or $750,000.
8              In determining the fine, the guideline directs the
9    Court to consider several factors:  The need for the combined
10   sentence to reflect the seriousness of the offense, promote
11   respect for the law, provide just punishment, and afford
12   adequate deterrence, the defendant's ability to pay, the burden
13   the fine places on the defendant and his dependents, any
14   collateral consequences of the conviction.  And additionally
15   the guidelines instruct that the amount of the fine should
16   ensure that the fine taken together with other sanctions is
17   punitive.
18             The probation officer recommends that the Court
19   impose the maximum fine of $750,000 in light of the defendant's
20   admitted ability to pay and the Government's sentencing
21   position, and this morning the Government concurs with that
22   recommendation of the maximum fine on Mr. Lee in order to
23   promote respect for the law and afford deterrence, especially
24   because Mr. Lee used his wealth to access the stores of cash to
25   effectuate the crime in order to pay the $500,000 cash bribe to

1    Mr. Huizar.

2              Mr. Lee, however, contends that the Court should

3    impose a $150,000 fine on him personally, which is the midrange

4    of the guideline range, and a $600,000 fine on 940 Hill for a

5    total fine of 750, especially in light of the fact that Mr. Lee

6    has agreed to pay the fine imposed on 940 Hill.

7              The Court concludes that after considering all of

8    the relevant factors, including the 3553(a) factors, that the

9    maximum statutory fine of $750,000 is indeed appropriate.

10             Defendant has admitted that he has the ability to

11   pay the statutory maximum fine.  Indeed, Mr. Lee has

12   significant assets that are liquid that he can liquidate to pay

13   any fine as set forth in the revised presentence report at

14   Paragraphs 148 through 168.

15             In order to reflect the seriousness of the offense,

16   promote respect for the law, provide just punishment, and

17   afford adequate deterrence and to ensure that the amount of the

18   fine is punitive, the Court will impose a maximum statutory

19   fine of $250,000 per count.

20             As to 940 Hill, pursuant to 8C2.4 and the base

21   offense level of 28, the probation officer concluded that the

22   base fine is $10 million.  The Probation Office also found that

23   the 940 Hill had a total culpability score of 8.  Because the

24   culpability score establishes a minimum multiplier of 1.5 and a

25   maximum of 3.2, the guideline fine range is $16 million to

1     $32 million.

2              However, the statutory maximum limits the fine to

3     $500,000 per count.  Accordingly, based upon the three counts

4     of conviction, the total guideline fine amount is capped at

5     $1,500,000.  940 Hill and the Government both concur in the

6     calculation of that guideline amount.

7              Pursuant to 8C3.4, the Court may offset a fine

8     imposed upon a closely held organization when the Government --

9     when the individual who owns at least 5 percent interest in the

10    organization has been fined in a federal criminal proceeding

11    for the same offense conduct for which the organization is

12    being sentenced.

13             The probation officer considered the offset in the

14    presentence report but made no recommendation in the letter of

15    recommendation.

16             The amount of such offset shall not exceed the

17    amount resulting from multiplying the total fines imposed on

18    those individuals by those individuals' total percentage

19    interest in the organization.

20             As calculated by the probation officer, Mr. Lee owns

21    56.25 percent of 940 Hill, and the Court has imposed a -- or

22    will impose a $750,000 fine on Mr. Lee individually.

23    Therefore, the fine imposed on 940 Hill may be offset by up to

24    56.25 percent of Mr. Lee's fine or by $421,875.  Offsetting the

25    $1,500,000 by that amount equals $1,078,125.

1          As the -- as I mentioned, Defendants 940 Hill and

2     Mr. Lee contend that the Court should limit the fine to 750 and

3     impose 150 on Mr. Lee and 600 on 940 Hill.  The minority

4     shareholder interest of Kim and Lim, they also filed a

5     sentencing memorandum, which is Docket No. 1077, and they argue

6     that the Court should not impose the maximum fine on 940 Hill

7     and should not impose any fine that would require a fire sale

8     of the property owned by 940 Hill.

9          It's undisputed that the minority shareholders knew

10    nothing about Mr. Lee's wrongdoing or his conduct in

11    obstructing justice.  However, their argument is not persuasive

12    in light of the fact that Mr. Lee has agreed to pay the burden

13    of paying the fine imposed on 940 Hill.

14          After considering all the 3553(a) factors, the Court

15    agrees with the Government and will impose the fine of

16    $1,500,000 offset, as I indicated, with an effective fine of

17    $1,078,125 on 940 Hill.

18          Notably, the $1.5 million fine is less than

19    10 percent of what the minimum guideline fine would have been

20    absent the statutory maximum.

21          Mr. Lee's agreement to pay the minority

22    shareholders' portion of the fine, although appropriate and

23    generous, does not warrant a reduction of either Mr. Lee's fine

24    or Defendant 940 Hill's fine.  They are separate defendants

25    which require individualized assessment.  And the Court

64

concludes that the fines imposed on each defendant are sufficient but not greater than necessary to achieve the goals of sentencing.

Moreover, in formulating an appropriate sentence for 940 Hill, the offset reduction which will be applied by the Court already takes into account the amount of Lee's fine and, in effect, reduces 940 Hill's fine by over $400,000.

The Court also agrees with the Government that the effective fine will not result in unwarranted sentencing disparities.  The Court imposed the maximum statutory fine of $4 million on Co-Defendant Shen Zhen New World.  Although Shen Zhen paid a stream of benefits over an extensive period of time, that aggravating conduct was reflected in the higher fine amount.

Moreover, 940 Hill, unlike Shen Zhen, attempted to cover up or hide its criminal conduct by committing the separate crime of obstruction of justice.

The Court also concludes that imposing the effective fine does not create sentencing disparities with other companies like Hazens and Carmel Partners with which the Government entered into non-prosecution agreements and negotiated fines of $1,050,000 and $1,200,000 respectively.

As an initial matter, the fine imposed against 940 Hill is consistent with these negotiated fines.  In any event, 940 Hill is not similarly situated to these companies.

1    Those companies accepted responsibility pre-indictment,

2    cooperated with the Government's investigation, did not

3    obstruct justice in response to the Government's investigation.

4           The Court also agrees with the Government that

5    940 Hill's size does not warrant a downward variance from the

6    guideline fine.  That fact has been taken into account by the

7    offset applied by the Court on the grounds that 940 Hill is a

8    closely held company.

9           Accordingly, after considering all of the relevant

10   factors, the Court will impose a fine of $750,000 on Mr. Lee

11   individually.  As to 940, the Court will impose a fine of

12   $1,500,000 which will be offset by $421,875 resulting in an

13   effective fine of $1,078,125.

14          On the record before the Court, both Defendant Lee

15   and Co-Defendant Hill have sufficient financial resources to

16   pay these fines.  However, the Court will give both defendants

17   six months from the date of this judgment to pay their fines in

18   full.

19          If defendants are unable to pay their fines within

20   that time period, they can request an extension of the deadline

21   to pay the fine, and the Court will consider modifying its

22   order if so warranted.

23          As to cost to prosecution, the -- pursuant to the

24   joint statement I referred to earlier, the parties have agreed

25   that pursuant to 28 U.S.C. Section 1918 and local Civil

1    Rule 54-3, the Court should order Defendant Hill to pay a total

2    of $6,775.56 for the cost of prosecution.  Accordingly, the

3    Court will assess that amount against 940 Hill.

4              The next issue are the conditions of probation for

5    940 Hill.  Pursuant to 18 United States Code Section 3563 and

6    Guidelines Section 8D1.3, the Court must impose certain

7    mandatory conditions of probation on organizations.  The Court

8    may also impose other conditions that are reasonably related to

9    the nature and circumstances of the offense or history and

10   characteristics of the organization.  And two, that involve

11   only such deprivation of liberty or property that are necessary

12   to effect the purposes of sentencing.

13             The Probation Office and the Government both

14   recommend that the Court impose 17 conditions of probation

15   listed in the recommendation letters, the most recent of which

16   is Docket No. 1113.

17             Defendant has no objection to the proposed condition

18   except that it asks the Court not to impose Condition No. 13

19   publicizing the offense or conviction in the LA Times; and two,

20   to modify proposed Condition 14 to have its compliance program

21   submitted to the probation officer rather than to the Court.

22             As to proposed Condition No. 13, the Court --

23   pursuant to 8d1.4A, the Court may order the organization at its

24   expense and in a format and media specified by the Court to

25   publicize the nature of the offense committed, the fact of

1    conviction, the nature of the punishment imposed, and the steps

2    that will be taken to prevent the reoccurrence of similar

3    offenses.

4         The Government and Probation Office recommend that

5    Condition 13 imposed -- be imposed and in particular recommend

6    the publication in the LA Times.  The Court finds the

7    publication in the LA Times to be unnecessary.  The nature of

8    the offense and conviction have already been widely reported in

9    the LA Times as well as throughout the Korean language press

10   and a variety of other local and national news outlets.

11        The Court is certain that the media will also widely

12   publicize the Court's sentence of 940 Hill, including the fact

13   that the 940 Hill will be required to adopt an effective

14   compliance program.

15        As to proposed Conditions 14 and 15, the Court

16   agrees with the probation officer and the parties that 940 Hill

17   should be ordered to develop and submit an effective compliance

18   and ethics program, to provide notice of the program and its

19   criminal behavior to its employees and shareholders as provided

20   in Conditions 14 and 15.

21        Defendant 940 Hill's criminal conduct was

22   facilitated by Lee, defendant's managing shareholder, as well

23   as by employees and agents working at his direction.

24        Although 940 Hill has adopted certain new policies

25   regarding payments to third parties following the charges in

```
 1   this case, the Court concludes that a more complete and
 2   effective compliance and ethics program is necessary to ensure
 3   that such criminal conduct does not occur again in the future.
 4          The Government has outlined a proposed compliance
 5   program in Attachment A to its sentencing position.  However,
 6   the Court agrees with 940 Hill that the Government's proposed
 7   plan is overbroad and not specifically tailored to the nature
 8   of this defendant.
 9          Accordingly, Defendant 940 Hill shall develop and
10   submit to the Court an effective compliance and ethics program
11   consistent with the requirements set forth in Section 8B2.1 of
12   the guidelines.
13          Specifically, counsel for 940 Hill and the
14   Government shall meet and confer and file on or before
15   September 1st a joint proposed compliance and ethics program
16   including a schedule for implementation of the compliance
17   program.  In the event the parties are unable to agree on a
18   joint proposed compliance and ethics program, the parties shall
19   each file separate versions of the proposed compliance and
20   ethics program along with a joint statement setting forth their
21   respective positions, and that should be filed on or before
22   September 1st.
23          The Court will not modify Condition 14, and the
24   proposed compliance program shall be submitted to the Court.
25          So for all of the foregoing reasons, the Court
```

1    imposes the following sentence.  I'm going to impose the

2    sentence first on 940 Hill.

3              It is ordered that the defendant shall pay to the

4    United States a special assessment of $1,200 which is due

5    immediately.  It is ordered that the defendant shall pay to the

6    United States a total fine of $1,500,000.  The fine shall be

7    paid in full no later than six months after the date of this

8    judgment.

9              The probation officer includes a preliminary order

10   of forfeiture, but there isn't an order in this case; correct?

11             MS. PALMER:  Correct, Your Honor.

12             THE COURT:  All right.  It is also ordered that the

13   defendant shall pay to the United States costs of prosecution

14   in the amount of $6,775.56 which is due immediately.

15             Pursuant to the Sentencing Reform Act of 1984, it is

16   the judgment of the Court that the defendant 940 Hill be -- is

17   hereby placed on probation on Counts 5, 25, and 38 of the

18   First Superseding Indictment for a term of five years.  This

19   term consists of five years on each of Counts 5, 25, and 38.

20   All such terms to run concurrently under the following terms

21   and conditions:

22             During the period of probation, the defendant

23   organization shall pay the special assessment and fine in

24   accordance with the judgment's orders pertaining to such

25   payment.

1          The defendant organization shall not commit another
2     federal, state, or local crime.

3          The defendant organization shall provide the
4     probation officer access to any requested financial
5     information.

6          Within 30 days of the date of this judgment, the
7     defendant organization shall designate an official of the
8     organization to act as the organization's representative and to
9     be the primary contact with the probation officer.

10          The defendant organization shall answer truthfully
11     all inquiries by the probation officer and follow the
12     instructions of the probation officer.

13          The defendant organization, which is obviously
14     940 Hill, shall notify the probation officer ten days prior to
15     any change in the principal business or mailing address or
16     within 72 hours if advance notice is not possible.

17          If the Defendant 940 Hill -- the Defendant 940 Hill
18     shall permit a probation officer to visit the company offices
19     at any of its business sites.

20          940 Hill shall report to the probation officer as
21     directed and shall submit a truthful and complete written
22     report within the first five days of each month.

23          940 Hill shall be required to notify the Court or
24     probation officer immediately upon learning of, one, any
25     material adverse change in its business or financial condition

1    or prospects; or two, the commencement of any bankruptcy

2    proceeding, major civil rights litigation, criminal

3    prosecution, or administrative proceeding against the company

4    or any investigation or formal inquiry by the government

5    authorities regarding the company.

6           940 Hill shall notify the Probation Office

7    immediately of any intent to sell the company, change the name

8    of the company, merge with another business entity, or

9    otherwise dissolve or modify in any form or manner the

10   organizational structure from its present status.

11          If 940 Hill changes its name or merges with another

12   company through a stock or asset purchase, the renamed newly

13   created or merged company shall be obligated to meet all of the

14   obligations of the defendant organization in accordance with

15   this judgment's orders pertaining to payment of fine and

16   special assessment.

17          The defendant shall develop and submit to the Court

18   an effective compliance and ethics program consistent with the

19   requirements set forth in United States Guideline Section 8B2.1

20   including a schedule for the implementation of the compliance

21   and ethics program on or before September 1st of 2023.

22          Upon approval by the Court of the compliance and

23   ethics program, 940 Hill shall notify its employees and

24   shareholders of its criminal behavior and of the existence of

25   the program.

1          940 Hill shall make a periodic submission to the

2     probation officer at intervals specified by the Court reporting

3     on the organization's financial condition and results of

4     business operations and accounting for the disposition of all

5     funds received and reporting on the organization's progress and

6     implementing the compliance and ethics program.

7          Reports shall disclose any criminal prosecution,

8     civil litigation, or administrative proceeding commenced

9     against the company or any investigation or formal inquiry by

10    the government authorities of which the defendant learned since

11    its last report.

12         940 Hill shall also submit a reasonable -- to a

13    reasonable number of regular or unannounced examination of its

14    books and records at appropriate business premises by the

15    probation officer or experts engaged by the Court.

16    Interrogation of knowledgeable individuals within the company,

17    compensation to, and cost of any experts engaged by the Court

18    shall be paid by the company.

19         I want to advise the Defendant 940 Hill that, if you

20    wish to appeal this sentence, that you must file a notice of

21    your conviction, and if the company wishes to appeal its

22    conviction and sentence, you must file notice of appeal within

23    14 days of today, or the company will lose its right to appeal.

24    If the company is unable to afford an attorney for its appeal,

25    one may be appointed at no cost.

1          MR. NEUMAN:  Your Honor, does the offset need to be

2    noted as part of the Court's pronouncement of sentence?

3          THE COURT:  Yeah.  I will include that in the

4    judgment and conviction.

5          MR. NEUMAN:  Thank you, Your Honor.

6          THE COURT:  I didn't include it in the letter.  It

7    was not included in the letter.

8          Anything else in terms of 940 Hill for the

9    Government?

10          MS. PALMER:  No, Your Honor.

11          THE COURT:  All right.  I will now impose sentence

12    on Mr. Lee.

13          It is ordered that the defendant, Mr. Lee, shall pay

14    to the United States a special assessment of $300 which is due

15    immediately.  Any unpaid balance shall be due during the period

16    of imprisonment at the rate of not less than $25 per quarter

17    and pursuant to the Bureau of Prisons Inmate Financial

18    Responsibility Program.

19          It is ordered that the defendant shall pay to the

20    United States a total fine of $750,000 consisting of the

21    following:  Count 5, a fine of $250,000; Count 25, a fine of

22    $250,000; and Count 38, a fine of $250,000.  The total fine

23    shall bear interest as provided by law.  The fine shall be paid

24    six months from the date of this judgment.

25          The defendant shall comply with General Order 20-04.

74

1              Again, there's no preliminary order of forfeiture in

2      this case.

3              Pursuant to the Sentencing Reform Act of 1984, it's

4      the judgment of the Court that the defendant is hereby

5      committed on Counts 5, 25, and 38 of the First Superseding

6      Indictment to the custody of the Bureau of Prisons for a term

7      of 72 months.  This term consists of 72 months on Counts 5, 25,

8      and 38 of the First Superseding Indictment to be served

9      concurrently.

10             Upon release from imprisonment, the defendant shall

11     be placed on supervised release for a term of three years.

12     This term consists of three years on Counts 5, 25, and 38, all

13     such terms to run concurrently under the following terms and

14     conditions:

15             One, the defendant shall comply with the rules and

16     regulations of the U.S. Probation and Pretrial Services Office

17     and Second Amended General Order 28-04 including the conditions

18     of probation and supervised release set forth in Section 3 of

19     General Order -- of Second Amended General Order 20-04.

20             Two, during the period of community supervision, the

21     defendant shall pay the special assessment and fine in

22     accordance with this judgment's orders pertaining to such

23     payment.

24             The defendant shall cooperate in the collection of a

25     DNA sample from the defendant.

1          The defendant shall participate in an outpatient

2    substance abuse treatment and counseling program that includes

3    urinalysis, breath, and/or sweat patch testing as directed by

4    the Probation Office.  The defendant shall abstain from using

5    alcohol and illicit drugs and from abusing prescription

6    medications during the period of supervision.

7          As directed by the probation officer, the defendant

8    shall pay all or part of the cost of the Court-ordered

9    treatment to the aftercare contractors during the period of

10   community supervision.  The defendant shall provide payment and

11   proof of payment as directed by the probation officer.  If the

12   defendant has no ability to pay, no payment shall be required.

13         The defendant shall apply all moneys received from

14   any income tax refunds, lottery winnings, inheritance,

15   judgments, or any other financial gains to the court ordered

16   institution -- to the court ordered financial obligation.

17         Seven, the defendant shall truthfully and timely

18   file and pay taxes owed for the years of conviction and shall

19   truthfully and timely file and pay taxes during the period of

20   community supervision.  Further, defendant shall show proof to

21   the probation officer of compliance with this order.

22         As directed by the probation officer, the defendant

23   shall provide to the probation officer a signed release

24   authorizing credit report inquiries; federal and state income

25   tax returns, and a signed release authorizing their disclosure;

1    and three, an accurate financial statement with supporting

2    documentation as to all assets, income, expenses, and

3    liabilities of the defendant.

4            The defendant shall submit defendant's person,

5    property, house, residence, vehicle, papers, computers,

6    cell phones, other electronic communication or data storage

7    devices or media, e-mail accounts, social media accounts, cloud

8    storage accounts, or other areas under the defendant's control

9    to a search conducted by the US probation officer or law

10   enforcement officer.  Failure to submit to a search may be

11   grounds for revocation.

12           Any search pursuant to this condition will be

13   conducted at a reasonable time and in a reasonable manner upon

14   reasonable suspicion the defendant has violated a condition of

15   his supervision and that the areas to be searched contain

16   evidence of this violation.

17           The defendant shall refrain from any unlawful use of

18   a controlled substance.  The defendant shall submit to one drug

19   test within 15 days of release from custody and at least two

20   periodic drug tests thereafter, not to exceed eight tests per

21   month as directed by the probation officer.

22           The Court authorizes the Probation and Pretrial

23   Services Office to disclose the presentence report to the

24   substance abuse treatment provider to facilitate defendant's

25   treatment for addiction or dependency.  Further redisclosure of

1  the presentence report by the treatment provider is prohibited

2  without the consent of the sentencing judge.

3          It is further ordered the defendant surrender

4  himself to the institution designated by the Bureau of Prisons.

5          Mr. Neuman, you have a date in mind?

6          MR. NEUMAN:  Your Honor, I didn't calculate the

7  date.  We agreed 75 days to ensure designation for the medical

8  issues.  Let me figure out what that is.

9          THE COURT:  I don't think it's taking 75 days.

10          MR. NEUMAN:  I'm sorry?

11          THE COURT:  They've been doing it much quicker.

12          MR. NEUMAN:  I don't know.  I want to ensure there's

13  designation given the significant medical issues.

14          THE COURT:  All right.  Today is July 21st.

15          MR. NEUMAN:  That would be October 4th.

16          THE COURTROOM DEPUTY:  75 days is October 4th.

17          THE COURT:  75 days is October 4th.  Okay.

18          MR. NEUMAN:  Correct.

19          THE COURT:  All right.  It is further ordered the

20  defendant shall surrender himself to the institution designated

21  by the Bureau of Prisons on or before October 4th of 2023.  In

22  the absence of such designation, the defendant shall report on

23  or before the same date and time to the United States Marshal

24  located at the First Street U.S. courthouse.

25          The current bail or bond of the defendant will

 1    remain until he reports to the institution designated.  At that

 2    point in time, it will be exonerated.

 3                MR. NEUMAN:  Your Honor, may I make a couple

 4    requests?

 5                THE COURT:  Sure.

 6                MR. NEUMAN:  I request a --

 7                THE COURT:  Before you do that, let me also advise

 8    Mr. Lee that if, Mr. Lee, you wish to appeal your conviction

 9    and sentence, you must file notice of appeal within 14 days of

10    today, or you lose your right to appeal.  If you are unable to

11    afford an attorney for your appeal, one may be appointed at no

12    cost to you.

13                Yes.

14                MR. NEUMAN:  Thank you, Your Honor.  First we'd

15    request that the Court order the BOP to maintain continuity of

16    care in terms of the medical issues.

17                THE COURT:  I'm not going to make any orders with

18    respect to the Bureau of Prisons.  I find that, if there's an

19    issue, you can raise it with the Court, and I'll deal with it.

20    But I'm not going to interfere with the Bureau of Prisons.

21                MR. NEUMAN:  We'd ask then for recommendations,

22    Your Honor.

23                THE COURT:  I'll make a recommendation.

24                MR. NEUMAN:  Recommendations, please, to maintain

25    continuity of care with respect to the medical issues and

```
 1    ensure that Mr. Lee's medications are administered according to
 2    the prescribed regimen and -- that's one -- for the RDAP
 3    program, and then to be placed in custody in Sheridan.
 4              THE COURT:  All right.  I will make each of those
 5    recommendations.
 6              MR. NEUMAN:  Thank you very much.  Oh, and I'm
 7    sorry.  One more, Your Honor.  An eye exam every three months
 8    and then -- and within two weeks from the start of period of
 9    incarceration.
10              THE COURT:  All right.  I will also make that
11    recommendation.
12              MR. NEUMAN:  Thank you very much.
13              THE COURT:  But as you know, the Bureau of Prisons,
14    you need to follow up --
15              MR. NEUMAN:  That's our concern.
16              THE COURT:  -- with the Bureau of Prisons.  I know.
17              Anything else from the Government?
18              MS. PALMER:  Nothing from the Government.  Thank
19    you, Your Honor.
20              THE COURT:  All right.  Anything else from the
21    defense?
22              MR. NEUMAN:  No.  Thank you very much.
23              THE COURT:  All right.  Thank you very much.
24              (At 10:09 a.m. the proceedings adjourned.)
25
```

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5          I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7   FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8   THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9   THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12  IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13  CONFERENCE OF THE UNITED STATES.

14

15

16          DATED THIS  28TH  DAY OF JULY, 2023.

17

18

19          /S/ MAREA WOOLRICH
                   _____
20          MAREA WOOLRICH, CSR NO. 12698, CCRR
            FEDERAL OFFICIAL COURT REPORTER
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1

## $

**$1,050,000** [1] - 64:22
**$1,078,125** [3] - 62:25, 63:17, 65:13
**$1,200** [2] - 16:14, 69:4
**$1,200,000** [1] - 64:22
**$1,500,000** [5] - 62:5, 62:25, 63:16, 65:12, 69:6
**$10** [2] - 6:8, 61:22
**$150,000** [2] - 16:18, 61:3
**$16** [2] - 6:11, 61:25
**$170** [1] - 40:7
**$25** [1] - 73:16
**$25,000** [1] - 10:17
**$250,000** [6] - 10:17, 60:6, 61:19, 73:21, 73:22
**$30** [2] - 55:16, 55:17
**$30,000** [3] - 7:15, 10:8, 10:17
**$300** [2] - 16:8, 73:14
**$300,000** [3] - 7:15, 10:8, 10:17
**$32** [2] - 6:11, 62:1
**$400,000** [1] - 64:7
**$421,875** [2] - 62:24, 65:12
**$500,000** [13] - 20:14, 28:23, 39:20, 44:9, 45:11, 46:9, 46:13, 55:12, 55:21, 55:24, 60:25, 62:3
**$6,775.50** [2] - 8:4, 16:15
**$6,775.56** [1] - 66:2, 69:14
**$600,000** [2] - 16:18, 61:4
**$750,000** [8] - 16:9, 16:17, 60:7, 60:19, 61:9, 62:22, 65:10, 73:20

## 1

**1** [9] - 5:2, 9:13, 12:14, 13:2, 15:3, 15:15, 22:16, 50:6, 57:20
**1.5** [4] - 6:13, 16:11, 61:24, 63:18
**10** [4] - 33:5, 33:24, 44:22, 63:19
**100** [1] - 49:8
**1059** [2] - 7:18, 10:23
**1066** [3] - 7:18, 10:24, 12:21

**1077** [1] - 63:5
**1078** [1] - 7:19
**108** [2] - 34:15, 56:25
**1080** [1] - 7:18
**1083** [2] - 7:18, 22:17
**1083-1** [1] - 23:1
**1085** [1] - 7:21
**1086** [1] - 7:22
**1093** [1] - 44:24
**1095** [1] - 7:18
**1096** [2] - 7:22, 10:5
**10:09** [1] - 79:24
**11** [2] - 34:18, 57:5
**11(c)(1)(C** [1] - 56:17
**1108** [1] - 7:24
**1111** [1] - 7:18
**1113** [2] - 17:5, 66:16
**1115** [1] - 12:1
**1119** [1] - 7:18
**1125** [1] - 7:18
**113** [1] - 5:19
**114** [1] - 5:19
**115** [2] - 5:19, 11:2
**116** [2] - 5:18, 12:22
**117** [2] - 5:18, 6:15
**118** [3] - 5:19, 6:15, 11:3
**119** [1] - 6:15
**12** [2] - 5:25, 6:21
**12-level** [2] - 6:1, 6:23
**120** [1] - 15:1
**121** [1] - 7:14
**124** [2] - 13:21, 14:6
**124A** [2] - 13:3, 13:14
**125** [4] - 13:3, 13:14, 13:25, 14:7
**126** [3] - 13:3, 13:14, 14:3
**13** [10] - 11:9, 11:24, 12:2, 16:22, 17:3, 17:12, 34:16, 66:18, 66:22, 67:5
**13-level** [1] - 53:15
**131** [2] - 11:8, 11:15
**134** [1] - 15:2
**14** [11] - 11:10, 11:24, 12:3, 17:8, 39:24, 66:20, 67:15, 67:20, 68:23, 72:23, 78:9
**148** [1] - 61:14
**1492** [1] - 44:21
**14th** [2] - 5:16, 7:24
**15** [3] - 67:15, 67:20, 76:19
**150** [2] - 15:2, 63:3
**1500** [1] - 2:8
**1502** [1] - 44:22
**156** [2] - 34:15, 57:1
**16** [1] - 44:21

**162** [1] - 15:2
**166** [1] - 15:2
**168** [3] - 15:2, 61:14
**17** [1] - 66:14
**18** [2] - 60:5, 66:5
**1875** [1] - 2:14
**19** [2] - 8:14, 41:4
**1918** [1] - 65:25
**1964** [1] - 48:14
**1970** [1] - 48:17
**1972** [2] - 48:17, 48:18
**1974** [1] - 48:20
**1984** [3] - 48:24, 69:15, 74:3
**19th** [1] - 28:18
**1st** [3] - 68:15, 68:22, 71:21

## 2

**2** [7] - 11:19, 12:13, 12:15, 15:13, 15:16, 18:3, 33:5
**2-1** [1] - 50:7
**2-28** [1] - 50:7
**20** [3] - 12:22, 16:17, 48:6
**20,000** [1] - 40:6
**20-04** [2] - 73:25, 74:19
**20-326(A** [1] - 3:5
**20-month** [2] - 48:2, 53:15
**20-story** [1] - 40:5
**200** [1] - 40:6
**2008** [1] - 39:21
**2009** [2] - 39:21, 49:19
**2014** [1] - 49:21
**2015** [1] - 40:3
**2016** [2] - 40:8, 41:16
**2018** [1] - 46:16
**2019** [2] - 46:5, 47:2
**2023** [4] - 3:1, 5:12, 71:21, 77:21
**20th** [1] - 47:1
**21** [1] - 3:1
**2122** [1] - 44:24
**21st** [1] - 77:14
**23rd** [1] - 2:14
**25** [9] - 5:10, 47:23, 53:16, 69:17, 69:19, 73:21, 74:5, 74:7, 74:12
**262** [3] - 34:12, 56:21, 57:2
**27th** [1] - 5:12
**28** [9] - 6:6, 9:15, 9:18, 9:21, 10:15, 32:23, 57:20, 61:21, 65:25
**28-04** [1] - 74:17

**2C1.1(b)(2** [1] - 55:3
**2C1.1(b)(2)** [2] - 6:3, 6:25
**2C1.1(b)(3** [1] - 6:6
**2C1.1(b)(3)** [1] - 7:3

## 3

**3** [1] - 74:18
**3.2** [1] - 61:25
**30** [7] - 7:7, 7:10, 10:18, 38:15, 50:19, 51:5, 70:6
**301099** [1] - 4:1
**312** [1] - 2:8
**31st** [1] - 48:16
**32** [2] - 32:25, 33:24
**327** [3] - 34:12, 56:22, 57:2
**3553(a** [7] - 4:22, 16:4, 18:1, 26:13, 39:16, 61:8, 63:14
**3553(a)(2)** [3] - 16:5, 53:13, 58:8
**3553(a)(6** [1] - 56:5
**3563** [1] - 66:5
**3571(b** [1] - 60:5
**38** [8] - 5:10, 46:3, 69:17, 69:19, 73:22, 74:5, 74:8, 74:12
**39** [2] - 56:18, 56:19

## 4

**4** [2] - 44:22, 64:11
**41** [1] - 57:1
**44** [1] - 18:21
**48** [1] - 57:2
**4C1.1** [3] - 8:10, 9:7, 9:19
**4th** [4] - 77:15, 77:16, 77:17, 77:21

## 5

**5** [11] - 5:10, 13:21, 14:6, 44:21, 62:9, 69:17, 69:19, 73:21, 74:5, 74:7, 74:12
**500,000** [1] - 44:16
**54-3** [1] - 66:1
**56.25** [2] - 62:21, 62:24
**5E1.2** [2] - 10:16, 60:1
**5K** [1] - 33:3
**5K2.20(b** [1] - 54:6

## 6

**600** [1] - 63:3

**62** [2] - 11:6, 11:13
**63** [2] - 11:6, 11:13
**66** [1] - 12:22
**68** [1] - 57:24
**68-month** [1] - 32:23

## 7

**7** [2] - 8:14, 10:5
**72** [5] - 11:6, 11:13, 70:16, 74:7
**75** [4] - 77:7, 77:9, 77:16, 77:17
**750** [2] - 61:5, 63:2
**76** [1] - 6:22
**77** [1] - 6:24
**78** [4] - 7:2, 9:15, 9:20, 53:8

## 8

**8** [2] - 6:10, 61:23
**82** [1] - 7:6
**83** [1] - 7:6
**84** [1] - 16:7
**88** [3] - 11:8, 28:1, 28:20
**8:01** [1] - 3:2
**8B2.1** [2] - 68:11, 71:19
**8C2.4** [1] - 61:20
**8C3.1(b** [1] - 6:12
**8C3.4** [1] - 62:7
**8D1.3** [1] - 66:6
**8d1.4A** [1] - 66:23

## 9

**9** [2] - 39:21, 40:12
**90** [1] - 49:8
**90012** [1] - 2:9
**90067** [1] - 2:14
**940** [106] - 3:6, 3:14, 3:16, 5:14, 5:15, 5:20, 5:23, 6:17, 6:18, 8:2, 9:9, 9:20, 10:21, 10:23, 11:1, 11:4, 11:5, 11:14, 11:19, 16:10, 16:19, 16:21, 17:14, 17:21, 19:13, 20:25, 21:11, 21:14, 24:15, 25:19, 25:21, 27:1, 27:2, 29:20, 35:8, 35:14, 39:19, 39:23, 40:1, 40:5, 40:8, 40:14, 40:21, 40:25, 41:2, 42:10, 42:20, 42:22, 43:21, 46:6, 46:12, 46:17, 46:21, 46:22,

49:21, 49:23, 49:25, 54:20, 55:14, 55:15, 61:4, 61:6, 61:20, 61:23, 62:5, 62:21, 62:23, 63:1, 63:3, 63:6, 63:8, 63:13, 63:17, 63:24, 64:5, 64:7, 64:15, 64:24, 64:25, 65:5, 65:7, 65:11, 66:3, 66:5, 67:12, 67:13, 67:16, 67:21, 67:24, 68:6, 68:9, 68:13, 69:2, 69:16, 70:14, 70:17, 70:20, 70:23, 71:6, 71:11, 71:23, 72:1, 72:12, 72:19, 73:8
**95** [2] - 15:1, 51:8
**96** [1] - 5:24
**97** [6] - 6:2, 7:14, 9:15, 9:20, 38:19, 53:8
**98** [1] - 6:5

## A

**a.m** [1] - 79:24
**A.M** [1] - 3:2
**aberrant** [10] - 18:10, 23:23, 24:7, 26:16, 53:19, 53:25, 54:1, 54:3, 54:7, 54:22
**abiding** [1] - 54:11
**ability** [5] - 12:4, 60:12, 60:20, 61:10, 75:12
**able** [4] - 8:18, 23:11, 49:7, 60:4
**absence** [2] - 51:17, 77:22
**absent** [1] - 63:20
**abstain** [1] - 75:4
**abundance** [1] - 18:14
**abuse** [2] - 75:2, 76:24
**abusing** [1] - 75:5
**acceptable** [2] - 12:17, 56:11
**acceptance** [6] - 7:9, 20:5, 20:10, 33:25, 52:21
**accepted** [4] - 34:6, 45:4, 45:10, 65:1
**accepting** [1] - 34:3
**accepts** [1] - 57:3
**access** [3] - 13:6, 60:24, 70:4
**accessories** [1] - 49:12
**accessory** [2] - 49:5, 49:11
**accomplish** [1] - 16:4

**accord** [1] - 33:12
**accordance** [3] - 69:24, 71:14, 74:22
**according** [4] - 41:10, 42:25, 43:3, 79:1
**accordingly** [6] - 54:21, 55:23, 62:3, 65:9, 66:2, 68:9
**account** [8] - 15:25, 33:4, 35:15, 35:16, 53:7, 56:19, 64:6, 65:6
**accounting** [5] - 40:2, 46:12, 54:19, 57:18, 72:4
**accounts** [3] - 76:7, 76:8
**accurate** [1] - 76:1
**accurately** [4] - 21:17, 21:18, 27:10, 30:20
**accustomed** [1] - 44:15
**achieve** [1] - 64:2
**acknowledge** [3] - 27:17, 27:18, 28:17
**acknowledged** [1] - 27:2
**acknowledges** [1] - 26:22
**acquired** [1] - 39:19
**act** [2] - 4:24, 70:8
**Act** [3] - 16:2, 69:15, 74:3
**acted** [2] - 52:2, 52:4
**acting** [1] - 55:7
**actions** [2] - 38:13, 39:1
**add** [4] - 17:1, 23:18, 45:13, 49:7
**added** [5] - 6:1, 6:4, 6:23, 7:1, 7:4
**addenda** [2] - 4:15, 5:17
**addendum** [6] - 10:25, 11:1, 11:2, 11:7, 11:11, 12:1
**addiction** [1] - 76:25
**addition** [2] - 4:21, 59:21
**additional** [3] - 9:16, 36:24, 45:25
**additionally** [1] - 60:14
**address** [14] - 11:8, 11:9, 11:24, 12:6, 13:2, 15:11, 18:7, 23:9, 23:19, 36:3, 37:11, 37:22, 38:6, 70:15
**addressed** [9] - 10:24,

11:16, 13:4, 13:8, 14:7, 27:11, 27:23, 30:8, 35:21
**adequate** [3] - 55:9, 60:12, 61:17
**adequately** [2] - 53:11, 57:7
**adjourned** [1] - 79:24
**adjusted** [1] - 7:6
**adjustment** [1] - 6:15
**adjustments** [2] - 34:11, 56:19
**administered** [1] - 79:1
**administrative** [2] - 71:3, 72:8
**admission** [1] - 34:1
**admit** [2] - 17:14, 17:23
**admitted** [3] - 46:19, 60:20, 61:10
**adopt** [1] - 67:13
**adopted** [1] - 67:24
**adult** [1] - 50:19
**advance** [1] - 70:16
**adverse** [2] - 45:14, 70:25
**advise** [3] - 47:16, 72:19, 78:7
**advised** [4] - 41:25, 42:13, 42:17, 44:1
**advisors** [1] - 18:19
**advisory** [11] - 4:20, 4:21, 5:3, 5:22, 7:13, 8:5, 9:17, 15:25, 53:5, 53:7, 53:10
**affect** [1] - 15:8
**affected** [1] - 52:23
**afford** [5] - 60:11, 60:23, 61:17, 72:24, 78:11
**afraid** [1] - 54:16
**aftercare** [1] - 75:9
**Agent** [2] - 2:17, 3:10
**agents** [1] - 67:23
**aggravated** [1] - 35:11
**aggravating** [3] - 19:15, 21:20, 64:13
**Agnes** [3] - 2:17, 3:20, 3:25
**agree** [8] - 7:25, 8:7, 22:4, 26:22, 34:17, 52:7, 68:17
**agreed** [2] - 19:7, 56:16, 56:19, 56:24, 57:2, 61:6, 63:12, 65:24, 77:7
**agreed-upon** [1] - 57:2
**agreement** [12] - 8:2,

8:12, 27:3, 34:7, 34:12, 34:14, 34:15, 56:10, 56:17, 56:23, 57:3, 63:21
**agreements** [1] - 64:21
**agrees** [11] - 8:6, 9:8, 53:21, 56:9, 56:13, 58:25, 63:15, 64:8, 65:4, 67:16, 68:6
**ahead** [2] - 9:2, 23:3
**aided** [1] - 35:12
**ailing** [1] - 37:9
**airing** [1] - 17:22
**albeit** [1] - 54:4
**alcohol** [2] - 52:16, 75:5
**allow** [1] - 44:10
**allowing** [2] - 38:3, 38:7
**almost** [3] - 25:3, 32:8, 43:7
**alone** [2] - 17:17, 29:13
**ALSO** [1] - 2:16
**alter** [1] - 46:12
**ambition** [1] - 38:22
**ambitious** [1] - 40:15
**Amended** [1] - 74:17
**amended** [1] - 74:19
**amendment** [4] - 8:9, 8:10, 8:23, 9:7
**amendments** [3] - 8:17, 8:19, 9:1
**America** [1] - 3:6
**amount** [17] - 7:25, 8:3, 29:20, 29:21, 53:20, 55:20, 60:15, 61:17, 62:4, 62:6, 62:16, 62:17, 62:25, 64:6, 64:14, 66:3, 69:14
**amounts** [1] - 47:11
**analysis** [7] - 12:10, 22:5, 26:25, 45:12, 47:18, 47:25, 56:12
**Andrew** [2] - 2:17, 3:10
**Angeles** [8] - 2:9, 2:14, 38:13, 39:23, 40:9, 41:9, 49:2, 49:16
**ANGELES** [1] - 3:1
**announce** [1] - 3:18
**answer** [1] - 70:10
**appeal** [29] - 18:22, 20:9, 29:19, 41:16, 41:19, 42:1, 42:8, 42:13, 42:18, 42:19, 43:18, 43:19, 43:20,

43:22, 44:1, 44:5, 44:10, 44:16, 45:13, 72:20, 72:21, 72:22, 72:23, 72:24, 78:8, 78:9, 78:10, 78:11
**appear** [4] - 5:18, 7:17, 7:19, 45:16
**appearance** [2] - 3:7, 3:18
**APPEARANCES** [1] - 2:1
**applicable** [2] - 5:3, 56:20
**applied** [3] - 58:15, 64:5, 65:7
**applies** [1] - 10:18
**apply** [2] - 5:8, 75:13
**applying** [1] - 53:17
**appointed** [2] - 72:25, 78:11
**appraiser** [1] - 42:24
**appreciate** [4] - 10:12, 10:15, 32:19, 36:1
**approach** [1] - 13:16
**approaching** [1] - 26:2
**appropriate** [23] - 4:18, 11:18, 12:12, 12:13, 12:15, 13:23, 20:15, 21:23, 31:1, 33:8, 35:7, 36:17, 48:3, 53:20, 53:22, 55:25, 56:11, 56:24, 58:14, 61:9, 63:22, 64:4, 72:14
**appropriateness** [1] - 54:4
**approval** [5] - 40:9, 41:17, 41:21, 44:11, 71:22
**approved** [1] - 42:15
**architect** [1] - 41:11
**areas** [3] - 31:15, 76:8, 76:15
**argue** [3] - 17:9, 18:3, 63:5
**argued** [1] - 29:10
**argues** [1] - 16:16
**arguing** [2] - 12:13, 33:10
**argument** [13] - 13:11, 18:1, 23:22, 25:6, 30:19, 30:23, 30:24, 30:25, 31:17, 31:19, 33:7, 54:25, 63:11
**arguments** [5] - 18:4, 18:7, 33:17, 39:15, 57:25
**Ariel** [2] - 2:13, 3:12
**arrived** [1] - 29:20

**arrogance** [2] - 46:24, 47:6
**aspect** [1] - 58:20
**aspects** [1] - 23:8
**assess** [1] - 66:3
**assessing** [1] - 54:4
**assessment** [9] - 16:8, 16:14, 39:14, 63:25, 69:4, 69:23, 71:16, 73:14, 74:21
**asset** [1] - 71:12
**assets** [2] - 61:12, 76:2
**assist** [2] - 40:20, 43:20
**assistance** [2] - 28:6, 57:21
**Assistant** [3] - 2:5, 2:6, 2:7
**assisted** [1] - 3:14
**associates** [2] - 47:23, 51:14
**assume** [2] - 11:11, 12:23
**assurances** [1] - 43:23
**assure** [1] - 52:21
**astute** [1] - 42:21
**Attachment** [1] - 68:5
**attained** [1] - 24:21
**attempt** [2] - 41:13, 41:20
**attempted** [3] - 47:15, 48:16, 64:15
**attempts** [1] - 18:19
**attended** [3] - 43:25, 48:25, 50:22
**attention** [1] - 22:19
**attest** [1] - 50:9
**attitudes** [1] - 45:24
**Attorney** [4] - 2:4, 2:5, 2:6, 2:7
**attorney** [2] - 72:24, 78:11
**August** [2] - 28:6, 41:15
**authorities** [2] - 71:5, 72:10
**authorizes** [1] - 76:22
**authorizing** [2] - 75:24, 75:25
**available** [1] - 53:5
**average** [2] - 57:15, 57:22
**avoid** [2] - 43:21, 56:6
**avoiding** [2] - 31:23, 55:13
**awarded** [2] - 8:1, 8:4
**aware** [4] - 4:13, 23:5, 43:8, 43:11

**B**

**bad** [1] - 47:8
**bail** [1] - 77:25
**balance** [1] - 73:15
**bankruptcy** [1] - 71:1
**bar** [2] - 28:9, 43:25
**base** [7] - 5:25, 6:7, 6:21, 49:10, 61:20, 61:22
**based** [19] - 6:9, 6:24, 7:12, 8:19, 9:12, 25:15, 29:18, 33:25, 34:3, 39:15, 41:1, 43:1, 45:25, 48:12, 54:1, 55:4, 62:3
**bases** [1] - 54:5
**basis** [2] - 43:8, 54:23
**bear** [1] - 73:23
**became** [5] - 40:4, 44:6, 49:7, 49:14, 49:17
**become** [1] - 60:4
**began** [1] - 46:5
**begin** [1] - 22:10
**beginnings** [1] - 49:6
**behalf** [4] - 3:13, 37:7, 46:22, 54:19
**behavior** [8] - 23:23, 26:16, 53:19, 54:1, 54:3, 54:7, 67:19, 71:24
**belied** [1] - 20:16
**beliefs** [1] - 45:24
**believes** [1] - 21:16
**below** [4] - 10:10, 32:9, 32:10
**benefit** [5] - 9:10, 40:24, 45:12, 55:5, 55:12
**benefits** [2] - 41:5, 64:12
**benign** [1] - 14:2
**big** [2] - 35:2, 47:8
**binding** [4] - 34:16, 34:17, 56:17, 57:4
**BIRD** [1] - 2:12
**bit** [1] - 32:12
**blame** [4] - 20:7, 20:8
**blameless** [1] - 18:12
**blatant** [1] - 41:20
**board** [1] - 31:21
**boiled** [1] - 29:16
**bond** [1] - 77:25
**book** [1] - 26:6
**books** [2] - 21:10, 72:14
**BOP** [4] - 14:1, 14:6, 14:15, 78:15
**born** [1] - 48:14

**bottom** [1] - 42:17
**bound** [1] - 34:17
**BOXER** [1] - 2:12
**Brazil** [2] - 48:18, 48:21
**breath** [1] - 75:3
**bribe** [27] - 19:7, 20:14, 28:23, 29:3, 29:21, 30:20, 30:22, 39:20, 44:6, 44:9, 44:13, 44:16, 44:19, 44:25, 45:11, 46:9, 46:13, 53:20, 54:14, 54:15, 54:24, 54:25, 55:12, 55:20, 55:24, 60:25
**bribery** [3] - 55:10, 57:17, 57:23
**bribery-related** [1] - 57:17
**brief** [3] - 27:12, 33:22, 33:24
**briefly** [3] - 18:6, 28:4, 32:14
**briefs** [3] - 23:8, 23:13, 35:21
**brings** [1] - 10:16
**brought** [1] - 48:8
**build** [1] - 24:24
**building** [3] - 39:22, 45:7, 49:16
**buildings** [1] - 49:15
**burden** [3] - 21:25, 60:12, 63:12
**Bureau** [8] - 73:17, 74:6, 77:4, 77:21, 78:18, 78:20, 79:13, 79:16
**business** [21] - 18:15, 24:19, 24:21, 24:25, 44:15, 47:23, 49:4, 49:6, 49:11, 49:20, 50:2, 50:25, 51:14, 52:1, 58:21, 70:15, 70:19, 70:25, 71:8, 72:4, 72:14
**businessman** [1] - 42:21

**C**

**CA** [2] - 2:9, 2:14
**calculate** [4] - 5:2, 9:17, 55:25, 77:6
**calculated** [5] - 6:7, 7:10, 18:15, 19:2, 62:20
**calculating** [3] - 9:14, 15:24, 55:18
**calculation** [3] - 8:5,

8:6, 62:6
**calculations** [9] - 5:5, 5:22, 6:21, 7:13, 9:8, 9:25, 10:2, 15:8, 52:20
**CALIFORNIA** [1] - 3:1
**calmly** [1] - 47:13
**candidates** [1] - 59:1
**cannot** [1] - 38:23
**capped** [1] - 62:4
**capture** [1] - 21:17
**captured** [1] - 47:22
**captures** [1] - 21:18
**care** [4] - 27:3, 27:4, 78:16, 78:25
**careful** [1] - 24:2
**careless** [1] - 38:9
**Carmel** [1] - 64:20
**carried** [1] - 43:13
**carrying** [1] - 59:5
**case** [36] - 5:9, 15:19, 17:20, 17:23, 20:17, 20:21, 21:1, 21:3, 21:9, 21:19, 21:24, 26:5, 28:1, 29:4, 29:6, 29:8, 29:15, 30:25, 31:2, 33:14, 39:14, 43:13, 45:24, 48:3, 53:12, 53:22, 54:12, 55:2, 55:11, 57:6, 58:4, 58:13, 68:1, 69:10, 74:2
**cases** [6] - 31:4, 32:1, 33:13, 35:1, 51:20, 60:3
**cash** [11] - 20:14, 29:1, 29:3, 29:21, 44:15, 44:19, 46:9, 50:3, 60:24, 60:25
**CASSIE** [1] - 2:5
**Cassie** [1] - 3:9
**casually** [1] - 47:13
**catastrophic** [1] - 42:9
**catch** [1] - 47:8
**Category** [4] - 7:11, 9:19, 56:20, 57:20
**caught** [4] - 45:18, 45:19, 51:22, 54:17
**caused** [1] - 38:10
**cell** [1] - 76:6
**central** [1] - 32:3
**Century** [1] - 2:14
**certain** [8] - 9:22, 27:22, 29:11, 39:1, 55:20, 66:6, 67:11, 67:24
**certainly** [3] - 19:12, 45:21, 47:2
**Certification** [1] - 3:25
**Certified** [1] - 3:25

**chair** [1] - 42:7
**Chang** [1] - 40:20
**change** [5] - 36:2, 38:23, 70:15, 70:25, 71:7
**changed** [1] - 41:15
**changes** [4] - 37:16, 39:2, 53:9, 71:11
**channels** [1] - 26:8
**character** [3] - 50:9, 50:16, 52:7
**characteristics** [8] - 24:10, 24:15, 25:12, 25:21, 36:21, 47:21, 48:4, 66:10
**characterization** [3] - 27:15, 43:15, 47:3
**characterized** [1] - 20:4
**characterizes** [1] - 41:19
**characterizing** [1] - 46:13
**charged** [2] - 45:20
**charges** [2] - 45:21, 67:25
**check** [1] - 59:16
**Cheon** [1] - 40:20
**children** [3] - 48:15, 50:19, 50:25
**choice** [4] - 26:17, 26:19, 45:8, 45:9
**choices** [4] - 24:3, 24:4, 24:6, 45:23
**Christian** [1] - 52:1
**church** [8] - 24:19, 25:2, 47:24, 48:11, 48:13, 51:14, 51:24, 51:25
**circumstances** [10] - 25:10, 25:20, 26:24, 27:7, 28:22, 30:7, 39:18, 53:12, 58:22, 66:9
**cited** [2] - 20:11, 32:1
**citing** [1] - 53:19
**city** [3] - 41:14, 42:16, 44:10
**City** [5] - 26:11, 40:9, 40:22, 41:3, 41:4
**Civetti** [2] - 2:17, 3:10
**civil** [3] - 65:25, 71:2, 72:8
**claiming** [1] - 53:19
**clear** [5] - 24:2, 30:15, 30:16, 37:1, 52:22
**clearly** [3] - 5:8, 14:19, 42:11
**clients** [1] - 4:14
**close** [1] - 42:25

**closed** [3] - 43:6, 47:17, 55:19
**closely** [3] - 40:22, 62:8, 65:8
**closer** [1] - 3:22
**clothing** [2] - 48:19, 50:2
**cloud** [1] - 76:7
**clout** [1] - 59:23
**co** [3] - 59:13, 64:11, 65:15
**co-defendant** [3] - 59:13, 64:11, 65:15
**coach** [1] - 47:15
**coalition** [1] - 41:17
**Code** [2] - 60:5, 66:5
**collar** [5] - 45:16, 45:18, 48:5, 59:4, 59:7
**collateral** [1] - 60:14
**collection** [1] - 74:24
**college** [1] - 49:1
**combat** [1] - 52:17
**combined** [1] - 60:9
**coming** [2] - 22:14, 29:1
**commenced** [1] - 72:8
**commencement** [1] - 71:1
**commensurate** [1] - 55:11
**comments** [5] - 4:18, 30:4, 36:2, 47:5, 53:2
**commercial** [1] - 40:7
**commission** [3] - 5:7, 32:13, 57:15
**Commission** [1] - 53:6
**commit** [2] - 58:23, 70:1
**commitment** [2] - 8:24, 51:25
**committed** [9] - 25:8, 38:22, 47:14, 54:7, 54:9, 54:13, 54:17, 66:25, 74:5
**committee** [3] - 42:8, 42:15, 45:15
**committing** [2] - 51:21, 64:16
**common** [1] - 51:19
**communication** [1] - 76:6
**community** [14] - 25:23, 25:24, 26:3, 26:4, 26:5, 39:4, 41:6, 41:8, 50:20, 52:3, 74:20, 75:10, 75:20

**community-focused** [1] - 52:3
**companies** [4] - 35:20, 64:20, 64:25, 65:1
**company** [16] - 36:25, 58:23, 65:8, 70:18, 71:3, 71:5, 71:7, 71:8, 71:12, 71:13, 72:9, 72:16, 72:18, 72:21, 72:23, 72:24
**comparable** [1] - 59:5
**compare** [1] - 34:25
**compassion** [1] - 50:10
**compensation** [1] - 72:17
**competent** [1] - 40:19
**complete** [5] - 40:16, 50:13, 51:13, 68:1, 70:21
**completely** [2] - 27:21, 36:6
**complex** [1] - 40:21
**compliance** [22] - 16:23, 17:8, 36:4, 36:8, 36:9, 66:20, 67:14, 67:17, 68:2, 68:4, 68:10, 68:15, 68:16, 68:18, 68:19, 68:24, 71:18, 71:20, 71:22, 72:6, 75:21
**comply** [3] - 4:23, 73:25, 74:15
**components** [1] - 58:16
**computation** [1] - 6:9
**computers** [1] - 76:5
**concedes** [1] - 33:23
**concept** [1] - 58:15
**concern** [5] - 27:20, 42:3, 59:3, 59:20, 79:15
**concerned** [3] - 21:1, 51:9, 52:4
**concerns** [1] - 14:5
**concessions** [2] - 41:20, 55:14
**conclude** [3] - 15:15, 45:4, 45:9
**concluded** [4] - 6:8, 47:13, 58:9, 61:21
**concludes** [2] - 7:13, 51:5, 54:25, 55:23, 57:6, 58:1, 58:6, 58:12, 61:7, 64:1, 64:18, 68:1
**conclusion** [1] - 47:18
**concur** [1] - 62:5
**concurrently** [3] -

69:20, 74:9, 74:13
**concurs** [1] - 60:21
**condition** [12] - 13:12, 17:12, 17:19, 66:17, 66:20, 66:22, 67:5, 68:23, 70:25, 72:3, 76:12, 76:14
**Condition** [7] - 11:9, 11:10, 12:2, 16:22, 17:3, 17:8, 66:18
**conditional** [2] - 40:8, 41:16
**conditionally** [1] - 8:7
**Conditions** [1] - 11:24
**conditions** [16] - 12:12, 13:23, 16:12, 16:21, 17:4, 17:6, 18:2, 66:4, 66:7, 66:8, 66:14, 67:15, 67:20, 69:21, 74:14, 74:17
**conduct** [27] - 19:6, 20:22, 20:24, 24:7, 24:12, 32:3, 32:4, 34:25, 35:3, 35:13, 36:20, 45:2, 45:25, 46:2, 50:14, 50:15, 51:2, 53:25, 54:12, 54:22, 56:7, 62:11, 63:10, 64:13, 64:16, 67:21, 68:3
**conducted** [2] - 76:9, 76:13
**confer** [2] - 7:25, 68:14
**confidence** [1] - 59:9
**confirm** [2] - 3:18, 14:1
**connection** [2] - 8:8, 8:23
**conscience** [2] - 19:9, 19:13
**consent** [1] - 77:2
**consequences** [4] - 25:18, 42:9, 59:15, 60:14
**consider** [13] - 4:21, 11:18, 12:11, 14:15, 15:9, 15:11, 16:1, 22:23, 36:14, 54:21, 56:5, 60:9, 65:21
**considerable** [1] - 42:5
**consideration** [3] - 24:9, 39:7, 53:11
**considered** [9] - 39:16, 52:14, 53:4, 53:6, 56:3, 57:10, 57:14, 58:5, 62:13
**considering** [5] -

34:11, 57:25, 61:7, 63:14, 65:9
**consisted** [1] - 39:22
**consistent** [5] - 31:23, 50:14, 64:24, 68:11, 71:18
**consistently** [2] - 26:11, 52:2
**consisting** [1] - 73:20
**consists** [3] - 69:19, 74:7, 74:12
**conspiracy** [1] - 56:14
**constant** [1] - 59:20
**constitutes** [1] - 53:15
**constitutional** [1] - 34:4
**consultants** [1] - 42:11
**consulted** [1] - 53:7
**consuming** [1] - 50:1
**contact** [2] - 43:7, 70:9
**contacted** [1] - 43:18
**contain** [1] - 76:15
**contemplated** [1] - 59:11
**contend** [1] - 63:2
**contends** [1] - 61:2
**context** [1] - 44:1
**continue** [3] - 19:10, 23:24, 59:19
**continued** [1] - 19:10
**continues** [2] - 45:3, 48:12
**continuity** [2] - 78:15, 78:25
**contractors** [1] - 75:9
**contrary** [3] - 21:3, 21:8, 54:24
**contributor** [1] - 43:9
**control** [1] - 76:8
**controlled** [1] - 76:18
**conversation** [2] - 47:1, 47:15
**conversations** [1] - 46:25
**convey** [1] - 45:7
**convicted** [1] - 31:21
**conviction** [11] - 52:17, 60:14, 62:4, 66:19, 67:1, 67:8, 72:21, 72:22, 73:4, 75:18, 78:8
**cooperate** [1] - 74:24
**cooperated** [2] - 21:4, 65:2
**corners** [1] - 24:17
**corporate** [1] - 35:10
**corporations** [4] - 21:9, 21:12, 21:13,

59:22
**correct** [7] - 10:3, 19:14, 28:14, 43:11, 69:10, 69:11, 77:18
**correcting** [1] - 10:12
**correctly** [1] - 26:10
**corrupt** [1] - 45:4
**corruption** [5] - 31:4, 59:14, 59:16, 59:18, 59:21
**cost** [11] - 16:14, 28:13, 40:7, 44:7, 45:12, 65:23, 66:2, 72:17, 72:25, 75:8, 78:12
**cost-benefit** [1] - 45:12
**costly** [1] - 43:21
**costs** [7] - 7:25, 8:3, 42:2, 42:14, 45:13, 55:16, 69:13
**council** [2] - 39:20, 42:16
**Council** [2] - 39:23, 41:9
**Councilman** [2] - 42:4, 43:20
**counsel** [8] - 3:7, 3:10, 4:25, 9:16, 16:25, 27:9, 58:1, 68:13
**COUNSEL** [1] - 2:1
**counseling** [1] - 75:2
**count** [8] - 44:2, 56:14, 60:7, 61:19, 62:3, 73:21, 73:22
**Count** [2] - 46:3, 73:21
**counter** [1] - 20:11
**country** [2] - 31:5, 33:13
**counts** [1] - 62:3
**Counts** [6] - 5:10, 69:17, 69:19, 74:5, 74:7, 74:12
**couple** [1] - 78:3
**course** [8] - 5:15, 19:6, 26:18, 26:19, 34:6, 40:24, 44:2, 44:24
**court** [5] - 23:5, 57:4, 60:2, 75:15, 75:16
**COURT** [76] - 3:11, 3:17, 3:22, 4:2, 4:6, 4:14, 4:19, 8:21, 9:5, 10:11, 10:19, 11:15, 11:22, 11:25, 12:5, 12:9, 12:17, 12:20, 13:1, 13:10, 13:18, 14:8, 14:16, 14:20, 14:24, 15:1, 15:12,

15:19, 15:21, 15:24, 18:3, 19:12, 19:19, 19:21, 22:4, 22:8, 22:15, 23:1, 23:3, 23:16, 26:20, 28:9, 28:21, 29:2, 31:9, 31:12, 32:16, 34:6, 34:10, 34:14, 36:11, 37:12, 37:20, 37:22, 37:24, 39:9, 39:13, 69:12, 73:3, 73:6, 73:11, 77:9, 77:11, 77:14, 77:17, 77:19, 78:5, 78:7, 78:17, 78:23, 79:4, 79:10, 79:13, 79:16, 79:20, 79:23

**Court** [137] - 3:25, 4:8, 4:20, 4:25, 5:4, 5:6, 8:18, 14:11, 14:22, 15:10, 15:25, 16:24, 17:19, 17:25, 18:20, 21:6, 22:11, 22:17, 22:23, 23:14, 23:19, 24:10, 25:23, 27:8, 28:1, 28:2, 28:4, 30:4, 30:12, 31:16, 32:14, 32:21, 34:9, 34:20, 35:10, 35:22, 35:24, 36:2, 36:10, 36:14, 36:23, 37:2, 37:8, 37:11, 37:22, 38:6, 38:12, 39:10, 43:11, 43:14, 45:17, 48:12, 51:13, 53:2, 53:4, 53:6, 53:10, 53:14, 53:21, 53:22, 53:24, 54:21, 54:25, 55:17, 55:20, 55:23, 56:3, 56:5, 56:9, 56:13, 56:25, 57:3, 57:6, 57:10, 58:1, 58:4, 58:12, 58:25, 59:1, 59:12, 59:13, 60:6, 60:9, 60:18, 61:2, 61:7, 61:18, 62:7, 62:21, 63:2, 63:6, 63:14, 63:25, 64:6, 64:8, 64:10, 64:18, 65:4, 65:7, 65:10, 65:11, 65:14, 65:16, 65:21, 66:1, 66:3, 66:6, 66:7, 66:14, 66:18, 66:21, 66:22, 66:23, 66:24, 67:6, 67:11, 67:15, 68:1, 68:6, 68:10, 68:23, 68:24, 68:25, 69:16, 70:23, 71:17, 71:22, 72:2, 72:15, 72:17, 74:4, 75:8,

76:22, 78:15, 78:19
**Court's** [7] - 10:15, 17:15, 36:1, 58:1, 58:6, 67:12, 73:2
**Court-ordered** [1] - 75:8
**Courthouse** [1] - 2:8
**courthouse** [1] - 77:24
**COURTROOM** [3] - 3:5, 22:25, 77:16
**courtroom** [1] - 3:15
**courts** [1] - 54:6
**cover** [2] - 46:9, 64:16
**coverage** [2] - 17:15, 17:17
**covered** [1] - 15:23
**covers** [1] - 11:12
**COVID** [1] - 24:25
**CR** [1] - 3:5
**create** [4] - 40:23, 54:18, 57:8, 64:19
**created** [1] - 71:13
**creating** [1] - 28:25
**credit** [1] - 75:24
**CREED** [17] - 20:8, 26:3, 29:19, 41:18, 42:1, 42:8, 42:18, 42:19, 43:17, 43:18, 43:22, 44:1, 44:5, 44:10, 44:16, 45:13, 46:15
**CREED's** [1] - 42:19
**crime** [6] - 26:21, 54:17, 59:15, 60:25, 64:17, 70:2
**crimes** [11] - 25:8, 31:21, 34:1, 51:21, 55:10, 58:17, 58:23, 59:3, 59:4, 59:6, 59:11
**Criminal** [4] - 7:11, 9:19, 56:20, 57:19
**criminal** [19] - 7:12, 8:9, 45:25, 46:2, 50:14, 50:15, 51:2, 54:8, 54:12, 54:22, 62:10, 64:16, 67:19, 67:21, 68:3, 71:2, 71:24, 72:7
**criminals** [2] - 45:19, 48:5
**crisis** [3] - 19:9, 19:12, 42:22
**crushing** [1] - 59:18
**culpability** [6] - 6:9, 6:10, 27:2, 55:4, 61:23, 61:24
**culpable** [2] - 34:23, 56:15

**current** [2] - 47:2, 77:25
**custodial** [1] - 53:15
**custody** [4] - 37:5, 74:6, 76:19, 79:3
**customer** [2] - 49:10
**cut** [1] - 24:16

### D

**Dae** [2] - 3:6, 3:13
**daily** [2] - 43:7, 52:17
**data** [2] - 57:15, 76:6
**date** [8] - 46:16, 65:17, 69:7, 70:6, 73:24, 77:5, 77:7, 77:23
**daughter** [1] - 38:16
**day-to-day** [1] - 40:1
**days** [11] - 37:20, 70:6, 70:14, 70:22, 72:23, 76:19, 77:7, 77:9, 77:16, 77:17, 78:9
**deacon** [1] - 51:25
**deadline** [2] - 17:7, 65:20
**deadly** [1] - 47:14
**deal** [2] - 9:23, 78:19
**dealing** [4] - 37:2, 37:3, 52:18, 57:15
**deals** [1] - 58:16
**death** [1] - 42:3
**December** [2] - 40:3, 46:16
**decide** [2] - 19:9, 29:15
**decided** [3] - 20:15, 40:4, 49:22
**deciding** [2] - 19:17, 45:25
**decision** [12] - 18:11, 18:15, 18:17, 19:1, 19:3, 19:4, 23:24, 29:15, 29:18, 38:10, 52:24
**declined** [2] - 11:7, 15:4
**Defendant** [4] - 44:7, 70:17, 72:19
**defendant** [116] - 7:8, 7:11, 8:13, 8:17, 8:24, 8:25, 9:8, 12:4, 16:16, 17:14, 17:20, 17:23, 18:25, 20:15, 21:2, 24:10, 25:7, 25:12, 25:21, 34:23, 39:19, 39:25, 40:15, 40:16, 41:4, 41:12, 41:25, 42:25, 45:10, 46:6, 46:16, 47:3,

48:10, 48:20, 49:3, 49:6, 49:14, 49:19, 49:21, 49:24, 50:3, 50:7, 50:21, 51:7, 51:9, 51:13, 51:16, 51:24, 52:8, 52:12, 52:16, 52:18, 52:19, 52:22, 53:1, 53:25, 54:7, 54:10, 56:8, 56:10, 56:24, 59:7, 59:13, 60:3, 60:13, 61:10, 63:24, 64:1, 64:11, 65:14, 65:15, 66:1, 66:17, 67:21, 68:8, 68:9, 69:3, 69:5, 69:13, 69:16, 69:22, 70:1, 70:3, 70:7, 70:10, 70:13, 71:14, 71:17, 72:10, 73:13, 73:19, 73:25, 74:4, 74:10, 74:15, 74:21, 74:24, 74:25, 75:1, 75:4, 75:7, 75:10, 75:12, 75:13, 75:17, 75:20, 75:22, 76:3, 76:4, 76:14, 76:17, 76:18, 77:3, 77:20, 77:22, 77:25
**DEFENDANT** [2] - 2:11, 38:3
**defendant's** [31] - 6:9, 7:17, 18:8, 41:24, 42:11, 43:14, 46:24, 47:22, 48:16, 49:10, 49:12, 50:6, 50:14, 50:15, 50:17, 50:24, 51:2, 51:3, 51:8, 52:11, 52:15, 52:24, 55:4, 57:23, 60:12, 60:19, 67:22, 76:4, 76:8, 76:24
**defendants** [23] - 5:9, 8:7, 18:9, 21:24, 31:17, 31:21, 34:3, 34:21, 35:1, 43:11, 45:16, 46:3, 51:20, 52:22, 56:4, 56:6, 57:20, 58:18, 58:25, 63:1, 63:24, 65:16, 65:19
**Defendants** [1] - 3:13
**defense** [7] - 16:20, 18:18, 20:4, 20:13, 41:19, 50:5, 79:21
**define** [1] - 39:1
**definition** [1] - 31:12
**delay** [3] - 18:23, 42:1, 43:21
**delays** [1] - 55:13
**demanded** [1] - 44:25

**democratic** [1] - 59:19
**demonstrate** [3] - 33:6, 47:5, 50:7
**depart** [1] - 54:6
**Department** [4] - 16:23, 40:23, 41:3, 41:5
**departure** [2] - 54:2, 54:3
**departures** [1] - 5:8
**dependency** [1] - 76:25
**dependents** [1] - 60:13
**deprivation** [1] - 66:11
**DEPUTY** [3] - 3:5, 22:25, 77:16
**describe** [1] - 50:10
**described** [2] - 47:6, 52:13
**describes** [2] - 40:16, 50:24
**describing** [1] - 41:5
**designate** [1] - 70:7
**designated** [3] - 77:4, 77:20, 78:1
**designation** [3] - 77:7, 77:13, 77:22
**detailed** [1] - 41:5
**detailing** [1] - 57:15
**details** [3] - 17:18, 21:7, 44:12
**determinative** [1] - 54:4
**determine** [3] - 5:2, 5:6, 53:21
**determined** [1] - 5:24
**determining** [1] - 60:8
**deterrence** [7] - 55:10, 58:12, 58:13, 58:16, 60:12, 60:23, 61:17
**deterring** [2] - 58:17, 59:22
**develop** [5] - 40:4, 49:22, 67:17, 68:9, 71:17
**developer** [1] - 40:14
**developing** [1] - 49:25
**development** [10] - 25:22, 29:19, 40:21, 40:23, 41:6, 41:11, 41:18, 41:22, 42:14, 55:16
**deviation** [1] - 54:10
**devices** [1] - 76:7
**devote** [1] - 39:3
**devoted** [1] - 50:19
**devotion** [2] - 25:1, 51:24
**diagnoses** [1] - 14:15

**diagnosis** [1] - 14:2
**different** [4] - 14:17, 24:12, 30:11, 30:25
**differently** [2] - 34:3, 35:5
**difficult** [5] - 27:8, 28:16, 38:8, 48:15
**difficulty** [1] - 46:3
**dignity** [1] - 52:3
**diminish** [1] - 27:14
**dip** [1] - 8:20
**direct** [2] - 13:20, 14:11
**directed** [6] - 70:21, 75:3, 75:7, 75:11, 75:22, 76:21
**direction** [2] - 19:20, 67:23
**directives** [1] - 4:22
**directly** [2] - 13:8, 38:6
**directs** [2] - 56:5, 60:8
**disagrees** [2] - 18:13, 43:14
**disbelief** [1] - 51:1
**disclose** [2] - 72:7, 76:23
**disclosure** [1] - 75:25
**discourage** [1] - 59:2
**discovered** [1] - 49:3
**discovery** [1] - 46:18
**discuss** [3] - 23:12, 39:17, 52:15
**discussed** [3] - 6:14, 10:13, 44:8
**discusses** [1] - 18:22
**discussions** [3] - 44:1, 44:12, 54:14
**disparities** [5] - 31:24, 35:19, 56:6, 64:10, 64:19
**disparity** [7] - 23:10, 30:18, 33:7, 56:4, 56:12, 57:9, 58:3
**disposition** [2] - 56:24, 72:4
**dispute** [3] - 27:6, 29:25, 30:13
**disputes** [1] - 5:5
**disputing** [1] - 28:15
**dissolve** [1] - 71:9
**District** [5] - 24:23, 39:24, 49:16, 49:18, 49:20
**district** [2] - 42:5, 50:12
**DNA** [1] - 74:25
**Docket** [6] - 5:18, 10:23, 10:24, 12:1, 44:24, 63:5

**docket** [11] - 5:19, 7:18, 7:19, 7:24, 11:2, 11:3, 12:21, 17:5, 22:17, 23:1, 66:16
**doctors** [1] - 14:17
**Document** [1] - 10:5
**documentation** [1] - 76:2
**documents** [2] - 19:18, 22:21
**dollars** [5] - 20:18, 40:11, 42:14, 45:12, 55:15
**donations** [1] - 46:7
**done** [2] - 25:14, 26:9
**doors** [1] - 50:3
**double** [1] - 8:20
**double-dip** [1] - 8:20
**doubt** [1] - 23:18
**down** [3] - 19:10, 20:20, 29:16
**Downtown** [1] - 49:4
**downtown** [1] - 39:23, 41:9, 49:16
**downward** [9] - 26:15, 53:8, 53:16, 53:17, 53:18, 53:22, 54:7, 54:22, 65:5
**Dr** [1] - 14:16
**drinks** [1] - 52:17
**driven** [1] - 36:21
**driving** [2] - 29:1, 29:2
**DROOKS** [1] - 2:12
**drop** [1] - 43:20
**drops** [1] - 13:22
**drug** [2] - 76:18, 76:20
**drugs** [1] - 75:5
**due** [8] - 38:6, 38:9, 38:22, 53:8, 69:4, 69:14, 73:14, 73:15
**DUI** [1] - 52:17
**duration** [2] - 54:10, 54:13
**during** [17] - 5:15, 19:8, 19:21, 20:12, 24:25, 43:24, 44:7, 44:14, 48:10, 49:24, 51:5, 69:22, 73:15, 74:20, 75:6, 75:9, 75:19

**E**

**e-mail** [2] - 18:20, 76:7
**early** [1] - 28:6
**earn** [1] - 39:3
**East** [1] - 2:14

**easy** [3] - 37:21, 45:9, 47:7
**economic** [2] - 41:18, 48:15
**effect** [4] - 29:19, 51:17, 64:7, 66:12
**effective** [9] - 63:16, 64:9, 64:18, 65:13, 67:13, 67:17, 68:2, 68:10, 71:18
**effectuate** [1] - 60:25
**efforts** [3] - 24:24, 41:2, 41:13
**egregious** [3] - 32:3, 32:4, 35:4
**eight** [1] - 76:20
**either** [1] - 63:23
**electronic** [1] - 76:6
**element** [1] - 59:19
**employed** [1] - 24:25
**employee** [1] - 46:11
**employees** [10] - 19:18, 24:25, 47:12, 49:8, 49:9, 50:4, 54:18, 67:19, 67:23, 71:23
**end** [5] - 16:7, 19:6, 36:15, 47:8, 53:16
**endeavors** [1] - 52:2
**enforcement** [1] - 76:10
**engaged** [2] - 72:15, 72:17
**engaging** [1] - 59:3
**Englander** [1] - 57:11
**enhancement** [8] - 4:1, 6:5, 6:23, 7:2, 7:5, 55:3, 55:18, 55:25
**enjoyed** [1] - 42:5
**enormous** [1] - 59:15
**ensure** [10] - 41:2, 42:14, 55:9, 58:22, 60:16, 61:17, 68:2, 77:7, 77:12, 79:1
**enter** [1] - 52:24
**entered** [1] - 64:21
**entire** [2] - 45:14, 49:1
**entities** [1] - 58:17
**entitlement** [1] - 46:14
**entitlements** [2] - 20:18, 20:23
**entity** [4] - 36:7, 36:13, 36:16, 71:8
**entry** [4] - 46:13, 46:18, 46:20
**equals** [1] - 62:25
**equitable** [1] - 41:18
**equity** [1] - 24:24
**Esparza** [12] - 20:8,

28:3, 28:12, 29:17, 43:4, 43:7, 43:13, 43:25, 44:3, 44:8, 46:7, 47:10
**Esparza's** [1] - 28:20
**especially** [4] - 36:19, 38:13, 60:23, 61:5
**essentially** [1] - 33:23
**establishes** [2] - 60:3, 61:24
**estate** [4] - 40:13, 40:15, 42:23, 49:15
**estimated** [1] - 55:16
**estimation** [1] - 55:19
**ESTRADA** [1] - 2:4
**ethics** [10] - 67:18, 68:2, 68:10, 68:15, 68:18, 68:20, 71:18, 71:21, 71:23, 72:6
**evasion** [1] - 56:14
**event** [4] - 13:10, 52:10, 64:25, 68:17
**evidence** [7] - 20:17, 23:11, 31:18, 31:20, 41:1, 76:16
**evidenced** [1] - 46:25
**exactly** [1] - 34:13
**exam** [1] - 79:7
**examination** [1] - 72:13
**example** [2] - 18:20, 55:13
**exceed** [3] - 16:17, 62:16, 76:20
**except** [3] - 16:22, 60:3, 66:18
**exchange** [1] - 55:5
**excluding** [1] - 57:20
**excuse** [2] - 25:20, 33:24
**excuses** [1] - 45:1
**exemplary** [2] - 52:2, 58:18
**exercising** [1] - 34:4
**Exhibit** [6] - 18:21, 22:16, 28:1, 28:20, 33:5, 50:6
**exhibits** [2] - 22:19, 32:15
**Exhibits** [1] - 50:7
**existence** [1] - 71:24
**exonerated** [1] - 78:2
**expected** [4] - 34:8, 34:19, 55:13, 55:22
**expense** [2] - 46:14, 66:24
**expenses** [1] - 76:2
**experienced** [1] - 51:1
**experts** [3] - 46:14, 72:15, 72:17

**explain** [2] - 32:14, 57:7
**explained** [2] - 33:21, 42:11
**explaining** [1] - 51:16
**explanation** [1] - 34:24
**exploited** [2] - 45:5, 45:10
**explored** [2] - 44:14, 46:2
**express** [2] - 38:4, 50:13
**expressed** [1] - 53:1
**expressly** [1] - 44:3
**extension** [1] - 65:20
**extensive** [2] - 52:6, 64:12
**extortion** [1] - 43:12
**extremely** [2] - 51:19, 53:14
**eye** [1] - 79:7

**F**

**face** [1] - 25:18
**faced** [2] - 41:16, 45:3
**facilitate** [1] - 76:24
**facilitated** [1] - 67:22
**facing** [2] - 42:22
**fact** [15] - 18:22, 20:14, 23:22, 24:1, 27:3, 31:20, 32:16, 35:15, 35:20, 36:21, 61:5, 63:12, 65:6, 66:25, 67:12
**factor** [7] - 26:13, 47:18, 47:25, 48:1, 52:11, 56:3, 57:25
**factors** [12] - 18:1, 21:19, 21:20, 27:12, 31:25, 39:16, 57:19, 60:9, 61:8, 63:14, 65:10
**facts** [12] - 19:15, 20:11, 20:12, 27:22, 27:25, 29:6, 29:11, 29:25, 30:12, 39:15, 53:11, 58:13
**factual** [5] - 5:5, 9:22, 10:20, 10:21, 29:24
**failed** [1] - 57:7
**failure** [1] - 76:10
**fairer** [1] - 29:12
**faith** [3] - 25:2, 45:6, 51:24
**fallout** [2] - 37:2, 37:3
**falls** [3] - 33:9, 35:18, 35:19
**false** [5] - 46:12,

46:19, 46:21, 54:18, 54:19
**falsified** [1] - 19:18
**families** [1] - 51:21
**family** [18] - 22:12, 24:19, 37:3, 37:8, 38:10, 39:4, 47:23, 48:11, 48:13, 48:16, 48:20, 48:23, 49:1, 50:17, 50:18, 51:16, 51:17, 51:18
**far** [7] - 20:3, 31:23, 32:3, 32:4, 33:1, 34:23
**Fashion** [4] - 24:23, 49:16, 49:18, 49:20
**fashion** [2] - 49:12, 50:12
**fashioning** [4] - 11:18, 15:9, 39:13, 58:4
**father** [4] - 48:18, 48:21
**favor** [6] - 7:20, 26:14, 42:8, 42:19, 48:1, 52:11
**favorably** [1] - 45:20
**favors** [1] - 58:18
**FBI** [3] - 2:17, 3:10, 46:25
**federal** [3] - 62:10, 70:2, 75:24
**feelings** [1] - 38:4
**fees** [1] - 27:4
**feet** [1] - 40:7
**fell** [1] - 45:6
**fellow** [1] - 47:24
**few** [2] - 31:15, 47:8
**figure** [2] - 55:18, 77:8
**figured** [1] - 13:3
**figures** [1] - 32:3
**file** [10] - 3:19, 4:1, 4:4, 68:14, 68:19, 72:20, 72:22, 75:18, 75:19, 78:9
**filed** [12] - 5:13, 5:16, 7:16, 7:23, 10:25, 22:21, 32:17, 33:22, 43:18, 46:22, 63:4, 68:21
**filing** [3] - 18:8, 20:9, 21:1
**filings** [8] - 13:12, 14:19, 20:7, 20:14, 21:3, 23:10, 25:13, 52:14
**final** [1] - 7:20
**finally** [1] - 7:4
**Financial** [1] - 73:17
**financial** [8] - 19:25, 65:15, 70:4, 70:25,

72:3, 75:15, 75:16, 76:1
**fine** [87] - 6:8, 6:12, 6:13, 6:14, 6:17, 7:14, 10:6, 10:8, 10:16, 12:12, 12:16, 15:2, 15:13, 16:8, 16:9, 16:11, 16:17, 21:24, 27:3, 35:24, 36:13, 36:18, 36:24, 59:25, 60:2, 60:4, 60:6, 60:8, 60:13, 60:15, 60:16, 60:19, 60:22, 61:3, 61:4, 61:5, 61:6, 61:9, 61:11, 61:13, 61:18, 61:19, 61:22, 61:25, 62:2, 62:4, 62:7, 62:22, 62:23, 62:24, 63:2, 63:6, 63:7, 63:13, 63:15, 63:16, 63:18, 63:19, 63:22, 63:23, 63:24, 64:6, 64:7, 64:9, 64:10, 64:13, 64:19, 64:23, 65:6, 65:10, 65:11, 65:13, 65:21, 69:6, 69:23, 71:15, 73:20, 73:21, 73:22, 73:23, 74:21
**fined** [1] - 62:10
**fines** [11] - 10:4, 21:22, 35:17, 60:1, 62:17, 64:1, 64:22, 64:24, 65:16, 65:17, 65:19
**fire** [1] - 63:7
**First** [4] - 5:11, 69:18, 74:5, 74:8
**first** [12] - 5:22, 11:4, 16:25, 20:9, 39:18, 51:4, 56:8, 58:16, 69:2, 70:22, 77:24, 78:14
**fit** [1] - 47:2
**five** [5] - 16:11, 57:24, 69:18, 69:19, 70:22
**five-year** [1] - 16:11
**Floor** [1] - 2:14
**fly** [1] - 25:6
**focus** [1] - 46:5
**focused** [5] - 30:17, 30:18, 32:11, 33:7, 52:3
**focuses** [1] - 58:20
**follow** [2] - 70:11, 79:14
**followed** [1] - 44:7
**following** [7] - 5:21, 6:20, 67:25, 69:1,

69:20, 73:21, 74:13
**follows** [2] - 4:25, 47:7
**foolish** [1] - 38:9
**Footnote** [3] - 8:14, 13:21, 14:6
**FOR** [2] - 2:3, 2:11
**foregoing** [1] - 68:25
**forfeiture** [2] - 69:10, 74:1
**forget** [1] - 37:12
**form** [1] - 71:9
**formal** [2] - 71:4, 72:9
**format** [1] - 66:24
**former** [1] - 39:20
**formulating** [1] - 64:4
**forth** [22] - 4:22, 6:5, 6:22, 6:23, 7:2, 7:6, 8:13, 13:12, 14:13, 14:19, 16:1, 16:5, 16:13, 16:21, 17:4, 32:12, 58:8, 61:13, 68:11, 68:20, 71:19, 74:18
**forward** [5] - 19:17, 21:9, 29:1, 29:2, 44:10
**forwarded** [1] - 43:22
**fought** [1] - 42:18
**four** [4] - 6:4, 7:1, 48:15, 58:7
**four-level** [2] - 6:4, 7:1
**fraction** [1] - 55:12
**frank** [1] - 27:8
**frankly** [5] - 14:4, 15:6, 20:11, 27:21, 32:18
**Fred** [2] - 18:20, 18:21
**free** [1] - 44:4
**frequent** [1] - 43:9
**FRIDAY** [1] - 3:1
**friend** [2] - 43:5, 48:19
**friends** [5] - 39:4, 47:23, 48:11, 48:13, 51:15
**friendship** [1] - 43:1
**frivolous** [1] - 41:20
**front** [1] - 22:13
**frustrating** [1] - 41:12
**fulfills** [1] - 58:1
**full** [7] - 21:9, 21:22, 21:23, 42:16, 48:7, 65:18, 69:7
**fully** [3] - 21:4, 44:13, 46:2
**fundamentally** [1] - 50:8
**fundraiser** [2] - 42:24, 43:4
**funds** [1] - 72:5
**future** [3] - 39:1,

58:24, 68:3

## G

**gain** [1] - 55:11
**gains** [1] - 75:15
**general** [2] - 17:25, 58:13
**General** [4] - 73:25, 74:17, 74:19
**generosity** [1] - 52:5
**generous** [2] - 50:8, 63:23
**given** [7] - 9:9, 20:6, 31:4, 31:22, 38:14, 58:12, 77:13
**goals** [6] - 16:1, 16:4, 58:2, 58:5, 58:14, 64:2
**goodwill** [1] - 45:6
**government** [2] - 71:4, 72:10
**Government** [82] - 8:1, 8:6, 8:21, 12:18, 15:18, 15:19, 15:20, 16:6, 16:10, 17:1, 17:12, 18:13, 19:16, 20:4, 20:25, 21:3, 21:5, 21:10, 21:12, 21:16, 23:2, 23:9, 23:13, 23:21, 25:3, 26:1, 26:2, 26:3, 27:13, 27:20, 28:25, 29:14, 30:3, 30:11, 30:17, 30:19, 31:7, 31:16, 31:24, 32:8, 32:12, 32:23, 33:1, 33:3, 33:8, 33:10, 33:14, 33:17, 33:22, 34:2, 34:21, 35:18, 35:19, 36:6, 36:18, 37:15, 43:17, 43:19, 46:6, 47:11, 55:2, 55:8, 56:16, 56:23, 57:7, 57:18, 59:9, 59:19, 60:21, 62:5, 62:8, 63:15, 64:8, 64:21, 65:4, 66:13, 67:4, 68:4, 68:14, 73:9, 79:17, 79:18
**Government's** [13] - 7:19, 7:21, 8:11, 10:9, 34:22, 46:1, 46:4, 56:10, 57:13, 60:20, 65:2, 65:3, 68:6
**governs** [1] - 60:1
**grant** [1] - 13:20
**grave** [2] - 25:17, 26:18

**great** [2] - 25:5, 39:2
**greater** [4] - 4:23, 16:3, 58:7, 64:2
**greatest** [1] - 55:8
**greatly** [1] - 20:22
**greed** [2] - 19:4, 38:22
**grew** [1] - 49:6
**ground** [1] - 40:16
**grounds** [2] - 65:7, 76:11
**group** [1] - 26:4
**guess** [2] - 23:13, 31:10
**Guideline** [6] - 6:3, 6:6, 6:25, 7:3, 60:1, 71:19
**guideline** [38] - 4:21, 5:3, 5:5, 5:22, 6:10, 6:13, 6:20, 7:14, 8:5, 8:9, 9:8, 9:11, 9:17, 9:25, 10:4, 15:8, 15:25, 31:8, 32:4, 32:5, 34:10, 36:24, 52:20, 53:5, 53:7, 53:10, 53:17, 54:2, 56:21, 57:2, 57:4, 60:8, 61:4, 61:25, 62:4, 62:6, 63:19, 65:6
**Guidelines** [1] - 9:7
**guidelines** [24] - 4:20, 5:8, 8:10, 10:2, 10:6, 10:7, 10:10, 21:13, 21:17, 30:21, 30:24, 30:25, 31:22, 32:9, 32:10, 35:2, 53:9, 54:1, 54:5, 55:9, 57:23, 60:15, 66:6, 68:12
**guilty** [6] - 5:10, 33:20, 46:3, 52:25, 56:7, 56:13
**guys** [1] - 47:8

## H

**handbags** [1] - 49:12
**handled** [1] - 30:8
**Hans** [1] - 13:13
**happy** [2] - 29:14, 36:9
**Har** [1] - 3:9
**HAR** [1] - 2:7
**hard** [4] - 30:2, 48:7, 48:8, 50:11
**hardship** [1] - 48:7
**harm** [1] - 59:24
**harsher** [3] - 25:6, 25:9, 37:9
**Hazens** [1] - 64:20
**health** [1] - 51:9

**hear** [9] - 12:14, 13:15, 15:5, 16:25, 17:10, 18:4, 23:14, 37:24
**heard** [2] - 12:14, 15:3
**hearing** [1] - 5:15
**heart** [1] - 51:6
**heartache** [1] - 38:10
**heavily** [2] - 48:1, 52:11
**heeled** [1] - 31:17
**held** [2] - 62:8, 65:8
**help** [4] - 24:23, 28:7, 42:24, 43:21
**helped** [1] - 24:22
**hereby** [1] - 69:17, 74:4
**hide** [1] - 64:16
**high** [4] - 20:16, 30:21, 40:5
**high-rise** [1] - 40:5
**higher** [3] - 32:7, 32:24, 64:13
**Hill** [94] - 3:6, 3:14, 3:16, 5:14, 5:15, 5:20, 5:23, 6:17, 6:18, 8:2, 9:9, 9:20, 10:21, 10:23, 11:1, 11:4, 11:14, 11:19, 16:10, 16:19, 16:21, 17:21, 19:13, 20:25, 21:14, 24:15, 25:19, 25:21, 27:1, 27:2, 29:20, 35:8, 35:14, 39:19, 39:23, 40:1, 40:5, 40:8, 40:14, 40:21, 40:25, 41:2, 42:10, 42:20, 42:22, 43:21, 46:6, 46:22, 49:21, 49:23, 49:25, 54:20, 55:14, 55:15, 61:4, 61:6, 61:20, 61:23, 62:5, 62:21, 62:23, 63:1, 63:6, 63:8, 63:13, 63:17, 64:5, 64:15, 64:24, 64:25, 65:7, 66:1, 66:3, 66:5, 67:12, 67:13, 67:16, 67:24, 68:9, 68:13, 69:2, 69:16, 70:14, 70:17, 70:20, 70:23, 71:6, 71:11, 71:23, 72:1, 72:12, 72:19, 73:8
**hill** [4] - 17:4, 63:3, 65:15, 68:6
**Hill's** [8] - 11:5, 46:12, 46:17, 46:21, 63:24, 64:7, 65:5, 67:21
**himself** [1] - 37:5,

50:1, 77:4, 77:20
**hired** [1] - 40:18
**History** [4] - 7:11, 9:19, 56:20, 57:19
**history** [16] - 7:12, 8:9, 24:9, 24:14, 24:17, 25:4, 25:11, 25:15, 25:20, 25:21, 36:20, 36:21, 47:21, 48:4, 59:17, 66:9
**hollow** [1] - 20:6
**home** [2] - 38:21, 49:2
**homeless** [1] - 50:12
**honesty** [2] - 50:10, 52:3
**Honor** [57] - 3:8, 3:12, 3:20, 3:24, 4:3, 4:12, 4:13, 4:17, 8:16, 9:4, 10:2, 10:14, 11:14, 11:21, 12:7, 12:19, 12:25, 13:16, 13:19, 14:22, 15:18, 15:20, 15:22, 15:23, 17:11, 18:6, 19:14, 19:23, 21:16, 22:2, 22:7, 22:10, 22:22, 23:4, 26:14, 26:23, 28:14, 28:25, 32:20, 34:13, 35:8, 36:12, 37:19, 38:1, 38:3, 39:11, 39:12, 69:11, 73:1, 73:5, 73:10, 77:6, 78:3, 78:14, 78:22, 79:7, 79:19
**hope** [4] - 30:15, 30:16, 39:6
**horribly** [1] - 45:4
**hours** [1] - 70:16
**house** [1] - 76:5
**housing** [1] - 49:22
**huge** [3] - 50:2, 51:7, 52:9
**Huizar** [45] - 20:7, 28:6, 28:10, 28:12, 28:19, 33:8, 33:16, 33:18, 33:20, 33:25, 34:10, 35:1, 39:20, 42:5, 42:7, 42:8, 42:18, 42:24, 43:4, 43:9, 43:10, 43:13, 43:16, 43:20, 43:24, 43:25, 44:5, 44:8, 44:9, 44:16, 45:11, 46:7, 46:8, 46:10, 46:13, 47:10, 47:17, 56:11, 56:13, 56:16, 56:18, 61:1
**Huizar's** [9] - 39:23, 42:4, 42:12, 44:2, 44:4, 56:17, 56:21,

57:3, 57:8
**Huizar/Esparza** [1] - 47:4
**Huizar/Shen** [1] - 29:9
**humble** [1] - 49:5
**humility** [1] - 50:10
**hundreds** [1] - 50:4
**hurdle** [1] - 41:22
**Hyuk** [1] - 21:7

**I**

**idea** [2] - 8:16, 25:13
**identified** [1] - 57:12
**ill** [1] - 38:20
**illegal** [1] - 20:24
**illicit** [1] - 75:5
**immediately** [7] - 43:18, 43:22, 69:5, 69:14, 70:24, 71:7, 73:15
**implementation** [2] - 68:16, 71:20
**implementing** [1] - 72:6
**implications** [1] - 42:2
**importance** [3] - 42:12, 48:11, 48:13
**important** [3] - 14:4, 50:17, 51:12
**impose** [28] - 4:22, 16:2, 17:6, 17:7, 17:19, 18:5, 36:23, 39:10, 53:14, 56:25, 60:2, 60:6, 60:19, 61:3, 61:18, 62:22, 63:3, 63:6, 63:7, 63:15, 65:10, 65:11, 66:6, 66:8, 66:14, 66:18, 69:1, 73:11
**imposed** [23] - 4:11, 6:18, 16:18, 27:4, 31:2, 36:5, 36:13, 39:14, 52:23, 57:10, 61:6, 62:8, 62:17, 62:21, 62:23, 63:13, 64:1, 64:10, 64:23, 67:1, 67:5
**imposes** [2] - 35:24, 69:1
**imposing** [1] - 64:18
**imposition** [1] - 4:9
**imprisonment** [8] - 21:22, 45:22, 56:25, 57:16, 57:22, 57:24, 73:16, 74:10
**inability** [1] - 22:1
**inappropriate** [5] - 27:22, 33:11, 33:21, 36:7, 36:23

**incarceration** [1] - 79:9
**include** [7] - 6:17, 14:12, 14:23, 37:14, 40:6, 73:3, 73:6
**included** [3] - 14:15, 50:5, 73:7
**includes** [3] - 9:18, 69:9, 75:2
**including** [12] - 14:9, 40:2, 40:19, 47:22, 49:16, 50:11, 57:19, 61:8, 67:12, 68:16, 71:20, 74:17
**income** [3] - 75:14, 75:24, 76:2
**incorporate** [1] - 47:24
**incorporated** [1] - 46:21
**increased** [4] - 20:18, 20:22, 40:10, 42:1
**incredible** [2] - 24:16, 51:1
**incurred** [2] - 8:1, 27:5
**indeed** [3] - 54:14, 61:9, 61:11
**indicate** [1] - 55:9
**indicated** [5] - 28:12, 49:19, 52:10, 57:18, 63:16
**Indictment** [4] - 5:11, 69:18, 74:6, 74:8
**indictment** [1] - 65:1
**individual** [8] - 36:16, 39:14, 50:8, 56:8, 56:15, 58:22, 58:23, 62:9
**individualized** [1] - 63:25
**individually** [2] - 62:22, 65:11
**individuals** [7] - 57:12, 58:17, 59:11, 59:22, 60:2, 62:18, 72:16
**individuals'** [1] - 62:18
**inexcusable** [1] - 38:13
**infectious** [1] - 59:15
**influenced** [1] - 52:23
**information** [5] - 14:10, 14:13, 32:18, 37:13, 70:5
**inheritance** [1] - 75:14
**initial** [2] - 53:24, 64:23
**Inmate** [1] - 73:17
**innocent** [1] - 43:15

**innovation** [1] - 24:22
**inquiries** [2] - 70:11, 75:24
**inquiry** [2] - 71:4, 72:9
**insomnia** [1] - 52:17
**installments** [1] - 54:15
**instead** [4] - 19:16, 19:17, 47:5, 54:2
**institution** [4] - 75:16, 77:4, 77:20, 78:1
**instruct** [1] - 60:15
**instructed** [2] - 46:11, 46:19
**instructing** [1] - 54:18
**instructions** [1] - 70:12
**instructive** [1] - 54:3
**integrity** [4] - 50:10, 52:3, 59:9, 59:18
**intend** [3] - 17:6, 23:6, 32:2
**intended** [1] - 55:3
**intends** [2] - 36:2, 37:4
**intent** [1] - 71:7
**interest** [5] - 19:5, 62:9, 62:19, 63:4, 73:23
**interfere** [1] - 78:20
**interfering** [1] - 41:21
**interpreter** [3] - 3:15, 3:17, 4:4
**Interpreter** [3] - 2:17, 2:18, 3:25
**INTERPRETER** [3] - 3:20, 3:24, 4:3
**interrogation** [1] - 72:16
**intervals** [1] - 72:2
**invested** [1] - 49:14
**investigation** [8] - 19:16, 46:1, 46:4, 47:1, 65:2, 65:3, 71:4, 72:9
**investigators** [1] - 47:16
**investment** [3] - 40:25, 45:5, 50:3
**invited** [1] - 28:10
**involve** [1] - 66:10
**involved** [2] - 29:23, 50:1
**irrelevant** [1] - 28:21
**IRS** [1] - 46:23
**issue** [6] - 23:10, 23:15, 26:7, 59:25, 66:4, 78:19
**issued** [1] - 41:5
**issues** [17] - 9:24,

11:12, 12:11, 15:15, 15:17, 15:19, 29:23, 29:24, 47:11, 52:12, 52:13, 52:16, 52:18, 77:8, 77:13, 78:16, 78:25

**items** [1] - 49:5

## J

**Janet** [1] - 13:13
**January** [1] - 28:18
**JENKINS** [1] - 2:6
**Jenkins** [1] - 3:9
**jeopardy** [1] - 42:20
**jewel** [1] - 49:7
**jewelry** [1] - 49:12
**JFW** [1] - 3:5
**Johnston** [2] - 3:15, 23:15
**Joia** [1] - 49:6
**JOIA** [1] - 49:6
**joined** [1] - 48:21
**joint** [8] - 7:23, 8:2, 8:3, 36:15, 65:24, 68:15, 68:18, 68:20
**Joon** [1] - 40:20
**Jose** [1] - 39:20
**journey** [1] - 48:10
**judge** [1] - 77:2
**judgment** [9] - 4:8, 4:10, 65:17, 69:8, 69:16, 70:6, 73:4, 73:24, 74:4
**judgment's** [3] - 69:24, 71:15, 74:22
**judgments** [1] - 75:15
**Julia** [1] - 40:20
**JULY** [1] - 3:1
**July** [5] - 5:16, 7:24, 14:13, 40:8, 77:14
**June** [1] - 5:9
**jury** [2] - 5:10, 29:17, 46:2
**jury's** [1] - 20:6
**justice** [7] - 7:5, 20:3, 46:1, 54:18, 63:11, 64:17, 65:3
**justified** [1] - 36:20
**justify** [1] - 53:23
**Justin** [4] - 18:18, 28:5, 42:23, 43:13

## K

**Kang** [5] - 19:19, 19:20, 46:12, 46:17, 46:19
**karaoke** [3] - 28:9, 43:24, 44:4

**keep** [2] - 24:25, 50:3
**keeping** [1] - 59:16
**Kim** [33] - 13:13, 14:14, 14:16, 14:19, 18:18, 20:8, 21:7, 28:5, 28:10, 28:12, 29:17, 42:23, 43:1, 43:4, 43:5, 43:7, 43:10, 43:13, 43:19, 43:22, 44:3, 44:7, 44:18, 46:5, 46:7, 46:25, 47:15, 48:1, 52:14, 63:4
**Kim's** [1] - 43:8
**kind** [1] - 50:11
**kindness** [2] - 51:6, 52:5
**kinds** [1] - 53:4
**knowledgeable** [2] - 40:19, 72:16
**known** [4] - 40:4, 41:18, 42:3, 43:5
**knows** [2] - 45:1, 51:6
**Korea** [1] - 48:14
**Korean** [6] - 2:17, 2:18, 3:14, 3:25, 48:16, 67:9
**Koreatown** [1] - 49:2

## L

**L-i-m** [1] - 4:5
**LA** [7] - 40:22, 46:15, 49:4, 66:19, 67:6, 67:7, 67:9
**labor** [4] - 41:17, 41:20, 42:6, 55:13
**lack** [1] - 46:24
**ladies** [1] - 48:19
**language** [2] - 3:15, 67:9
**Language** [2] - 2:17, 2:18
**large** [1] - 31:6
**largely** [1] - 25:1
**last** [4] - 4:4, 5:9, 24:2, 72:11
**late** [1] - 46:18
**latter** [1] - 42:3
**law** [8] - 41:13, 54:11, 58:11, 60:11, 60:23, 61:16, 73:23, 76:9
**law-abiding** [1] - 54:11
**laws** [1] - 59:22
**lead** [1] - 41:10
**leading** [1] - 26:9
**learned** [2] - 38:25, 51:2, 72:10
**learning** [2] - 38:25,

70:24
**least** [3] - 35:10, 62:9, 76:19
**lectern** [2] - 13:17, 38:1
**led** [2] - 18:11, 35:13
**Lee** [115] - 3:6, 3:13, 3:14, 5:14, 5:19, 6:19, 9:9, 9:11, 9:18, 10:7, 10:21, 10:23, 11:2, 12:21, 13:23, 16:9, 16:16, 16:18, 18:7, 18:9, 19:16, 21:2, 21:23, 24:3, 24:15, 25:12, 26:8, 26:12, 27:1, 27:17, 28:5, 29:1, 29:2, 29:8, 29:12, 29:18, 30:8, 33:1, 33:11, 33:19, 33:20, 34:24, 35:3, 36:14, 36:15, 36:19, 36:24, 37:1, 37:11, 37:22, 37:25, 38:2, 40:3, 40:13, 40:18, 41:1, 42:13, 42:21, 43:8, 43:9, 43:15, 43:18, 43:19, 43:21, 43:23, 43:25, 44:7, 44:14, 44:18, 44:19, 44:23, 45:1, 45:3, 45:8, 46:8, 46:11, 46:16, 46:17, 46:20, 46:22, 47:2, 47:7, 47:13, 47:15, 47:21, 48:6, 48:14, 48:24, 53:14, 53:18, 54:14, 54:16, 55:14, 55:21, 56:8, 59:7, 60:1, 60:22, 60:24, 61:2, 61:5, 61:11, 62:20, 62:22, 63:2, 63:3, 63:12, 65:10, 65:14, 67:22, 73:12, 73:13, 78:8
**Lee's** [23] - 22:11, 22:17, 35:13, 37:4, 40:15, 40:22, 42:17, 44:8, 45:25, 48:4, 53:25, 54:12, 54:21, 54:24, 55:12, 56:1, 57:12, 62:24, 63:10, 63:21, 63:23, 64:6, 79:1
**legal** [2] - 27:4, 29:23
**length** [2] - 20:13, 51:5, 57:22
**lengths** [2] - 57:16
**leniency** [1] - 48:2
**lenient** [1] - 59:8
**less** [4] - 14:3, 55:21,

63:18, 73:16
**lesser** [1] - 59:5
**letter** [15] - 6:16, 11:9, 11:10, 16:13, 16:21, 17:5, 22:17, 37:4, 48:12, 50:6, 50:22, 53:1, 62:14, 73:6, 73:7
**letters** [20] - 5:13, 5:17, 6:16, 14:13, 14:16, 14:23, 22:12, 24:11, 24:20, 25:23, 47:23, 50:5, 50:7, 50:9, 50:13, 50:21, 51:12, 51:23, 52:1, 66:15
**level** [30] - 5:25, 6:4, 6:6, 6:21, 7:1, 7:5, 7:6, 7:10, 8:8, 8:12, 9:10, 9:12, 9:15, 9:18, 9:19, 9:21, 10:2, 10:15, 10:18, 32:23, 32:25, 53:8, 56:18, 57:20, 61:21
**levels** [3] - 8:22, 9:6, 33:4
**liabilities** [1] - 76:3
**liberty** [1] - 66:11
**lie** [1] - 47:16
**life** [11] - 18:12, 18:14, 25:8, 26:12, 38:9, 38:16, 38:19, 38:23, 48:6, 50:19, 54:11
**lifelong** [1] - 51:23
**lifetime** [2] - 45:7, 51:25
**lifted** [1] - 24:18
**light** [4] - 45:11, 60:19, 61:5, 63:12
**likely** [3] - 42:18, 59:1, 60:4
**Lim** [2] - 2:18, 63:4
**lim** [2] - 21:7
**limit** [1] - 63:2
**limited** [3] - 6:12, 54:9, 54:13
**limits** [1] - 62:2
**LINCENBERG** [1] - 2:12
**line** [7] - 27:8, 27:9, 28:16, 30:2, 33:9, 34:22, 42:17
**Lines** [2] - 44:21, 44:22
**liquid** [1] - 61:12
**liquidate** [1] - 61:12
**listed** [1] - 66:15
**litigating** [1] - 29:22
**litigation** [2] - 71:2, 72:8

**lived** [2] - 26:12, 49:2
**LLC** [2] - 3:6, 5:14
**loan** [1] - 46:15
**local** [3] - 65:25, 67:10, 70:2
**located** [4] - 39:22, 42:4, 49:21, 77:24
**look** [8] - 24:14, 25:11, 25:12, 25:20, 26:13, 27:25, 31:12, 34:25
**looked** [4] - 15:6, 24:11, 32:17, 32:21
**looking** [2] - 15:22, 43:24
**Los** [8] - 2:9, 2:14, 38:13, 39:23, 40:9, 41:9, 49:2, 49:16
**LOS** [1] - 3:1
**lose** [2] - 72:23, 78:10
**loses** [1] - 59:9
**loss** [2] - 45:14, 55:7
**lost** [1] - 48:10
**lottery** [1] - 75:14
**low** [4] - 16:7, 31:9, 53:14, 53:16
**low-end** [1] - 16:7
**loyal** [1] - 42:6

## M

**Mack** [1] - 3:9
**MACK** [1] - 2:6
**mail** [2] - 18:20, 76:7
**mailing** [1] - 70:15
**maintain** [2] - 78:15, 78:24
**major** [1] - 71:2
**majority** [1] - 39:25
**man** [5] - 24:16, 24:17, 36:22, 51:7, 52:8
**managing** [3] - 21:2, 39:25, 67:22
**mandatory** [1] - 66:7
**manner** [3] - 52:3, 71:9, 76:13
**March** [3] - 5:12, 46:5, 47:1
**MARELLA** [1] - 2:12
**marked** [1] - 54:10
**Marshal** [1] - 77:23
**MARTIN** [1] - 2:4
**material** [1] - 70:25
**materials** [1] - 21:10
**matter** [6] - 4:8, 29:18, 46:15, 53:24, 59:17, 64:23
**maximum** [17] - 6:12, 10:9, 16:8, 16:11, 21:23, 36:18, 60:6, 60:19, 60:22, 61:9,

61:11, 61:18, 61:25, 62:2, 63:6, 63:20, 64:10
**mean** [9] - 8:15, 26:17, 28:13, 29:3, 33:9, 44:25, 51:10, 57:22
**meaning** [1] - 47:10
**means** [4] - 8:18, 33:2, 36:22, 49:7
**meant** [3] - 24:8, 29:19, 42:1
**measure** [2] - 31:1, 56:1
**media** [6] - 17:15, 17:17, 66:24, 67:11, 76:7
**median** [2] - 33:9, 57:22
**medians** [1] - 33:2
**medical** [10] - 13:12, 14:5, 14:10, 37:13, 52:12, 77:7, 77:13, 78:16, 78:25
**medications** [3] - 14:14, 75:6, 79:1
**meet** [5] - 7:25, 49:4, 58:7, 68:14, 71:13
**meeting** [3] - 28:9, 43:24, 44:4
**member** [2] - 39:20, 40:1
**members** [5] - 23:15, 47:24, 48:20, 50:20, 51:15
**memorandum** [1] - 63:5
**mentioned** [1] - 63:1
**merge** [1] - 71:8
**merged** [1] - 71:13
**merges** [1] - 71:11
**merit** [1] - 18:22
**message** [2] - 59:1, 59:10
**met** [1] - 41:2
**metric** [3] - 20:15, 53:20, 56:1
**microphone** [1] - 3:23
**midrange** [2] - 31:8, 61:3
**million** [15] - 6:8, 6:11, 6:13, 16:11, 39:21, 40:7, 40:12, 55:16, 55:17, 61:22, 61:25, 62:1, 63:18, 64:11
**millions** [6] - 20:18, 20:24, 40:11, 42:14, 45:12, 55:15
**mind** [1] - 77:5
**minimum** [2] - 61:24, 63:19

**minority** [6] - 3:16, 21:4, 23:15, 63:3, 63:9, 63:21
**minuscule** [1] - 45:11
**minute** [2] - 9:24, 24:16
**misapprehend** [1] - 23:22
**misapprehension** [1] - 30:22
**misconduct** [1] - 24:17
**Miss** [1] - 23:15
**mistake** [6] - 26:18, 26:20, 38:25, 51:7, 52:9
**mistakes** [3] - 24:4, 25:17, 39:2
**mitigating** [1] - 21:19
**mixed** [1] - 40:5
**mixed-use** [1] - 40:5
**modify** [3] - 66:20, 68:23, 71:9
**modifying** [1] - 65:21
**mom** [1] - 38:18
**money** [5] - 19:3, 20:2, 29:20, 29:21, 44:5
**moneys** [1] - 75:13
**monitor** [1] - 12:4
**monitored** [1] - 14:1
**month** [2] - 70:22, 76:21
**months** [27] - 7:14, 9:15, 9:20, 16:7, 16:17, 18:16, 19:8, 23:25, 27:24, 28:18, 29:5, 34:12, 34:15, 44:7, 53:8, 54:14, 54:15, 56:22, 56:25, 57:1, 57:24, 65:17, 69:7, 73:24, 74:7, 79:7
**moreover** [5] - 47:14, 54:16, 59:12, 64:4, 64:15
**morning** [9] - 3:8, 3:11, 3:12, 3:20, 3:24, 4:3, 4:6, 44:3, 60:21
**most** [11] - 13:12, 18:8, 19:15, 38:8, 40:15, 45:16, 45:18, 50:17, 50:22, 56:15, 66:15
**mother** [3] - 37:9, 48:21, 51:8
**motion** [1] - 29:5
**move** [4] - 10:19, 15:16, 44:10, 48:17
**moved** [1] - 21:8,

48:18, 49:2
**MR** [52] - 3:12, 4:13, 4:17, 10:12, 11:14, 12:16, 12:25, 13:7, 13:16, 13:19, 14:11, 14:18, 14:22, 14:25, 15:10, 15:22, 22:10, 22:22, 23:4, 23:20, 26:22, 28:14, 28:24, 29:25, 31:10, 31:14, 32:19, 34:8, 34:13, 34:19, 36:12, 37:18, 37:21, 37:23, 37:25, 39:12, 73:1, 73:5, 77:6, 77:10, 77:12, 77:15, 77:18, 78:3, 78:6, 78:14, 78:21, 78:24, 79:6, 79:12, 79:15, 79:22
**MS** [23] - 3:8, 4:12, 8:16, 9:4, 10:1, 11:21, 11:23, 12:1, 12:7, 12:19, 15:18, 15:20, 17:11, 18:6, 19:14, 19:20, 19:23, 22:7, 23:2, 39:11, 69:11, 73:10, 79:18
**multiple** [1] - 27:18
**multiplier** [1] - 61:24
**multiplying** [1] - 62:17
**must** [7] - 4:20, 15:25, 59:1, 66:6, 72:20, 72:22, 78:9
**Myoung** [1] - 2:18
**MYOUNG** [1] - 4:4

### N

**name** [3] - 4:4, 71:7, 71:11
**narrative** [1] - 28:25
**nation's** [1] - 59:17
**national** [5] - 32:11, 33:2, 33:9, 50:2, 67:10
**nature** [15] - 25:10, 25:20, 26:24, 27:6, 28:22, 30:7, 36:20, 39:18, 43:12, 52:7, 66:9, 66:25, 67:1, 67:7, 68:7
**near** [3] - 16:7, 31:9, 31:13
**necessary** [10] - 4:23, 15:7, 16:3, 21:25, 23:19, 37:10, 58:7, 64:2, 66:11, 68:2
**need** [12] - 13:11, 13:14, 14:1, 15:11, 25:9, 36:3, 36:16,

49:22, 56:5, 60:9, 73:1, 79:14
**needed** [1] - 46:9
**needs** [1] - 16:4
**negotiated** [2] - 64:22, 64:24
**negotiations** [3] - 18:16, 27:24, 44:12
**neighborhood** [2] - 40:24, 41:9
**NESSIM** [1] - 2:12
**NEUMAN** [52] - 3:12, 4:13, 4:17, 10:12, 11:14, 12:16, 12:25, 13:7, 13:16, 13:19, 14:11, 14:18, 14:22, 14:25, 15:10, 15:22, 22:10, 22:22, 23:4, 23:20, 26:22, 28:14, 28:24, 29:25, 31:10, 31:14, 32:19, 34:8, 34:13, 34:19, 36:12, 37:18, 37:21, 37:23, 37:25, 39:12, 73:1, 73:5, 77:6, 77:10, 77:12, 77:15, 77:18, 78:3, 78:6, 78:14, 78:21, 78:24, 79:6, 79:12, 79:15, 79:22
**Neuman** [9] - 2:13, 3:12, 11:11, 12:23, 13:15, 15:21, 22:9, 49:17, 77:5
**never** [4] - 38:5, 45:19, 48:10, 51:11
**new** [5] - 14:14, 32:18, 59:13, 67:24
**New** [2] - 49:1, 64:11
**newly** [1] - 71:12
**news** [1] - 67:10
**next** [2] - 56:3, 66:4
**night** [1] - 24:2
**nine** [1] - 34:15
**nobody** [1] - 27:19
**non** [2] - 46:14, 64:21
**non-operating** [1] - 46:14
**non-prosecution** [1] - 64:21
**none** [2] - 45:1, 51:15
**nonetheless** [1] - 18:23
**norm** [1] - 31:7
**North** [1] - 2:8
**Nos** [4] - 5:18, 5:19, 7:18, 12:2
**notably** [1] - 63:18
**note** [6] - 10:14, 12:9, 23:14, 28:3, 34:20, 35:9

**noted** [2] - 36:4, 73:2
**notes** [3] - 28:20, 40:14, 51:3
**noteworthy** [1] - 24:24
**nothing** [5] - 10:1, 23:17, 35:11, 63:10, 79:18
**notice** [5] - 67:18, 70:16, 72:20, 72:22, 78:9
**notified** [1] - 46:17
**notify** [4] - 70:14, 70:23, 71:6, 71:23
**number** [2] - 43:4, 72:13
**Number** [1] - 4:1

### O

**oath** [3] - 3:18, 4:1, 4:4
**object** [4] - 8:22, 8:23, 9:3, 9:4
**objection** [7] - 9:2, 9:5, 11:12, 11:15, 12:6, 23:2, 66:17
**objections** [15] - 5:4, 9:16, 9:23, 10:18, 10:20, 10:22, 10:24, 11:5, 12:21, 12:23, 13:2, 13:3, 13:20, 15:4, 16:20
**obligated** [1] - 71:13
**obligation** [1] - 75:16
**obligations** [1] - 71:14
**observation** [2] - 50:15, 52:8
**obstruct** [2] - 46:1, 65:3
**obstructed** [1] - 54:18
**obstructing** [1] - 63:11
**obstruction** [3] - 7:5, 20:3, 64:17
**obtain** [2] - 27:21, 41:20
**obtained** [1] - 55:6
**obtaining** [1] - 42:12
**obviously** [10] - 23:5, 24:21, 26:7, 26:25, 30:1, 31:2, 33:16, 33:21, 36:17, 70:13
**occur** [2] - 27:11, 68:3
**occurred** [4] - 17:14, 17:24, 27:11, 37:6
**occurrence** [1] - 54:8
**October** [4] - 77:15, 77:16, 77:17, 77:21
**OF** [1] - 2:1
**offense** [42] - 5:25,

6:6, 6:21, 7:6, 7:10, 8:8, 9:12, 9:15, 9:18, 9:21, 10:1, 10:15, 10:18, 21:18, 25:11, 25:15, 26:25, 27:7, 27:14, 28:22, 30:7, 30:20, 32:22, 32:25, 33:4, 39:18, 47:19, 55:2, 55:8, 56:2, 56:18, 57:20, 58:10, 60:10, 61:15, 61:21, 62:11, 66:9, 66:19, 66:25, 67:8

**offenses** [7] - 27:18, 35:12, 56:21, 57:17, 67:3

**office** [2] - 43:5, 75:4

**Office** [7] - 37:17, 61:22, 66:13, 67:4, 71:6, 74:16, 76:23

**officer** [59] - 5:13, 5:16, 5:21, 5:24, 6:1, 6:4, 6:7, 6:8, 6:14, 6:19, 6:23, 7:1, 7:4, 7:10, 7:12, 10:25, 11:5, 11:6, 11:16, 11:24, 12:2, 12:3, 12:22, 13:1, 13:4, 13:5, 13:8, 14:9, 14:12, 14:21, 14:23, 15:4, 33:15, 37:13, 60:18, 61:21, 62:13, 62:20, 66:21, 67:16, 69:9, 70:4, 70:9, 70:11, 70:12, 70:14, 70:18, 70:20, 70:24, 72:2, 72:15, 75:7, 75:11, 75:21, 75:22, 75:23, 76:9, 76:10, 76:21

**officer's** [2] - 8:6, 22:5

**offices** [1] - 70:18

**official** [3] - 55:6, 55:7, 70:7

**officials** [1] - 41:14

**offset** [3] - 6:17, 22:6, 35:22, 46:15, 62:7, 62:13, 62:16, 62:23, 63:16, 64:5, 65:7, 65:12, 73:1

**offsetting** [1] - 62:24

**often** [1] - 59:4

**old** [2] - 38:19, 51:8

**once** [2] - 8:16, 19:15

**one** [27] - 10:3, 14:3, 15:6, 19:3, 19:15, 22:15, 22:21, 24:24, 31:5, 32:1, 34:3, 34:4, 39:22, 40:14, 43:4, 44:20, 49:8,

---

50:18, 56:14, 70:24, 72:25, 74:15, 76:18, 78:11, 79:2, 79:7

**one-story** [1] - 39:22

**ongoing** [1] - 43:12

**oOo** [1] - 3:3

**open** [1] - 50:3

**opened** [1] - 49:4

**opening** [1] - 21:10

**operating** [1] - 46:14

**operations** [2] - 40:2, 72:4

**opportunity** [3] - 29:9, 38:5, 39:8

**opposed** [1] - 33:18

**opposing** [1] - 26:4

**opposite** [3] - 21:11, 21:14, 25:7

**opposition** [2] - 26:3, 26:5

**ordained** [1] - 51:24

**Order** [4] - 73:25, 74:17, 74:19

**order** [13] - 55:9, 59:2, 60:22, 60:25, 61:15, 65:22, 66:1, 66:23, 69:9, 69:10, 74:1, 75:21, 78:15

**ordered** [11] - 67:17, 69:3, 69:5, 69:12, 73:13, 73:19, 75:8, 75:15, 75:16, 77:3, 77:19

**ordering** [1] - 14:23

**orders** [4] - 69:24, 71:15, 74:22, 78:17

**organization** [15] - 41:17, 62:8, 62:10, 62:11, 62:19, 66:10, 66:23, 69:23, 70:1, 70:3, 70:7, 70:8, 70:10, 70:13, 71:14

**organization's** [3] - 70:8, 72:3, 72:5

**organizational** [1] - 71:10

**organizations** [2] - 42:6, 66:7

**original** [1] - 40:11

**otherwise** [4] - 10:18, 18:11, 54:11, 71:9

**ourselves** [1] - 35:3

**outlets** [1] - 67:10

**outlier** [1] - 32:25

**outlined** [1] - 68:4

**outpatient** [1] - 75:1

**outset** [1] - 52:10

**overbroad** [1] - 68:7

**overruled** [1] - 9:6

**oversight** [1] - 22:22

---

**overstates** [1] - 55:1

**overtly** [1] - 30:5

**owed** [1] - 75:18

**own** [5] - 18:19, 19:18, 20:21, 47:11, 49:13

**owned** [2] - 48:19, 63:8

**owners** [3] - 3:16, 49:11, 49:20

**owns** [2] - 62:9, 62:20

## P

**P.C** [2] - 2:12

**Page** [8] - 8:14, 10:5, 33:5, 33:24, 41:4, 44:21, 44:24

**paid** [13] - 19:7, 28:23, 29:21, 45:1, 46:10, 46:13, 54:14, 54:15, 64:12, 69:7, 72:18, 73:23

**pain** [1] - 38:10

**painted** [1] - 30:11

**painting** [1] - 18:9

**Palmer** [3] - 3:9, 10:12, 27:24

**PALMER** [24] - 2:5, 3:8, 4:12, 8:16, 9:4, 10:1, 11:21, 11:23, 12:1, 12:7, 12:19, 15:18, 15:20, 17:11, 18:6, 19:14, 19:20, 19:23, 22:7, 23:2, 39:11, 69:11, 73:10, 79:18

**Pamela** [1] - 3:15

**paper** [2] - 29:5, 44:24

**papers** [25] - 7:17, 7:19, 7:21, 8:14, 11:17, 17:2, 18:4, 23:6, 23:17, 23:18, 23:21, 24:1, 24:11, 25:13, 27:6, 27:15, 30:4, 30:16, 31:15, 36:5, 47:22, 57:12, 57:13, 76:5

**paragraph** [1] - 14:3

**Paragraph** [8] - 5:24, 6:2, 6:5, 6:22, 6:24, 7:2, 11:8

**Paragraphs** [8] - 6:15, 7:6, 11:13, 12:22, 13:2, 13:3, 15:1, 61:14

**paragraphs** [1] - 11:6

**Park** [1] - 2:14

**parking** [1] - 39:22

**part** [4] - 26:1, 47:24, 73:2, 75:8

---

**participate** [1] - 75:1

**particular** [4] - 26:13, 53:23, 59:3, 67:5

**parties** [9] - 7:16, 7:23, 39:15, 56:20, 65:24, 67:16, 67:25, 68:17, 68:18

**partner** [1] - 21:2

**partners** [2] - 49:22, 64:20

**past** [5] - 38:8, 38:24, 47:9, 48:5, 57:23

**patch** [1] - 75:3

**path** [1] - 19:9

**pay** [33] - 19:7, 20:15, 22:1, 29:3, 44:18, 47:4, 56:9, 60:4, 60:12, 60:20, 60:25, 61:6, 61:11, 61:12, 63:12, 63:21, 65:16, 65:17, 65:19, 65:21, 66:1, 69:3, 69:5, 69:13, 69:23, 73:13, 73:19, 74:21, 75:8, 75:12, 75:18, 75:19

**pay-to-play** [2] - 47:4, 56:9

**paying** [1] - 63:13

**payment** [10] - 44:8, 44:13, 55:4, 55:6, 69:25, 71:15, 74:23, 75:10, 75:11, 75:12

**payments** [2] - 44:13, 67:25

**payor** [1] - 55:11

**people** [6] - 20:1, 22:12, 24:18, 25:16, 38:11, 38:12

**per** [5] - 60:6, 61:19, 62:3, 73:16, 76:20

**perceived** [1] - 59:4

**percent** [6] - 53:16, 57:2, 62:9, 62:21, 62:24, 63:19

**percentage** [1] - 62:18

**perhaps** [1] - 35:10

**period** [11] - 23:25, 54:15, 64:12, 65:20, 69:22, 73:15, 74:20, 75:6, 75:9, 75:19, 79:8

**periodic** [2] - 72:1, 76:20

**permit** [1] - 70:18

**person** [3] - 50:11, 58:21, 76:4

**personal** [2] - 25:1, 46:15

**personally** [1] - 61:3

**perspective** [1] -

---

51:14

**persuasive** [2] - 50:22, 63:11

**persuasively** [1] - 57:7

**pertaining** [3] - 69:24, 71:15, 74:22

**pertinent** [1] - 53:5

**phase** [1] - 5:1

**Phase** [11] - 5:2, 9:13, 11:19, 12:13, 12:14, 12:15, 15:13, 15:15, 15:16, 18:3

**phones** [1] - 76:6

**phonied** [1] - 19:13

**phony** [2] - 46:20

**picture** [3] - 30:12, 51:13, 52:7

**pieces** [1] - 29:5

**place** [4] - 18:16, 20:9, 20:19, 33:6

**placed** [3] - 69:17, 74:11, 79:3

**places** [1] - 60:13

**PLAINTIFF** [1] - 2:3

**plan** [6] - 36:8, 36:9, 39:3, 40:23, 68:7

**planning** [2] - 54:9, 54:13

**Planning** [3] - 40:23, 41:3, 41:4

**play** [2] - 47:4, 56:9

**played** [1] - 47:17

**plea** [9] - 34:6, 34:11, 34:14, 52:24, 56:10, 56:17, 56:23, 57:3

**pleaded** [1] - 33:20

**pled** [1] - 56:13

**PLUM** [3] - 42:7, 42:15, 45:14

**pocketed** [1] - 47:10

**point** [22] - 19:8, 22:15, 23:23, 24:7, 24:13, 24:14, 26:7, 28:15, 30:15, 30:18, 31:3, 32:2, 32:13, 34:13, 34:20, 35:21, 36:12, 41:10, 49:8, 56:12, 78:2

**pointed** [6] - 25:23, 31:25, 32:23, 35:2, 49:24, 55:2

**pointing** [3] - 28:24, 31:6, 32:22

**points** [5] - 7:8, 7:12, 8:10, 41:4, 43:17

**police** [1] - 21:13

**policies** [1] - 67:24

**policy** [3] - 5:7, 53:6, 54:2

**political** [5] - 42:2, 59:14, 59:16, 59:23
**politicians** [1] - 57:11
**poor** [1] - 51:8
**populate** [1] - 50:12
**portion** [1] - 63:22
**portrayed** [1] - 30:6
**posed** [1] - 33:19
**position** [13] - 7:17, 7:21, 8:11, 11:17, 17:15, 23:16, 35:23, 39:6, 44:24, 57:12, 57:13, 60:21, 68:5
**positions** [3] - 11:18, 59:22, 68:21
**positive** [3] - 25:22, 39:2
**possible** [2] - 42:2, 70:16
**possibly** [1] - 55:15
**powerful** [2] - 42:7, 51:15
**practice** [1] - 29:6
**praised** [2] - 26:11, 26:12
**pray** [1] - 38:20
**prayed** [1] - 38:19
**pre** [1] - 65:1
**pre-indictment** [1] - 65:1
**preface** [1] - 30:2
**preferred** [1] - 44:18
**prefers** [1] - 36:10
**preliminary** [2] - 69:9, 74:1
**premises** [1] - 72:14
**prepare** [1] - 14:9
**prepared** [1] - 9:17
**preparer** [1] - 46:18
**prescribed** [2] - 13:23, 79:2
**prescription** [1] - 75:5
**PRESENT** [1] - 2:16
**present** [3] - 3:14, 45:24, 71:10
**presented** [3] - 39:15, 41:22, 42:1
**presentence** [19] - 4:15, 4:16, 5:4, 5:13, 5:17, 6:2, 6:20, 6:22, 6:24, 9:23, 10:22, 15:5, 22:5, 37:14, 52:13, 61:13, 62:14, 76:23, 77:1
**press** [1] - 67:9
**pressure** [2] - 19:25
**Pretrial** [2] - 74:16, 76:22
**prevent** [1] - 67:2
**preventing** [1] - 58:2

**previously** [1] - 47:6
**price** [1] - 40:11
**primary** [1] - 70:9
**principal** [1] - 70:15
**principles** [1] - 16:3
**prison** [3] - 47:20, 51:3, 51:9
**Prisons** [8] - 73:17, 74:6, 77:4, 77:21, 78:18, 78:20, 79:13, 79:16
**privacy** [1] - 52:15
**private** [1] - 43:24
**Probation** [8] - 16:23, 37:17, 61:22, 66:13, 67:4, 71:6, 74:16, 76:22
**probation** [70] - 5:12, 5:16, 5:21, 5:24, 6:1, 6:4, 6:7, 6:8, 6:14, 6:19, 6:23, 7:1, 7:4, 7:10, 7:12, 8:6, 10:25, 11:5, 11:6, 11:16, 11:24, 12:2, 12:3, 12:12, 12:22, 13:1, 13:4, 13:5, 13:7, 14:9, 14:12, 14:21, 14:23, 15:4, 16:21, 22:4, 33:15, 36:10, 37:13, 60:18, 61:21, 62:13, 62:20, 66:4, 66:7, 66:14, 66:17, 66:16, 69:9, 69:17, 69:22, 70:4, 70:9, 70:11, 70:12, 70:14, 70:18, 70:20, 70:24, 72:2, 72:15, 74:18, 75:4, 75:7, 75:11, 75:21, 75:22, 75:23, 76:9, 76:21
**problem** [3] - 26:1, 36:8, 46:8
**problematic** [1] - 34:2
**problems** [1] - 41:25
**proceeding** [4] - 62:10, 71:2, 71:3, 72:8
**proceedings** [1] - 79:24
**process** [4] - 5:1, 41:11, 41:21, 44:11
**processes** [1] - 26:8
**productive** [1] - 50:20
**professionals** [2] - 40:19, 41:24
**profiting** [1] - 20:24
**program** [23] - 16:23, 17:8, 36:4, 36:5, 66:20, 67:14, 67:18, 68:2, 68:5, 68:10,

68:15, 68:17, 68:18, 68:20, 68:24, 71:18, 71:21, 71:23, 71:25, 72:6, 75:2, 79:3
**Program** [1] - 73:18
**progress** [1] - 72:5
**prohibited** [1] - 77:1
**project** [29] - 18:24, 25:25, 26:4, 26:6, 26:11, 28:11, 40:5, 40:14, 40:21, 41:2, 41:7, 41:8, 41:11, 41:16, 41:23, 42:3, 42:4, 42:10, 42:12, 42:15, 42:20, 42:23, 43:21, 44:2, 44:10, 45:13, 45:14, 49:25, 55:14
**projected** [1] - 40:7
**projects** [2] - 26:9, 40:15
**promote** [4] - 58:10, 60:10, 60:23, 61:16
**promoting** [1] - 59:21
**pronouncement** [2] - 4:8, 73:2
**proof** [2] - 75:11, 75:20
**proper** [3] - 9:13, 26:8
**property** [13] - 20:17, 20:19, 20:23, 39:19, 39:21, 40:4, 40:9, 40:10, 49:21, 49:23, 63:8, 66:11, 76:5
**proposed** [15] - 8:9, 8:22, 8:23, 9:6, 57:8, 66:17, 66:20, 66:22, 67:15, 68:4, 68:6, 68:15, 68:18, 68:19, 68:24
**prosecution** [7] - 16:14, 64:21, 65:23, 66:2, 69:13, 71:3, 72:7
**prospects** [1] - 71:1
**protect** [1] - 59:23
**provide** [9] - 40:24, 48:22, 58:11, 60:11, 61:16, 67:18, 70:3, 75:10, 75:23
**provided** [4] - 21:9, 52:6, 67:19, 73:23
**provider** [2] - 76:24, 77:1
**provides** [3] - 54:6, 56:11, 60:2
**providing** [2] - 29:3, 51:13
**provision** [1] - 36:1
**PSR** [3] - 13:20, 14:12,

14:15
**public** [7] - 17:22, 34:1, 55:6, 55:7, 59:8, 59:17, 59:24
**publication** [5] - 17:12, 17:18, 36:1, 67:6, 67:7
**publicity** [1] - 20:21
**publicize** [2] - 66:25, 67:12
**publicizing** [1] - 66:19
**publicly** [2] - 17:14, 17:23
**punished** [1] - 36:17
**punishment** [8] - 36:15, 55:10, 58:11, 58:19, 59:5, 60:11, 61:16, 67:1
**punitive** [2] - 60:17, 61:18
**purchase** [2] - 40:11, 71:12
**purchased** [4] - 48:22, 49:11, 49:15, 49:20
**purposes** [7] - 4:24, 9:14, 53:13, 55:18, 58:5, 58:7, 66:12
**pursuant** [20] - 5:7, 6:1, 6:3, 6:5, 6:11, 7:2, 7:24, 34:11, 57:4, 60:5, 61:20, 62:7, 65:23, 65:25, 66:5, 66:23, 69:15, 73:17, 74:3, 76:12
**put** [5] - 17:7, 17:20, 28:2, 29:11, 39:5
**putting** [1] - 38:16

## Q

**quarter** [1] - 73:16
**quash** [1] - 21:8
**queens** [1] - 49:1
**questions** [2] - 22:3, 31:16
**quicker** [1] - 77:11
**quite** [6] - 8:11, 14:4, 15:6, 27:21, 31:18, 32:18
**quote** [10] - 33:25, 43:5, 43:6, 45:22, 46:14, 47:16, 47:17, 49:25, 55:19, 55:20

## R

**raise** [1] - 78:19
**raised** [5] - 10:21, 10:22, 11:12, 12:21, 18:8

**raising** [1] - 50:25
**range** [29] - 4:21, 5:3, 6:11, 6:12, 7:14, 9:11, 9:15, 9:17, 9:20, 10:6, 10:7, 10:16, 15:25, 21:17, 34:10, 34:15, 53:5, 53:7, 53:10, 53:12, 53:17, 56:21, 57:1, 57:2, 57:4, 61:4, 61:25
**rate** [1] - 73:16
**rather** [5] - 10:17, 16:24, 52:24, 55:1, 66:21
**Ray** [2] - 2:13, 3:13
**RDAP** [1] - 79:2
**re** [1] - 25:15
**re-offense** [1] - 25:15
**read** [5] - 23:16, 24:1, 24:11, 28:19, 32:16
**readily** [2] - 45:4, 45:10
**ready** [1] - 25:17
**real** [5] - 26:4, 40:13, 40:15, 42:23, 49:15
**realize** [1] - 41:6
**realized** [1] - 42:21
**really** [14] - 9:12, 12:6, 24:8, 24:11, 24:18, 25:10, 26:25, 28:21, 31:25, 34:22, 35:11, 35:23, 36:14, 36:21
**reason** [5] - 4:10, 17:12, 28:24, 30:2, 39:9
**reasonable** [6] - 55:19, 72:12, 72:13, 76:13, 76:14
**reasonably** [1] - 66:8
**reasons** [3] - 11:7, 53:23, 68:25
**receive** [4] - 7:8, 52:20, 55:13, 55:22
**received** [12] - 20:12, 32:4, 32:6, 32:7, 40:8, 41:8, 43:23, 55:5, 57:21, 72:5, 75:13
**receives** [1] - 59:8
**recent** [6] - 13:12, 14:7, 18:8, 23:10, 52:13, 66:15
**recharacterizing** [1] - 27:22
**recidivism** [2] - 58:20, 59:1
**recited** [1] - 30:13
**recognize** [2] - 9:22, 48:12

**recognized** [3] - 30:4, 41:24, 46:8
**recognizing** [1] - 30:5
**recommend** [3] - 66:14, 67:4, 67:5
**recommendation** [20] - 5:14, 5:18, 6:16, 11:9, 11:10, 16:6, 16:13, 16:22, 17:5, 21:21, 33:25, 34:22, 35:15, 60:22, 62:14, 62:15, 66:15, 78:23, 79:11
**recommendations** [4] - 32:9, 78:21, 78:24, 79:5
**recommended** [3] - 12:3, 17:8, 17:13
**recommending** [3] - 33:1, 33:14, 33:15
**recommends** [2] - 16:11, 60:18
**record** [2] - 27:10, 65:14
**recorded** [1] - 47:1
**records** [6] - 19:13, 46:7, 46:12, 54:19, 56:7, 72:14
**redevelop** [1] - 40:9
**redevelopment** [1] - 40:16
**redisclosure** [1] - 76:25
**reduce** [1] - 8:19
**reduces** [1] - 64:7
**reduction** [8] - 7:9, 8:13, 9:10, 9:19, 52:20, 57:21, 63:23, 64:5
**refer** [1] - 5:15
**referred** [3] - 16:15, 49:17, 65:24
**referring** [1] - 24:7
**reflect** [5] - 16:3, 30:20, 55:3, 60:10, 61:15
**reflected** [1] - 64:13
**reflects** [1] - 27:10
**Reform** [3] - 16:2, 69:15, 74:3
**refrain** [1] - 76:17
**refunds** [1] - 75:14
**regard** [2] - 23:11, 33:18
**regarding** [3] - 54:3, 67:25, 71:5
**regimen** [1] - 79:2
**regret** [4] - 38:15, 38:23, 45:8, 45:17
**regretful** [1] - 38:9

**regular** [1] - 72:13
**regulations** [1] - 74:16
**reject** [1] - 27:15
**rejects** [1] - 53:23
**related** [2] - 57:17, 66:8
**relates** [2] - 15:2, 58:16
**relating** [3] - 10:3, 46:1, 46:7
**relationship** [3] - 42:25, 43:8, 45:10
**release** [8] - 16:8, 16:12, 74:10, 74:11, 74:18, 75:23, 75:25, 76:19
**relevant** [5] - 30:7, 30:10, 57:19, 61:8, 65:9
**relief** [1] - 8:18
**rely** [1] - 17:17
**relying** [2] - 18:18, 18:19
**remain** [2] - 14:2, 78:1
**remained** [1] - 21:2
**remember** [1] - 19:21
**remembers** [1] - 28:4
**remiss** [1] - 22:11
**remorse** [3] - 45:8, 46:24, 53:1
**remove** [1] - 33:2
**removed** [1] - 13:22
**renamed** [1] - 71:12
**renovated** [1] - 49:15
**reoccurrence** [1] - 67:2
**reorient** [1] - 37:5
**repeat** [1] - 23:7
**repeatedly** [1] - 53:19
**report** [23] - 4:15, 5:4, 6:2, 6:20, 6:22, 6:24, 9:23, 10:22, 14:9, 15:5, 22:5, 37:14, 41:5, 52:13, 61:13, 62:14, 70:20, 70:22, 72:11, 75:24, 76:23, 77:1, 77:22
**reported** [1] - 67:8
**reporting** [2] - 72:2, 72:5
**reports** [5] - 4:16, 5:13, 5:17, 72:7, 78:1
**representative** [1] - 70:8
**represented** [1] - 54:10
**represents** [2] - 3:16, 57:1
**request** [7] - 7:25,

22:24, 36:14, 48:2, 65:20, 78:6, 78:15
**requested** [4] - 13:21, 22:21, 35:6, 70:4
**requesting** [5] - 26:16, 32:7, 36:6, 36:18, 46:6
**requests** [6] - 9:9, 14:7, 41:3, 53:14, 53:18, 78:4
**require** [4] - 5:3, 8:24, 63:7, 63:25
**required** [5] - 28:8, 50:2, 67:13, 70:23, 75:12
**requirements** [3] - 41:3, 68:11, 71:19
**requires** [2] - 47:19, 58:10
**residence** [1] - 76:5
**residential** [1] - 40:6
**resolve** [3] - 5:4, 44:9, 45:21
**resolving** [1] - 42:13
**resources** [1] - 65:15
**respect** [26] - 8:12, 8:25, 9:24, 10:1, 10:7, 10:10, 12:11, 17:3, 17:11, 17:25, 18:1, 18:2, 18:7, 20:25, 22:5, 37:13, 38:6, 52:15, 58:10, 59:21, 59:25, 60:11, 60:23, 61:16, 78:18, 78:25
**respective** [2] - 7:16, 68:21
**respectively** [1] - 64:22
**response** [10] - 10:4, 11:4, 12:20, 12:24, 27:12, 33:19, 33:24, 65:3
**Responsibility** [1] - 73:18
**responsibility** [9] - 7:9, 20:5, 20:10, 34:1, 34:4, 35:16, 38:24, 52:21, 65:1
**responsible** [2] - 40:1, 41:17
**rest** [3] - 38:15, 38:23, 39:3
**result** [6] - 6:13, 9:11, 30:1, 30:21, 46:11, 64:9
**resulting** [3] - 30:21, 62:17, 65:12
**results** [2] - 6:10, 72:3
**retail** [3] - 49:11,

49:13, 50:2
**return** [4] - 40:25, 46:21, 46:22, 55:22
**returns** [3] - 40:2, 54:19, 75:25
**reviewed** [3] - 4:15, 11:17, 23:6
**revise** [4] - 11:7, 14:21, 15:1, 15:5
**revised** [11] - 4:16, 5:16, 5:17, 6:2, 11:5, 12:22, 13:21, 14:9, 14:12, 17:5, 61:13
**revocation** [1] - 76:11
**reward** [2] - 21:12, 21:13
**RHOW** [1] - 2:12
**RICO** [1] - 56:14
**rightly** [1] - 51:9
**rights** [1] - 71:2
**ring** [1] - 20:6
**rippling** [1] - 59:15
**rise** [1] - 40:5
**risk** [1] - 25:14
**role** [1] - 51:16
**row** [1] - 22:13
**rule** [1] - 66:1
**Rule** [3] - 34:18, 56:17, 57:5
**rules** [1] - 74:15
**ruling** [4] - 13:14, 13:19, 15:6, 15:7
**run** [3] - 43:12, 69:20, 74:13

## S

**sale** [1] - 63:7
**sales** [1] - 25:1
**salesman** [1] - 49:3
**sample** [1] - 74:25
**sanctions** [1] - 60:16
**satisfied** [1] - 12:24
**satisfies** [1] - 58:2
**satisfy** [1] - 53:13
**save** [2] - 42:13, 45:5
**saved** [1] - 55:14
**saw** [1] - 49:22
**schedule** [2] - 68:16, 71:20
**scheme** [5] - 43:12, 43:16, 47:4, 56:9, 56:15
**school** [1] - 48:25
**scope** [1] - 43:12
**score** [4] - 6:9, 6:10, 61:23, 61:24
**seal** [5] - 13:5, 22:18, 22:21, 22:25
**sealing** [1] - 22:23

**search** [3] - 76:9, 76:10, 76:12
**searched** [1] - 76:15
**second** [4] - 4:3, 18:11, 23:24, 58:20
**Second** [2] - 74:17, 74:19
**section** [3] - 54:6, 65:25, 66:6
**Section** [12] - 4:22, 6:3, 6:6, 6:25, 7:3, 56:5, 60:1, 60:5, 66:5, 68:11, 71:19, 74:18
**see** [4] - 12:7, 28:1, 33:5, 51:11
**seek** [6] - 8:13, 8:18, 20:7, 20:8
**seeking** [1] - 10:9
**seeks** [1] - 25:3
**Seilie** [2] - 2:13, 3:13
**self** [2] - 19:5, 21:13
**self-interest** [1] - 19:5
**self-police** [1] - 21:13
**sell** [2] - 49:13, 71:7
**send** [1] - 59:1
**sends** [1] - 59:10
**sense** [3] - 24:21, 25:4, 29:3
**sent** [1] - 13:7
**sentence** [52] - 4:9, 4:10, 4:22, 8:19, 11:19, 12:13, 15:9, 16:2, 16:16, 18:5, 21:22, 25:6, 25:9, 27:21, 31:1, 31:8, 32:23, 33:1, 33:8, 34:16, 35:23, 37:9, 39:10, 39:13, 47:20, 48:2, 48:3, 51:4, 51:10, 52:22, 53:15, 53:21, 57:8, 57:16, 57:23, 58:1, 58:4, 58:6, 58:10, 58:14, 58:21, 59:8, 60:10, 64:4, 67:12, 69:1, 69:2, 72:20, 72:22, 73:2, 73:11, 78:9
**sentenced** [6] - 27:10, 33:12, 45:21, 48:5, 56:9, 62:12
**sentences** [8] - 32:6, 32:7, 32:10, 32:24, 53:4, 57:10, 58:18, 59:23
**Sentencing** [4] - 9:7, 16:1, 69:15, 74:3
**sentencing** [38] - 4:20, 5:1, 5:7, 7:13, 7:16, 7:21, 10:4, 11:17,

14

16:1, 16:4, 16:6, 23:16, 26:2, 32:13, 44:23, 47:22, 53:9, 53:13, 56:4, 56:6, 56:21, 57:9, 57:12, 57:13, 57:14, 58:2, 58:5, 58:7, 58:15, 59:12, 60:20, 63:5, 64:3, 64:9, 64:19, 66:12, 68:5, 77:2

**Seoul** [1] - 48:14

**separate** [3] - 63:24, 64:17, 68:19

**separated** [1] - 51:4

**September** [4] - 28:7, 68:15, 68:22, 71:21

**series** [2] - 18:16, 19:8

**serious** [5] - 25:17, 41:25, 47:19, 54:17, 58:9

**seriousness** [7] - 21:18, 27:14, 27:17, 55:1, 56:1, 60:10, 61:15

**serve** [2] - 58:19, 59:23

**served** [2] - 46:6, 74:8

**Services** [2] - 74:16, 76:23

**set** [20] - 4:22, 6:5, 6:21, 6:23, 7:2, 7:6, 8:13, 13:12, 14:13, 14:19, 16:1, 16:4, 16:12, 16:21, 17:4, 58:8, 61:13, 68:11, 71:19, 74:18

**setting** [1] - 68:20

**seven** [2] - 21:21, 75:17

**sever** [1] - 29:15

**several** [4] - 39:17, 47:5, 49:19, 60:9

**severe** [1] - 58:22

**severed** [1] - 29:8

**severely** [1] - 34:2

**Shaffer** [2] - 18:21, 40:20

**Shaffer's** [1] - 18:20

**shall** [53] - 60:2, 62:16, 68:9, 68:14, 68:18, 68:24, 69:3, 69:5, 69:6, 69:13, 69:23, 70:1, 70:3, 70:7, 70:10, 70:14, 70:18, 70:20, 70:21, 70:23, 71:6, 71:13, 71:17, 71:23, 72:1, 72:7, 72:12, 72:18, 73:13, 73:15, 73:19, 73:23, 73:25, 74:10,

74:15, 74:21, 74:24, 75:1, 75:4, 75:8, 75:10, 75:12, 75:13, 75:17, 75:18, 75:20, 75:23, 76:4, 76:17, 76:18, 77:20, 77:22

**shareholder** [3] - 39:25, 63:4, 67:22

**shareholders** [5] - 11:17, 21:4, 63:9, 67:19, 71:24

**shareholders'** [1] - 63:22

**Shen** [5] - 17:20, 59:13, 64:11, 64:12, 64:15

**Sheridan** [1] - 79:3

**shirts** [1] - 49:5

**shock** [2] - 50:13, 51:1

**shoes** [1] - 49:12

**short** [2] - 19:24, 45:6

**short-term** [1] - 19:24

**shortcuts** [1] - 41:13

**show** [4] - 25:16, 51:23, 52:1, 75:20

**shown** [3] - 21:25, 28:3, 51:25

**showroom** [1] - 49:17

**showrooms** [1] - 24:23

**shows** [2] - 20:17, 31:20

**side** [1] - 42:19

**sight** [1] - 48:11

**signed** [3] - 46:22, 75:23, 75:25

**significance** [1] - 51:16

**significant** [16] - 26:15, 31:22, 32:5, 32:20, 33:17, 35:6, 40:24, 41:8, 41:22, 46:8, 47:20, 48:8, 54:9, 54:13, 61:12, 77:13

**significantly** [1] - 40:10

**silence** [1] - 28:18

**similar** [6] - 56:7, 59:2, 59:3, 59:11, 67:2

**similarly** [3] - 58:17, 59:10, 64:25

**simple** [4] - 29:4, 29:7, 29:18, 29:24

**simply** [2] - 5:15, 37:16

**simultaneously** [1] - 33:22

**simultaneously-filed**

[1] - 33:22

**sin** [1] - 47:14

**sincere** [1] - 53:3

**single** [2] - 54:8

**sister** [1] - 48:24

**sites** [1] - 70:19

**situated** [3] - 58:18, 59:10, 64:25

**situation** [5] - 18:10, 18:25, 19:2, 35:9, 45:4

**situations** [1] - 59:2

**six** [5] - 19:8, 54:15, 65:17, 69:7, 73:24

**size** [3] - 36:7, 36:13, 65:5

**slow** [1] - 41:12

**small** [1] - 49:4

**so-called** [1] - 46:18

**social** [1] - 76:7

**society** [1] - 59:16

**socks** [1] - 49:5

**sold** [1] - 49:4

**someone** [5] - 18:10, 18:13, 18:14, 18:17, 25:14

**somewhat** [1] - 35:9

**sons** [1] - 38:17

**sorry** [7] - 14:22, 38:12, 38:14, 39:5, 40:3, 77:10, 79:7

**sort** [3] - 26:15, 31:14, 35:6

**sourcebook** [1] - 57:15

**South** [1] - 39:23

**space** [1] - 40:7

**special** [7] - 16:8, 16:13, 69:4, 69:23, 71:16, 73:14, 74:21

**specific** [2] - 53:11, 58:13

**specifically** [6] - 32:1, 35:8, 36:6, 47:7, 68:7, 68:13

**specified** [2] - 66:24, 72:2

**spend** [1] - 32:20

**spent** [3] - 29:4, 29:22, 45:7

**split** [2] - 18:11, 23:24

**split-second** [2] - 18:11, 23:24

**Spring** [1] - 2:8

**square** [1] - 40:6

**stand** [1] - 38:4

**stands** [1] - 25:17

**start** [1] - 79:8

**starting** [3] - 31:2, 39:1, 56:11

**state** [3] - 3:7, 70:2, 75:24

**statement** [9] - 7:23, 8:2, 8:3, 10:3, 38:5, 44:23, 65:24, 68:20, 76:1

**statements** [3] - 5:7, 53:6, 54:2

**States** [20] - 2:4, 2:5, 2:6, 2:7, 2:8, 3:6, 3:9, 4:19, 48:17, 48:25, 57:14, 60:5, 66:5, 69:4, 69:6, 69:13, 71:19, 73:14, 73:20, 77:23

**stating** [1] - 51:6

**statistics** [2] - 32:11, 32:13

**status** [1] - 71:10

**statutory** [10] - 6:12, 10:9, 21:23, 36:18, 61:9, 61:11, 61:18, 62:2, 63:20, 64:10

**step** [1] - 4:25

**steps** [1] - 67:1

**still** [5] - 4:20, 20:19, 20:22, 20:23, 38:25

**stipulation** [1] - 37:16

**stock** [1] - 71:12

**stood** [1] - 38:14

**storage** [2] - 76:6, 76:8

**store** [2] - 48:19, 48:22

**stores** [2] - 49:13, 60:24

**story** [6] - 24:12, 24:16, 25:24, 26:3, 39:22, 48:6

**strange** [1] - 22:20

**stream** [1] - 64:12

**Street** [1] - 2:8

**street** [1] - 77:24

**strength** [1] - 38:15

**strict** [1] - 59:23

**striking** [1] - 24:20

**structure** [3] - 35:11, 71:10

**structured** [1] - 35:14

**struggle** [1] - 48:7

**struggles** [1] - 50:24

**student** [1] - 48:25

**subject** [1] - 39:19

**submission** [3] - 17:7, 37:2, 72:1

**submit** [13] - 22:3, 26:14, 35:5, 36:9, 37:17, 67:17, 68:10, 70:21, 71:17, 72:12, 76:4, 76:10, 76:18

**submitted** [8] - 16:23, 23:11, 31:20, 32:14, 38:5, 50:5, 66:21, 68:24

**submitting** [1] - 54:19

**subpoena** [2] - 21:8, 46:6

**substance** [5] - 12:6, 52:16, 75:2, 76:18, 76:24

**substantial** [6] - 44:9, 45:22, 47:20, 48:8, 53:18, 57:21

**substantially** [2] - 55:21, 59:5

**succeeded** [1] - 41:1

**success** [4] - 24:21, 42:9, 48:7, 50:25

**successes** [1] - 50:18

**successful** [7] - 40:13, 41:6, 41:22, 49:7, 49:14, 49:17, 50:20

**sufficient** [6] - 4:23, 16:2, 53:12, 58:6, 64:2, 65:15

**suggest** [2] - 18:19, 36:22

**suggested** [2] - 36:24, 44:15

**suggesting** [1] - 31:24

**suggests** [2] - 33:3, 48:3

**summary** [2] - 46:4, 52:6

**Sun** [1] - 2:18

**Superseding** [4] - 5:11, 69:18, 74:5, 74:8

**supervised** [4] - 16:7, 16:12, 74:11, 74:18

**supervision** [5] - 74:20, 75:6, 75:10, 75:20, 76:15

**support** [13] - 22:14, 25:13, 28:11, 28:13, 31:18, 41:9, 42:5, 42:12, 44:2, 44:4, 50:21, 51:12, 51:23

**supported** [1] - 25:25

**supporting** [1] - 76:1

**supports** [1] - 58:21

**surprise** [1] - 50:13

**surrender** [2] - 77:3, 77:20

**Susan** [1] - 3:9

**SUSAN** [1] - 2:7

**suspicion** [1] - 76:14

**swap** [1] - 49:4

**sweat** [1] - 75:3

**system** [1] - 59:9

**T**

**t-shirts** [1] - 49:5
**table** [1] - 3:10
**tailored** [2] - 58:21, 68:7
**tainted** [1] - 29:9
**talks** [2] - 18:21, 27:24
**tax** [8] - 40:2, 46:17, 46:21, 54:19, 56:14, 75:14, 75:25
**taxes** [2] - 75:18, 75:19
**team** [4] - 40:18, 40:22, 41:24, 42:17
**ten** [3] - 37:20, 47:9, 70:14
**tens** [1] - 40:10
**tentative** [1] - 36:3
**term** [11] - 16:7, 16:11, 19:24, 45:22, 56:25, 69:18, 69:19, 74:6, 74:7, 74:11, 74:12
**terms** [18] - 16:12, 16:20, 17:4, 24:9, 29:6, 35:8, 35:22, 36:7, 36:13, 37:1, 37:16, 42:1, 69:20, 73:8, 74:13, 78:16
**test** [1] - 76:19
**testified** [1] - 44:18
**testimony** [3] - 43:3, 44:20
**testing** [1] - 75:3
**tests** [2] - 76:20
**THE** [83] - 3:5, 3:11, 3:17, 3:20, 3:22, 3:24, 4:2, 4:3, 4:6, 4:14, 4:19, 8:21, 9:5, 10:11, 10:19, 11:15, 11:22, 11:25, 12:5, 12:9, 12:17, 12:20, 13:1, 13:10, 13:18, 14:8, 14:16, 14:20, 14:24, 15:1, 15:12, 15:19, 15:21, 15:24, 18:3, 19:12, 19:19, 19:21, 22:4, 22:8, 22:15, 22:25, 23:1, 23:3, 23:16, 26:20, 28:9, 28:21, 29:2, 31:9, 31:12, 32:16, 34:6, 34:10, 34:14, 36:11, 37:12, 37:20, 37:22, 37:24, 38:3, 39:9, 39:13, 69:12, 73:3, 73:6, 73:11, 77:9, 77:11, 77:14,

77:16, 77:17, 77:19, 78:5, 78:7, 78:17, 78:23, 79:4, 79:10, 79:13, 79:16, 79:20, 79:23
**thereafter** [2] - 5:6, 76:20
**therefore** [4] - 10:8, 21:21, 52:19, 62:23
**therein** [1] - 20:11
**they've** [2] - 51:21, 77:11
**third** [2] - 33:6, 67:25
**thoughts** [1] - 38:4
**thousands** [1] - 29:5
**three** [8] - 16:7, 31:25, 38:8, 62:3, 74:11, 74:12, 76:1, 79:7
**throughout** [5] - 24:1, 25:8, 27:15, 59:17, 67:9
**time-consuming** [1] - 50:1
**timeline** [1] - 28:5
**timely** [2] - 75:17, 75:19
**Timolol** [1] - 13:22
**tirelessly** [1] - 48:22
**today** [13] - 10:13, 23:21, 27:16, 27:23, 27:24, 30:17, 30:19, 38:7, 52:23, 53:2, 72:23, 77:14, 78:10
**together** [5] - 4:7, 26:25, 37:15, 51:5, 60:16
**took** [1] - 18:16
**top** [1] - 42:24
**total** [21] - 6:6, 6:10, 7:9, 8:3, 9:12, 9:15, 9:18, 9:20, 16:17, 56:17, 56:18, 57:20, 61:5, 61:23, 62:4, 62:17, 62:18, 66:1, 69:6, 73:20, 73:22
**totaled** [1] - 49:8
**totality** [1] - 20:6
**totally** [1] - 50:15
**trace** [1] - 44:20
**traits** [1] - 50:9
**transaction** [1] - 54:8
**transcript** [1] - 44:21
**transparency** [1] - 21:14
**treated** [1] - 35:4
**treating** [3] - 34:2, 34:21, 34:23
**treatment** [7] - 14:5, 33:12, 75:2, 75:9, 76:24, 76:25, 77:1

**tremendous** [2] - 47:10, 50:18
**trial** [22] - 18:21, 19:22, 20:12, 21:2, 21:8, 28:3, 28:19, 29:12, 30:1, 34:1, 34:5, 34:24, 35:20, 41:1, 43:3, 44:14, 44:21, 46:2, 50:23, 52:19, 52:24
**Trial** [1] - 28:1
**tried** [2] - 29:13, 33:6
**true** [2] - 25:7, 52:7
**trust** [2] - 39:4, 43:1
**trusting** [1] - 50:8
**truth** [1] - 19:17
**truthful** [1] - 70:21
**truthfully** [3] - 70:10, 75:17, 75:19
**trying** [2] - 27:14, 27:19
**tube** [1] - 49:5
**turn** [1] - 3:23
**turned** [2] - 19:16, 28:5, 42:23
**turns** [1] - 25:1
**two** [23] - 3:16, 4:25, 5:1, 7:5, 8:8, 8:12, 8:22, 9:6, 9:10, 9:19, 23:8, 34:3, 34:21, 38:16, 53:8, 54:16, 58:16, 66:10, 66:19, 71:1, 74:20, 76:19, 79:8
**two-level** [6] - 7:5, 8:8, 8:12, 9:10, 9:19, 53:8
**two-phase** [1] - 5:1
**two-step** [1] - 4:25
**type** [2] - 31:6, 47:6
**types** [1] - 51:20
**typical** [1] - 45:18
**typically** [1] - 12:11

**U**

**U.S** [2] - 74:16, 77:24
**U.S.C** [1] - 65:25
**ultimate** [4] - 29:6, 32:9, 48:7, 50:25
**ultimately** [7] - 15:7, 28:6, 28:22, 42:15, 43:23, 44:13, 49:1
**unable** [5] - 60:4, 65:19, 68:17, 72:24, 78:10
**unannounced** [1] - 72:13
**unclear** [1] - 28:8
**under** [13] - 10:16,

13:5, 19:25, 22:18, 22:21, 34:17, 53:13, 55:3, 56:17, 57:23, 69:20, 74:13, 76:8
**understandably** [1] - 59:8
**understated** [1] - 55:25
**understates** [1] - 55:1
**understood** [3] - 13:25, 23:20, 34:19
**undisputed** [4] - 40:18, 41:21, 44:14, 63:9
**unfortunately** [3] - 30:11, 41:15, 51:19
**unique** [2] - 48:6, 59:14
**United** [20] - 2:4, 2:5, 2:6, 2:7, 2:8, 3:6, 3:9, 4:19, 48:17, 48:25, 57:14, 60:5, 66:5, 69:4, 69:6, 69:13, 71:19, 73:14, 73:20, 77:23
**units** [1] - 40:6
**unknown** [1] - 55:19
**unlawful** [1] - 76:17
**unless** [8] - 9:16, 15:14, 22:2, 23:17, 28:2, 31:16, 34:17, 36:2
**unlike** [2] - 48:4, 64:15
**unnecessary** [2] - 36:6, 67:7
**unpaid** [1] - 73:15
**unsuccessfully** [1] - 48:17
**unusual** [1] - 35:9
**unwarranted** [6] - 31:23, 56:4, 56:6, 57:8, 58:2, 64:9
**unwise** [1] - 38:13
**unwitting** [1] - 19:1
**up** [16] - 19:13, 24:18, 26:7, 28:2, 29:1, 31:12, 37:15, 38:1, 38:2, 40:17, 41:10, 46:9, 55:15, 62:23, 64:16, 79:14
**upcoming** [1] - 53:9
**urgency** [1] - 59:17
**urinalysis** [1] - 75:3
**US** [1] - 76:9

**V**

**value** [12] - 17:13, 17:22, 20:17, 20:22, 40:10, 54:24, 54:25,

55:4, 55:6, 55:21, 55:23, 55:24
**values** [1] - 52:1
**variance** [17] - 8:8, 8:12, 8:22, 9:13, 10:15, 26:15, 31:23, 35:6, 53:8, 53:16, 53:17, 53:18, 53:22, 53:23, 54:1, 54:5, 65:5
**variances** [6] - 31:5, 31:6, 31:22, 32:4, 32:5, 35:2
**variety** [1] - 67:10
**various** [2] - 10:21, 56:19
**vary** [1] - 9:6, 54:22
**vehicle** [1] - 76:5
**verdicts** [1] - 20:6
**version** [1] - 7:20
**versions** [1] - 68:19
**versus** [2] - 3:6, 31:17
**via** [3] - 43:10, 44:7, 46:17
**viability** [1] - 42:10
**victim** [3] - 19:1, 43:15, 47:3
**view** [4] - 45:17, 47:19, 53:24, 59:13
**viewed** [1] - 29:10
**views** [2] - 27:13, 50:18
**violated** [1] - 76:14
**violation** [1] - 76:16
**visa** [1] - 48:25
**visit** [1] - 70:18
**voluminous** [1] - 23:6
**vote** [3] - 42:8, 42:19, 45:14

**W**

**wait** [1] - 12:16
**walk** [5] - 27:9, 27:19, 28:17, 30:3, 30:14
**walking** [1] - 27:13
**wants** [5] - 8:22, 23:14, 28:1, 28:2, 37:22
**war** [1] - 48:16
**warning** [1] - 58:19
**warrant** [2] - 63:23, 65:5
**warranted** [1] - 65:22
**ways** [1] - 24:19
**wealth** [2] - 48:9, 60:24
**weaponize** [1] - 25:3
**website** [2] - 17:21
**week** [2] - 23:10,

32:14
**weeks** [1] - 79:8
**weigh** [1] - 26:14
**weighs** [2] - 48:1, 52:11
**weight** [1] - 59:18
**welcome** [1] - 4:7
**well-heeled** [1] - 31:17
**whichever** [1] - 55:8
**white** [5] - 45:16, 45:18, 48:5, 59:4, 59:7
**white-collar** [5] - 45:16, 45:18, 48:5, 59:4, 59:7
**widely** [2] - 67:8, 67:11
**wife** [6] - 22:12, 38:14, 50:19, 50:22, 50:24, 51:3
**wife's** [1] - 52:8
**winnings** [1] - 75:14
**wish** [3] - 17:1, 72:20, 78:8
**wishes** [2] - 37:11, 72:21
**withdrawn** [1] - 7:20
**WOLPERT** [1] - 2:12
**Woo** [2] - 2:17, 3:25
**word** [1] - 24:4
**words** [2] - 39:6, 45:7
**world** [2] - 29:10, 59:13
**World** [1] - 64:11
**worry** [1] - 47:9
**worth** [1] - 32:22
**written** [2] - 50:21, 70:21
**wrongdoing** [1] - 63:10
**wrote** [1] - 22:12
**Wu** [1] - 3:21

## Y

**year** [3] - 5:9, 5:12, 16:11
**years** [25] - 16:7, 18:24, 21:21, 29:5, 29:22, 34:15, 34:16, 38:8, 38:15, 38:19, 43:2, 45:5, 45:6, 47:9, 48:6, 50:19, 51:5, 51:8, 54:16, 57:24, 69:18, 69:19, 74:11, 74:12, 75:18
**yong** [2] - 3:6, 3:13
**York** [1] - 49:1
**youngest** [1] - 48:15

## Z

**zeal** [1] - 27:20
**zero** [2] - 7:12, 8:9
**Zhen** [5] - 17:20, 59:13, 64:11, 64:12, 64:15
**Zhen/new** [1] - 29:9

**UNITED STATES DISTRICT COURT**